## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**<br>    **Plaintiff**<br><br>**VERSUS**<br><br>**PROGRESSIVE WASTE SOLUTIONS OF LA, INC., ET AL.,**<br>    **Defendants** | **CIVIL ACTION**<br><br>**NO. 18-7889**<br>**c/w 18-8071,**<br>**18-8218, 18-9312**<br><br>**SECTION: "E" (5)** |

*Applies to: All Cases*

### AMENDING AND SUPERCEDING MASTER CLASS ACTION COMPLAINT FOR DAMAGES

NOW COME Plaintiffs ELIAS JORGE "GEORGE" ICTECH-BENDECK and SAVANNAH THOMPSON and NICOLE M. LANDRY-BOURDREAUX, and LARRY BERNARD, SR. and MONA BERNARD ("PLAINTIFFS"), as individuals, and on behalf of themselves, all others similarly situated, who, pursuant to the Order of the Court, file this Amending and Superseding Class Action Master Complaint for Damages seeking class certification, and complain and allege on information and belief the following against Waste Connections Bayou, Inc. f/k/a Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc., Louisiana Regional Landfill Company, Inc. f/k/a IESI LA Landfill Corporation and Aptim Corporation ("Waste Connection Defendants"); and Jefferson Parish:

### PARTIES

1.     PLAINTIFFS ELIAS JORGE "GEORGE" ICTECH-BENDECK and SAVANNAH THOMPSON and NICOLE M. LANDRY-BOURDREAUX, and LARRY

BERNARD, SR. and MONA BERNARD were at all relevant times persons of the full age of majority and residents of and domiciled in the Parish of Jefferson, state of Louisiana.

2.    Made Defendants herein are:

a.    WASTE CONNECTIONS BAYOU, INC., f/k/a PROGRESSIVE WASTE SOLUTIONS OF LA, INC., a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana;

b.    WASTE CONNECTIONS, US, INC., a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana;

c.    LOUISIANA REGIONAL LANDFILL COMPANY, f/k/a IESI LANDFILL CORPORATION, INC., a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana;

d.    APTIM CORPORATION, a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana;

e.    IESI-LA LANDFILL CORPORATION, a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana; and

f.    PARISH OF JEFFERSON, a Louisiana municipal parish in the state of Louisiana.

3.    Defendants are jointly, severally and in solido indebted unto Plaintiffs/Class Representatives and the persons they seek to represent, for general and special damages suffered by Petitioners and all those similarly situated in a sum sufficient to full compensate him/her/them for all of his/her/their damages, together with legal interest, and for all costs as described herein.

**JURISDICTION and VENUE**

4.    This Honorable Court has ruled that it has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy

exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business., and because no relevant exception to CAFA exists.

5.      Venue is proper in this District as it is where the conduct complained of herein occurred and is also where the injury occurred and where the Removing Defendants removed the underlying actions filed in Louisiana state court.

## FACTUAL ALLEGATIONS

6.      On or about August 1, 2017, the purported "sanitary solid waste" facility/landfill owned by Defendant Jefferson Parish located in Waggaman, Louisiana began to emit noxious odors, believed to consist primarily of methane and hydrogen sulfide gases, into areas surrounding the Jefferson Parish Landfill ("JP Landfill").  The surrounding neighborhoods, including but not limited to, those located in Waggaman, Louisiana, River Ridge, Louisiana and Harahan, Louisiana experienced said noxious odors on various days and at various times of the day and night depending upon the then prevailing wind direction crossing over and/or otherwise emanating from the site of the JP Landfill.

7.      At relevant times herein, Defendants, Waste Connections Bayou, Inc. f/k/a Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc., Louisiana Regional Landfill Company, Inc. f/k/a IESI LA Landfill Corporation and Aptim Corporation ("Waste Connection Defendants") have co-managed and/or co-operated the JP Landfill and have been paid by Defendant Jefferson Parish to do so pursuant to the terms and conditions of a Contract to provide services to operate, manage, and/or maintain the Jefferson Parish Landfill (the "Landfill Operating Agreement").

