## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**<br>        **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-7889**<br>        **c/w 18-8071,**<br>        **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,**<br>        **Defendants** | **SECTION: "E" (5)** |

***Related Case:***

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>        **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-11133**<br>        **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>        **Defendants** | **SECTION: "E"(5)** |

***Applies to: 18-7889; 18-8071; 18-8218; 18-9312***

## ORDER AND REASONS

Before the Court is Defendants' motion to compel the production of questionnaire responses in the possession of Plaintiffs' attorneys filed in actions 18-7889; 18-8071; 18-8218; 18-9312 ("the consolidated class actions").[1] For the following reasons, Defendants' motion is **DENIED**.

---

[1] R. Doc. 96. Plaintiffs oppose the motion. R. Doc. 98. Defendants filed a reply. R. Doc. 102. There are related mass actions, 19-11133 and 19-14512.

## I.    Proceedings in Federal Court

Case number 18-7889 was removed to this Court on August 17, 2018.[2] The other class action cases were removed to this Court on August 23, 2018,[3] August 29, 2018,[4] and October 5, 2018.[5] Plaintiffs in each class action filed motions to remand.[6] On March 14, 2019, the Court denied Plaintiffs' motions to remand these class action suits, which had not yet been consolidated, and permitted the suits to continue in federal court.[7] After the motions to remand were denied, the Court and the parties started the process of determining how discovery would proceed. Initially, in a letter dated March 25, 2019, Defendants in the class actions proposed proceeding with discovery on all issues in the class actions simultaneously, with a focus on discovery related to class certification.[8]

The class actions were consolidated on April 5, 2019.[9] Discovery discussions were quickly put on hold when, on April 24, 2019, Defendants filed a motion to dismiss the consolidated class actions. The related mass actions, *Addison v. Louisiana Regional Landfill Co.*[10] and *Fleming v. Louisiana Regional Landfill Co.*,[11] had not yet been removed. On June 10, 2019, while the motion to dismiss the consolidated class actions

---

[2] R. Doc. 1.
[3] *Thompson v. La. Reg. Landfill Co.*, No. 18-8071, R. Doc. 1 (E.D. La. August 23, 2018).
[4] *Bernard v. Progressive Waste Solutions of La., Inc.*, No. 18-8218, R. Doc. 1 (E.D. La. August 29, 2018).
[5] *Landry-Boudreaux v. Progressive Waste Solutions of La., Inc.*, No. 18-9312, R. Doc. 1 (E.D. La. October 5, 2018).
[6] R. Doc. 7; *Thompson v. La. Reg. Landfill Co.*, No. 18-8071, R. Doc. 6 (E.D. La. August 23, 2018); *Bernard v. Progressive Waste Solutions of La., Inc.*, No. 18-8218, R. Doc. 7 (E.D. La. August 29, 2018); *Landry-Boudreaux v. Progressive Waste Solutions of La., Inc.*, No. 18-9312, R. Doc. 8 (E.D. La. October 5, 2018).
[7] R. Doc. 37; *Thompson v. La. Reg. Landfill Co.*, No. 18-8071, R. Doc. 23 (E.D. La. August 23, 2018); *Bernard v. Progressive Waste Solutions of La., Inc.*, No. 18-8218, R. Doc. 25 (E.D. La. August 29, 2018); *Landry-Boudreaux v. Progressive Waste Solutions of La., Inc.*, No. 18-9312, R. Doc. 23 (E.D. La. October 5, 2018).
[8] R. Doc. 41.
[9] R. Doc. 47.
[10] No. 19-11133 (E.D. La.).
[11] No. 19-14512 (E.D. La.).

was pending, one related mass action, *Addison*, was removed to federal court.[12] On August 29, 2019, the Court denied Defendants' motion to dismiss the consolidated class actions.[13]

After the consolidated class actions were permitted to continue in federal court, discussions about discovery resumed. Now, however, because the related *Addison* mass action had joined the fray, discovery could not focus only on class certification issues but also had to focus on the related mass action. This changed the nature of discussions. Defendants proposed the Court enter a "Lone Pine" case management order that permitted discovery on both general and specific causation.[14] Such orders usually require a plaintiff to set forth evidence of causation early in a tort case and are used to weed out frivolous claims and assist in the management of complex issues in mass tort litigation.[15] Defendants submitted a proposed Lone Pine case management order.[16]

At a status conference on September 10, 2019, the parties in both the consolidated class actions and the related *Addison* mass action agreed to pursue discovery on general causation before pursuing discovery on specific causation, presumably because general causation might be determinative in this matter and thereby obviate the need to engage in any further discovery in these actions.[17] At that same status conference, the parties also began working out a protocol for an inspection of the landfill and for producing electronically stored information.[18] In letters to the Court dated September 27, 2019, the parties set out the information they believed they needed during the "general causation phase" of discovery.[19]

---

[12] *Addison v. La. Reg. Landfill Co.*, No. 19-11133, R. Doc. 1 (E.D. La. June 10, 2019).
[13] R. Doc. 66.
[14] R. Doc. 70.
[15] *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2016 WL 614690, at *7 (E.D. La. Feb. 16, 2016).
[16] R. Doc. 70-1; R. Doc. 70-2.
[17] R. Doc. 71.
[18] *Id.*
[19] *See* R. Doc. 79.

