UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK,<br>     Plaintiff | CIVIL ACTION<br><br>NO. 18-7889<br>c/w 18-8071,<br>18-8218, 18-9312 |
| VERSUS | |
| WASTE CONNECTIONS BAYOU, INC., ET AL.,<br>     Defendants | SECTION: "E" (5) |
| *Related Case:* | CIVIL ACTION |
| FREDERICK ADDISON, ET AL.,<br>     Plaintiffs | NO. 19-11133, c/w 19-14512 |
| VERSUS | SECTION: "E" (5) |
| LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,<br>     Defendants | JUDGE: Morgan<br>MAGISTRATE JUDGE: North |
| *Applies to: Both Cases* | |

## SIXTH CASE MANAGEMENT ORDER

<div style="float:right; border:1px solid blue;">Deleted: FIFTH</div>

     Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, and after consultation with the counsel for Parties,[1] the Court enters this Sixth Case Management Order in each of the captioned cases. Current work limitations and travel restrictions due to the COVID-19 pandemic

<div style="float:right; border:1px solid blue;">Deleted: Fifth</div>

have necessitated amending certain deadlines set forth in this Court's First Case Management Order dated November 5, 2019 (ECF Nos. 82 [No. 18-7889] and 80 [No. 19-11133]), Second Case Management Order dated April 24, 2020 (ECF No. 106), the Third Case Management Order dated

---

[1] The Parties herein are all of the *Addison* Plaintiffs, Elias Jorge Ictech-Bendeck, Savannah Thompson, Larry Bernard, Sr  and Mona Bernard, Nicole M  Landry-Boudreaux, Waste Connections Bayou, Inc , Waste Connections US, Inc , Louisiana Regional Landfill Company, Aptim Corp , and the Parish of Jefferson

1

the July 20, 2020 (ECF No. 120), the Fourth Case Management Order dated November 2, 2020 (ECF No. 116) [No. 19-11133], the Order giving the protocols for Electronically Stored Information dated December 19, 2019 (ECF Nos. 90 [18-7889] and 86 [19-11133]) ("ESI Protocol"), the Fifth Case Management Order dated January 12, 2021 (ECF No. 122 [19-11133]), and the Orders governing Plaintiff Fact Sheets dated December 12, 2019 (ECF Nos. 89 [No. 18-7889] and 85 [No. 19-11133]) and January 30, 2020 (ECF Nos. 93 [No. 18-7889] and 90 [19-11133]). Accordingly, the provisions of the First Case Management Order, the Second Case Management Order, the Third Case Management Order, the Fourth Case Management Order, the Fifth Case Management Order, the ESI Protocol, the December 12, 2019 Order, and the January 30, 2020 Order, still govern except as amended below.

1.      The Court and the Parties have determined that resolution of the issue of General Causation may help narrow the focus of the case and the issues at stake. Simply stated, the issue of "General Causation" is the determination of whether odors and gases were being emitted by the Jefferson Parish Landfill during the relevant time period and whether any such odors and gases were capable of producing the injuries claimed by any one more of the Plaintiffs in this case. Plaintiffs represent that they are not asserting claims for physical property damage, such as corroded gutters, peeling paint, and damage to automobiles as a result of gases that were emitted by the Jefferson Parish Landfill. However, Plaintiffs' rely on the expert report prepared by Dr. Susan Schiffman, dated January 29, 2021, to assert that odors emitted from the Jefferson Parish Landfill can permeate fabrics and textiles within Plaintiffs' homes, thereby causing other odor-related damage to such property.

2

**Deleted:** In general, this Fifth Case Management Order extends expert deadlines as set forth in Section E below , but does not extend the deadline for expert depositions regarding general causation

