# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-7889** c/w 18-8071, 18-8218, 18-9312 |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** Defendants | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-11133** c/w 19-14512 |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** Defendants | **SECTION: "E"(5)** |

*Applies to: All Cases*

## ORDER AND REASONS

Before the Court is Defendants' motion to bifurcate the first *Addison* trial.[1]

Plaintiffs oppose this motion.[2] Defendants filed a supplemental memorandum in

support.[3]

---

[1] R. Doc. 303 (18-7889); R. Doc. 338 (19-11133). Defendants filed this motion in both the *Ictech-Bendeck* and *Addison* cases. *See id.*
[2] R. Doc. 307 (18-7889); R. Doc. 342 (19-11133).
[3] R. Doc. 344.

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. The Court held a trial on general causation, which took place on January 31, February 1-4, and February 22-25, 2022.[4] On November 29, 2022, this Court issued its Findings of Fact and Conclusions of Law as to general causation, determining odors and gases were emitted by the Landfill;[5] the emissions of gases and odors from the Landfill occurred during the relevant time period;[6] and exposure to the odors and gases emitted by the Landfill at a level of five ppb for thirty minutes was capable of producing the injuries claimed by any one or more of the plaintiffs.[7]

Having found for Plaintiffs at the general causation stage, the Court proposed a test trial be conducted with a select number of *Addison* plaintiffs to provide the parties with the necessary information to advance toward settlement (hereinafter "the first *Addison* trial"). The Court foresees a test trial of approximately eight plaintiffs from different geographic locations.[8] The findings of the jury will be binding on those plaintiffs. Findings of the jury in the first *Addison* trial will not automatically be extrapolated to the claims of all *Addison* Plaintiffs or to class Plaintiffs in the *Ictech-Bendeck* case. The Court set the first *Addison* trial to begin on September 5, 2023.[9]

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims,

---

[4] No. 18-7889, R. Docs. 243-247, 256-259 (Minute Entries); No. 19-11133, R. Docs. 274-278, 286-289 (same).
[5] *Id.* at p. 5.
[6] *Id.* at p. 26.
[7] *Id.* at p. 27.
[8] R. Doc. 340.
[9] *Id.*

crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.[10]

Accordingly, "Rule 42(b) expresses three separate justifications for bifurcation. A court may separate issues if (1) it would avoid prejudice; (2) it would be convenient to do so; *or* (3) it would be economical or would expedite the litigation to do so."[11] "A motion to bifurcate is a matter within the sole discretion of the trial court, and the Fifth Circuit will not reverse the court's decision absent an abuse of that discretion."[12]

## <u>ANALYSIS</u>

In Defendants' motion to bifurcate, Defendants ask the Court to try only specific causation, allocation of causation between Defendants and third parties, and damages at the first *Addison* trial, reserving liability and allocation of fault among Defendants for a later trial—a case management strategy referred to as reverse bifurcation.[13] Defendants argue reverse bifurcation is appropriate because it "would facilitate settlement, promote judicial efficiency, limit juror confusion, and expedite adjudication of Plaintiffs' claims," and "is necessary to prevent significant prejudice to Defendants."[14]   In opposition, the *Addison* Plaintiffs argue "[o]nly delay, not judicial economy, is served by such a procedure."[15] Joining in the *Addison* Plaintiffs' opposition, the *Ictech-Bendeck* Plaintiffs argue "Defendants' proposal is the antithesis of judicial efficiency and economy."[16]

Rule 42(b) provides that "a court may separate issues if (1) it would avoid prejudice; (2) it would be convenient to do so; *or* (3) it would be economical or would expedite the litigation to do so."[17] "However, 'separation of issues is not the usual course

---

[10] Fed. R. Civ. P 42(b) (2018).
[11] *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992) (emphasis in original).
[12] *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 662 (W.D. Tex. 2013).
[13] R. Doc. 338-1 at p. ii.
[14] *Id.*
[15] R. Doc. 342 at p. 2.
[16] R. Doc. 307 (18-7889) at p. 2.
[17] *Laitram*, 791 F. Supp. at 115.

that should be followed,' and 'the burden is on the party seeking separate trials to prove that separation is necessary.'"[18] "[T]he Fifth Circuit has correctly cautioned district courts to bear in mind before ordering separate trials in the same case that the 'issue to be tried separately must be so distinct and separable from the others that a trial of it alone may be had without injustice."[19] "That is, even if bifurcation might somehow promote judicial economy, courts should not order separate trials when 'bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.'"[20] "Essentially, then, courts must balance the equities in ruling on a motion to bifurcate."[21] Accordingly, a court may bifurcate if the moving party demonstrates (1) bifurcation would be convenient, or would be economical or expeditious, and (2) the issues are so distinct and separable from the others that bifurcation would not cause prejudice.[22]

