**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**   Plaintiff | **CIVIL ACTION**

**NO. 18-7889**
**c/w 18-8071,**
**18-8218, 18-9312** |
| **VERSUS** | |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,**   **Defendants** | **SECTION: "E" (5)** |
| | **JUDGE: Morgan**
**MAGISTRATE JUDGE: North** |

**MEMORANDUM IN SUPPORT OF WASTE CONNECTIONS DEFENDANTS'**
**MOTION FOR RECONSIDERATION AND CLARIFICATION**

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Procedural Background ................................................................................................ 1

Standard of Review ..................................................................................................... 4

Argument ..................................................................................................................... 5

   I. The Court overlooked the factual and legal bases demonstrating privilege and work product
      protections for the subject documents .................................................................. 5

    A. The Court overlooked the predominant purpose of 38 communications rendering or
       soliciting legal advice. .................................................................................... 5

      1. Communication for purpose of providing legal advice on correspondence with
         Jefferson Parish Council ............................................................................. 6

      2. Legal strategy concerning statements to press regarding imminent or active litigation .. 8

      3. Other communications rendering or soliciting legal advice .......................... 14

    B. Counsel's legal advice to Board of Directors are protected communications. ................ 16

    C. The Waste Connections Defendants properly withheld communications with non-
       testifying, consulting experts and concerning regulatory compliance. ........................... 19

      1. Communications with consulting experts .................................................... 19

      2. Communications concerning regulatory compliance ..................................... 21

   II. Disclosure of this protected information would cause manifest injustice ........................... 22

Conclusion ................................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Memorial Hermann,*
    973 F.3d 343 (5th Cir. 2020) .................................................................................. 21

*Advance Technology Incubator, Inc. v. Sharp Corp.,*
    No. 07-cv-468, 2009 WL 4432569 (E.D. Tex. July 29, 2009) ............................... 21

*Alexander v. F.B.I.,*
    198 F.R.D. 306 (D.D.C. 2000) ................................................................................ 9

*Alomari v. Ohio Department of Public Safety,*
    626 F. App'x 558 (6th Cir. 2015) ........................................................................... 13

*Bender Square Partners v. Factory Mutual Insurance Co.,*
    No. 10-cv-4295, 2012 WL 1952265 (S.D. Tex. May 30, 2012) ............................. 23

*Carey-Canada, Inc. v. California Union Insurance Co.,*
    118 F.R.D. 242 (D.D.C. 1986) ................................................................................ 18

*Castrillo v. Am. Home Mortg. Servicing, Inc.,*
    No. 09-cv-4369, 2010 WL 1424398 (E.D. La. Apr. 5, 2010) .................................. 4

*Commerce & Indus. Ins. Co. v. Grinnell Corp.,*
    No. 97-cv-0775, 1999 WL 731410 (E.D. La. Sept. 20, 1999) ................................ 20

*Crews v. Nabrico,*
    Nos. 99-cv-3254, 99-cv-3332, 2001 WL 46878 (E.D. La. Jan. 18, 2001) ........................ 20, 21

*Ely v. Board of Trs. of Pace Indus. Union-Management Pension Fund,*
    No. 18-cv-315, 2020 WL 6876197 (D. Idaho Nov. 23, 2020) ................................ 18

*Guiffre v. Maxwell,*
    No. 15-cv-7433, 2016 WL 1756918 (S.D.N.Y. May 2, 2016) ................................ 9

*Hickman v. Taylor,*
    329 U.S. 495 (1947) ............................................................................................... 15

*Hoover v. United States Department of the Interior,*
    611 F.2d 1132 (5th Cir. 1980) ............................................................................ 19, 20

*In re Burlington N., Inc.,*
    822 F.2d 518 (5th Cir. 1987) ............................................................................... 5, 23

*In re Cnty. of Erie*,
   473 F.3d 413 (2d Cir. 2007) ............................................................................ 6

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, & Products Liab. Litig.*,
   MDL No. 2738, 2021 WL 3144945 (D.N.J. July 26, 2021) ...................................... 9

*In re Santa Fe International Corp.*,
   272 F.3d 705 (5th Cir. 2001) .................................................................... 13, 15

*In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Products Liab. Litig.*,
   MDL No. 2775, 2019 WL 2330863 (D. Md. May 31, 2019) ............................... 17, 18

*In re Spalding Sports Worldwide, Inc.*,
   203 F. 3d 800 (Fed. Cir. 2000) ....................................................................... 23

*In re Vioxx Products Liability Litigation*,
   501 F. Supp. 2d 789 (E.D. La. 2007) ............................................................... 6, 8

*King v. Univ. Healthcare Sys., L.C.*,
   645 F.3d 713 (5th Cir. 2011) ....................................................................... 6, 17

*Lizana v. State Farm Fire & Casualty Co.*,
   No. 08-cv-501, 2010 WL 323369 (S.D. Miss. Jan. 20, 2010) ................................... 21

*McCook Metals L.L.C. v. Alcoa Inc.*,
   192 F.R.D. 242 (N.D. Ill. 2000) ................................................................... 5, 15

*Muller v. Bonefish Grill, LLC*,
   No. 20-cv-1059, 2021 WL 2822374 (E.D. La. July 7, 2021) ............................ 6, 7, 14

*Newport Pacific Inc. v. Cnty. of San Diego*,
   200 F.R.D. 628 (S.D. Cal. 2001) .................................................................... 17

*Padana Assicurazioni-Societa Azioni v. M/V Caribbean Express I*,
   No. 97-cv-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) ..................................... 21

*Parneros v. Barnes & Noble, Inc.*,
   332 F.R.D. 482 (S.D.N.Y. 2019) .................................................................... 13

*PIC Grp., Inc. v. Landcoast Insulation, Inc.*,
   No. 109-cv-662, 2010 WL 1794964 (S.D. Miss. Apr. 29, 2010) ............................ 4, 23

*Ryskamp ex rel. Boulder Growth & Income Fund v. Looney*,
   No. 10-cv-842, 2011 WL 3861437 (D. Colo. Sept. 1, 2011) .................................... 22

*S. Snow Manufacturing Co. v. SnoWizard Holdings, Inc.*,
  921 F. Supp. 2d 548 (E.D. La. 2013) ................................................................ 4

*State v. Gravois*,
  22-428 (La. App. 5 Cir. 2/28/23), So. 3d 1015 ................................................ 3

*Summers v. Louisiana*,
  No. 20-cv-21, 2021 WL 4392309 (M.D. La. Sept. 24, 2021)........................... 18, 25

