**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** <br> **Plaintiff** | **CIVIL ACTION** <br><br> **NO. 18-7889** <br> **c/w 18-8071,** <br> **18-8218, 18-9312** |
| **VERSUS** | |
| **PROGRESSIVE WASTE SOLUTIONS OF LA, INC., ET AL.,** <br> **Defendants** | **SECTION: "E" (5)** <br><br> **JUDGE: Morgan** <br> **MAGISTRATE JUDGE: North** |
| *Applies to: All Cases* | |

**PLAINTIFFS' OPPOSITION TO WASTE CONNECTIONS**
**DEFENDANTS' MOTION FOR RECONSIDERATION AND CLARIFICATION**

**NOW INTO COURT**, through undersigned counsel, come the *Ictech-Bendeck* Class Plaintiffs who, in conformity with this Honorable Court's July 19, 2023 Minute Entry/Order (Doc. 354), file the instant opposition to the Motion for Reconsideration and Clarification filed by the Waste Connections Defendants (Doc. 351), to wit:

I.      **Introduction.**

After due consideration of the Waste Connections Defendants' arguments and after meticulous review and analysis of the documents and communications at issue in light of their privilege assertions and the applicable law, this Honorable Court rejected over seventy-five percent (75%) of the Waste Connections Defendants' assertions of privilege and work product protections[1]

---

[1] Of the 133 privileged/protected assertions challenged by Plaintiffs, this Honorable Court determined that only 33 of them were legitimate after its detailed and considerate review of the Waste Connections Defendants' log, arguments, and the underlying documents. 33 of 133 is less than 25%. Thus, this Honorable Court found that over 75% of the Waste Connections Defendants' privilege assertions were

1

finding that these documents and communications were not privileged or protected and thus discoverable under the law and the unique facts presented by this case. The Waste Connections Defendants now seek to have this Honorable Court reconsider forty-five (45) of the one hundred (100) documents that it has ordered to be produced.

Plaintiffs' ability to counter Waste Connections Defendants' document-specific arguments is of course precluded by the fact that neither Plaintiffs nor their counsel have laid eyes on any of the documents. Nevertheless, a review of their Motion for Reconsideration and Clarification and Memorandum in Support reveals the Waste Connections Defendants have failed to meet the standard for reconsideration.

## II.     Standard for Reconsideration.

The Waste Connections Defendants correctly note that in deciding a motion for reconsideration, a Court should generally consider the following four factors:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.

*Treece v. Perrier Condo. Owners Ass'n, Inc.*, 569 F. Supp. 3d 347, 356 (E.D. La. 2021) (Morgan, J.) citing *Castrillo v. American Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. April 5, 2010) (Vance, J.). Simply summarized, the Waste Connections Defendants must at least show one of the following: (1) the judgment is based on a manifest error of law or

---

improper (at least to some extent). This discrepancy clearly highlights the Waste Connections Defendants' proclivity to overuse privilege assertions to prevent Plaintiffs from discovering relevant non-privileged/non-protected documents.

fact; (2) newly discovered or previously unavailable evidence has come to light; (3) manifest injustice will follow; or (4) an intervening change in controlling law.

The Waste Connections Defendants, however, omit that "Rule 54(b) motions are not the proper vehicle for the reconsideration of evidence, legal theories, or arguments." *Treece*, 569 F. Supp. 3d at 356 citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). They further ignore that "[r]econsideration under Rule 54(b) instead 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Treece*, 569 F. Supp. 3d at 356 quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted). "It is well-settled that motions for reconsideration should not be used to re-urge matters already advanced by a party." *Treece*, 569 F. Supp. 3d at 356 citing *Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F.Supp.2d 548, 565 (E.D. La. 2013).

Also absent from their briefing is any discussion of what actually constitutes a "manifest error of law or fact." "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law'" or "an obvious mistake or departure from the truth." *Berezowsky v. Rendon Ojeda*, 652 F. App'x 249, 251 (5th Cir. 2016) citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas–Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004) and *Bank One, Texas, N.A. v. F.D.I.C.*, 16 F.Supp.2d 698, 713 (N.D. Tex. 1998)).

