## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**<br>        **Plaintiff,**<br><br>**VERSUS**<br><br><br>**WASTE CONNECTIONS BAYOU, INC., ET AL.,**<br>        **Defendants.** | **CIVIL ACTION**<br><br>**NO. 18-7889**<br>        **c/w 18-8071,**<br>        **18-8218, 18-9312**<br><br>**SECTION: "E"(5)** |
| *Related Case:* | |
| **FREDERICK ADDISION ET AL.,**<br>        **Plaintiffs,**<br><br>**VERSUS**<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>        **Defendants.** | **CIVIL ACTION**<br><br>**NO. 19-11133**<br><br>**SECTION: "E"(5)** |
| *Applies to: All Cases* | **JUDGE: Morgan**<br>**MAGISTRATE JUDGE: North** |

## REPLY MEMORANDUM IN SUPPORT OF THE
## WASTE CONNECTIONS DEFENDANTS'
## <u>MOTION TO UPHOLD EXPERT DESIGNATION OF BISHOW SHAHA, PH.D.</u>

The Waste Connections Defendants'[1] hydrogen sulfide generation expert is recovering from cancer surgery, was again hospitalized after that surgery, continues to suffer from health complications, and cannot continue to serve as a testifying expert in this litigation. No minute entry or Court order prohibits designation of a new testifying expert, and the Waste Connections Defendants' designation of an expert to fill Mr. Marshall's role is reasonable given Mr. Marshall's health condition. Any purported prejudice to Plaintiffs is mitigated by the abundant notice to Plaintiffs of the new designation and their opportunity to serve a rebuttal to Dr. Shaha's expert report and depose him prior to trial. Moreover, to further address any alleged prejudice to Plaintiffs, the Waste Connections Defendants agree to limit Dr. Shaha's testimony to opinions that are substantively similar to Mr. Marshall's—though the Waste Connections Defendants reserve the right to fully rebut the opinions of Plaintiffs' expert Dr. Jaana Pietari.

The remainder of the points raised in Plaintiffs' opposition are efforts to distract from the factual record. While Dr. Pietari's opinions and Mr. Marshall's rebuttal were presented at the General Causation trial, the Court did not adopt or rely on any of them for its findings of fact and conclusions of law – thus all parties will be presenting their modeling analysis for fresh evaluation at the upcoming jury trial in *Addison* and class certification briefing in *Ictech-Bendeck*.

Moreover, in every pleading, no matter how inapposite, Plaintiffs harp on a state court judge's decision to deny as moot Plaintiffs' request for pre-joinder access to inspect the landfill in January 2019. But it is all a smokescreen. If Plaintiffs actually wanted to know whether landfill gas emissions affected their clients, they could have simply taken hydrogen sulfide and odor measurements at the Plaintiffs' homes or in their communities, without leave of court and without Defendants' consent. Indeed, immediately after commencing the action in December 2018,

---

[1] The Waste Connections Defendants are Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.

Plaintiffs' own expert, Dr. Chrostowski, declared that "the best possible evidence to determine whether such exposures and harm have occurred would be actual air samples taken on a regular basis at each of petitioners' homes."[2] Plaintiffs never collected that data, though it was always accessible to them. In fact, Plaintiffs cut off their claim period at nearly the same time as LDEQ started collecting that data in January 2020 from continuous air monitoring at the Waggaman Playground.

Further, the data that Dr. Chrostowski proposed to collect at the landfill in January 2019 would not have supplied the data that is lacking from Dr. Pietari's model. Dr. Chrostowski proposed sampling gases, condensate, leachate, and odors during one day from the landfill surface, the gas collection system, and the flare exhaust.[3] To estimate hydrogen sulfide generation at the landfill, Dr. Pietari selected a model that required, over a multi-year study period, the volume of landfill gas collected, tons of C&D debris accepted, and volume of H2S generated.[4] There is no connection between Plaintiffs' proposed site inspection and the Waste Connections Defendants' need for Dr. Shaha to help them rebut Plaintiffs' spurious expert opinions.

