## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**<br>        **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-7889**<br>        **c/w 18-8071,**<br>        **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,**<br>        **Defendants** | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>        **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-11133**<br>        **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>        **Defendants** | **SECTION: "E" (5)** |

*Applies to: All Cases*

### ORDER AND REASONS

Before the Court are two contested discovery motions: Plaintiffs' Motion to Compel Discovery Against the Waste Connections Defendants (hereinafter "Motion to Compel")[1] and a Motion to Quash the *Addison* Plaintiffs' Subpoena to SCS Engineers (hereinafter "Motion to Quash") filed by Defendants Waste Connections Bayou, Inc., Waste Connections US, Inc., and Louisiana Regional Landfill Company (collectively the "Waste

---

[1] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). Defendants opposed. R. Doc. 329 (18-7889); R. Doc. 383 (19-11133). Plaintiffs replied. R. Doc. 389 (19-11133). Plaintiffs filed a supplemental memorandum. R. Doc. 393 (19-11133). Defendants filed a supplemental reply. R. Doc. 394 (19-11133).

Connections Defendants" or "Defendants").[2] Presently, the only outstanding issues in these contested motions relate to documents involving SCS Engineers,[3] which are categorized into nine "Categories of Work" as identified in the Waste Connections Defendants' December 1, 2023 letter to the Court.[4] This Order concerns certain documents related to Category #5, onsite landfill surface pollutant concentration reports and accompanying memorandum,[5] and Category #7, the Jefferson Parish Landfill Special Waste Odor Evaluation,[6] as identified in Attachment A to this Order and Reasons.

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. Having previously stated the facts of this case in detail, the Court will repeat only the facts relevant to the instant motion.

The Court held a trial on general causation, which took place on January 31, February 1-4, and February 22-25, 2022.[7] On November 29, 2022, this Court issued its Findings of Fact and Conclusions of Law as to general causation, determining odors and

---

[2] R. Doc. 368 (19-11133). Plaintiffs filed a Motion to Enforce Subpoena, which the Court construes as an opposition to the Motion to Quash. R. Doc. 381 (19-11133). Defendants filed a Reply Memorandum in Support of Their Motion to Quash. R. Doc. 388 (19-11133). *See also* Subpoena to Produce Documents Issued to SCS Engineers, R. Doc. 381-5 (19-11133).

[3] *See* Requests for Production 58-66, *Addison* Plaintiffs' Second Set of Requests for Production of Documents to the Waste Connections Defendants, R. Doc. 329-2 at 8, 12 (18-7889).

[4] *See* Appendix A to Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to the Court (Dec. 1, 2023). The "Chart Showing Status of Production" attached to the December 1, 2023 Letter contained comments from both the Waste Connections Defendants and Plaintiffs. As depicted in Attachment A, the Court assigned numbers to the Categories of Work for ease of reference.

[5] Category #5 concerns documents related to Two onsite landfill surface pollutant concentration reports and accompanying memorandum: (a) Surface Pollutant Concentration Measurements at the Jefferson Parish Landfill–Data Report, dated May 31, 2019 (WC_JPLF_00210878); (b) Surface Pollutant Concentration Measurements at the Jefferson Parish Landfill--Supplemental Data Report, dated July 10, 2019 (WC_JPLF_00210732); and (c) Memorandum – Surface Pollutant Concentration Measurements at the Jefferson Parish Landfill, dated April 23, 2021 (WC_JPLF_00403662). *See* Attachment A.

[6] Category #7 concerns documents related to the Jefferson Parish Landfill Special Waste Odor Evaluation, dated September 24, 2019. *See* Attachment A.

[7] R. Docs. 243-247, 256-259 (18-7889); R. Docs. 274-278, 286-289 (19-11133).

gases were emitted by the Landfill;[8] the emissions of gases and odors from the Landfill occurred during the relevant time period;[9] and exposure to the odors and gases emitted by the Landfill at a level of five ppb for thirty minutes was capable of producing the injuries claimed by any one or more of the plaintiffs.[10] Having found for Plaintiffs at the general causation stage, the Court decided a trial should be conducted with a select number of *Addison* plaintiffs (hereinafter "the first *Addison* trial").

