**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | **NO. 18-7889** |
| | **c/w 18-8071,** |
| **VERSUS** | **18-8218, 18-9312** |
| | |
| | **SECTION: "E"(5)** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** | |
| **Defendants.** | |
| | |
| *Related Case:* | |
| | |
| **FREDERICK ADDISION ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs,** | |
| | **NO. 19-11133** |
| **VERSUS** | |
| | **SECTION: "E"(5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| **Defendants.** | |
| | **JUDGE: Morgan** |
| | **MAGISTRATE JUDGE: North** |
| *Applies to: All Cases* | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**WASTE CONNECTIONS DEFENDANTS' MOTION FOR RECONSIDERATION**

## I. Introduction

Plaintiffs' opposition to the Waste Connections Defendants' Motion for Reconsideration recklessly speculates and baselessly accuses the Waste Connections Defendants of improper motives, in an attempt to discover protected communications between SCS Engineers (SCS) and outside counsel. The Waste Connections Defendants have been forthright in producing all available on-site data to Plaintiffs, in complying with the Court's multiple directives concerning the withheld SCS documents under tight deadlines, and in meeting their burden to demonstrate the privileges and protections for the two documents at issue in this motion:

WC_JPLF_SCS_PRIV_0288 and WC_JPLF_SCS_PRIV_0290. The facts supporting this motion are in the record and Plaintiffs' bootstrapping accusations of impropriety do not overcome the protections for communications between SCS and outside counsel.

Documents 288 and 290 were appropriately logged and contain detailed descriptions of potential assessments to support the Waste Connections Defendants' legal defense; these potential assessments are distinct from the generalized recommendations postulated by Plaintiffs' opposition. Plaintiffs' request to enter the site in December 2018 was denied as moot because the state court stayed the *Addison* case, and there was nothing stopping Plaintiffs from performing off-site sampling anywhere in Jefferson Parish (including directly offsite of the Landfill) or sampling at Plaintiffs' residences during this period, which their own expert asserted would be the best evidence of any impacts.[1] While Plaintiffs spent a week collecting samples from the site in November 2019, Plaintiffs have scarcely used the data they collected during their five-day site visit, nor have they relied on any of SCS's data for which they are seeking the underlying attorney-expert communications. The rhetoric and speculation of Plaintiffs' opposition makes clear that their efforts to compel disclosure are merely an inappropriate effort to get documents revealing defense counsel's mental impressions.

Plaintiffs have not explained any need for the information they seek, particularly where they have the available on-site data (including its underlying field information and the methods used to collect and analyze that data), and will have the opportunity to depose SCS. The Waste Connections Defendants respectfully request the Court to grant the motion for reconsideration and uphold the privileges and protections for Documents 288 and 290.

---

[1] It is also possible such assessments were performed and have not been disclosed in this litigation.

## II.  The Waste Connections Defendants have met their burden on this motion.

The Waste Connections Defendants have met their burden to demonstrate privilege for the SCS communications. Plaintiffs mis-state the record and the procedural history in this case to argue the Waste Connections Defendants have not met their burden to demonstrate the privilege for these documents.[2] The Waste Connections Defendants complied with all of the Court's directives with respect to the SCS documents, logging over 1,000 documents concerning SCS, providing all logged documents for *in camera* review, briefing the legal support for its privilege claims, and where possible producing documents to Plaintiffs. Plaintiffs now complain that the Waste Connections Defendants logged *too many* documents, produced *too many* pages of documents in response to their requests, and allege that the privilege log entries are insufficient. The scope of that production is the by-product of Plaintiffs' own far-reaching and unduly burdensome discovery demands.[3]

Plaintiffs incorrectly assert that details of Documents 288 and 290 were not disclosed before the instant motion. Pl. Br. at 5-6. But the "new" facts Plaintiffs highlight were disclosed in prior submissions, in the privilege log, or were not required to be disclosed. The Waste Connections Defendants' privilege log meets (and exceeds) the requirements of the federal rules, and to provide the additional details Plaintiffs demand would have been prohibitive due to the

---

[2] For example, the Court ordered the Waste Connections Defendants and SCS to log any withheld SCS communications in its minute entry from the October 23, 2023 status conference (18-cv-7889, R. Doc. 382; 19-cv-11133, R. Doc. 428). The Court additionally ordered that the Waste Connections Defendants and SCS provide the logged documents for *in camera* review, with staggered deadlines in response to the reasonable request by the Waste Connections Defendants for additional time to log the SCS documents due to their volume. (18-cv-7889, R. Doc. 384; 19-cv-11133, R. Doc. 433). The Court therefore requested the logged documents for in camera review *before* seeing the privilege log, contrary to Plaintiffs' suggestion.