8.     Following complaints by residents and putative class members, the Louisiana Department of Environmental Quality ("LDEQ") placed one or more mobile air monitoring labs in the area, and subsequently the LDEQ released a report that found higher-than-normal levels of methane and hydrogen sulfide in the areas surrounding the JP landfill.

9.     On or about July 23, 2018, Jefferson Parish President Mike Yenni outlined a number of actions the parish has taken to eliminate noxious odors that Jefferson Parish officials believe are coming from Jefferson Parish's landfill in Waggaman, including declaring the landfill's private operator [LRLC] to be in breach of its contract with Jefferson Parish, and accepting the resignation of the parish's landfill engineer.

10.     On or about July 23, 2018, Jefferson Parish President Mike Yenni stated that "properly operated landfills do not (produce) persistent offsite odors, and the corrective actions … are essential."  Moreover, on or about the same date (and at the same news conference), Keith Conley (Yenni's chief aid) admitted that the Jefferson Parish Landfill was a source of the noxious odors at issue.

11.     On information and belief, LRLC is able to collect only 20 percent of the gases produced by the landfill as a result of the antiquated leachate collection system, leaving much, if not all, of the rest to escape through the ground and into the air.

12.     The noxious odors have been so bad and/or persistent that on or about July 9, Jefferson Parish announced the creation of a hotline for citizens to report the stench.

13.     On or about July 9, 2018, in response to various complaints by residents, Jefferson Parish issued a formal news release, which stated in pertinent part as follows:

> Jefferson Parish recognizes there have been odor issues and complaints from residents in the River Ridge, Harahan and Waggaman area located along the river. As Jefferson Parish owns and operates one of the three landfills in Waggaman which services

4

Jefferson Parish residents, we do realize we may be a contributory factor to the odor issue. Jefferson Parish is committed to take all steps necessary to identify the source or sources responsible and mitigate those sources. As of July 2, 2018, Jefferson Parish has advised our contractor to stop taking liquid waste and other material believed to have the potential over time to create an odor.

14.    The improper emission of the noxious odors from the Jefferson Parish Landfill into and onto neighboring properties located in Waggaman, Harahan and River Ridge since approximately August 1, 2017, has been pervasive and persistent, continues to occur, and is likely to continue into the foreseeable future such that the emission has been and will be a continuous tort into the foreseeable future.  Upon information and belief, the Jefferson Parish Landfill has been and is still being owned and/or co-operated by the defendant-operators with inadequate and/or antiquated leachate and/or gas collection systems such that landfill leachates and gases are emanating from the site improperly, and at levels that constitute a nuisance to neighboring persons and properties.  Further, the Jefferson Parish Landfill has been cited by the Louisiana Department of Environmental Quality (LDEQ for violation of relevant environmental rules and/or regulations.

15.    Defendants actions/inactions are the sole proximate cause of Plaintiff's and numerous other similarly situated persons' damages, which bad acts include but are not limited to the following:

a)   Failing to maintain and/or operate the Jefferson Parish Landfill in such a manner such that noxious odors would not emanate and create a nuisance for its surrounding neighbors of Jefferson Parish;

b)   Failing to maintain and/or operate and/or design the Jefferson Parish Landfill such that noxious odors would not interfere with the enjoyment of its neighbors' properties and be the cause of other legally cognizable damages to its neighbors;

c)  Failing to operate the Jefferson Parish Landfill in such a way so as to prevent the emission of noxious odors into the surrounding areas;

d)  Failing to maintain, attain, and/or implement measures at the Jefferson Parish Landfill to minimize the existence of gaseous emissions and/or leachate;

e)  Failing to timely and/or efficiently correct the emission of noxious odors from the Jefferson Parish Landfill so as to not cause harm to others, and in particular, plaintiffs herein and those similarly situated;

f)  Other action/inaction in violation of Louisiana Civil Code Article (La. C.C. art) 667 and Article 669's "rules of the police [LDEQ}", "customs of the place", and/or in violation of industry standards and/or in violation of the laws, rules, regulations and/or requirements of Louisiana as promulgated by the LDEQ and/or by Jefferson Parish, including but not limited to, those actions and/or inactions as outlined herein as well as others which will be proven at the adjudication of this matte

g)  Defendants' actions/inactions are in violation of La. C.C. arts. 667, 669, 2315, 2316, 2317, 2317.1 and 2322..