## II.    The First Case Management Order and Plaintiff Fact Sheet Order

After discussion with the parties, on November 5, 2019, the Court entered a First Case Management Order applicable to the consolidated class actions, and the related *Addison* mass action, that laid out a plan for the parties to engage first in discovery on issues pertaining to general causation.[20] According to the First Case Management Order, "'General Causation' is the determination of whether odors and gases were being emitted by the Jefferson Parish Landfill during the relevant time period and whether any such odors and gases were capable of producing the injuries claimed by any one [or] more of the Plaintiffs in this case."[21]  Section B.6 of the First Case Management Order required Plaintiffs to produce, by December 5, 2019, certain categories of documents (such as documents from government entities or sampling information) in their counsel's possession relating to general causation. Subsection B.6.b specifically listed "all non-privileged documents concerning air emissions or impacts to air quality from sources or facilities other than the Jefferson Parish Landfill."[22] Nothing in Section B.6 was intended to or did change the restriction of discovery to general causation.

The First Case Management Order provided "for additional time for the Parties to agree upon a schedule and sequence to complete discovery on remaining issues."[23] Specifically, the Order stated, "On January 17, 2021, the Parties shall submit a joint letter concerning a proposed case management schedule to resolve all remaining issues in the respective cases. A status conference is scheduled for January 15, 2021, at 10:00 am to discuss the proposed case management schedule for resolving all remaining issues in the

---

[20] R. Doc. 82. The Court has since entered a Second Case Management extending various deadlines in this case. R. Doc. 106. The relevant substantive provisions in the First Case Management Order did not change.
[21] R. Doc. 82, at 2. The Second Case Management Order reiterates this definition. R. Doc. 106, at 2.
[22] R. Doc. 82 at 6. The Second Case Management order did not affect the December 5, 2019, deadline. R. Doc. 106, at 6.
[23] R. Doc. 82, at 2.

4

respective cases."[24] At a status conference on December 11, 2019, "[t]he Court clarified that at the January 15, 2021 status conference the Court will discuss any remaining discovery needed from Plaintiffs and Defendants. The parties [we]re directed not to propound additional discovery to Plaintiffs or Defendants between now and January 15, 2021 without leave of Court."[25]

Shortly thereafter, on December 12, 2019, the Court entered an Order governing the Plaintiffs' production of "fact sheets."[26] The Order set out the form of the fact sheets to be completed and set out the dates by which the named Plaintiffs in the consolidated class actions and all plaintiffs in the related *Addison* mass action must submit them to Defendants.[27] Section 3.a of the fact sheet Order set forth the first deadline by stating, "200 Plaintiffs from the *Addison* action and all of the [named] *Ictech-Bendeck* Plaintiffs shall submit their completed forms by April 1, 2020."[28] Section 6 of the Order allowed the parties to file motions to compel only with respect to Plaintiffs' fact sheets and medical authorizations.[29]

## III.   Defendants' Motion to Compel

As already stated, the First Case Management Order required Plaintiffs to produce, by December 5, 2019, certain categories of documents in their counsel's possession relating to general causation.[30] According to Defendants, Plaintiffs in the consolidated class actions failed to meet this obligation by withholding responses to questionnaires titled "Jefferson Parish Landfill Data Sheet" that were distributed, beginning in 2018, by

---

[24] *Id.* at 10.
[25] R. Doc. 88.
[26] R. Doc. 89.
[27] *Id.*
[28] *Id.* at 2; R. Doc. 93.
[29] R. Doc. 89, at 3.
[30] R. Doc. 82, at 6.