**Commented [MRB1]:** As set forth in this Court's March 8 Minute Entry, Plaintiffs' counsel had confirmed that Plaintiffs "were not seeking 'physical property damages'" and the Court directed the parties to submit a 6th CMO "clarifying that Plaintiffs are not seeking physical property damages and, as a result, did not provide expert reports on this topic in advance of the Daubert hearing on general causation." However, Plaintiffs now seek to potentially recover for physical property damage as it relates to odors that Plaintiffs allege may have permeated fabrics and textiles within Plaintiffs' homes.
As part of the general causation process, the parties and the Court set up a process for the Court to make a determination based largely on expert opinions as to whether the Landfill emitted odors and gases in such concentrations that could cause the types of damages claimed by Plaintiffs. The general causation question is not a question that can be answered by a lay person, which is why the parties set forth the categories of information in the CMO that required expert opinion. Physical property damages are included in that list of topics that requires expert opinion in advance of the Daubert hearing on general causation.  See section E.1 e.  While the Court has carved out property diminution from that list, which Defendants object to, any type of physical property damages, whether from gases or odors, and whether outdoor or indoor, is the type of property damage that, like section E.1 e states, is required to be proved by expert evidence for purposes of general causation.
Thus Defendants' proposed language makes clear that if Plaintiffs seek to recover for any physical property damages, they were required to submit expert evidence on this type of physical property damage in advance of the Daubert hearing on general causation in accordance with the CMO.

**Commented [RE2]:** Plaintiffs' comment.  There are two issues here.  One is the identification of the issues claimed by the Plaintiffs.  Plaintiffs are not claiming physical damages to property like corroded gutters that result from chemical processes like the gases turning into acid when mixed with water. At the beginning of this process, and even now, such kinds of damages are certainly possible; but Plaintiffs have chosen not to employ experts whose opinions would be necessary to prove them, and are not asserting those kinds of claims.  Plaintiffs are claiming odor related damages to property. As an example, Dr. Schiffman has noted in her expert report that textiles and fabrics absorb odors (which leads to her opinion regarding higher concentration of odors indoors).  The contents of Dr. Schiffman's report cannot be a surprise to Defendants; the report was served on January 29.  As discussed with the court at length on March 8, Plaintiffs also contend tha ... [1]

Accordingly, this Case Management Order prioritizes discovery relating to General Causation, and provides for additional time for the Parties to agree upon a schedule and sequence to complete discovery on remaining issues.

The discovery obligations set forth in the Case Management Orders or other orders of the Court are subject to the supplementation requirements of Federal Rule of Civil Procedure 26(e).

**A. Site Inspection Protocol [completed]**

**B. Discovery of General Causation Information**

1.     As set forth in the prior Case Management Orders, and for purposes of this Fifth Case Management Order, "General Causation Information" refers to information as to: (i) what was disposed at the Landfill; (ii) what is emitted (and was emitted during the relevant time period) from the Landfill (in terms of both chemical constituents and odor); (iii) in what concentrations each parameter emitted by the Landfill is experienced at the locations within the area at which Plaintiffs reside in both the *Addison* and *Ictech-Bendeck* consolidated cases (the "Exposed Area"); (iv) the dates and times when such exposures occurred and the duration of such exposures throughout the Exposed Area, which may be estimated based on air dispersion modeling, but without the necessity to show that any such data is specific as to any particular plaintiff; (v) the alleged physical injury and property damages that such exposure at such concentration for such durations can cause to people and property so exposed; and (vi) alleged physical injury and property damages potentially caused by odors and chemicals emitted by other sources located in or around the Exposed Area.

***Defendant's Production of Documents Containing General Causation Information***

2.     Pursuant to the First Case Management Order, on or before October 25, 2019, Defendants were required to produce or allow for inspection by Plaintiffs the following categories

3

of documents that are non-privileged, in Defendants' possession, custody or control, related to the Jefferson Parish Landfill, dated January 1, 2015, through the most current period for which such documents are available, and in either hard copy or loose electronic file format (i.e., not emails). Documents were required to be produced in accordance with the ESI Protocol. The categories are as follows:

a.   Indoor and outdoor air monitoring data related to the Jefferson Parish Landfill;

b.   Other sources of odors and emissions located in or around the Exposed Area that have potentially impacted plaintiffs;[2]

c.   Reports submitted to government agencies regarding the Jefferson Parish Landfill;

d.   Health and environmental impact assessments and related documents regarding the Jefferson Parish Landfill, including any reports and information concerning the impact or potential impact of landfill gases or other releases from the Landfill on Landfill employees, contactors or other persons who work on or enter the Landfill site;

e.   Scientific and technical reports related to emissions or odors from the Jefferson Parish Landfill, including laboratory backup;[3]

f.   Waste disposal records of the Jefferson Parish Landfill. This includes without limitation Landfill logs, shipping manifests and other contemporaneous documentation as to the type, characteristics and volumes of waste delivered to and disposed at the Landfill since January 1, 2015;

g.   Data, studies and reports (including laboratory backup) pertaining to the chemical composition and characteristics of gases and odors emitted by the Jefferson Parish Landfill. This includes without limitation any data collected or provided to potential third party puchasers of Landfill gas, at any time. It also includes all surface emissions monitoring data and reports