Defendants ask the Court to use the reverse bifurcation method—the somewhat less common version of bifurcation—in the first *Addison* trial.[23] The Fifth Circuit has explained the concept of reverse bifurcation:

> "Reverse bifurcation" originated in the Third Circuit as a means of processing that circuit's backlog of asbestos-related cases. As its name suggests, it is a modified bifurcated trial format whereby plaintiffs in a first trial prove only that exposure to some asbestos product has caused their damages. Thereafter, either the cases are settled or remaining issues are resolved in second or third trials.[24]

---

[18] *Id.*

[19] *Laitram*, 791 F. Supp. at 115.

[20] *Id.*

[21] *Id.*

[22] *See id.*

[23] *Cocina Cultura LLC v. State*, 2021 WL 3836840 (D. Or. Aug. 27, 2021) ("Addressing the damages stage ahead of the liability stage, or 'reverse bifurcation' is less common. *See* Wright & Miller, § 2390 Separate Trials—Separation of Liability From Damages, 9A Fed. Prac. & Proc. Civ. § 2390 (3d ed.) (noting reverse bifurcation is 'most often' used to 'deal with the backlog and evidentiary complexity' of asbestos cases but is also used in other contexts); *STC UNM v. Intel Corp.*, No. 10-cv-1077-RB/WDS, 2011 WL 7562686, at *2 (D.N.M. Dec. 22, 2011) (noting some courts refer to reverse bifurcation as 'extraordinary' and 'drastic')).

[24] *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 473 n.8 (5th Cir. 1986).

4

Put another way, reverse bifurcation is the practice of determining causation and damages via a first trial and determining liability in a second, subsequent trial.[25]

The Fifth Circuit has not discussed the circumstances under which reverse bifurcation is appropriate. Having considered non-binding precedent and secondary sources, the Court determines Defendants have failed to establish the necessary elements for bifurcation.

## I.    Convenience and Judicial Economy

Defendants are unable to demonstrate reverse bifurcation advances convenience or judicial economy. "Reverse bifurcation of liability and damages is a sub-species of bifurcation most often employed in large, complex product liability cases."[26]  Reverse bifurcation is frequently used "to encourage settlement and shortening of the trial."[27] "This procedure is most useful where the parties 'have excellent information about the likelihood of success on the issue of liability and the real sticking points are the individual issues of causation and damages."[28] To the contrary, reverse bifurcation is less useful where liability is hotly contested.[29]

When the issues of fault and liability are hotly contested, reverse bifurcation does not advance judicial efficiency. The Court finds the following excerpt from *Reverse Bifurcation*, a University of Cincinnati Law Review article authored by Drury Stevenson, Associate Professor of Law at South Texas College of Law, illustrative of this point:

> Some cases present great uncertainty for the parties on questions of liability. One of the main advantages of reverse bifurcation is that it can usually eliminate uncertainty for the parties by resolving the biggest "unknown" most parties face as they approach litigation: the scope of damages. Uncertainty about the potential size of a verdict interferes with settlements because the parties lack mutual information that would foster

---

[25] *See Johnstone v. American Oil Co.*, 7 F.3d 1217, 1218 (5th Cir. 1993).
[26] *STC UNM v. Intel Corp.*, No. 10-cv-1077 RB/WDS, 2011 WL 7562686, at *1 (D.N.M. Dec. 22, 2011).
[27] *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 25 (E.D. N.Y. 2001).
[28] *Intel Corp.*, No. 10-cv-1077 RB/WDS, 2011 WL 7562686, at *1 (quoting *Simon*, 200 F.R.D at 32).
[29] *Lindland v. TuSimple, Inc.*, No. 21-CV-417 JLS (MDD), 2022 WL 1017891, at *3 (S.D. Ca. Apr. 5, 2022).