*Tonti Management Co. v. Soggy Doggie, LLC*,
  No. 19-cv-13134, 2020 WL 9172077 (E.D. La. June 25, 2020)....................... 14, 25

*Treece v. Perrier Condominium Owners Association, Inc.*,
  569 F. Supp. 3d 347 (E.D. La. 2021) ............................................................... 4

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961)............................................................................. 21

*United States v. Micro Cap KY Insurance Co.*,
  Nos. 16-cv-278, 16-cv-279, 2017 WL 1745626 (E.D. Ky. Feb. 8, 2017) ............ 22

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ...................................................................................... 6, 7, 12

*Viener v. Casano*,
  No. 16-cv-18, 2016 WL 10675905 (S.D. Miss. June 10, 2016) ....................... 20, 21

*Villareal v. San Antonio Extended Med. Care, Inc.*,
  No. 15-cv-155, 2015 WL 12748640 (W.D. Tex. July 15, 2015) ......................... 18

*Villarreal v. Navistar, Inc.*,
  No. 20-cv-2980, 2022 WL 13918960 (N.D. Tex. Oct. 20, 2022)....................... 4

*Vioxx Products Liability Litigation Steering Comm. v. Merck & Co., Inc.*,
  No. 06-cv-30378, 2006 WL 1726675 (5th Cir. May 26, 2006) ......................... 5, 22

*Wash.-St. Tammany Elec. Cooperative, Inc. v. Louisiana Generating, L.L.C.*,
  No. 17-cv-405, 2019 WL 2092566 (M.D. La. May 13, 2019)......................... 7, 15, 22

*Whitfield v. Riley*,
  No. 09-cv-1877, 2009 WL 10679761 (E.D. La. Oct. 6, 2009) ........................... 3

**Statutory Authorities**

La. Code Evid. Ann. art. 502B........................................................................ 3

**Rules and Regulations**

Fed. R. Civ. P. 26(b)(3)........................................................................................... 17

Fed. R. Civ. P. 26(b)(4)(D)....................................................................................... 20

Fed. R. Civ. P. 54(b) ................................................................................................ 4

## INTRODUCTION

The Court's May 24, May 26, June 8, and July 17, 2023 Orders compelling the Waste Connections Defendants[1] to produce privileged and highly confidential communications threaten to abrogate the important protections of attorney-client privilege and work product prepared in anticipation of litigation. The Court has directed the production of discussions between Waste Connections Defendants' counsel and senior management rendering and soliciting legal advice, counsel's litigation reports to the Waste Connections Defendants' Board of Directors, and communications with consulting experts. These orders overlook the factual and legal bases of the Waste Connections Defendants' privilege designations, and threaten to reveal counsel's advice, impressions, case theories, and strategy made while the *Ictech-Bendeck* lawsuit was imminent or pending. This motion also seeks clarification of apparently inconsistent determinations with respect to privilege in the Court's orders.

The Waste Connections Defendants have produced over 50,000 documents (over 500,000 pages) during the course of this litigation. This motion for reconsideration relates to 45 documents for which the Waste Connections Defendants assert attorney-client privilege and/or work product protection, 28 of which are contained within three email chains. The Waste Connections Defendants will produce the majority of the documents subject to the Court's orders, and they seek reconsideration or clarification for a limited subset of these documents to avoid the significant prejudice and manifest injustice that would result from production.

## PROCEDURAL BACKGROUND

After this Court's November 2022 Order on general causation, the Court provided the Waste Connections Defendants with 16 days to produce any documents responsive to the *Addison*

---

[1] "Waste Connections" collectively refers to Defendants Waste Connections US, Inc., Waste Connections Bayou, Inc., and Louisiana Regional Landfill Company.

Plaintiffs' requests for production that had not been produced during the general causation phase of discovery.[2] On February 23, 2023, the Waste Connections Defendants timely produced approximately 4,700 documents and separately provided a privilege log for documents withheld from the production in whole or in part for privilege.

On March 24, 2023, counsel for the *Addison* Plaintiffs objected to certain assertions of privilege and other non-privileged redactions made in the Waste Connections Defendants' February 23, 2023 document production. After conferring with Plaintiffs and in an attempt to narrow the dispute, the Waste Connections Defendants made numerous voluntary productions of documents and information and supplemented the privilege log twice, both to provide a list of names with affiliations and to remove certain privilege and work product claims in whole or in part after considering Plaintiffs' objections. The Waste Connections Defendants also agreed in good faith to lift non-privileged redactions (which had originally been made on relevance or other grounds) on over seventy documents. Both the *Addison* and *Ictech-Bendeck* Plaintiffs moved to compel the production of the remaining documents on April 14, 2023.[3] Defendants timely opposed this motion,[4] and provided the documents subject to the motion for *in camera* review at the Court's direction.

The Court issued an order on May 26, 2023, granting in part and denying in part Plaintiffs' Motion to Compel ("May 26 Order").[5] Of the 133 privileged documents subject to Plaintiffs' motion, the Court upheld the Waste Connections Defendants' privilege claim for 33 documents and ordered that 100 documents be produced in whole or in part. The Court also ordered the Waste

---

[2] ECF No. 305 (Case No. 18-cv-07889). The *Addison* Plaintiffs originally served the First Requests for Production in 2019 but these were supplanted by the general causation discovery procedures.
[3] ECF No. 324 (re-filed to correct deficiencies as ECF No. 326).
[4] ECF No. 329.
[5] ECF No. 338. On May 24, 2023, the Court also ordered production of the first six pages of WC_JPLF_PRIV_0377 in the minute entry for the May 22 status conference ("May 24 Order"). ECF No. 335.

Connections Defendants to lift the non-privileged redactions for the documents subject to the motion.[6] The Court deferred ruling on all other remaining issues in Plaintiffs' motion.[7] On June 8, 2023, the Court issued an order providing a date certain for the Waste Connections Defendants to produce the documents subject to the May 26 Order ("June 8 Order").[8] The May 26 and June 8 Orders were stayed by the Fifth Circuit's June 8, 2023 stay order.[9] On July 12, 2023, the Fifth Circuit lifted the stay with respect to only the *Ictech-Bendeck* action, further providing that "the proceedings in the *Addison* case continue to be stayed pending further order of this Court."[10] On July 17, 2023, the Court directed the Waste Connections Defendants to produce the documents subject to the Court's prior orders by July 24, 2023 ("July 17 Order", and together with the May 24 Order, May 26 Order, and June 8 Order, "Orders").[11]

The Waste Connections Defendants will comply to the extent possible with the Court's directives, producing the majority of documents as ordered by the Court.[12] The Waste Connections Defendants respectfully move the Court to reconsider its Orders with respect to a small set of 45 documents the Court ordered to be produced, some of which are inconsistent with the Court's

---

[6] ECF No. 338 at 6.