Relevant here, a "manifest error" is an obvious error that "is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Babaoye v. Bd. of Supervisors of Louisiana Cmty. & Tech. Coll. Sys.*, No. 21-30533, 2022 WL 488056, at *3 (5th Cir. Feb. 17, 2022) citing *Guy v. Crown Equip. Corp.*, 394 F.3d at 325 (internal quotation marks and citation

3

omitted). Merely reciting arguments that could have been raised earlier but failing to do so does not qualify.[2]

The Waste Connections Defendants have not and cannot identify a "complete disregard of the controlling law" or "an obvious mistake or departure from the truth" as required.

Similarly absent from their briefing is any discussion as to what constitutes "manifest injustice" in the context of a motion for reconsideration.

As this Honorable Court has previously noted, "[t]here is no general definition of manifest injustice; rather, courts evaluate whether there has been a manifest injustice on a case-by-case basis." *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, No. CV 11-2375, 2017 WL 3582385, at *5 (E.D. La. Aug. 18, 2017) citing *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-CV-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012) (citing Alvarado v. Texas Rangers, No. 03-0305, 2005 WL 1420846, at *3; see also *In re Cusano*, 431 B.R. 726, 734 (6th Cir. 2010) ("Manifest injustice, as contemplated by Rule 59(e), is an amorphous concept with no hard line definition. However, courts have established various guidelines to be used on a case-by-case basis to determine whether the necessary manifest injustice has been shown.").

This Honorable Court further noted with approval that "[a]ccording to some courts, '[w]hat is clear from the case law, and from a natural reading of the term itself, is that a showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy.'" *Hanover*

---

[2] See *Babaoye*, 2022 WL 488056, at *3 ("the district court was clear—it denied the motion because Babaoye 'merely recite[d]' arguments that could have been raised earlier but failed to do so. Babaoye fails to 'clearly establish either a manifest error of law or fact,' and we perceive no abuse of discretion in the district court's denial of Babaoye's motion for reconsideration. See *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).")

*Ins. Co. v. Superior Lab. Servs., Inc.*, 2017 WL 3582385, at *5 (citations omitted); see also *Team Contractors, L.L.C. v. Waypoint NOLA, L.L.C.*, No. CV 16-1131, 2018 WL 4815978, at *3 (E.D. La. Oct. 4, 2018) quoting *Bender Square Partners*, 2012 WL 1952265, at *4.

"[A] district court has not committed a 'manifest injustice' unless its error was 'direct, obvious, and observable.'" *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 2017 WL 3582385, at *5 (citations omitted). "A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable. In order for a court to reconsider a decision due to manifest injustice, the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view [it]." *Id.* (citations omitted).

The Waste Connections Defendants have failed to prove manifest injustice here.

**III.     The Waste Connections Defendants Have Failed to Show this Honorable Court's Order is Based on a Manifest Error of Law or Fact.**

While the Waste Connections Defendants allege manifest errors of law or fact in order to pay lip service to the legal standard for reconsideration, they boldly claim that this Honorable Court "overlooked" the factual and legal bases they argue establish privilege and/or work product protections for the subject documents. Far from demonstrating a "complete disregard of the controlling law" or identifying "an obvious mistake or departure from the truth" that would qualify as a "manifest error of law or fact" to support reconsideration, the Waste Connections Defendants take considerable space to voice their disagreement with this Honorable Court's findings and conclusions as to the forty-five (45) documents at issue. See *Williams v. Nguyen*, No. CV 16-13983, 2017 WL 11535835, at *1 (E.D. La. Nov. 7, 2017) (Morgan, J.) ("When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.")

Again, having never viewed the documents and having limited time to consider and analyze the Waste Connections Defendants' Motion and Memorandum in Support, Plaintiffs offer the following counterarguments, observations, and analysis to assist this Honorable Court.