Finally, Plaintiffs' real complaint about Dr. Shaha is that he is too qualified. Dr. Shaha developed the very model that Plaintiffs' expert uses to estimate hydrogen sulfide generation at the landfill. What other expert could possibly be more helpful for the jury to evaluate the reliability of Plaintiffs' expert's use of the model? Plaintiffs' strident but unsupported opposition to Dr. Shaha's designation is an overt effort to prevent the jury and the Court from hearing his opinions.

The Court should uphold the Waste Connections Defendants' timely designation of Dr. Bishow Shaha, as an expert to rebut Plaintiffs' expert on hydrogen sulfide generation issues.

---

[2] Exhibit A. *Addison v. Louisiana Regional Landfill Company*, No 790-369 (24th Jud. Dist. for the Parish of Jefferson, Div. J), Sworn Affidavit of Paul C. Chrostowski, Ph.D., QEP, ¶ 19 (Dec. 20, 2018).
[3] Id. at ¶ 23.
[4] Expert Report of Jeffrey D. Marshall, PE, at 18 (April 30, 2021), General Causation Trial Exhibit No. 18.

## I.   The Court's Orders govern the designation of testifying experts for trial.

Defendants' designation of Dr. Shaha complies with all orders of the Court, even aside from the inability of Mr. Marshall to continue due to cancer. As the Court has emphasized—including at the most recent November 30 status conference—it is a court of record. Thus, the orders of the Court govern expert witness disclosures, not Plaintiffs' recollections of off-the-record statements. *See* Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these [expert] disclosures at the times and in the sequence that the court **orders**.") (emphasis added). "A scheduling order controls the subsequent course of an action unless it is modified by the court." *See Pea v. City of Ponchatoula*, 2014 WL 458071, at *5 (E.D. La. Feb. 4, 2014). Here, the Court's Case Management Order governs the timing and disclosure of witness and exhibit lists.[5] There is no authority supporting Plaintiffs' argument that a party's recollection of off-the-record discussions trumps the Court's case management orders. As the Court cautioned at the November 30, 2023 status conference, if a party wants a particular instruction to be included in a minute entry or Court order, the party bears the burden of urging the Court to do so. Plaintiffs never took such action here, and thus they cannot use their recollection of informal discussions as a basis to impose restrictions on the Waste Connections Defendants' choice of expert witnesses.

No minute entry or order of the Court precludes the parties from designating new testifying experts. Instead, Plaintiffs rely on a brief from February 2023 – *before* the Court issued any of the post-General Causation case management orders – wherein the Defendants stated the Court had "indicated" that Defendants "will be precluded" from designating new experts.[6] In the Court's denial of the Defendants' motion, the Court did not adopt or endorse that statement, nor did the Court later constrain the parties' rights to designate experts in any order or minute entry following

---

[5] 13th CMO (No. 18-7889, R. Doc. 383); 12th CMO (19-11133, R. Doc. 429).
[6] Opposition at 4 (No. 18-7889, R. Doc. 390; No. 19-11133, R. Doc. 450).

a court conference.

Similarly, despite Plaintiffs' strained reading of the April 6, 2023 Minute Entry, that document says nothing about restricting the parties' choice of experts. Rather, that Minute Entry states that *Daubert* motions would be allowed only for new opinions expressed by current experts and opinions expressed by new experts.[7] The Court's decision is reflected in Section VIII of the Eighth Case Management Order ("CMO"), which provides the deadlines for *Daubert* motions regarding "testimony of newly designated experts (or existing experts who offer new opinions based on new methodologies)."[8] Plaintiffs rely on self-serving and conclusory statements that "it was understood" that "new experts" in the minute entry and CMO referred to new experts offering new opinions not addressed in general causation.[9] But neither the Minute Entry nor the CMO preclude any party from naming new expert witnesses.