The Court set the first *Addison* trial to begin on September 5, 2023,[11] which has now been continued to August 5, 2024.[12] On October 31, 2023, the Court entered its Twelfth Case Management Order governing the discovery, pretrial, and trial dates leading up to the first *Addison* trial.[13] During discovery, Plaintiffs filed the instant Motion to Compel[14] and Motion to Enforce Subpoena to SCS Engineers,[15] and the Waste Connections Defendants filed the instant Motion to Quash.[16] To date, the Court has issued several orders resolving issues related to these contested discovery motions.[17] On October 23, 2023, the Court ordered the Waste Connections Defendants to produce privilege logs containing descriptions of documents and privilege invoked for documents subject to Plaintiffs' subpoena involving SCS Engineers that the Waste Connections Defendants withheld.[18] The Court further ordered the Waste Connections Defendants to produce to the Court all documents referenced in the privilege logs for in camera review.[19] Plaintiffs

---

[8] R. Doc. 323 at p. 5 (19-11133).
[9] *Id.* at p. 26.
[10] *Id.* at p. 27.
[11] *Id.*
[12] R. Doc. 381 (18-7889); R. Doc. 429 (19-11133).
[13] *Id.*
[14] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133).
[15] R. Doc. 381 (19-11133).
[16] R. Doc. 368 (19-11133).
[17] *See* R. Doc. 338 (18-7889); R. Doc. 402 (19-11133); R. Doc. 344 (18-7889); R. Doc. 417 (19-11133); R. Doc 382 (18-7889); R. Doc. 428 (19-11133).
[18] R. Doc. 382 (18-7889); R. Doc. 428 (19-11133).
[19] R. Doc. 384 (18-7889); R. Doc. 433 (19-11133).

objected to privileges asserted in the privilege log produced by Waste Connections Defendants on November 13, 2023 (the "November 13 Privilege Log"), which involved the documents at issue in Plaintiffs' Motion to Compel.[20] The Defendants also produced a privilege log on December 4, 2023 (the "December 4 Privilege Log"), which involves documents at issue in Defendants' Motion to Quash.[21]

## **LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[22] "Information within the scope of discovery need not be admissible in evidence to be discovered."[23] At the discovery stage, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in that case."[24] "[T]he threshold for relevance at the discovery stage [under Rule 26(b) of the Federal Rules of Civil Procedure] is lower than at the trial stage" under Federal Rule of Evidence 401.[25] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[26] If relevance is in doubt, the court should be permissive in allowing discovery.[27] This broad scope is necessary given the nature of litigation, where determinations of discoverability are made well in advance of trial.[28]

---

[20] R. Doc. 385 (18-7889); R. Doc. 436 (19-11133).

[21] R. Doc. 368 (19-11133).

[22] FED. R. CIV. PRO. 26(b); *see also Miller v. Sam Houston Univ.*, 986 F.3d 880, 891 (5th Cir. 2021).

[23] *Id.*

[24] *Stevenson v. Benjamin*, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).

[25] *Id.*

[26] *Dotson v. Edmonson*, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005)).

[27] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 5/11/2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

[28] *Rangel*, 274 F.R.D. at 590 n.5.

Likewise, "broad discretion is afforded to the district court when deciding discovery matters,"[29] and the Court must determine the scope of discovery "in light of the relevant facts of the particular case."[30]

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[31] discovery does have "'ultimate and necessary boundaries.'"[32] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope of Rule 26(b)(1)."[33] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[34] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[35]

"The party filing the motion to compel bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."[36] "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party

---

[29] *Miller*, 986 F.3d at 891 (citing *Crosby v. la. Health Serv. & Indemnity Co.*, 647 F.3d 258, 261 (5th Cir. 2011)).

[30] *See Conboy v. Edward D. Jones & Co.*, 140 F. App'x 510, 517 (5th Cir. 2005).

[31] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).

[32] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

[33] Fed. R. Civ. Pro. 26(b)(2)(C)(i)–(iii).

[34] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

[35] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. 7/14/2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.).

[36] *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).

resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[37] Further, a party may discover "facts known or opinions held" by a non-testifying expert retained "in anticipation of litigation . . ., only upon showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[38]

## LAW AND ANALYSIS

In their motion, Plaintiffs seek to compel discovery of hundreds of documents.[39] After discussions with the parties, the Court categorizes documents pertaining to the outstanding discovery requests into nine categories. This Order and Reasons addresses discovery issues involving documents concerning Dawn Thibodaux, Matt Crockett, and David Jones that relate to Categories #5 and #7 as identified in Attachment A. Defendants claim the relevant documents in the Privilege Logs they provided to the Court are properly withheld because the documents are privileged under either the work product doctrine, the attorney-client privilege, or both.[40] The Court addresses each argument in turn.