[3] Plaintiffs again argue that there are no documents showing that John Perkey of Waste Connections hired or directed the hiring of SCS. There is no requirement that the direction to retain a consultant be in writing. Mr. Perkey already submitted an affidavit testifying to these facts and Plaintiffs will have the opportunity to depose Mr. Perkey this January.

number of documents that needed to be logged under demanding time constraints. For Documents 288 and 299, the privilege log appropriately described the nature of the communications and the participants involved, including outside counsel—any further details would have revealed the privileged or protected information. *See Benson v. Rosenthal,* 2016 WL 1046126, at *9 (E.D. La. Mar. 16, 2016) ("a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." (internal citations omitted)); Fed. R. Civ. P. 26(b)(5)(A)(ii) ("describe the nature of the . . . communications . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."). The Waste Connections Defendants further disclosed to Plaintiffs on December 7, 2023 that Documents 288 and 290 contained "non-produced work product or consulting expert communications" in a listing of the logged documents associated with each produced report or other SCS work product.[4]

| Fact | Record Support |
|------|----------------|
| Communication between SCS and outside counsel | Shown on privilege log and on the face of the document submitted for in camera review[5] |
| Date range of email chain | Date of most recent email in chain shown on privilege log and on the face of the document submitted for in camera review |
| Subject line of the email "Additional asks for JPL Defense (Attorney Client Privileged Communication)" | Not required to be disclosed under Fed. R. Civ. P. 26(b)(5)(A)(ii); shown on the face of the document submitted for in camera review |
| Communication between Megan Brillault and Tom Rappolt | Shown on privilege log and on the face of the document submitted for in camera review |

---

[4] A copy of the list provided to Plaintiffs on December 7, 2023 is annexed to the Declaration of Megan Brillault as Exhibit A.

[5] Plaintiffs continue to overstate the importance of "copy recipients" versus direct recipients, which does not reflect the reality of email chains that embody conversations among multiple parties regardless of whether their email addresses are entered on the "to" or "cc" line.

| Fact | Record Support |
|---|---|
| Inclusion of Jeff Marshall and Matt Crockett | Shown on privilege log and on the face of the document submitted for in camera review |
| Description of proposals of potential assessments | The general nature of the withheld document is sufficient, and the email chains at Document 288 and 290 are principally related to the March 2019 sampling and special waste odor evaluation (see *Benson,* 2016 WL 1046126, at *9); shown on the face of the document submitted for in camera review and contained in prior in camera submissions to the Court; included in December 7, 2023 list to Plaintiffs of documents containing "non-produced work product or consulting expert communications" |

The recommendations contained at the end of the SCS report annexed to Mr. Rappolt's state court affidavit do not change the need to protect Documents 288 and 290. These summary recommendations partially overlap with but do not reflect the detailed proposal in the attachment to Document 288 and referred to in the email chains at Documents 288 and 290, which are dated months after SCS's October 2018 report. Plaintiffs can question SCS with respect to these (or any other) proposed tasks.[6]

### III.  The Waste Connections Defendants' disclosure of certain reports does not waive the applicable privileges.

As set forth in the Waste Connections Defendants' reply memorandum on the Motion to Quash the SCS Subpoena, the disclosure of certain SCS reports does not result in subject matter

---

[6] The Waste Connections Defendants reserve the right to object to any other questions concerning SCS's discussions with counsel about these tasks or directives SCS may have received from counsel with respect to these tasks.

waiver.[7] The Waste Connections Defendants disclosed the on-site data in good faith to make the data available to all parties, and due to the likelihood the Court would find exceptional circumstances requiring disclosure. Plaintiffs rely on the distinguishable case of *In re Application of Chevron Corp. v. 3TM Consulting, LLC*, No. MC H-10-134, 2011 WL 13135155 (S.D. Tex. Jan. 10, 2011) to assert that if a consulting expert's data is provided to a testifying expert, subject matter privilege is waived. The *3TM Consulting* court allowed discovery based on the facts that the consulting expert had ghost-written large portions of a court-appointed expert's report, signaling potential collusion and improper influence of the court-appointed expert. That has no analog here. The Waste Connections Defendants have been transparent in producing SCS's data reports, and the limited analysis by both parties' testifying experts of that data has been transparent—and no expert has relied on SCS's analysis outside of the data reports. While SCS's data has been cited in some of the testifying expert reports as an ancillary reference, it is in no way comparable to the ghost writing and potential collusion in *3TM Consulting*.

## IV.  The Waste Connections Defendants' opposition to Plaintiffs' 2018 motion for expedited discovery does not provide a basis for disclosure.

The Waste Connections Defendants and its agents have never engaged in the manipulation of evidence in this case. The Waste Connections Defendants also strongly object to Plaintiffs' baseless and careless accusations that the Waste Connections Defendants have misrepresented anything to any party. Disagreement with a party's position does not mean the other party has "lied" or mispresented facts. Plaintiffs' unsupported accusations of impropriety, based only on speculation, are inconsistent with the rules governing representations to the Court under Fed. R. Civ. Proc. 11(b), and Plaintiffs routinely take liberties with the record. For instance, Plaintiffs

---

[7] Waste Connections Defendants' Reply Memorandum on Motion to Quash SCS Subpoena at § 2 (19-cv-11133, R. Doc. 388).