The conduct of Defendants is equally applicable to all class members.

## CLASS ALLEGATIONS

16.    Plaintiffs brought the underlying matters in State Court seeking class certification pursuant to La. C.C.P. Art. 591, *et seq*. on behalf of a class of plaintiffs similarly situated, as plaintiffs herein represents that they have sustained damages common to themselves and all those similarly situated who incurred legally cognizable harm arising from the noxious emissions from the Jefferson Parish landfill, and/or such acts of negligence, nuisance, and trespass as may be proven upon trial.

6

17.     The proposed Class Representative(s) herein seek to represent the following proposed Class:

> All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons and/or properties (except for Defendants' employees and relevant court personnel).
>
> A more precise definition of the proposed class, including its geographic boundaries, will be set forth in Petitioners/proposed Class Representatives' class certification motion and supporting evidence.

18.     The proposed Class is so numerous that joinder is impracticable.  The disposition of the claims asserted herein through this proposed class action is the most efficient means of handling these claims and the best way to insure that the interests of the proposed Class Members are preserved, and class certification will also benefit the Court in the efficient adjudication of the claims asserted.

19.     There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

   a)   Whether Defendants negligently maintained and/or operated the JP Landfill;

   b)   Whether Defendants caused and/or contributed to the emission of noxious gases from the JP Landfill;

   c)   Whether Defendants negligently failed to take reasonable measures to prevent or otherwise minimize and contain the emission of noxious odors from the JP Landfill:

   d)   Whether Defendants collectively and/or individually owed a duty to the proposed Class Representatives and the Class they seek to represent to maintain the JP Landfill and operate the Landfill in a prudent manner so as to prevent the

7

release/emission of noxious odors in and around the areas neighboring the JP
Landfill.

e)   Whether Defendants breached their respective duties owed to Petitioners and the
Class they seek to represent;

f)   Whether Defendants were negligent and whether such negligence was a proximate
cause of the damages sustained by Petitioners and the proposed Class;

g)   Whether Defendants were grossly negligent and whether such gross negligence was
a proximate cause of the damages sustained by Petitioners and the proposed Class;

h)   Whether Defendants violated applicable state and/or federal operating regulations;

i)   Whether Defendants knew or should have known that their activities would cause
legally cognizable damage to Petitioners and the proposed Class; and

j)   Whether Defendants (or any of them) are strictly liable and/or at fault and whether
their actions are the proximate cause of the damages complained herein.

20.   Defendants engaged in a common course of conduct that raises common questions
of law and fact applicable to all proposed class members and which predominate over individual
questions.

21.   Plaintiffs will fairly and adequately represent the interests of the class, and the class
representatives are represented by skilled attorneys who have experience handling class actions,
as well as federal mass tort litigations, and who will handle this action in an expeditious and
economic manner, and all in the best interests of all members of the class.

22.   Class Representatives and the Class Members have suffered similar harm as a result
of Defendants' actions and/or inactions.