Plaintiffs' counsel to residents of Jefferson Parish.[31] The questionnaires asked the residents if they "noticed any odors from the Jefferson Parish Landfill at [their] home" and, if so, asked the residents to describe "any odors from the Jefferson Parish Landfill at [their] home."[32] It also asked how those odors "affect[ed their] ability to use and/or enjoy [their] home."[33]

Soon after the December 5, 2019, deadline for Plaintiffs' counsel to produce certain documents related to general causation in counsels' possession, Defendants demanded that Plaintiffs produce the questionnaire responses.[34] On January 2, 2020, Plaintiffs' counsel responded by asserting the questionnaire responses are privileged and only provide information about odors from the Jefferson Parish Landfill.[35] Plaintiffs produced a privilege log on February 3, 2020.[36] The privilege log claims the questionnaire responses are protected by attorney-client privilege and the work product doctrine.[37] Defendants objected to the Plaintiffs' claim of privilege and demanded Plaintiffs produce an engagement letter from each respondent to the questionnaire.[38] After Plaintiffs failed to comply, Defendants notified Plaintiffs that, unless Plaintiffs produced the responses, Defendants planned to seek relief in court.[39] Plaintiffs did not respond.[40]

On March 17, 2020, Defendants filed the instant motion to compel.[41] The motion seeks to compel Plaintiffs "to produce the completed data sheets under the Case

---

[31] R. Doc. 96, at 2–3.
[32] R. Doc. 96-3.
[33] *Id.*
[34] R. Doc. 96-1, at 2–3. Defendants did not seek leave of the Court to propound additional discovery as required. *See* R. Doc. 88.
[35] R. Doc. 96-1, at 3.
[36] R. Doc. 96-4.
[37] *Id.*
[38] R. Doc. 96-1, at 3.
[39] *Id.*
[40] *Id.*
[41] R. Doc. 96. At this time, motions to compel were allowed only with respect to Plaintiffs fact sheets and medical authorizations. *See* R. Doc. 89.

Management Order."[42] The documents Defendants are seeking, however, clearly are not the "Plaintiff Data Sheets" contemplated in the First Case Management Order and in the subsequent Order governing Plaintiff fact sheets.[43] The memorandum in support of the motion makes clear the Defendants are instead seeking the "responses to mass mailed surveys" that were sent out beginning in 2018. As stated above, those surveys asked Jefferson parish residents to describe odors at their homes from the Jefferson Parish Landfill and to describe the effects of those odors on the use of their property. Defendants acknowledge the questionnaires include only questions related to the experiences of specific residents but argue the responses would still likely indicate whether odors from "other sources" were present at the respondents' homes.[44] Defendants then cite a number of inapplicable cases pertaining to attorney-client privilege[45] and argue that putative class members are not clients of Plaintiffs' counsel.

On April 7, 2020, Plaintiffs filed an opposition to the motion to compel.[46] In their opposition, Plaintiffs argue the questionnaire responses are protected by attorney-client privilege and the discovery request is premature because the First Case Management Order prioritizes discovery on general causation for a Daubert hearing now scheduled on

---

[42] R. Doc. 96-1, at 14.

[43] R. Doc. 89.

[44] R. Doc. 96-1, at 7.

[45] For example, in *Tonti Properties v. Sherwin-Williams Co.*, cited by Defendants, another section of this court found certain communications were not privileged because (1) the plaintiff had placed the communications at issue, thereby waiving attorney-client privilege, and (2) local rules required the plaintiffs to produce the communications because they responded to the plaintiff's attorney's fee claim. No. CIV. A. 99-892, 2000 WL 506015, at *2 (E.D. La. Apr. 27, 2000). Plaintiffs in this matter have not waived attorney-client privilege as to the questionnaire responses. The questionnaires do not relate to a request for attorneys' fees. Neither have the Plaintiffs placed the communications at issue. Another case Defendants cite, *Schwegmann Westside Expressway, Inc. v. Kmart Corp.*, is similarly distinguishable because the plaintiffs in that case waived the attorney-client privilege by placing certain documents at issue. No. CIV. A. 94-2095, 1995 WL 510071 (E.D. La. Aug. 25, 1995). Defendants also rely heavily on *Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 423 (D.N.J. 2000). That case involved federal question jurisdiction and relied on federal common law to determine the attorney-client privilege issues. This Court does not believe the result in *Morisky* result would prevail under Louisiana evidentiary law.

[46] R. Doc. 98.

June 11, 2021 by virtue of the Second Case Management Order.[47] The information in the questionnaire responses sought by Defendants, however, does not, according to Plaintiffs, relate to general causation.[48] Instead, Plaintiffs argue the responses relate only to specific causation because they deal with the particular harms each resident may have suffered.

On April 15, 2020, Defendants filed a reply in support of their motion to compel, and it is only in their reply that Defendants address the issue of whether the questionnaire responses relate to general causation.[49] Defendants attempt to shoehorn the questionnaire responses into discovery on general causation by asserting they should have been produced pursuant to section B.6.b of the First Case Management Order. Section B.6.b required the production of "all non-privileged documents concerning air emissions or impacts to air quality from sources or facilities other than the Jefferson Parish Landfill."[50] Defendants assert the responses should have been produced under this section of the First Case Management Order because the responses may shed light on whether "other sources" of odor contributed to the harm Plaintiffs' allegedly suffered. In support of this argument, Defendants point to *Hamilton v. 3d Idapro Solutions* from the Western District of Wisconsin in which some responses to similar questionnaires indicated several odor sources contributed to the harms the plaintiffs in that case suffered.[51]

After considering the intentions of the parties as consistently expressed in their communications with the Court, the Court finds Defendants' arguments are not

---

[47] *Id.* Plaintiffs appear to abandon any claim that the questionnaire responses are protected by the work-product doctrine.