[2] Excludes work performed by consulting experts protected from discovery under Federal Rule of Civil Procedure 26(b)(4)(D)
[3] Excludes work performed by consulting experts protected from discovery under Federal Rule of Civil Procedure 26(b)(4)(D)

concerning gases and odors at or from the Landfill, and all laboratory backup pertaining to these reports and studies;[4]

h.    Documents showing the nature, composition and constituents, including concentrations and laboratory backup, of gases fed into the flare system, and operating specifications and parameters of the flare;

i.    Documents showing the nature, composition and constituents, including concentrations and laboratory backup, of gases emitted by the flare system;

j.    Photographs of the Landfill site taken through use of FLIR camera or similar instruments, and

k.    Data, studies and reports (including laboratory backup) pertaining to the chemical composition and characteristics of Landfill leachate and emissions of chemicals or odors caused by Landfill leachate. This includes without limitation any chemical analyses of the leachate conducted by or for any publicly owned treatment plants and any actual or potential purchasers of leachate within the relevant time period.

3.    On or before June 18, 2020, Defendants shall produce emails relating to the foregoing categories and the following categories of documents in the possession, custody, or control of the Defendants, and dated January 1, 2015:

a.    Non-privileged internal communications within, between or among the defendants and any of their employees, principals or elected officials pertaining to General Causation;

b.    Non-privileged communications between any of the defendants and any regulatory authority pertaining to General Causation;

c.    Non-privileged communications between any defendant and any third party pertaining to General Causation; and

d.    Documents underlying or relied on by any Jefferson Parish council member or representative in connection with any public statements pertaining to General Causation.

---

[4] Excludes work performed by consulting experts protected from discovery under Federal Rule of Civil Procedure 26(b)(4)(D)

4.      On or before August 18, 2020, Defendants shall produce a privilege log in accordance with Fed. R. Civ. P. 26(b)(5)(A)(2). The privilege log need not identify communications occurring on or after July 25, 2018 (the date the first lawsuit involving alleged odors from the Jefferson Parish Landfill was filed) that are (i) with, between or among outside litigation counsel, or (ii) with, between or among in-house counsel (including paralegals and legal assistants) or non-litigation counsel related to the litigation.

***Plaintiffs' Production of Documents Containing General Causation Information.***

5.      Plaintiffs shall produce to Defendants the following documents that are within the possession, custody, or control of Plaintiffs:

a.  all non-privileged data, reports, and documents concerning all sampling or monitoring previously conducted by or on behalf of any Plaintiff, or that is in the custody or control of any Plaintiff at (i) each of their properties that such Plaintiff claims have been damaged; (ii) any other location that forms the basis of Plaintiffs' claims that they are exposed to odor(s) or chemical(s) allegedly emanating from the Jefferson Parish Landfill; and (iii) any location Jefferson Parish other than the Jefferson Parish Landfill. Pursuant to the Court's October 8, 2019 order (Dkt. 73), information and documents referenced in this subsection B.6.a do not include sampling or monitoring conducted by Plaintiffs' non-testifying experts.

b.  all non-privileged documents concerning air emissions or impacts to air quality from sources or facilities other than the Jefferson Parish Landfill;

c.  all non-privileged documents (including all photographs or tangible items) sent to, or obtained from, any governmental entity— including Jefferson Parish, the Jefferson Parish Council, the Louisiana Departments of Health or Environmental Quality, or the U.S. Environmental Protection Agency—regarding the alleged air impacts or air emissions in Jefferson Parish; and

6

    d.  all non-privileged documents concerning alleged air impacts or air emissions from the Jefferson Parish Landfill sent to, or obtained from, any of the Defendants.