> an agreement, at least in Coasian terms. When the greatest uncertainty lies in the area of liability, however, the situation is different. . . . In the case where the liability questions present the most room for speculation, . . . reverse bifurcation could simply delay consideration of the questions that keep the parties apart (that is, the real obstacles to quick settlement). Under such circumstances, the parties gain little useful information—in terms of producing agreements—from determining the scope of damages first.[30]

For example, in *STC UNM v. Intel Corp.*, the United States District Court for the District of New Mexico denied the defendant's motion for reverse bifurcation, holding the defendant's arguments that reverse bifurcation would save time and money because a damages calculation would facilitate early settlement were too speculative to support the use of the reverse bifurcation mechanism.[31] The court noted that liability was still hotly-contested and there was nothing suggesting the defendant had any intention of abandoning its defenses as to liability.[32] Therefore, the *Intel Corp.* court stated it found "no significant reason why reverse bifurcation would facilitate early settlement in this case, and accordingly [could not] find that reverse bifurcation would serve the interests of economy or efficiency."[33]

In the instant matter, it is evident to the Court that the fault of each Defendant and of third parties is still hotly contested amongst the parties. Defendants contested their fault and liability at each stage of the litigation prior to the general causation trial. Like in *Intel Corp.*, the Court is not persuaded a test trial solely on specific causation, allocation of causation between Defendants and third parties, and damages would move the parties closer to settlement. Instead, the Court hopes with the benefit of a jury verdict on all aspects of the case, the parties may move toward settlement. Accordingly, Defendants

---

[30] Drury Stevenson, *Reverse Bifurcation*, 75 U. Cin. L. Rev. 213, 256-58 (2006).
[31] *Intel Corp.*, No. 10-cv-1077 RB/WDS, 2011 WL 7562686, at *2.
[32] *Id.*
[33] *Id.*

have failed to demonstrate reverse bifurcation would advance convenience or judicial economy.

## II.    Collateral Estoppel

Defendants express concern that Plaintiffs may argue the results of the first *Addison* trial should have a preclusive effect on subsequent *Ictech-Bendeck* or *Addison* trials under the doctrine of nonmutual offensive collateral estoppel.[34] Defendants state "[t]he Fifth Circuit has left open the possibility of the collateral estoppel effect of bellwether trials in mass tort cases, and Plaintiffs can be expected to argue for it."[35]

However, Defendants' concerns—in their own words—are merely speculation at this stage in the litigation.[36] Courts are not permitted to rule on issues not properly before the Court, as such would be an improper advisory opinion.[37] Plaintiffs have not yet sought the application of collateral estoppel based on the findings of the first *Addison* trial. Moreover, even if Plaintiffs advanced such an argument at this time, the Court could not make a determination whether to apply the doctrine of collateral estoppel now. Whether collateral estoppel is appropriately applied depends on the application of the *Parklane* factors such as judicial economy, fairness, and equity.[38] The conclusions reached based on these considerations depend on which party is asserting collateral estoppel, which issues the party seeks to bar via the doctrine and on what basis, and the specific context

---

[34] R. Doc. 338-1 at pp. 9-11.
[35] *Id.* at p. 10.
[36] *See id.*
[37] U.S. CONST. art. III. *See Mid-Continent Cas. Co. v. Petrol. Solutions, Inc.*, 2016 WL 5539895, at *35 (S.D. Tex. Sept. 29, 2016) (reversed on other grounds) (finding the issue of collateral estoppel premature where it had not been fully briefed and the record was not fully developed); *Alexsam, Inc. v. Barnes & Noble, Inc.*, No. 13-cv-3, 2014 WL 12601030, at *2 (E.D. Tex. Mar. 6, 2014) (reversed on other grounds); *Curry v. Shaw Sch. Dist.*, 2007 WL 670962, at *2 (N.D. Miss. Feb. 28, 2007) (finding the consideration of collateral estoppel was premature at an early stage of litigation where evidence had not been collected and hearings were not conducted); *Chambers v. Stalder*, 995 F.2d 223, 223 (5th Cir. 1993) (finding the district court's bar of collateral estoppel to be premature where there was not yet a final judgment to consider).
[38] *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

in which the doctrine is being raised.[39] The Court is not informed enough to make a determination regarding the preclusive effects of the first *Addison* trial at this stage in the litigation. The Court refrains from offering what would be an advisory opinion as to whether collateral estoppel may be applied in favor of any party at some time in the future.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion to bifurcate the trial is **DENIED**.[40] The parties are reminded that their joint proposed case management order for the first *Addison* trial is due on or before **Tuesday, March 7, 2023**.[41]

**New Orleans, Louisiana, this 28th day of February, 2023.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[39] Depending on the outcome of the first *Addison* trial, it may turn out to be Defendants who later seek to obtain the benefits of collateral estoppel based on a positive outcome in the first *Addison* trial.

[40] R. Doc. 338.

[41] In this Court's February 7, 2023 Minute Entry, the Court ordered the parties to email their joint case management order to the Court within seven days of this Court's ruling on the instant motion to bifurcate the trial. R. Doc. 340.