[7] The Court's May 26 Order deferred ruling on Plaintiffs' Motion to Compel the production of documents and information concerning the Defendants' Joint Defense Agreement, draft reports and communications with the non-testifying consulting expert SCS Engineers, documents and information concerning revenue and other financial information, and information concerning other landfills, among other issues.

[8] ECF No. 344.

[9] *In re Jefferson Parish*, Case No. 23-30243, Doc. 59-2 (5th Cir. June 8, 2023).

[10] *In re Jefferson Parish*, Case No. 23-30243, Doc. 91-2 (5th Cir. July 12, 2023).

[11] ECF No. 350.

[12] Pursuant to Louisiana law, "[a] claim of privilege is not defeated by a disclosure which was compelled." La. Code Evid. Ann. art. 502B; *see also State v. Gravois*, 22-428 (La. App. 5 Cir. 2/28/23), 359 So. 3d 1015, 1026 (applying La. Code Evid. Ann. art. 502B in holding that "[j]udicially compelled disclosure of privileged documents does not constitute a waiver"); *see also Whitfield v. Riley*, No. 09-cv-1877, 2009 WL 10679761, at *6 (E.D. La. Oct. 6, 2009) (Wilkinson, J.) ("The Fifth Circuit and other federal courts have held that these types of privileges are not waived when production of the protected information has been compelled by court order or by law because such a production is not voluntary.").

ruling on privilege for nearly identical documents, but all of which are protected communications that will cause manifest injustice and irreparable harm if produced.[13]

## STANDARD OF REVIEW

Reconsideration is appropriate to prevent manifest injustice because this motion "raises important privilege issues that could have a significant impact and effect on the case." *PIC Grp., Inc. v. Landcoast Insulation, Inc.*, No. 109-cv-662, 2010 WL 1794964, at *1 (S.D. Miss. Apr. 29, 2010) (granting in part Rule 59(e) motion for reconsideration due to "important privilege issues that could have a significant impact and effect on the case").[14] In deciding a motion for reconsideration, the Court should consider whether any of the following elements are present: "(1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law." *See Treece v. Perrier Condo. Owners Ass'n, Inc.*, 569 F. Supp. 3d 347, 356 (E.D. La. 2021) (Morgan, J.) (granting motion for reconsideration) (citing *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-cv-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, J.)). Only one element must be satisfied in order to justify reconsideration of an order. *See Villarreal v. Navistar, Inc.*, No. 20-cv-2980, 2022 WL 13918960, at *2 (N.D. Tex. Oct. 20, 2022) (motion for reconsideration granted where only single prong met). The Waste Connections Defendants have satisfied this standard here.

---

[13] The Waste Connections Defendants will separately provide the Court with copies of these 45 documents for *in camera* review.

[14] The Court's partial order on Plaintiffs' motion to compel adjudicates fewer than all the claims among the parties, and Rule 54(b) therefore applies. *See* Fed. R. Civ. P. 54(b). Rule 54(b) motions to reconsider interlocutory orders use the same standards as Rule 59(e) motions to alter or amend final judgment. *See S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 565 (E.D. La. 2013) (Brown, J.) ("The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.").

**ARGUMENT**

The careful examination of claims of privilege is tantamount because an appeal after disclosure of privileged information is an inadequate remedy. *See In re Burlington N., Inc.*, 822 F.2d 518, 522-23 (5th Cir. 1987) (granting mandamus review finding erroneous disclosure of privileged documents could be irreparable); *Vioxx Prods. Liab. Litig. Steering Comm. v. Merck & Co.*, No. 06-cv-30378, 06-cv-30379, 2006 WL 1726675, at *2 n.4 (5th Cir. May 26, 2006) (holding district court's *in camera* review and order to produce privileged documents was "an abuse of discretion"). The Waste Connections Defendants respectfully believe that the Court's Orders to produce the subject documents rest on manifest errors of law or fact. To correct these errors and to prevent manifest injustice, this Court should grant the Waste Connections Defendants' Motion for Reconsideration and uphold the privilege and work product claims for the 45 communications described below.

## I.  The Court overlooked the factual and legal bases demonstrating privilege and work product protections for the subject documents

### A.  The Court overlooked the predominant purpose of 38 communications rendering or soliciting legal advice.

The Court's Orders compelled production of 38 documents (28 of which are contained within three email chains), that contain privileged and confidential internal discussions between Waste Connections senior management, and in-house counsel, and/or outside counsel on legal strategy following the commencement of the *Ictech-Bendeck* lawsuit. In ordering production of these communications, the Court overlooked the record evidence demonstrating these are legal (and not business) communications that should be afforded protection as attorney-client communications. *See McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000) (privilege applies to communications between legal counsel and management; "[m]anagement

should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege").

The attorney-client privilege is intended to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Such advice and advocacy is reliant on the attorney "being fully informed by" their client. *Id.* The application of the attorney-client privilege requires that the communication was made for the purpose of obtaining legal advice—but it does not require that the communication itself contain substantive legal advice. *Muller v. Bonefish Grill, LLC*, No. 20-cv-1059, 2021 WL 2822374, at *2 (E.D. La. July 7, 2021) (Vance, J.) (attorney-client privilege protected communication seeking legal advice) (*citing King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 720-721 (5th Cir. 2011)); *see also In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (while legal advice "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct … it is broader, and is not demarcated by a bright line"). The test is whether legal counsel was participating in communications primarily for the purpose of rendering legal advice or assistance. *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 798 (E.D. La. 2007) (attorney-client privilege will protect business advice intertwined with legal advice). The record evidence demonstrates that test is met for the 38 documents here.