**1. The Waste Connections Defendants Misleadingly Argue that 15 Documents are the "Same Email Chain."**

In arguing that this Honorable Court erred, the Waste Connections Defendants misrepresent that thirteen (13) of the documents this Honorable Court ordered be produced are the "same email chain" as two (2) which it found to be protected. Specifically, on page 7 of their Memorandum, the Waste Connections Defendants conflate docs 360 and 207 with the thirteen (13) documents this Honorable Court ordered to be fully produced to assert that because the Court correctly found that docs 360 and 207 were made primarily for rendering legal advice, the same must hold true for those other thirteen documents which the Waste Connections Defendants confidently assert are "13 other versions of the same email chain."  See Doc 351-1 at p. 7 ("The Court, however, did not uphold the privilege for 13 other versions of the same email chain…").

Although Plaintiffs admittedly have not had the benefit of reviewing these 15 documents, Plaintiffs find it difficult to believe that this Honorable Court would have concluded that two (2) of fifteen (15) of the same exact email chains were somehow privileged while the other thirteen (13) same exact email chains were not.  While they may be said to relate to each other, in that they may share an initial email or two, acting as if each of these fifteen (15) documents are exactly the same email chain is misleading.

Importantly, the Waste Connections Defendants fall far short of actually arguing that the content of each of these fifteen (15) email chains were the exact same such that this Honorable

Court's findings are inherently contradictory based on the facts. Given this apparent omission, Plaintiffs deduce that they lack any factual basis to even utter such an argument.

The Waste Connections Defendants appear to employ this argument to confuse the Plaintiffs and this Honorable Court. This Honorable Court should reject the misleading argument.

### 2. The Waste Connections Defendants' Disagreements with the Court's Conclusions Simply Do Not Support Reconsideration.

As mentioned above, the Waste Connections Defendants have not shown any manifest error. Instead, they just disagree with this Honorable Court's rulings.

For example, as it relates to **WC_JPLF_PRIV_0243**, **WC_JPLF_PRIV_0250**, and **WC_JPLF_PRIV_0254**, without citing any support, the Waste Connections Defendants argue that Mr. O'Connor's statement "'[r]ather than including the legal team' refers to outside counsel, and does not indicate that his communications with in-house counsel are not for the purpose of securing legal advice." See Doc. 351-1 at p. 11.

Herein, the Waste Connections Defendants simply voice their disagreement with this Court's conclusion that John Perkey was not considered by Mr. O'Connor to be part of the "legal team" which was purportedly providing legal advice in that instance. See Doc. 338, p. 16, fn. 105. What the Waste Connections Defendants have not done is present any newly discovered or previously unavailable evidence that would support their argument. And even if they had, this Honorable Court would be free to reject such newly presented evidence as lacking credibility.

Timeliness and credibility issues notwithstanding, it was the Waste Connections Defendants' burden to prove that these communications were predominantly for the purpose of securing legal advice. They have failed to identify any evidence showing this Court's conclusion was in error.

As another example, relating to **WC_JPLF_PRIV_0377**, the Waste Connections Defendants contend this Honorable Court erred because that document is "facially" privileged. See Doc. 351-1 p. 12-14. The arguments set forth are essentially a rehashing of their prior arguments regarding whether media communications were made predominantly for the purpose of legal advice and do not identify any manifest error of law or fact. They again just disagree with this Court's conclusion.

With that said, the Waste Connections Defendants' "joint defense" arguments should be summarily rejected since (1) no joint defense agreement existed until November 2018[3] and (2) Waste Connections failed to assert such a basis when it undoubtedly had the opportunity to do so months ago. See Doc. 329 at p. 10, fn. 26 (discussing common interest in context of joint defense agreement but not asserting argument that they had such a common interest sufficient to render such communications privileged months prior to entering the joint defense agreement).