The Eighth CMO ordered the parties to exchange "new or supplemental expert reports."[10] The September 1 Minute Entry further ordered Defendants to "file their lists of existing and new expert witnesses" on or before September 29, 2023.[11]  These orders did not prohibit the parties from designating new expert witnesses for the areas of expertise that were addressed during the general causation trial. The Waste Connections Defendants timely designated Dr. Shaha as an expert, which no Court order prohibited. Thus, the Waste Connections Defendants were reasonable in relying on the language of the Court's orders when they began working with their timely disclosed expert Dr. Shaha, and no good cause exists to strike him.[12]

---

[7] No. 19-11133, R. Doc. 371 at 2.
[8] No. 19-11133, R. Doc. 378 at 10.
[9] Opposition at 4 (No. 18-7889, R. Doc. 390; No. 19-11133, R. Doc. 450).
[10] No. 19-11133, R. Doc. 378 at 9.
[11] No. 19-11133, R. Doc. 413 at 2.
[12] Regarding Plaintiffs' proposal that Dr. Shaha's testimony be limited to the testimony provided by Mr. Marshall at the general causation trial, restricting Dr. Shaha's testimony is premature as he will be rebutting the testimony of Plaintiffs' expert at trial – the scope of which still remains to be seen. Dr. Shaha did not work with Mr. Marshall in

## II.  Mr. Marshall's recent cancer surgery, subsequent emergency medical treatment, and continued health complications from cancer are sufficient good cause to designate a new expert.

Even if the Court construes its orders as a prohibition on the designation of new experts, good cause exists to allow the Waste Connections Defendants to replace Mr. Marshall due to his unfortunate health condition. Mr. Marshall's cancer diagnosis, surgery, subsequent hospitalization, and continued health complications certainly constitute good cause to designate a new expert. *See Collins v. A.B.C. Marine Towing, L.L.C.*, 2016 WL 9412669, at *2 (E.D. La. Jan. 11, 2016) (Fallon, J.); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 2015 WL 13540240, at *2 (E.D. La. May 28, 2015) (Barbier, J.).

Plaintiffs take the position that Dr. Shaha's designation should not be allowed without a report from a physician stating that Mr. Marshall cannot serve as a testifying expert,[13] but cite no authority requiring such evidence. Plaintiffs' argument is perplexing given they provided no such physician report for Mr. Soler,[14] whom Plaintiffs replaced (with consent from the Defendants) on the eve of the general causation trial due to his illness. Regardless, Mr. Marshall has provided a sworn declaration explaining that he was diagnosed with prostate cancer, had surgery, was re-hospitalized, continues to suffer from health complications, and is not confident he can fulfill his duties as a testifying expert.[15] To force Mr. Marshall to go forward as the Waste Connections Defendants' expert despite these limitations and risks would prejudice their defense. Deposition and trial preparation are grueling processes, and it is hardly unreasonable to allow the Waste

---

preparing Mr. Marshall's report, nor did he attend Mr. Marshall's deposition; both of those factors were present when Plaintiffs' expert Mr. Sananes stepped in for Mr. Soler weeks before the start of trial.

[13] *Id.* at 10.

[14] Plaintiffs ask the Court to compare their previous substitution of Mr. Sananes for Mr. Soler to the Waste Connection Defendants timely designation of Dr. Shaha. Opposition at 11 (No. 18-7889, R. Doc. 390; No. 19-11133, R. Doc. 450). Plaintiffs' comparison, however, is wrong. As the Court will remember, Plaintiffs substituted Mr. Sananes for Mr. Soler on the eve of trial, after the conclusion of expert discovery.

[15] No. 18-7889, R. Doc. 388-2; No. 19-11133, R. Doc. 442-2.

Connection Defendants to designate an expert who is not recovering from cancer surgery.