### I.     The Work Product Doctrine

Defendants argue the following documents in the November 13 Privilege Log, which relate to Categories #5 and #7 and concern Dawn Thibodaux, Matt Crockett, and David Jones, are privileged based on the work product doctrine: Entries 0520, 0521, 0524, 0525, 0526, 0528, 0531, 0532, 0533, 0534, 0535, 0536, 0537, 0539, 0540, 0545, 0546, 0547, 0548, 0549, 0550, 0551, 0557, and 0573.[41] Defendants further argue the following documents in the privilege log produced on December 4, 2023 (the "December

---

[37] *Id.*
[38] FED. R. CIV. PRO. 26(b)(4)(D).
[39] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133).
[40] R. Doc. 386 (18-7889); R. Doc. 438 (19-11133).
[41] *See* Attachment A.

4 Privilege Log"), which relate to Categories #5 and #7 and concern Dawn Thibodaux, Matt Crockett, and David Jones, are privileged based on the work product doctrine: Documents 0288, 0290, 0292, 0293, 0294, 0303, 0304, 0339, 0341, 0379, 0380, 0384, 0385, 0387, 0411, 0423, 0425, 0451, 0452, 0453, and 0494.[42]

Plaintiffs argue the documents at issue fall within the exception to Rule 26(b)(4)(D), which renders the privileged work product of consulting experts discoverable when it is impracticable for a party to obtain facts or opinions on the same subject by other means.[43] In opposition, Defendants attest that their claim of privilege is bolstered by the fact that nearly all of the withheld documents were created after the start of litigation[44] and assert that Plaintiffs fail to establish "'exceptional circumstances' necessary to discover these privileged communications."[45]

"Federal law governs . . . parties' assertions that certain information is protected from disclosure by the work product doctrine."[46] "The work product doctrine is not an umbrella that shades all materials prepared by a lawyer. The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation."[47] The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[48] The doctrine does not place work product outside the scope of discovery, but instead "creates a form of qualified immunity from discovery" for materials

---

[42] *See id.*
[43] *See* R. Doc. 385 at p. 2 (18-7889).
[44] R. Doc. 329 at p. 11.
[45] R. Doc. 438 at (1819-11133).
[46] *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, at *5 (E.D. La. June 18, 2003) (citing *Naquin v. Unocal Corp.*, 2002 WL 1837838, at *2 (E.D. La. 2002)).
[47] *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).
[48] FED. R. CIV. P. 26(b)(3)(A).

prepared in anticipation of litigation.[49] "Rule 26(b)(3) protects documents prepared by a party's agent from discovery, as long as they were prepared in anticipation of litigation."[50]

The level of protection depends on whether the materials prepared in anticipation of litigation constitute "opinion" work product or non-opinion, "fact" work product.[51] The "mental impressions, conclusions, opinions or legal theories of an attorney" are opinion work product subject to a higher showing for production.[52] "Fact work product, on the other hand, is any material 'prepared in anticipation of litigation or for trial by or for another party or its representative' under Rule 26(b)(3)(A) but 'not the "mental impressions, conclusions, opinions or legal theories of an attorney"' under subsection (b)(3)(B)."[53] A party seeking discovery of ordinary fact work product must make a showing of "substantial need and the inability to obtain the substantial equivalent elsewhere."[54] "However, absent a showing of *compelling* need and the inability to discover the substantial equivalent by other means, work product evidencing mental impressions of counsel, conclusions, opinions and legal theories of an attorney are not discoverable."[55]

The responding party seeking to withhold responsive documents or materials under the work product doctrine "must prove that each document it has withheld is privileged."[56] "Blanket assertions of privilege" are insufficient to carry a party's burden.[57] Defendants failed to carry their burden. Defendants argue *only* that their claim of privilege is *bolstered* by the fact that nearly all of the withheld documents were created

---

[49] *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993).
[50] *Southern Scrap Material*, 2003 WL 21474516, at *6.
[51] *See id,* at *7.
[52] *In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1240 (5th Cir. 1982).
[53] *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487 (W.D. Tex. 2020).
[54] *Southern Scrap Material*, 2003 WL 21474516, at *7, 13.
[55] *Id.* at *7.
[56] *Civic Center Site Development, LLC v. Certain Underwriters at Lloyd's London*, 2023 WL 5974843, at *3 (E.D. La. Sept. 14, 2023).
[57] *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981).

after the start of litigation.[58] While it may be true that the timing of the documents may tend to *bolster* an adequately asserted claim of privilege, the Court finds such a fact on its own is insufficient to establish documents are properly withheld under the work product doctrine.[59] Because Defendants provided only blanket assertions of work product protection, the Court finds Defendants have failed to carry their burden.[60] Additionally, having conducted in camera review, the Court finds that these documents are "fact" work product, which contain no "mental impressions, conclusions, opinions or legal theories of an attorney."[61] Plaintiffs demonstrate the requisite "substantial need" and "inability to discover the substantial equivalent elsewhere" to render these documents discoverable.[62] Further, to the extent these documents contain opinion work product, Plaintiffs demonstrate the requisite "compelling need and inability to discovery the substantial equivalent by other means."[63] Accordingly, Defendants' claims of privilege based on the work product doctrine with respect to the documents listed above are denied.