represent to the Court that the "record of this case shows" that odor complaints stem directly from the spent lime waste disposed at the Landfill. See Pl. Br. at 11. Plaintiffs' conclusory assertions on this point rely entirely on the opinions of their General Causation experts Dr. Jaana Pietari and Jose Sananes, P.E, which the Court did not adopt, so the "record of this case" does not point to spent lime as the source of any off-site odors.[8] Moreover, Plaintiffs omit from this assertion the fact that an LDEQ inspector recently testified that there was nothing improper about the waste being accepted at the Landfill, directly contradicting Plaintiffs' argument. Plaintiffs have also repeatedly misrepresented to the Court and several witnesses the scope of Massachusetts' ban on the disposal of recyclable, clean gypsum wallboard, calling it a wholesale ban on the disposal of gypsum in municipal solid waste landfills.[9]

Plaintiffs also mischaracterize Defendants' joint opposition to the *Addison* Plaintiffs' request for accelerated discovery at the site in December 2018.[10] The state court denied the *Addison* Plaintiffs' request to access the site as moot after granting Defendants' exception of *lis pendens*, staying the *Addison* case due to the pending *Ictech-Bendeck* class action in federal court.[11] The *Addison* Plaintiffs' motion for expedited discovery was filed only one week after the *Addison* action was commenced, before an answer had been filed in any of the pending cases, and sought

---

[8] The Court did not adopt Dr. Pietari's or Mr. Sananes' opinions in its decision on the General Causation trial (*see* 19-cv-11133, R. Doc. 323).

[9] See Massachusetts Dept. of Envtl. Prot., *Revised Guidance for Solid Waste Handling and Disposal Facilities on Compliance with MassDEP's Waste Bans* (October 2021) (discussing ban of "Clean gypsum wallboard"), available at https://www.mass.gov/doc/waste-ban-guidance-for-operators-of-solid-waste-facilities-october-2021/download. Plaintiffs' counsel recently asked Matt Crockett of Waste Connections whether he was "aware Massachusetts has banned the disposal of gypsum in municipal solid waste landfills for over a decade?" The plain terms of the ban contradict this representation. This quotation is based on a rough deposition transcript, but we can provide excerpts from the final transcript once it is available.

[10] The *Ictech-Bendeck* Plaintiffs did not seek to access the site during this period.

[11] February 6, 2019 Judgment in *Frederick Addison, et al. v. La. Regional Landfill Co., et al.* (24th JDC), 19-cv-11133, R. Doc. 1-6 at 421-22.

access to the Landfill immediately before a holiday and with no sampling or safety plan, presenting safety and site disruption issues, while acknowledging that the best evidence would be data from Plaintiffs' own properties. At the time, LDEQ was onsite nearly every day collecting data and making observations, which data and information Plaintiffs have relied on—while largely ignoring SCS's more thorough data. Only after this Court's jurisdiction was clear did the Court direct the parties to hold a Rule 26(f) conference and directed that the Plaintiffs' site inspection be scheduled for October 2019.[12] Defendants complied with that planning and cooperated in arranging Plaintiffs' access to the site.  After Plaintiffs postponed the site inspection as a result of concerns about weather forecasts, the site inspection took place during the week of November 4, 2019. Plaintiffs were always able to conduct off-site sampling or air monitoring at Plaintiffs' residences or elsewhere within Jefferson Parish (including directly offsite of the Landfill), which they admit would be the best available evidence but did not do.

## CONCLUSION

The Waste Connections Defendants' communications with its consulting expert about potential assessments and litigation priorities should not be produced because of Plaintiffs' speculations about nefarious motives, and the Court should protect frank communications among counsel and consulting experts regarding strategic and legal decisions that are made in complex litigation. The Waste Connections Defendants respectfully request the Court reconsider its January 2 Order requiring disclosure of WC_JPLF_SCS_PRIV_0288 and WC_JPLF_SCS_PRIV_0290.

---

[12] 19-cv-11133, R. Doc. 71.

Respectfully submitted,

BEVERIDGE & DIAMOND, P.C.

By: ___/s/ Megan R. Brillault___
       Megan R. Brillault (*pro hac vice*)
       Michael G. Murphy (*pro hac vice*)
       John H. Paul (*pro hac vice*)
       Katelyn E. Ciolino (*pro hac vice*)
       Katrina M. Krebs (*pro hac vice*)
       825 Third Avenue, 16th Floor
       New York, NY 10022
       (212) 702-5400

       James B. Slaughter (*pro hac vice*)
       1900 N Street, NW, Suite 100
       Washington, DC 20036
       (202) 789-6000

       Michael F. Vitris (*pro hac vice*)
       400 W. 15th Street, Suite 1410
       Austin, TX 78701
       (512) 391-8035

       LISKOW & LEWIS, APLC

       Michael C. Mims (#33991)
       Charles B. Wilmore (#28812)
       J. Hunter Curtis (#39150)
       Alec Andrade (#38659)
       Cecilia Vazquez Wilson (#39373)
       701 Poydras Street, Suite 5000
       New Orleans, Louisiana 70139
       (504) 581-7979

       *Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed on January 9, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

____/s/ Megan R. Brillault_____
OF COUNSEL