23.     This class may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered.  It is not necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

24.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of the claims of all proposed Class Members is impracticable as there are believed to be thousands of similarly situated individuals and entities who sustained damages that were proximately caused by the negligence, fault, gross negligence, strict liability, willful misconduct, and/or other actions of one or more of the Defendants. Even if every Class Member could afford the cost of individual litigation, the judicial system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed.  Individual litigation presents a potential for inconsistent or contradictory judgments, the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

25.     The various claims asserted in this action are also certifiable under the provisions of Rules 23(b)(l), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a)      The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants;

b)      The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests;

c)      The Defendants opposing the class have acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; and

d)      The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION (NEGLIGENCE AND/OR GROSS NEGLIGENCE)

26.      The Defendants owed a duty to Plaintiffs and the proposed Class Members to refrain from action that causes damage to Plaintiffs' and Plaintiffs' property, and of those they seek to represent, including the right to use and enjoy their property.  The incidents descried above that caused damage to Plaintiffs and Class Members were a proximate result of the negligence, fault, strict liability, gross negligence and/or misconduct of Defendants.

### SECOND CAUSE OF ACTION – NUISANCE

27.    Defendants created a nuisance through the emission of noxious odors into the air in and around the JP Landfill, which unreasonably interferes with Plaintiffs' use and enjoyment of their property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that a copy of this Amending and Superseding Master Complaint be served on each Defendant, and that they each be cited to answer same within the delays allowed by law, and that, after due proceedings are had, that the class be certified and that appropriate Notice be issued, and that judgment against Defendants be granted in favor of Plaintiff and all those similarly situated be entered in an amount to be determined at trial by the trier of fact reasonable in the premises for harms, damages, and losses as set forth above, special damages, applicable penalties (if any), costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper as the law allows.


Respectfully submitted,


**/s/ Val P. Exnicios**
**Val Patrick Exnicios, TA (LA Bar #19563)**
**Hon. Max N. Tobias, Jr. (LA Bar # 12837)**
**Frances Lacy Radcliff (LA Bar #38061)**
*Liska, Exnicios & Nungesser*
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937

***FAVRET, DEMAREST, RUSSO,***
***LUTKEWITTE & SCHAUMBURG***

A Professional Law Corporation
**Seth H. Schaumburg, No. 24636**
**Anthony J. Russo, No. 8806**
**Dean J. Favret, No. 20186**
**Angela C. Imbornone, No. 19631**
**Lauren A. Favret, No. 33826**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone: (504) 561-1006
Facsimile: (504) 523-0699

**Douglas Hammel**, LA BAR #( 26915)
Attorney at Law
3129 Bore Street
Metairie, La. 70001
504.304.9952 phone
504.304.9964 fax
***Attorneys for Plaintiff***


EDWIN M. SHORTY, JR. & ASSOC., APLC


By:    *Isl* Edwin M. Shorty, Jr.
        Edwin M. Shorty, Jr., T.A.
        Louisiana Bar Roll No. 28421

Hope L. Harper
Louisiana Bar Roll No. 33173
Dwayne P. Smith
Louisiana Bar Roll No. 21382 650
Poydras Street, Suite 2515 New
Orleans, Louisiana 70130 Phone:
(504) 207-1370
Fax: (504) 207-2850

THE KING LAW FIRM
Freddie King, III
Louisiana Bar Roll No. 33923
300 Huey P. Long Avenue, Suite E
Gretna, Louisiana 70053
Phone: (504) 982-5464
Fax: (504) 617-7755

*Counsel for Nichole M. Landry-Boudreaux*


IRPINO AVIN & HAWKINS

12

By:     *Is/* Pearl A. Robertson
        Pearl A. Robe1tson
        Louisiana Bar Roll No. 34060

Anthony D. Irpino
Louisiana Bar Roll No. 24727
Pearl Robertson
Louisiana Bar Roll No. 34060
2216 Magazine Street
New Orleans, Louisiana 70130 Ph.
(504) 525-1500
Fax. (504) 525-1501

*Counsel for Savannah Thompson*


THE LAW OFFICE OF BRUCE C. BETZER A
PROFESSIONAL LIMITED LABILITY
COMPANY


By:     *Is/* Bruce C. Betzer
        Bruce C. Betzer
        Louisiana Bar Roll No. 26800

3129 Bore Street
Metairie, Louisiana 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964

*Counsel for Larry Bernard, Sr.*