[48] *Id.*

[49] R. Doc. 102.

[50] R. Doc. 82, at 6. The substance of this provision is identical in the Second Case Management Order. R. Doc. 106, at 5.

[51] *Hamilton v. 3d Idapro Solutions*, LLC, No. 18-cv-00054 (W.D. Wis. Aug. 1, 2019).

8

persuasive.[52] Section B.6.b of the First Case Management order was intended to require the production of information from third parties relating to their knowledge of "emissions or impacts to air quality" from the Jefferson Parish Landfill. Section B.6.b was not intended to require Plaintiffs to produce documents received from Plaintiffs or any putative class members themselves.

This is clear when one considers that the questionnaire responses at issue in the current motion to compel do not relate to general causation as defined in the Case Management Order. As already stated, the questionnaires asked Jefferson Parish residents to describe "any odors from the Jefferson Parish Landfill at [their] home" and asked how those odors "affect[ed their] ability to use and/or enjoy [their] home."[53] The responses to these questions deal with the experiences of each respondent and the particular harms each respondent may have suffered. The responses do not address the general causation inquiry as defined in the Case Management Order—whether odors and gases were being emitted by the Jefferson Parish Landfill and whether any such odors and gases were capable of producing the injuries claimed. The questionnaire responses address only the specific causation inquiry in this case—*did* the emissions from the Jefferson Parish Landfill cause the injuries individual Plaintiffs or putative class members allegedly suffered.

Moreover, the *Hamilton* case is inapplicable. The order in *Hamilton* relied on by Defendants is an order denying class certification.[54] The plaintiffs in *Hamilton*, like

---

[52] Defendants' counsel did not reveal when or how they learned of these questionnaires. Because Defendants' counsel claims, without support, that the questionnaires were sent out starting in 2018, it may well be that Defendants' counsel was aware of them during the later part of 2019 when the parties were discussing the limits of discovery with the Court. In any event, Defendants' counsel did not mention them at a status conference or reference them in the proposed case management order, and it is unclear whether they knew about them at that time.

[53] R. Doc. 96-3.

[54] R. Doc. 96-5.

Plaintiffs in the instant matter, complained of noxious odors emanating from a food processing plant.[55] In denying the plaintiffs' motion to certify a class, the court in *Hamilton* found that certain responses to surveys of residents who lived near the defendants' plant indicated the noxious odors may stem from several sources, not just the defendants' food processing facility.[56] In particular, the court noted the survey responses listed a wide variety of odors not matching the description of the odor coming from the defendants' plant.[57] *Hamilton* in no way, however, supports Defendants' incorrect argument that the questionnaire responses in this case address issues of general causation. As already stated, the issue of whether a particular respondent experienced odors from the Jefferson Parish Landfill pertains to specific, not general, causation.

Accordingly, the Court finds Plaintiffs are not required to produce the questionnaire responses, at least not at this time.[58] Discovery issues pertaining to specific causation, including the production of the questionnaire responses, will be handled at a later point in the proceedings. Pursuant to the Second Case Management Order, "[o]n March 8, 2021, the Parties shall submit a joint letter concerning a proposed case management schedule to resolve all remaining issues in the respective cases."[59] The Court will discuss remaining discovery issues at the March 15, 2021, status conference.[60]

In the December 11, 2019, Order, the Court ordered the parties not to propound additional discovery between that date and the 2021 status conference without leave of

---

[55] *Id.* at 2.
[56] *Id.* at 5.
[57] *Id.*
[58] Plaintiffs also argue the motion to compel should be denied because the questionnaire responses are protected by attorney-client privilege. The Court makes no finding regarding privilege at this point because discovery has been limited to general causation (whether privileged or not) and the questionnaire responses do not relate to general causation.
[59] R. Doc. 106, at 10.
[60] *Id.*

Court.[61] Defendants did not request leave of court to propound additional discovery on specific causation, even though such leave would be required for the request for the production of the questionnaire responses at issue. Under the Court's Order of December 12, 2019, at this point, motions to compel may only be filed with respect Plaintiffs' data sheets and medical authorizations.[62]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to compel is **DENIED**.[63]

**New Orleans, Louisiana, this 28th day of April, 2020.**

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[61] R. Doc. 88.
[62] R. Doc. 89.
[63] R. Doc. 96.