6.      Pursuant to the First Case Management Order, documents in the foregoing categories that are in the possession of Plaintiffs' counsel were required to be produced on or before December 5, 2019, and in compliance with the ESI Protocol. Documents that need to be gathered from the individual Plaintiffs will be produced on or before June 18, 2020, and will be produced in accordance with the ESI Protocol.

7.      For any document or portion of any document generated prior to the initiation of this litigation as to which a privilege is asserted, Plaintiffs shall produce a privilege log in accordance with Fed. R. Civ. P. 26(b)(5)(A)(2) on or before August 18, 2020.

***Discovery from Non-Parties Regarding General Causation***

8.      Copies of documents produced to Defendants by third parties in response to a subpoena *duces tecum*, and related communications with such third parties except to the extent the communication relates only to the timing of a response, will be provided to the Plaintiffs within 14 days after receipt.

9.      Copies of documents produced to Plaintiffs by third parties in response to a subpoena *duces tecum*, and related communications with such third parties except to the extent the communication relates only to the timing of a response, will be provided to the Defendants within 14 days after receipt.

10.     By seeking documents produced in responses to subpoenas duces tecum issued by another party, and by agreeing to provide copied of documents so obtained with other parties who did not issue the subpoena, the parties have not waived their right to seek a protective order from

the Court related to subpoenas *duces tecum* responses pursuant to Fed. R. Civ. P. 26(c) when circumstances so require.

**C.**     **Plaintiff Information Data Sheets**

1.     The Parties and the Court agreed to a format and protocol for completing Plaintiff Fact Sheets, which are set forth in the Court's December 12, 2019 Order (ECF Nos. 89 [18-7889] and 85 [No. 19-11133]) and January 30, 2020 Order (ECF Nos. 93 [No. 18-7889] and 90 [19-11133]). The provisions of those two Orders still govern, except as amended as follows:

2.  100 or more Plaintiffs from the *Addison* action shall submit their completed data sheets by September 30, 2020, and 100 or more Plaintiffs from the *Addison* action shall submit their completed data sheets by October 31, 2020.

3.     All remaining Plaintiffs from the *Addison* action shall submit their completed forms by **December 15, 2020**.

**D.**     **Fact Witness Depositions regarding General Causation.**

1.     Plaintiffs (collectively) may depose each of the defendants on General Causation issues under Rule 30(b)(6), Defendants may depose each class representative, and each side (i.e., the Plaintiffs collectively and the Defendants collectively) may take up to 7 individual fact witness depositions identified by such party as necessary to establish facts that such party deems essential to the resolution of the issue of General Causation. In the notice of deposition for each witness, the party taking the deposition shall identify with reasonable specificity the topics for which that deponent's testimony will be sought. Each such deposition shall preclude a subsequent deposition of such deponent(s) on topics identified in such deposition notice and/or covered in such deposition. Any disputes with respect to subsequent depositions and whether a topic was identified or covered in the initial deposition must be raised with the Court at least five days prior to the

8

subsequent deposition. A party raising such issue with the Court must provide the deposition notice

and the relevant pages of the deposition at which the topic allegedly was covered. The limitations

on the number of depositions by Plaintiffs allowed pursuant to this paragraph shall apply

collectively between the related actions (*Ictech-Bendeck* and *Addison*) so that Plaintiffs in both

cases will have collectively a single Rule 30(b)(6) deposition of each Defendant and can

collectively take up to 7 additional individual fact witness depositions.

2.  Unless otherwise agreed by counsel, notices of Rule (30)(b)(6) depositions must be

served at least 45 days in advance of the deposition date.  Notices of fact depositions must be

served at least 30 days in advance of the deposition date.  Objections to scope topics must be served

within 14 days after service of the notice.

3.      Fact depositions relating to General Causation shall be completed by December 3,

2020.