### 1. Communication for purpose of providing legal advice on correspondence with Jefferson Parish Council

The Waste Connections Defendants seek reconsideration and clarification of the Court's Orders compelling production in full of 13 documents that are part of the same email chain made for the purpose of rendering legal advice on correspondence by the Waste Connections Defendants to the Jefferson Parish Council about statements by River Birch concerning the Landfill. The

Waste Connections Defendants seek to withhold in full **WC_JPLF_PRIV_0293** and **WC_JPLF_PRIV_0319**, and seek to redact limited portions of **WC_JPLF_PRIV_0299, WC_JPLF_PRIV_0305,** **WC_JPLF_PRIV_0308,** **WC_JPLF_PRIV_0314, WC_JPLF_PRIV_0324,** **WC_JPLF_PRIV_0328,** **WC_JPLF_PRIV_0332, WC_JPLF_PRIV_0333,** **WC_JPLF_PRIV_0337,** **WC_JPLF_PRIV_0344**, **WC_JPLF_PRIV_0348** on attorney-client privilege and work product protection grounds.

As this Court recognized in upholding the attorney-client privilege for the versions of this email chain at WC_JPLF_PRIV_0360 and WC_JPLF_PRIV_0207, these communications were made primarily for rendering legal advice.[15] That ruling was consistent with the principle that communications to inform counsel are protected, as well as related communications containing express legal advice. *Upjohn*, 449 U.S. at 389; *Muller*, 2021 WL 2822374, at *2. The Court, however, did not uphold the privilege for 13 other versions of the same email chain, and therefore is requiring disclosure of communications containing the Waste Connections Defendants' in-house counsel's mental impressions, legal opinions, and specific requests for information so that he may render legal advice with respect to the draft letter.[16] *See Wash.-St. Tammany Elec. Coop., Inc. v. La. Generating, L.L.C.*, No. 17-cv-405, 2019 WL 2092566, at *5 (M.D. La. May 13, 2019) (attorney-client privilege extends to communications by agents or employees that participate as members of a team to provide information and documents to litigation counsel and obtain from counsel answers to the client's question); *Upjohn*, 449 U.S. at 400 ("Rule 26 accords special protection to work product revealing the attorney's mental processes"). The Court further overlooked the context of the communication, made approximately 14 months after the *Ictech-*

---

[15] ECF No. 338 at 21.
[16] The final letter to the Parish Council was produced at WC_JPLF_00411293.

*Bendeck* action was filed, with implications for both the putative class action and issues of comparative fault among the co-Defendants to this action.[17]

The Waste Connections Defendants seek to withhold WC_JPLF_PRIV_0293 and WC_JPLF_PRIV_0319 in full because they contain the protected portions of the communications described above, as well as additional correspondence between the Waste Connections Defendants' General Counsel, Pat Shea, Esq., and Deputy General Counsel, John Perkey, Esq., concerning strategy on the final dissemination of the letter.[18] For the remaining documents, the Waste Connections Defendants seek reconsideration only for those limited portions of the email thread that were communications made for the primary purpose of rendering legal advice and contain counsel's thought processes, including those portions for which the Court upheld privilege on WC_JPLF_PRIV_0207 and WC_JPLF_PRIV_0360.[19]

### 2. Legal strategy concerning statements to press regarding imminent or active litigation

The Waste Connections Defendants also seek reconsideration for 18 documents that the Court categorized as "media communications," while overlooking the record evidence demonstrating that the predominant purpose of the communications was legal in nature and not mere business or public relations advice. *See In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789 at 798 ("The test for the application of the attorney-client privilege to communications with legal counsel in which a mixture of services are sought is whether counsel was participating in the communications primarily for the purpose of rendering legal advice or assistance.").

---

[17] *See, e.g.*, ECF No. 389 at 7 (Case No. 19-cv-11333) (Plaintiffs' Reply on Motion to Compel was only filed in the *Addison* action); ECF No. 339 at 2-4 (Case No. 18-cv-07889)

[18] *See, e.g., id.*

[19] *See* WC_JPLF_PRIV_0299, WC_JPLF_PRIV_0305, WC_JPLF_PRIV_0308, WC_JPLF_PRIV_0314, WC_JPLF_PRIV_0324, WC_JPLF_PRIV_0328, WC_JPLF_PRIV_0332, WC_JPLF_PRIV_0333, WC_JPLF_PRIV_0337, WC_JPLF_PRIV_0344, WC_JPLF_PRIV_0348.

When a communication takes place at the same time as a press release is issued, that does not automatically mean the communication is a "media communication." Where a communication regarding a draft or contemplated press release is made predominantly for the purpose of providing legal services, it is protected as privileged. *Guiffre v. Maxwell*, No. 15-cv-7433, 2016 WL 1756918, at *8 (S.D.N.Y. May 2, 2016) (noting that press releases are not legal on their face, but that "the Court must consider [such] communications in their full context."); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, & Prods. Liab. Litig.,* MDL No. 2738, 2021 WL 3144945, at *8 (D.N.J. July 26, 2021) (finding that "counsel's comments on draft press releases are privileged."); *see also Alexander v. F.B.I.*, 198 F.R.D. 306, 312 (D.D.C. 2000) ("[d]rafts of documents that are prepared with the assistance of counsel for release to a third party are protected under attorney-client privilege".). The Waste Connections Defendants in-house counsel's involvement in these 18 communications was more than a general practice of copying counsel. It was for the primary purpose of soliciting information for the purpose of rendering legal advice, informing counsel, allowing counsel to interpose legal advice, and the provision of legal advice, and the documents are therefore protected by the attorney-client privilege.

### a.  Privileged communications concerning July 23, 2018 Press Release

The Waste Connections Defendants seek to withhold in part portions of 12 documents that are different versions of the July 23, 2018 email chain "Media Inquiry/Deadline Sensitive - PRIVILEGED AND CONFIDENTIAL" at **WC_JPLF_PRIV_0220, WC_JPLF_PRIV_0237, WC_JPLF_PRIV_0249,      WC_JPLF_PRIV_0260,      WC_JPLF_PRIV_0264, WC_JPLF_PRIV_0276,      WC_JPLF_PRIV_0286,      WC_JPLF_PRIV_0287, WC_JPLF_PRIV_0321,      WC_JPLF_PRIV_0341,      WC_JPLF_PRIV_0351,**

**WC_JPLF_PRIV_0355** on privilege grounds.[20] The Court authorized the redaction of paragraph six of page one of WC_JPLF_PRIV_0220, and the same paragraph in WC_JPLF_PRIV_0249, WC_JPLF_PRIV_0264, WC_JPLF_PRIV_0276, and WC_JPLF_PRIV_0287, but for these and the remaining iterations of this email chain the Waste Connections Defendants seek to redact additional portions that on the face of the document demonstrate they were made for the predominant purpose of soliciting or rendering legal advice and which contain the mental impressions of counsel with respect to the imminent putative class action (filed just two days later) and issues of the allocation of liability among the Defendants in this action.[21]

This includes senior management's direction to legal counsel on a proposed legal strategy and requesting counsel implement that strategy in drafting a press release (*see, e.g.,* WC_JPLF_PRIV_0286, July 23, 2018 email at 1:30 pm), legal counsel's provision of drafts of the press release executing that strategy, and legal counsel's solicitation of information from senior management for the purposes of making his recommendation (*see, e.g.,* WC_JPLF_PRIV_0286, July 23, 2018 email from John Perkey, Esq. at 3:39 pm; WC_JPLF_PRIV_0287, July 23, 2018 email from Pat Shea, Esq. at 9:43 pm). The Waste Connections Defendants do not seek to redact those portions that relate to simple dissemination nor to the July 28, 2018 communication with Sabrina Wilson at Fox 8 News (*see, e.g.,* unredacted portions of WC_JPLF_PRIV_0286).[22] The final press release was produced at WC_JPLF_00421912.