Notwithstanding its untimeliness, the Waste Connections Defendants' argument should be rejected as they have not demonstrated the applicability of this extraordinarily narrow privilege. See *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, No. 19-cv-13134, 2020 WL 9172077, at *4 (E.D. La. June 25, 2020)

### 3. Arguments That Could Have Been Raised Earlier Do Not Support Reconsideration.

As noted by this Honorable Court, as it relates to their assertions that certain documents and communications were protected by the work product doctrine, in their opposition the Waste Connections Defendants "argue[d] only that their claim of privilege is bolstered by the fact that

---

[3] See *Addison* Doc. 368-4 (Brillault Declaration at ¶ 4).

nearly all of the withheld documents were created after the start of litigation." Doc. 338 at p. 12 (emphasis in original). Having only previously provided insufficient blanket assertions of work product protection in its opposition, the Waste Connections Defendants now improperly attempt to assert arguments that they could have voiced over 2 months ago. Waste Connections should not have a second bite at the apple. Notwithstanding their untimeliness, Waste Connections' newly asserted arguments fare no better than their previous ones.

As it relates to **WC_JPLF_PRIV_0375** and **WC_JPLF_PRIV_0376**, based on their representation that Mr. Winegar was a non-testifying expert, the Waste Connections Defendants assert for the first time that Plaintiffs failed to show the exceptional circumstances to access those communications under FRCP 26(b)(4)(D). See Doc. 351-1 at p. 19-21. Despite previously having the opportunity to make this argument in their opposition (Doc. 329), they failed to do so. As set forth above, merely raising arguments that could have been asserted earlier does not meet the standard. See *Babaoye*, 2022 WL 488056, at *3. Moreover, while they claim Plaintiffs have no need for Mr. Winegar's communications with the Waste Connections Defendants in preparation for the site inspection, having yet to see such communications Plaintiffs respectfully beg to differ. Notwithstanding their conclusory statements to the contrary, the Waste Connections Defendants have certainly failed to demonstrate that this Honorable Court committed manifest error in concluding that these documents are relevant for discovery purposes in this matter.

Moreover, as it relates to **WC_JPLF_PRIV_0311**, they now argue for the first time that this document involved protected communications regarding legal issues raised by regulatory compliance which makes them privileged. However, the Waste Connections Defendants failed to assert any regulatory compliance privilege as to **WC_JPLF_PRIV_0311** despite having the

opportunity to do so (and actually discussing the regulatory compliance privilege elsewhere in their opposition). As for **WC_JPLF_PRIV_0311**, it must be noted that they only asserted protection under the work product doctrine. See Doc. 338 at p. 18, fn. 113. As this Honorable Court found, and as the Waste Connections Defendants have failed to contradict, all work product assertions were based only on the fact that the documents contained communications occurring after suit was filed and such blanket assertions are insufficient to carry their burden.

## IV.   The Waste Connections Defendants Have Failed to Show this Honorable Court's Order Will Result in Manifest Injustice.

The Waste Connections Defendants have failed to prove that manifest injustice will follow when required to produce the forty-five (45) documents at issue.

In support of their argument, the Waste Connection Defendants misrepresent *Vioxx Prods. Liab. Litig. Steering Comm. v. Merck & Co., Inc.* as standing for the proposition that the disclosure of potentially privileged documents necessarily results in "manifest injustice" as a matter of law. See Doc. 351-1 at p. 5, 22-23 discussing *Vioxx Prods. Liab. Litig. Steering Comm. v. Merck & Co., Inc.*, No. 06-cv-303 78, 2006 WL 1726675, at *2 n.4 (5th Cir. May 26, 2006). However, in finding that the protocol employed by the district court to conduct the privilege determination under those unique circumstances was an abuse of discretion, as opposed to making any determination on the merits of the district court's privilege determinations, the US Fifth Circuit was stressing the importance of careful determination of privilege issues for nearly 30,000 documents. See *Id.* at *2 ("As there is no turning back from the disclosure of the documents, the need for a careful determination at this juncture is self-evident, else rendering the decision unreviewable by any other means to effectively protect the claimed privilege of thousands of

documents."). It certainly did not hold that in all circumstances the disclosure of purportedly privileged information will result in manifest injustice.