Moreover, given Mr. Marshall's recent health history, the Waste Connections Defendants could find themselves in a position where Mr. Marshall is hospitalized again near or during trial. To compel Mr. Marshall to continue as the Waste Connections Defendants' expert—if he would even agree to do so—would only increase the chances of another continuance. There is no good reason to invite that risk particularly when there is sufficient advanced notice to avoid it. Good cause exists to allow the Waste Connections Defendants to replace Mr. Marshall with Dr. Shaha.

### III.    Plaintiffs' asserted prejudice does not warrant exclusion.

Plaintiffs claim – without any evidence or record citations – they would be highly prejudiced because (1) they have spent "hundreds of attorney hours" analyzing Mr. Marshall's work, (2) they have secured favorable testimony from Mr. Marshall that they will lose, and (3) Dr. Shaha is an "upgrade" or a "replacement plus" from Mr. Marshall.[16] Even assuming that they are true, none of these arguments outweigh the prejudice to the Waste Connections Defendants that would arise from being prohibited from presenting live expert testimony at all, or being forced to use an expert who is ill and cannot continue to serve as an expert. Moreover, the prejudice Plaintiffs complain of is not the type of prejudice that warrants exclusion under Rule 26, as enforced by Rule 37.

"The basic purpose of Rule 26 is to prevent prejudice and *surprise*." *Robin v. Weeks Marine, Inc.*, 2018 WL 10776315, at *3 (E.D. La. Nov. 19, 2018) (Morgan, J.) (emphasis added). Plaintiffs do not cite any authority that supports exclusion of expert testimony under Rule 26 for the types of prejudice about which they complain. Any prejudice to Plaintiffs, as contemplated by Rule 26, is sufficiently mitigated by the many months' advance notice provided by the Waste

---

[16] Opposition at 5-7 (No. 18-7889, R. Doc. 390; No. 19-11133, R. Doc. 450).

Connections Defendants of Dr. Shaha's designation, and Plaintiffs' opportunities to serve rebuttal reports and depose Dr. Shaha. *See Stone v. United States*, 2017 WL 1927719, at *3 (E.D. La. May 9, 2021) (Morgan, J.) (insufficient showing of prejudice given expert's availability for deposition.). Mr. Marshall's health condition is out of the Waste Connections Defendants' control and a sufficient reason for the substitution of Dr. Shaha. *See Collins*, 2016 WL 9412669 at *2. While it is true that Plaintiffs will have to prosecute their case by responding to a new expert report and deposing a new expert, that is no prejudice in light of the other new experts that all parties have named, and is not the sort of prejudice that warrants exclusion under Rule 26.

**IV.    There is no basis for requiring the Waste Connections Defendants to select an expert from SCS Engineers.**

Plaintiffs' insistence that the Waste Connections Defendants designate a new expert from SCS Engineers reveals their true motive. They are not worried about prejudice from preparing for a new expert – rather, they are worried about *this* expert (Dr. Shaha), because of the likelihood that he will assist the jury in arriving at the truth about hydrogen sulfide generation. But an expert's impressive qualifications do not constitute prejudice under Rule 26, and thus Waste Connections Defendants should not be forced to pick a different new expert. Basic due process principles dictate that Plaintiffs should not be allowed to select an expert for Defendants.

Plaintiffs cite no authority requiring a party to designate a new expert from the same consulting firm as their prior expert. Nor is there any logical reason to impose such a requirement. Plaintiffs wrongly claim that Mr. Marhsall did in fact rely on SCS data.[17]  Plaintiffs' argument, however, confuses the documents Mr. Marshall "relied on" and the documents he "considered" in preparing his report. The two SCS documents referenced by Plaintiffs were listed as documents Mr. Marshall considered but did not rely upon in his report. Additionally, the February 2010 report

---

[17] Opposition at 12 (No. 18-7889, R. Doc. 390; No. 19-11133, R. Doc. 450).

cited by Plaintiffs which Mr. Marshall identified in the "References" section was not authored by, or on behalf of, SCS Engineers. It was a research paper prepared for a third party that was co-authored by three people, including two authors who worked at SCS Engineers and a professor at the University of Georgia. In short, the Waste Connections Defendants retained Mr. Marshall for his subject matter expertise in hydrogen sulfide generation, not for his association with SCS Engineers.