## II.    The Attorney-Client Privilege

Defendants withheld the following documents, which relate to Categories #5 and #7 and concern Dawn Thibodaux, Matt Crockett, and David Jones, on the basis that the attorney-client privilege protects them from discovery: Entries 0528 and 0573 in the

---

[58] R. Doc. 329 at p. 11.

[59] *See, e.g.*, *WSSA, LLC v. Safran*, No. 1:18-CV-2392, 2019 WL 5595825 (M.D. Penn. Oct. 30, 2019) (finding that, among other things, the fact that "many of the documents post-date . . . the date upon which [the defendant] was placed on notice of potential litigation . . . further bolsters their privileged status as records made in anticipation of litigation").

[60] Defendants assert only the work product doctrine, and not the attorney-client privilege, over the following documents in the November 13 Privilege Log: 0520, 0521, 0524, 0525, 0526, 0531, 0532, 0533, 0534, 0535, 0536, 0537, 0539, 0540, 0545, 0546, 0547, 0548, 0549, 0550, 0551, and 0557; and the following documents in the December 4 Privilege Log: 0292, 0293, 0294, 0303, 0304, 0339, 0341, 0379, 0380, 0384, 0385, 0387, 0411, 0423, 0425, 0451, 0452, 0453, and 0494. Accordingly, having found the work product doctrine inapplicable, Defendants must produce these documents to Plaintiffs unredacted and in full. As to the four remaining documents, unless they are subject to the attorney-client privilege as determined herein, the documents are subject to disclosure.

[61] *See In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d at 1240.

[62] *See Southern Scrap Material*, 2003 WL 21474516, at *7, 13.

[63] *See id.* at *7.

November 13 Privilege Log[64]  and entries 0288 and 0290 in the December 4 Privilege Log.[65] Defendants argue that attorney-client privilege shields these documents because they contain "privileged impressions" created "pursuant to [SCS Engineers'] retention by outside litigation counsel as a consulting expert."[66]

The work-product doctrine is distinct from and broader than the attorney-client privilege.[67] "[T]he work product privilege [exists] . . . to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent," whereas "[t]he attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship." [68]

"The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client."[69] "The purpose of the attorney-client privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[70] "For a communication to be protected under the privilege, the proponent 'must prove: (1) that . . . a confidential communication [was made]; (2) to a lawyer or his subordinate, (3) for the primary purpose of securing either a legal opinion or legal

---

[64] *See* Attachment A.
[65] *See id.*
[66] R. Doc. 438 (19-11133) at pp. 17-18.
[67] *See United States v. Nobles*, 422 U.S. 225, 238 (1975).
[68] *Shields v. Sturm, Ruger, & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).
[69] *Earl v. Boeing Co.*, 2021 WL 963405, at *2 (E.D. Tex. Mar. 15, 2021) (quoting *United States v. Mobil Corp.*, No. 4:19-cv-507, 149 F.R.D. 533, 536 (N.D. Tex. 1993)) (vacated in part, on other grounds, by *In re Boeing Co.*, No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021)).
[70] *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

services, or assistance in some legal proceeding.'"[71] "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential communications.'"[72] "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'apply only where necessary to achieve its purpose.'"[73] "Further, 'the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.'"[74]

"Application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'"[75] "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof.'"[76] "'Attorney-client privilege is not presumed'[77] . . . and 'ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.'"[78]

When a corporate setting is involved, courts have recognized the attorney-client privilege analysis "presents unique challenges."[79] In *Stoffels v. SBC Communications, Inc.*, the United States District Court for the Western District of Texas stated:

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The

---

[71] *Id.* (quoting *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)).
[72] *Id.* (quoting *O'Malley v. Pub. Belt R.R. Comm'n for City of New Orleans*, No. 17-4812, 2018 WL 814190, at *2 (E.D. La. Feb. 9, 2018)).
[73] *Id.* (quoting *BDO USA*, 876 F.3d at 695).
[74] *Id.* (quoting *Upjohn*, 449 U.S. at 395).
[75] *Id.* at *3 (quoting *In re Auclair*, 961 F.3d 65, 68 (5th Cir. 1992)).
[76] *Id.* (quoting *BDO USA*, 986 F.3d at 695).
[77] *Id.* (quoting *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986)).
[78] *Id.* (quoting *BDO USA*, 986 F.3d at 695).
[79] *Id.* at *4.