**E.      Expert Deadlines**

1.      On or before **January 29, 2021**, Plaintiffs shall produce to Defendants a report

from qualified expert(s) that will:

   a.  Present the air dispersion modeling performed with regard to the
       Jefferson Parish Landfill, along with all assumptions, data inputs
       and data outputs in electronic data format to allow for the
       duplication and reproduction of the Plaintiffs' air dispersion
       modeling results by Defendants' experts, using the air dispersion
       modeling programs used by Plaintiffs' experts, which Plaintiffs
       shall disclose to Defendants;

   b.  Identify the individual chemicals to which Plaintiffs may have been
       exposed as a result of emissions from the Jefferson Parish Landfill,
       the concentrations of the chemicals, when such exposures occurred
       and the duration of such exposure (in such time increments as are
       accurately derived from the modeling and chemical analysis) during
       the period of time for which plaintiffs seek damages;

    c.   Identify the aspects of odor (e.g., odor strength and odor characterization) as a result of emissions from the Jefferson Parish Landfill, the duration of such exposures (in such time increments as are accurately derived from the modeling and chemical analysis) and the period of time for which Plaintiffs seek damages on account of odor;

    d.   List all injuries, illnesses, or conditions that Plaintiffs' experts contend have been scientifically determined to be caused by an alleged exposure to such odor(s) or chemical(s) experienced within the Exposed Area and allegedly emanating from the Jefferson Parish Landfill in the Exposed Area as demonstrated by Plaintiffs' air dispersion modeling;

    e.   Provide expert opinions as to the physical and medical effects, injury and harm, including property damage, that the specified chemicals and odors can cause at the range of concentrations and durations reported or represented throughout the Exposed Area by Plaintiffs' air modeling. Because Plaintiffs are not asserting claims for physical property damage, such as corroded gutters, peeling paint, and damage to automobiles, in this litigation, Plaintiffs are not required to provide expert reports on such physical property damage in advance of the Daubert hearing on general causation. However, to the extent Plaintiffs are asserting other physical property damage claims, such as claims for damage to fabrics and textiles within Plaintiffs' homes, and to the extent that expert testimony is required to prove such claims, Plaintiffs are required to provide expert reports on such physical property damage claims, and shall be limited to such expert opinions as previously provided on or before the January 29, 2021 deadline.

    f.   Provide the data and evidence, if any, other than the air dispersion modeling, supporting the contention that the source of the odor(s) or chemical(s) allegedly causing each injury, illness, or condition alleged by each Plaintiff solely originated from the Jefferson Parish Landfill.

2.     On or before **April 30, 2021**, Defendants shall produce to Plaintiffs any rebuttal reports from any qualified experts setting forth their opinions and stating the factual, scientific, medical, or technical bases for the experts' opinions and all documents and data considered in rendering such opinions.

**Commented [RE3]:** Plaintiffs' comment. To the extent that any change is even necessary to this section, addition of this proviso preserves the argument that expert testimony is not required to prove every issue. The purpose of the Case Management Order is to manage the case, not to decide it.

**Commented [MRB4R3]:** Defendants do not agree to the inclusion of this language "and to the extent that expert testimony is required to prove such claims" for the reasons stated in the comment on page 2.

10

3.      On or before **June 14, 2021**, Plaintiffs shall produce to Defendants any reply reports from their experts setting forth their opinions and stating the scientific or technical basis for the experts' opinions and all documents and data considered in rendering such opinions. For reply expert reports prepared by experts not previously disclosed by Plaintiffs, Defendants have the right to file rebuttal reports to those expert reply reports on or before **July 14, 2021**.

4.      Following the deadline for the Plaintiffs' reply expert reports, all depositions of all experts concerning General Causation shall be taken by the Parties desiring to take any such depositions. All expert depositions concerning General Causation shall be completed by August 13, 2021.[5] As a result of the revised expert report deadlines in this Fifth Case Management Order, and the impact on the time period for which the Parties are able to conduct expert depositions, the Parties agree to begin the process of scheduling expert depositions as early as practicable after an expert is disclosed. In that regard, Plaintiffs agree to coordinate with their respective experts to reserve dates between June 21 and July 16, 2021 for their expert's depositions to be taken. Defendants agree to coordinate with their respective experts to reserve dates between July 19 and August 13, 2021 for their expert's depositions to be taken. The Parties agree to complete the scheduling process/select a date for expert depositions within two (2) weeks of production of each the expert's initial report. The aforementioned does not preclude the Parties from agreeing that expert depositions may be taken on other mutually agreeable dates.