---

[20] The Waste Connections Defendants also claim work product protection for WC_JPLF_PRIV_0220, WC_JPLF_PRIV_0237, WC_JPLF_PRIV_0249, WC_JPLF_PRIV_0260, WC_JPLF_PRIV_0264, WC_JPLF_PRIV_0276, WC_JPLF_PRIV_0286, and WC_JPLF_PRIV_0287.

[21] *See* ECF No. 338 at 17. The Court also ordered WC_JPLF_PRIV_0237, WC_JPLF_PRIV_0260, and WC_JPLF_PRIV_0286 to be produced without redaction, overlooking that they contain the same language the Court upheld privilege for in WC_JPLF_PRIV_0220. *See* ECF No. 338 at 17 (allowing for redaction of paragraph six of page one for WC_JPLF_PRIV_0220).

[22] *See, e.g.*, proposed redactions to WC_JPLF_PRIV_0264, WC_JPLF_PRIV_0276, provided for *in camera* review.

### b. Legal advice concerning August 2018 communications with reporter

The Waste Connections Defendants also seek reconsideration on privilege and work product protection grounds of **WC_JPLF_PRIV_0243, WC_JPLF_PRIV_0250, WC_JPLF_PRIV_0254**, in which Brett O'Connor, then the Southern Region Engineering Manager whose responsibility included overseeing Louisiana Regional Landfill Company,[23] specifically seeks in-house counsel's comments on a draft statement to a reporter. The communications contain in-house counsel's provision of legal advice with respect to the contents of the statement, and contains other information provided by senior management to in-house counsel for purpose of rendering legal advice. Mr. O'Connor's statement "[r]ather than including the legal team" refers to outside counsel, and does not indicate that his communications with in-house counsel are not for the purpose of securing legal advice.[24] The Waste Connections Defendants do not seek to redact the portion of the communications with Juliana Mazza at NBC, and in any event, those portions have been independently produced.[25] The final statement provided to Ms. Mazza was produced at WC_JPLF_00276570.

Similarly, the Court should reconsider its order requiring production of the portions of the August 2018 communications that are between the Waste Connections Defendants' in-house counsel and senior management at **WC_JPLF_PRIV_0218** and **WC_JPLF_PRIV_0278**. These communications contain the solicitation of feedback from in-house counsel on the propriety of proposed responses to questions from the press, and contain counsel's mental impressions concerning the substance and goals of the reporter's statements. The Waste Connections

---

[23] ECF No. 329-4 at 5.
[24] *See* ECF No. 338 at 16, n.105.
[25] *See* WC_JPLF_00276416.

Defendants do not seek to redact the portions of the communications that are with Ms. Mazza from NBC.

### c. Legal advice concerning August 2018 press release and Parish Council meeting

The Waste Connections Defendants also seek reconsideration of the Court's Order to produce pages one through six of **WC_JPLF_PRIV_0377** without redactions.[26] The Court's Order overlooks the facially privileged nature of these communications between the Waste Connections Defendants' in-house counsel (John Perkey, Esq.) and outside legal counsel (Bradley Murchison Kelly & Shea and Beveridge & Diamond), their predominant purpose of soliciting or rendering legal advice on the contents of the press release in light of the active litigation and potential liability issues among the Defendants, and their inclusion of legal strategy and in-house and outside counsel's thought processes. *See In re Vioxx*, 501 F. Supp. 2d at 797, n.12 (applying presumption of privilege to communications with outside counsel); *Upjohn*, 449 U.S. at 400. The Waste Connections Defendants seek to retain the redactions of the majority of the communication, except for Mr. Emley's August 17, 2018 email that "We just released this statement to the press."

The first six pages of these August 2018 communications, made approximately one month after the commencement of the *Ictech-Bendeck* putative class action, include emails (i) between Mr. Perkey and outside litigation counsel concerning joint defense communications with the Parish on the Parish Council's potential actions concerning the Landfill (*see* David Taggart, Esq. August 16, 2018 email), (ii) from outside counsel providing selective information to and seeking direction from Mr. Perkey on outside counsel's authorized role in public proceedings concerning the Landfill (*see* Michael Mims Esq. August 16, 2018 emails), and (iii) between Mr. Perkey and outside counsel specifically soliciting outside counsel's legal advice about public-facing

---

[26] ECF No. 335 at 3; *see also* ECF No. 338 at 13, n.77.

communications concerning the Landfill due to the pending litigation. The latter communications also included receipt of that legal advice including outside counsel's substantive comments, and incorporation of that legal advice into a draft press release that was then circulated to outside counsel and the Waste Connections Defendants' General Counsel (Pat Shea, Esq.) and senior management for final comment (*see* John Perkey, Esq. August 17, 2018 emails with outside counsel at pp. 1-5). The final press release was produced at WC_JPLF_00420083.

The fact that legal advice relates to a press release does not change the fact that its predominant purpose was to render and solicit legal advice. *See Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (upholding privilege for communication with outside counsel seeking legal advice regarding media inquiries); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 498 (S.D.N.Y. 2019) (attorney-client privilege protected communications sent to general counsel and outside counsel regarding draft press releases). Mr. Perkey solicited advice from outside litigation counsel so he could provide a recommendation to the Waste Connections Defendants on how to respond to a media inquiry in light of the important legal implications of public statements after the commencement of the *Ictech-Bendeck* lawsuit. To hold otherwise ignores the known context of these communications, while the putative class action was pending, and several weeks after the Parish had served the Waste Connections Defendants with a notice of breach of the Landfill operating agreement.[27] The limited dissemination of Mr. Perkey's draft press release within Waste Connections does not change that result, as it was Mr. Perkey's final recommendation before the press release was provided to the public. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 708 (5th Cir. 2001) (general counsel memorandum shared among employees in company was privileged communication).