The Waste Connections Defendants similarly misrepresent the *In re Burlington* decision as also standing for such a broad legal proposition. See Doc. 351-1 at p. 5, 22-23 discussing I*n re Burlington N, Inc.*, 822 F.2d 518, 522-23 (5th Cir. 1987). However, therein the US Fifth Circuit found mandamus appropriate where the district court ordered the disclosure of several thousand documents in a unique area of law. See *In re Occidental Petroleum Corp.*, 217 F.3d 293, 296 (5th Cir. 2000) (discussing the unique circumstances presented by *In re Burlington*). The forty-five (45) documents here simply do not support a finding of manifest injustice. See *In re Occidental Petroleum Corp.*, 217 F.3d at 296 (finding that an order directing the production of fewer than 200 would not result in manifest injustice).

Their reliance on *In re Spalding Sports Worldwide, Inc.* for the same proposition is likewise misguided. See Doc. 351-1 at p. 23 discussing *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000). *In re Spalding* concerned a very discrete issue of first impression: "whether the attorney-client privilege applies to an invention record submitted for patent evaluation." *In re Spalding*, 203 F.3d at 804. At issue was the applicability of the attorney-client privilege to the invention record submitted to Spalding's corporate legal department by two inventors named on the relevant patent that had been submitted. It was under those unique circumstances the Court found mandamus warranted. Notwithstanding, the Waste Connections Defendants have simply failed to show how the disclosure of these forty-five (45) documents would have any wide-ranging harmful effects.

Finally, *Bender Square Partners* is entirely distinguishable from the case at bar. Therein, the district court concluded that it made a "manifest error of fact in its ruling" based on its admitted failure to recognize that there was no evidence in the record for one of its findings in support of granting a motion for summary judgment. *Bender Square Partners v. Factory Mut. Ins. Co.*, 2012 WL 1952265, at *3. As set forth above, the Waste Connections Defendants have failed to identify even one purported "manifest error of fact" that could support reconsideration.

To summarize, those cases cited by Defendants involved unique circumstances where parties asserting manifest injustice had made the requisite showing. Even assuming an error has been made (which certainly has not been demonstrated), the disclosure of potentially privileged documents is not guaranteed to result in manifest injustice.

Aside from their empty conclusory cries of manifest injustice, the Waste Connections Defendants have not shown how any such specific manifest injustice will follow when these forty-five (45) documents are produced in this case. Stated differently, the unique circumstances posed by the production of those purportedly privileged documents in the cases the Waste Connections Defendants cite are entirely absent here.

This is particularly true when this Honorable Court's orders concern only the discoverability of these documents, communications, and information, not the admissibility of same. As this Honorable Court aptly noted, admissibility is better dealt with through motions *in limine* prior to trial. See Doc. 338 at p. 9.

## V.   Defendants' Arguments on Reconsideration Prove the Woefully Insufficient Nature of Their Privilege Logs thereby Supporting Waiver.

Federal Rule of Civil Procedure 26(b)(5)(A) provides that when a party withholds information otherwise discoverable by asserting that the information is privileged, the party must

(i) expressly make the claim of privilege; and (ii) describe the nature of the documents

communications, or tangible things not produced or disclosed in a manner that, without revealing

the privileged or protected information itself, will allow other parties to assess the claim. FED. R.