But all of this is beside the point. Even if Mr. Marshall *had* relied extensively on SCS data, there is no legal or factual basis to force the Waste Connections Defendants to select an expert from SCS Engineers. And doing so would only prejudice the Waste Connections Defendants as they would be required to interview and select an expert from SCS Engineers (if an appropriate one even exists) and would at the very least require a continuance of the deadlines set out in the latest CMO. Basic due process principles dictate that Plaintiffs should not be allowed to select an expert for their opponents. Rather, this right belongs to the Waste Connections Defendants, who timely designated Dr. Shaha in compliance with the Court's orders.

**V.      If Plaintiffs' experts issue no new reports or opinions about hydrogen sulfide generation, the Waste Connections Defendants will agree to limit Dr. Shaha's testimony to opinions that are substantively similar to Mr. Marshall's.**

Dr. Shaha was timely designated under the Court's orders and no restrictions should be imposed on the scope of his testimony. But to resolve this dispute and further mitigate any purported prejudice to Plaintiffs, the Waste Connections Defendants will agree to limit Dr. Shaha's testimony to opinions that are substantively similar to Mr. Marshall's, or that are required to rebut the opinions disclosed by Plaintiffs' experts in the specific causation and class certification phase relating to hydrogen sulfide generation.

This approach accords with standards applicable even after the close of discovery.

"Generally, courts allowing expert substitutions after the close of discovery have limited the subject matter opinions to those that were included in the first expert's report." *Smith v. State Farm Lloyds*, 2023 WL 359495, at *3 (E.D. Tex. Jan. 23, 2023). Critically, however, "this does not mean that the substituted expert is limited to the exact same conclusion as the previous expert, so long as the new opinion is 'substantively similar' and not contrary or inconsistent with the original opinion." *Id*. "[T]he substitute is not normally required to simply adopt the prior expert's conclusions verbatim—in effect, doing little more than authenticating and confirming the prior expert's conclusions." *Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, 2010 WL 3892860, at *3 (N.D. Ind. Sept. 30, 2010). Instead, "[t]he substitute expert may use different language and even reach slightly broader conclusions so long as the new report is substantially similar in all material respects to the previous report." *Am. Can! v. Arch Ins. Co.*, 2022 WL 1467424, at *3 (N.D. Tex. Apr. 6, 2022).

No limitations should be imposed on Dr. Shaha if Plaintiffs' experts issue new reports or opinions related to hydrogen sulfide generation. In that case, there is no prejudice to Plaintiffs arising from Waste Connections Defendants designation of a new expert to rebut Plaintiffs' experts' new evidence. If Plaintiffs make no new expert disclosures and do not substantively change or expand their experts' opinions related to hydrogen sulfide generation, then the Waste Connections Defendants agree to cabin Dr. Shaha's testimony to opinions that are "substantively similar" to Mr. Marshall's, consistent with the limitations imposed by other federal district courts for substituting experts.

## VI.    Conclusion

For these reasons, the Court should grant the Waste Connections Defendants' motion and uphold their timely designation of expert Bishow Shaha, Ph.D.

Respectfully submitted,

LISKOW & LEWIS, APLC

   */s/ Michael C. Mims*
Michael C. Mims (#33991)
Charles B. Wilmore (#28812)
Brady M. Hadden (#37708)
J. Hunter Curtis (#39150)
Alex Andrade (#38659)
Cecilia Vazquez (#39373)
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone:  (504) 581-7979
Telefax: (504) 556-4108

AND

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400
James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000
Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Louisiana Regional Landfill
Company, Waste Connections Bayou, Inc.,
and Waste Connections US, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on December 4, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_/s/ Michael C. Mims_____
OF COUNSEL