> critical inquiry is, therefore, whether any particular communication facilitated the rendition of *predominantly legal advice or services* to the client.[80]

"Even though this standard is 'time-consuming' and 'requires a document-by-document analysis,' it 'ensures a balance between forbidding a company from trying to cloak non-privileged communications with protection by unnecessarily sending them to attorneys and encouraging in-house counsel involvement early and often in corporate decision-making.'"[81]

"Legal advice, as contrasted with business advice, 'involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'"[82] "If advice offered by in-house counsel intertwines business and legal advice, attorney-client privilege protects the communication only if the legal advice predominates."[83] "Simply labeling communications as 'legal advice' is conclusory and insufficient to satisfy the privilege-proponent's burden."[84] Moreover, "[w]hen a corporation simultaneously sends communications to both lawyers and non-lawyers, . . . 'it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'"[85]

Having conducted in camera review, the Court denies Defendants' claims of privilege based on the attorney-client privilege for the documents related to Categories #5 and #7, which concern Dawn Thibodaux, Matt Crockett, and David Jones. "[T]he attorney-client privilege does not apply to every communication involving counsel," but

---

[80] *Id.* (quoting *Stoffels v. SBC Comms., Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)).
[81] *Id.* at *3 n.3 (quoting *Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?*, 16 STAN. J. L. BUS. & FIN. 288, 307 (2011)).
[82] *Id.* (quoting *BDO USA*, 856 F.3d at 365).
[83] *Id.* (quoting *Neuder v. Battelle Pac. Nw. Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000)).
[84] *Id.* (citing *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000)).
[85] *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 524 (E.D. La. 2021) (quoting *In re Vioxx Prod. Liability Lit.*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007)).

only those "communications made in confidence between a client and his lawyer for the purpose of obtaining legal advice."[86] Here, Defendants have not met the burden of demonstrating that the primary purpose of the four documents at issue were to obtain advice on specified legal issues as required for attorney-client privilege to attach.[87] Rather, the documents were addressed to both lawyers and non-lawyers for review, comment, and approval, which supports a finding that the primary purpose was not to obtain legal assistance. More specifically, the Court makes the following findings:

- Page 2 of entry 0573 in the November 13 Privilege Log contains legal advice. The remainder of entry 0573 does not contain communications made predominantly for the purpose of giving or obtaining legal advice or services and is therefore not subject to the attorney-client privilege. Accordingly, Defendants must produce the document to Plaintiffs but may redact page 2 prior to disclosure.

- Entry 0528 in the November 13 Privilege Log and entries 0288 and 0290 in the December 4 Privilege Log do not contain communications made predominantly for the purpose of giving or obtaining legal advice or services and are therefore not subject to the attorney-client privilege. Accordingly, the documents must be produced in full, without redactions.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART and DEFERRED IN PART**[88] as stated herein.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash is **DENIED IN PART and DEFERRED IN PART**.[89]

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce the following documents in full, without redactions, by **January 3, 2024**:

---

[86] *Tonto Management Co., Inc. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *9 (E.D. La. June 25, 2020).
[87] *See id.*
[88] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). The Court has ruled on the relevant documents involving Dawn Thibodaux, Matt Crockett, and David Jones listed in the November 13 and December 4 Privilege Logs in this Order. The Court defers ruling on the remaining issues raised in Plaintiffs' motion to compel at this time.
[89] R. Doc. 368 (19-11133).

- Entries 0520, 0521, 0524, 0525, 0526, 0528, 0531, 0532, 0533, 0534, 0535, 0536, 0537, 0539, 0540, 0545, 0546, 0547, 0548, 0549, 0550, 0551, and 0557 in the November 13 Privilege Log; and

- Entries 0288, 0290, 0292, 0293, 0294, 0303, 0304, 0339, 0341, 0379, 0380, 0384, 0385, 0387, 0411, 0423, 0425, 0451, 0452, 0453, and 0494 in the December 4 Privilege Log.

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce Entry 0573 in the November 13 Privilege Log with the redaction of page 2 by **January 3, 2024**.

New Orleans, Louisiana, this 2nd day of January, 2024.


**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**