F.      _**Daubert** **Motions and Pre-Trial Exchanges**_

1.      On or before September 3, 2021, the Parties shall file and serve upon each other a list of all witnesses who may or will be called to testify, a list of all exhibits which may or will be

---

[5] This deadline assumes that all prior General Causation deadlines have been met

used, and the designation of those witnesses whose testimony the party expects to present by deposition at the trial on General Causation. The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown.

2.     All *Daubert* motions to exclude expert testimony on General Causation, shall be filed on or before September 3, 2021. Opposition papers shall be filed on or before September 24, 2021. Reply papers shall be filed on or before October 1, 2021.  No further briefing will be allowed without leave of court.

3.   The Parties shall meet and confer and shall discuss revisions, including additions in light of the *Daubert* motions, to the respective witness and exhibits lists and any stipulations or agreements regarding the conduct of the trial.   A joint report respecting such revisions and agreements shall be submitted on or before October 6, 2021.

**G.      *Daubert* Hearing and Trial on General Causation**

1.     A combined hearing on all *Daubert* motions concerning experts on General Causation and trial on General Causation shall commence on October 18, 2021, or another date to be set by the court.

2.     All Parties consent to the Court serving as trier of fact on the issue of General Causation.

**H.     Status Conference Concerning Selecting of Plaintiffs for Bellwether Trials[6]**

1.     On April 1, 2021, the Defendants shall submit a letter regarding their position on bellwether trials to counsel for Plaintiffs and the Court.

---

[6] See ECF No  114, June 24, 2020 Minute Entry, p  3

12

2.      On April 8, 2021, the Plaintiffs shall submit a letter regarding their position on bellwether trials to counsel for Defendants and the Court.

3.      A telephone status conference is scheduled for April 15, 2021, at 10:00 am, or another date and time to be set by the Court, to discuss bellwether trials.[7]

## I.   Discovery on issues other than General Causation.

1.      On July 16, 2021, the Parties shall submit a joint letter concerning a proposed case management schedule to resolve all remaining issues in the respective cases. The letter shall address, among other topics, the proposed procedure for handling claims of diminution in value of immovable property.

> **Commented [MRB5]:** Defendants continue to assert that property diminution must be established in this general causation phase by expert evidence.

2.      A status conference is scheduled for July 23, 2021, at 10:00 am, or another date and time to be set by the Court, to discuss the proposed case management schedule for resolving all remaining issues in the respective cases, including the procedure for handling claims of diminution of value of immovable property.

> **Commented [MRB6]:** Defendants continue to assert that property diminution must be established in this general causation phase by expert evidence.

**SO ORDERED.**

New Orleans, Louisiana, this _____ day of March, 2021.

> **Deleted:** January

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[7] Should the Court set another date and time for this status conference, Defendants' letter shall be due 10 days prior to the status conference and Plaintiffs' letter shall be due 7 days prior

| Page 2: [1] Commented [RE2] | Rowe, Eric | 3/16/2021 7:24:00 PM |
|---|---|---|

Plaintiffs' comment.  There are two issues here.  One is the identification of the issues claimed by the Plaintiffs. Plaintiffs are not claiming physical damages to property like corroded gutters that result from chemical processes like the gases turning into acid when mixed with water. At the beginning of this process, and even now, such kinds of damages are certainly possible; but Plaintiffs have chosen not to employ experts whose opinions would be necessary to prove them, and are not asserting those kinds of claims.  Plaintiffs are claiming odor related damages to property. As an example, Dr. Schiffman has noted in her expert report that textiles and fabrics absorb odors (which leads to her opinion regarding higher concentration of odors indoors).  The contents of Dr. Schiffman's report cannot be a surprise to Defendants; the report was served on January 29.  As discussed with the court at length on March 8, Plaintiffs also contend that the emission from the landfill can lead to diminution in property values.

Whether expert testimony is actually required to prove a certain claim presents a different issue. Plaintiffs do not agree with Defendants' insistence that the CMO must define the need for expert testimony in advance (or in hindsight given that the Plaintiffs expert reports have already been provided).  Expert testimony is only required when a particular issue is beyond the understanding of the ordinary lay person.  The CMO should do nothing more than to provide that, if expert testimony is required on a particular topic, then the expert testimony is to be provided according to the process dictated by the CMO.