---

[27] *See* WC_JPLF_00410568.

In ordering the production of the first six pages of WC_JPLF_PRIV_0377, the Court also overlooked that portions of the email contain joint defense communications that are protected by the common interest among the Defendants. *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, No. 19-cv-13134, 2020 WL 9172077, at *4 (E.D. La. June 25, 2020) (Currault, J.) (common legal interest privilege protects communications between co-defendants and their counsel). This Court has further deferred decision with respect to Plaintiffs' Motion on the joint defense privilege.[28]

### 3. Other communications rendering or soliciting legal advice

The Waste Connections Defendants also seek reconsideration of the Court's Orders requiring production of WC_JPLF_PRIV_0197, WC_JPLF_PRIV_0212, WC_JPLF_PRIV_0296, WC_JPLF_PRIV_0302, WC_JPLF_PRIV_0320, WC_JPLF_PRIV_0345, and WC_JPLF_PRIV_0358, which overlook the express solicitation or rendition of legal advice on the face of these documents.

- **WC_JPLF_PRIV_0197**: The Waste Connections Defendants only seek to redact the top two July 31, 2018 emails forwarding information to in-house counsel for the purpose of obtaining legal advice and in-house counsel's sharing of his mental impressions concerning the shared communication. *See Muller,* 2021 WL 2822374, at *2-3.

- **WC_JPLF_PRIV_0212 and WC_JPLF_PRIV_0358**: In these two July 2017 communications, Megan Hodapp, Associate General Counsel for the Waste Connections Defendants, provides substantive comments on a notice to Waste Connections employees in her role as legal counsel (WC_JPLF_PRIV_0212). The letter with counsel's redlines was then forwarded as an attachment to a discrete

---

[28] ECF No. 338 at 22.

number of Waste Connections employees (WC_JPLF_PRIV_0358). *See McCook Metals*, 192 F.R.D. at 254; *In re Santa Fe Int'l Corp.*, 272 F.3d at 708.

- **WC_JPLF_PRIV_0296**: The Waste Connections Defendants seek to redact the top email consisting of a July 19, 2019 communication from David Taggart, Esq., outside litigation counsel for the Waste Connections Defendants, and John Perkey, Esq., in-house counsel for the Waste Connections Defendants, which provides Mr. Taggart's mental impressions concerning Mr. Perkey's communications with the Parish on issues related to comparative fault. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into…the mental impressions of an attorney"). The Waste Connections Defendants do not seek to redact the remainder of the thread.

- **WC_JPLF_PRIV_0302**: The Waste Connections Defendants seek to withhold this document in full, as it contains a July 2017 express request for legal advice from Mr. Nielsen, Region Vice President, to in-house counsel, copying senior management.[29] *See Wash.-St. Tammany Elec. Coop.*, 2019 WL 2092566, at *5 (privilege applies when agents and employees seek legal advice from counsel to answer their question(s)).

- **WC_JPLF_PRIV_0320**: The Waste Connections Defendants seek to redact only Mr. Nielsen's August 23, 2018 email to Mr. Perkey, providing his impressions to counsel on the legal implications of statements made by a reporter. *See Hickman*, 329 U.S. at 510.

---

[29] ECF No. 329-4 at 5.

- **WC_JPLF_PRIV_0345**: The Waste Connections Defendants seek clarification for the Court's ruling on this July 24, 2018 communication between in-house counsel for the Waste Connections Defendants and senior management concerning allocation issues, where the Court upheld the attorney-client privilege for all other iterations of this document.[30] The Waste Connections Defendants respectfully believe that the order to disclose this document was an inadvertent error.

**B. Counsel's legal advice to Board of Directors are protected communications.**

The Waste Connections Defendants also seek reconsideration of the Court's Orders compelling production of four sets of Waste Connections, Inc.'s Board of Directors meeting minutes at **WC_JPLF_PRIV_0364**, **WC_JPLF_PRIV_0365**, **WC_JPLF_PRIV_0367**, **WC_JPLF_PRIV_0369**. Plaintiffs' Motion to Compel did not specifically discuss the meeting minutes, instead generally listing them with documents Plaintiffs claimed had an insufficient privilege basis.[31] The Court similarly found that the communications were not "predominantly for the purpose of giving or obtaining legal advice or services."[32] The Court's holding overlooks the facially privileged nature of these materials, the legal bases supporting the protection of Board communications under Fed. R. Civ. P. 26(b)(3), and the disproportionate prejudice to the Waste Connections Defendants from production.

The Waste Connections Defendants' privilege log provided sufficient information to establish these documents are privileged. The privilege log describes the documents as "Email[s] with attachments reflecting legal strategy updates to Board of Directors," provided the dates of the

---

[30] *See* ECF No. 338 at 19 upholding attorney-client privilege for WC_JPLF_PRIV_0329, WC_JPLF_PRIV_0335, WC_JPLF_PRIV_0336 (in part), WC_JPLF_PRIV_0340, WC_JPLF_PRIV_0349, and WC_JPLF_PRIV_0353.
[31] ECF No. 326-1 at 7.
[32] ECF No. 338 at 18.

communications between January and June 2019 after the commencement of the lawsuits, and indicated the communications were to or from Waste Connections Defendants' legal counsel (Pat Shea, Esq., Executive Vice President and General Counsel, Waste Connections US, Inc., and Rob Cloninger, Esq., Senior Vice President and Deputy General Counsel, Waste Connections US, Inc.) and members of the Board of Directors.[33] *See King*, 645 F.3d at 721 (privilege log demonstrated documents protected from discovery on their face where it "list[ed] the authors and recipients of the e-mails, a brief description of each withheld communication, the amount of each document withheld, and the type of privilege asserted").

The only responsive portion of the communications is Mr. Shea's brief litigation update on the *Addison* and *Ictech-Bendeck* lawsuits to the Board of Directors in his role as General Counsel.[34] Summaries of Mr. Shea's discussions with the Board on the litigation, case theory, and strategy, made for the purpose of providing legal advice, and which were not disclosed to third parties outside the Board, fall squarely within the attorney-client privilege. *See* Fed. R. Civ. P. 26(b)(3) (court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"); *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*, MDL No. 2775, 2019 WL 2330863, at *3 (D. Md. May 31, 2019) (finding that both attorney-client privilege and work-product protection applied to board meeting minutes detailing the current state of litigation against plaintiff); *see also Newport Pac. Inc. v. Cnty. of San Diego*, 200 F.R.D. 628, 634 (S.D. Cal. 2001) (litigation assessment provided to county board in closed session work product protected).