CIV. P. 26(b)(5)(A)

The privilege log generated by the Waste Defendants was insufficient to comply with Rule

26 as it did not provide enough detail for the parties to evaluate their claims. Defendants'

description of the communications in their motion to reconsider underscores Plaintiffs' conclusion

that the Waste privilege log is woefully insufficient. Plaintiffs offer the following examples:

**WC_JPLF_PRIV_0197:**

Privilege log: "Email [singular] reflecting legal strategy concerning landfill operations prepared in anticipation of litigation"; from John Perkey to Brett O'Connor

Brief: Multiple emails. "The Waste Connections Defendants only seek to redact the top two July 31, 2018 emails forwarding information to in-house counsel for the purpose of obtaining legal advice and in-house counsel's sharing of his mental impressions concerning the shared communication."

While the description in the memo is still deficient, the now admittedly non-privileged

portion of this document has never been produced.

**WC_JPLF_PRIV_0212 and WC_JPLF_PRIV_0358:**

Privilege log (212): "Email chain with attachments reflecting legal advice concerning notifications to employees regarding the litigation"; from Rickie Falgoust to Dawn Thibodaux

Privilege log (358): "Email chain with attachments reflecting legal advice concerning notifications to employees regarding the litigation"; from Bruce Emley to Clay Richardson and Buddy Gonlag.

Brief: "In these two July 2017 communications, Megan Hodapp, Associate General Counsel for the Waste Connections Defendants, provides substantive comments on a notice to Waste Connections employees in her role as legal counsel (WC_JPLF_PRIV_0212). The letter with counsel's redlines was then forwarded as an

attachment to a discrete number of Waste Connections employees
(WC_JPLF_PRIV_0358)."

Neither Megan Hodapp nor her communications were shown on the privilege log.

**WC_JPLF_PRIV_0296:**

Privilege log: "Email reflecting discussions with counsel concerning the landfill operating
agreement with Jefferson Parish"; from David Taggart to John Perkey

Brief: "The Waste Connections Defendants seek to redact the top email consisting of a
July 19, 2019 communication from David Taggart, Esq., outside litigation counsel for the
Waste Connections Defendants, and John Perkey, Esq., in-house counsel for the Waste
Connections Defendants, which provides Mr. Taggart's mental impressions concerning
Mr. Perkey's communications with the Parish on issues related to comparative fault."

It is unclear if the July 19, 2019 email concerns the landfill operating agreement or a

discussion about comparative fault.

**WC_JPLF_PRIV_0302:**

Privilege log: "Email chain with attachment requesting legal advice concerning media
communications prepared in anticipation of litigation"; from Rob Nielsen to Jim Little
and John Perkey.

Brief: "The Waste Connections Defendants seek to withhold this document in full, as it
contains a July 2017 express request for legal advice from Mr. Nielsen, Region Vice
President, to in-house counsel, copying senior management."

The new description still does not comply with the rule and the attachment was not

identified either time.

**WC_JPLF_PRIV_0320:**

Privilege log: "Email reflecting discussions with counsel concerning media
communications prepared in anticipation of litigation"; from Rob Nielsen to John
Perkey.

Brief: "The Waste Connections Defendants seek to redact only Mr. Nielsen's August 23,
2018 email to Mr. Perkey, providing his impressions to counsel on the legal implications
of statements made by a reporter."

Mr. Nielsen is not himself a lawyer, and Mr. Nielsen's impressions of the implications of statements made by a reporter are not the mental impressions of counsel.

**WC_JPLF_PRIV_0345:**

Privilege log: "Email chain reflecting discussions with counsel concerning landfill operations prepared in anticipation of litigation"; from John Perkey to Rob Nielsen and Jim Little.

Brief: "The Waste Connections Defendants seek clarification for the Court's ruling on this July 24, 2018 communication between in-house counsel for the Waste Connections Defendants and senior management concerning allocation issues, where the Court upheld the attorney-client privilege for all other iterations of this document."

The phrase in the privilege log entry "concerning landfill operations" cannot be read to encompass "allocation issues," indicating yet again that the privilege log was misleading at best.

Additionally, at this time, Mr. Perkey was also the "compliance officer" for Waste Connections.