---

[33] ECF No. 329-4 at 5-6.
[34] *See* WC_JPLF_PRIV_0364 at 16, WC_JPLF_PRIV_0365 at 20, WC_JPLF_PRIV_0367 at 29, WC_JPLF_PRIV_0369 at 24.

The Court's Order is particularly prejudicial because it orders the broad production of the full set of communications, where only several lines of each document summarize Mr. Shea's legal update on the lawsuits, with the remaining voluminous documents pertaining to non-responsive and highly confidential business information. Plaintiffs have not met their burden of establishing the relevance for the minutes, or of the predominantly non-responsive but highly sensitive business information that makes up the majority of these documents. *See Summers v. La.*, No. 20-cv-21, 2021 WL 4392309, *3 (M.D. La. Sept. 24, 2021) ("party filing the motion to compel 'bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence'" (internal citations omitted)); *Villareal v. San Antonio Extended Med. Care, Inc.*, No. 15-cv-155, 2015 WL 12748640, at *5 (W.D. Tex. July 15, 2015). Counsel's descriptions of ongoing litigation are not discoverable, as they are both work product and attorney-client communications. *See Carey-Canada, Inc. v. Cal. Union Ins. Co.*, 118 F.R.D. 242, 246 (D.D.C. 1986) (draft describing ongoing litigation by in-house counsel subject to work product protections because "the process by which an attorney selects the precise language to describe the litigation of his client in such a public document is most inevitably made with that litigation in mind"); *In re Smith & Nephew Birmingham*, 2019 WL 2330863, at *3.

To the extent the Court adheres to its prior ruling, the Court should permit the Waste Connections Defendants to redact all portions of the minutes that do not relate to the Jefferson Parish Landfill litigation. *See Villareal*, 2015 WL 12748640, at *5 (motion to compel production of board minutes denied where plaintiff had not demonstrated relevance); *Ely v. Bd. of Trs. of Pace Indus. Union-Mgmt. Pension Fund*, No. 18-cv-315, 2020 WL 6876197, at *5, n.7 (D. Idaho Nov. 23, 2020) (redactions of board meeting minutes, which appear to appropriately redact personal information and attorney advice regarding other lawsuits or legal matters, may remain redacted).

**C.  The Waste Connections Defendants properly withheld communications with non-testifying, consulting experts and concerning regulatory compliance.**

In summarily overruling the Waste Connections Defendants' work product claims, the Court's May 26 Order overlooked critical facts and controlling precedent supporting the applicability of Rule 26(b)(4)(B) and the work product protection to communications with non-testifying consulting experts in this litigation and common interest communications concerning regulatory compliance.[35] The Court also overlooked that Plaintiffs made no attempt to meet their heavy burden of demonstrating exceptional circumstances to justify discovery of documents or information from non-testifying consulting experts. *See Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1142 n.13 (5th Cir. 1980) (noting that a party seeking disclosure of non-testifying consulting expert work carries a "heavy burden"). The Waste Connections Defendants seek reconsideration of the Court's ruling for 10 documents on these grounds.

**1.  Communications with consulting experts**

The Court's May 26 Order overruled the work product protection for **WC_JPLF_PRIV_0375** and **WC_JPLF_PRIV_0376**, overlooking that these communications, which were made during the pendency of the lawsuit, involve correspondence with Eric Winegar, a non-testifying consulting expert retained by counsel for this litigation.

The Waste Connections Defendants' privilege log identified these October 2019 communications between David Jones, a Waste Connections employee and site manager at the Jefferson Parish Landfill, and Eric Winegar, a Senior Managing Scientist at Exponent, as reflecting work performed at the direction of counsel concerning sampling methods during a site inspection as part of this litigation.[36] The list identifying the titles and roles of the individuals on the privilege

---

[35] ECF No. 338 at 12.
[36] ECF No. 329-3 at 13.

19

log identified Mr. Winegar as a "Consulting Expert for Waste Connections Defendants."[37] Mr. Winegar further labeled the communications "Attorney-client privileged" and provided substantive information concerning Mr. Winegar's supervision of the parties' November 2019 on-site inspection.

The Federal Rules of Civil Procedure protect the facts known and opinions held by non-testifying experts retained in anticipation of litigation absent a showing of exceptional circumstances. Fed. R. Civ. P. 26(b)(4)(D); *Viener v. Casano*, No. 16-cv-18, 2016 WL 10675905, at *3 (S.D. Miss. June 10, 2016) ("The policy behind affording protection to a non-testifying expert is to allow a party to freely consult an expert 'without fear that every consultation with an expert may yield grist for the adversary's mill.'") (quoting *Commerce & Indus. Ins. Co. v. Grinnell Corp.*, No. 97-cv-0775, 1999 WL 731410, at *1 (E.D. La. Sept. 20, 1999)). A party seeking to show exceptional circumstances "carries a heavy burden." *Hoover*, 611 F.2d at 1142 n.13 (motion to compel production of government's appraisal report denied; "For experts not expected to testify, the rule is clear that discovery can only take place upon a showing of 'exceptional circumstances.'"); *see also Crews v. Nabrico*, Nos. 99-cv-3254, 99-cv-3332, 2001 WL 46878, at *1 (E.D. La. Jan. 18, 2001) (Vance, J.) ("The exceptional circumstances requirement has been interpreted by the courts to mean an inability to obtain equivalent information from other sources.").