**WC_JPLF_PRIV_0364,    WC_JPLF_PRIV_0365,    WC_JPLF_PRIV_0367,    and WC_JPLF_PRIV_0369**

Privilege log: (364) "Email with attachments reflecting legal strategy updates to Board of Directors"

Privilege log: (365) "Email with attachments reflecting legal strategy updates to Board of Directors"

Privilege log: (367) "Email with attachments reflecting legal strategy updates to Board of Directors"

Privilege log: (369) "Email with attachments reflecting legal strategy updates to Board of Directors"

Brief: "The Waste Connections Defendants also seek reconsideration of the Court's Orders compelling production of four sets of Waste Connections, Inc.'s Board of Directors meeting minutes at WC_JPLF_PRIV_0364, WC_JPLF_PRIV_0365, WC_JPLF_PRIV_0367, WC_JPLF_PRIV_0369. Plaintiffs' Motion to Compel did not specifically discuss the meeting minutes, instead generally listing them with documents Plaintiffs claimed had an insufficient privilege basis."

15

Waste Connections' contention that the Plaintiffs had not specifically sought the meeting minutes is perhaps a perfect example of their misleading tactics. Plaintiffs could not seek the minutes specifically because the privilege log did not identify the minutes. Waste Connections hid the truth from the Plaintiffs and now blame the Plaintiffs for not knowing it.

The discrepancies between the privilege log and the description in the brief (made for the first time in the motion to reconsider) render it impossible to conclude that the privilege log was accurate in the first instance. Nevertheless, this Honorable Court has reviewed these minutes and found them discoverable.

Most importantly, this Honorable Court painstakingly took the additional measure in which it inspected each document, in-camera, because the claims could not be evaluated by the log, and thereafter issued a detailed Order and Reasons.[4]  The Waste Connections Defendants failed to comply with this Court's Orders compelling production of non-privileged documents on May 24, May 26, June 8, and on July 17, 2023.[5]  As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith. *United States v. Phillip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003). Plaintiffs request such sanctions now, because the loss of time, money, and effort to date increases day by day. The Waste Connections Defendants must pay a price now sufficient to deter future misdirection.

---

[4] Record Doc. 338.

[5] Waste Connections memo page 1.

**VI.     Conclusion**

For the reasons set forth herein, Plaintiffs respectfully pray that this Honorable Court deny

the Waste Connections Defendants' Motion for Reconsideration and Clarification.

Respectfully Submitted:

*/s/ Douglas S. Hammel*
Douglas S. Hammel (Bar No. 26915)
HAMMEL LAW FIRM, LLC
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
douglashammel@gmail.com

Scott R. Bickford (#1165)
srb@mbfirm.com
Lawrence J. Centola, Iii (#27402)
ljc@mbfirm.com
Jason Z. Landry (#33932)
jzl@mbfirm.com
Jeremy J. Landry (#30588)
jjl@mbfirm.com
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 – FACSIMILE

Bruce C. Betzer (Bar No. 26800)
THE LAW OFFICE OF BRUCE C. BETZER
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
bruce@brucebetzer.com

Anthony D. Irpino (#24727)
Louise C. Higgins (#31780)
Pearl Robertson (#34060)
Kacie F. Gray (#36476)
IRPINO, AVIN & HAWKINS
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501

airpino@irpinolaw.com
lhiggins@irpinolaw.com
probertson@irpinolaw.com
kgray@irpinolaw.com

John D. Sileo (La Bar No. 17797)
LAW OFFICE OF JOHN D. SILEO
320 N. Carrollton Ave.,
Suite 101 New Orleans, LA 70119
(504) 486-4343
jack@johnsileolaw.com

*Counsel for Ictech-Bendeck Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the above and foregoing has been sent to counsel for all parties by delivery of same by Hand Delivery, Email, Facsimile Transmission, or by placing a copy of same in the United States Mail, postage prepaid, and properly addressed, this 20th day of July, 2023.


*/s/ Douglas S. Hammel*
Douglas S. Hammel