Plaintiffs did not meet this exceptional showing here. Plaintiffs only provided a summary objection to the Waste Connections Defendants' work product claim for this document.[38] Plaintiffs have no need for Mr. Winegar's communications with the Waste Connections Defendants in

---

[37] ECF No. 329-4 at 5. John Griffin from Exponent was copied on the emails and was also identified as a "Consulting Expert for Waste Connections Defendants." *Id.*
[38] ECF 326-1 at 8.

preparation for the site inspection, for which both parties collected samples and exchanged detailed written reports.[39] Courts in the Fifth Circuit have consistently prohibited discovery of documents from non-testifying experts in circumstances such as this. *See, e.g.*, *Crews*, 2001 WL 46878, at *1 (affirming magistrate judge's ruling quashing subpoena duces tecum for consulting experts documents); *Padana Assicurazioni-Societa Azioni v. M/V Caribbean Express I*, No. 97-cv-3855, 1999 WL 30966, at *1 (E.D. La. Jan. 21, 1999) (Wilkinson, J.) (denying motion to compel production of consulting expert work product where requesting party failed to make required showing under prior version of rule); *Advance Tech. Incubator, Inc. v. Sharp Corp.*, No. 07-cv-468, 2009 WL 4432569, at *6 (E.D. Tex. July 29, 2009) (same); *Lizana v. State Farm Fire & Cas. Co.*, No. 08-cv-501, 2010 WL 323369, at *2 (S.D. Miss. Jan. 20, 2010) (same); *Viener*, 2016 WL 10675905, at *3 (consulting experts afforded a much higher degree of protection than testifying experts). This includes communications performed at the direction of counsel, where no attorney was present on the communication. *See Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (work product doctrine "protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney"); *United States v. Kovel*, 296 F.2d 918, 920-21 (2d Cir. 1961) (holding that attorney-client privilege "must include all the persons who act as the attorney's agents.") (internal citations omitted).

### 2. Communications concerning regulatory compliance

The Waste Connections Defendants also seek reconsideration of Court's Orders requiring production of the communication at **WC_JPLF_PRIV_0311** between counsel for the Waste Connections Defendants (John Perkey, Esq.) and counsel for Jefferson Parish (Toni Hurley, Esq.)

---

[39] *See* "Hydrogen Sulfide ($H_2S$) Sampling in the Jefferson Parish Region (November 4 through 8, 2019)" (General Causation Trial Exhibit 23), "Landfill Gas Characterization Report Avondale, Louisiana – Jefferson Parish" (General Causation Trial Exhibit 11).

concerning regulatory compliance.[40] Plaintiffs did not challenge regulatory compliance as a basis for privilege, instead making blanket objections that the privilege log presented insufficient details concerning communications with third parties.[41] In summarily overruling the work product protection for this document based on this blanket objection, the Court overlooked that it involved a protected communication regarding legal issues raised by regulatory compliance. *See Wash.-St. Tammany Elec. Coop.*, 2019 WL 2092566, at *5 (regulatory and compliance advice privileged). The communication involves counsel's substantive comments on the parties' joint response to the Louisiana Department of Environmental Quality's April 2018 Compliance Order and reflects the common interest of the Waste Connections Defendants and the Parish to form a common legal strategy on regulatory compliance issues—particularly in light of the pending *Ictech-Bendeck* lawsuit that was filed a month earlier. The communication is therefore additionally protected by the joint defense privilege. *See Ryskamp ex rel. Boulder Growth & Income Fund v. Looney*, No. 10-cv-842, 2011 WL 3861437, at *8 (D. Colo. Sept. 1, 2011) (upholding privilege for common interest communications to formulate a legal strategy regarding regulatory compliance issues); *United States v. Micro Cap KY Ins. Co.*, Nos. 16-cv-278, 16-cv-279, 2017 WL 1745626, at *1 (E.D. Ky. Feb. 8, 2017) (upholding privilege claim over communications between defendants with common interest seeking legal advice as to regulatory compliance).

## II. Disclosure of this protected information would cause manifest injustice

The Waste Connections Defendants will suffer manifest injustice from disclosure because once the subject documents are produced, that disclosure is irreparable to the producing party. *See Vioxx Prods. Liab. Litig. Steering Comm. v. Merck & Co., Inc.*, No. 06-cv-30378, 2006 WL 1726675, at *2 n.4 (5th Cir. May 26, 2006) ("As there is no turning back from the disclosure of

---

[40] ECF No. 338 at 10.
[41] ECF No. 326-1 at 7.

the documents, the need for a careful determination at this juncture is self-evident"); *In re Burlington N.,* 822 F.2d at 522-23 (granting mandamus review finding erroneous disclosure of privileged documents could be irreparable); *see also In re Spalding Sports Worldwide, Inc.,* 203 F. 3d 800, 804 (Fed. Cir. 2000) ("[M]aintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and …an appeal after disclosure of the privileged communication is an inadequate remedy") (internal quotation and citation omitted)).

The record evidence demonstrates that these documents contain legal advice, counsel's mental impressions, information provided to in-house and outside counsel, and in-house counsel's updates to Waste Connections, Inc.'s Board of Directors. All of these communications were made in the context of the imminent and pending *Ictech-Bendeck* putative class action, and the myriad issues ranging from litigation strategy, to liability, to comparative fault that are implicated in these proceedings. Requiring the production of these few documents for which the Waste Connections Defendants have asserted attorney-client privilege and/or work product protection would cause manifest injustice, have a chilling effect on counsel's frank communications with their clients, and offend important policies underlying the purpose of these protections. *See PIC Grp.* 2010 WL 1794964, at *1 (reconsideration granted on important privilege issues to prevent manifest injustice); *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 10-cv-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012) (manifest injustice exists where there is "a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy").

## CONCLUSION

Disclosure of these protected documents and communications is out of line with the important policy considerations underlying the attorney-client privilege and work product

doctrines. These fundamental protections are critical to allow parties and their attorneys to be able to discuss imminent and pending litigation without fear that opposing counsel will later be able to discover such communications. Similarly, the work product doctrine protects the opinions and thought processes of attorneys and their agents prepared in anticipation of and during litigation. Discovery of these materials would eliminate attorneys' ability to strategize internally and impose irreparable and manifest harm that cannot be remedied by appeal. Reconsideration is appropriate to reinstate the claimed privileges for these materials.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:   /s/ Michael C. Mims
            Michael C. Mims (#33991)
            Charles B. Wilmore (#28812)
            J. Hunter Curtis (#39150)
            Alec Andrade (#38659)
            Cecilia Vazquez Wilson (#39373)
            701 Poydras Street, Suite 5000
            New Orleans, Louisiana 70139
            (504) 581-7979


            BEVERIDGE & DIAMOND, P.C.

            Megan R. Brillault (*pro hac vice*)
            Michael G. Murphy (*pro hac vice*)
            John H. Paul (*pro hac vice*)
            Katelyn E. Ciolino (*pro hac vice*)
            Katrina M. Krebs (*pro hac vice*)
            825 Third Avenue, 16th Floor
            New York, NY 10022
            (212) 702-5400

            James B. Slaughter (*pro hac vice*)
            1900 N Street, NW, Suite 100
            Washington, DC 20036
            (202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on July 19, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michael C. Mims
OF COUNSEL
