## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**     **Plaintiff** | **CIVIL ACTION** |
| | **NO. 18-7889** |
| | **c/w 18-8071,** |
| **VERSUS** | **18-8218, 18-9312** |
| | |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,**     **Defendants** | **SECTION: "E" (5)** |
| | |
| | **JUDGE: Morgan** |
| | **MAGISTRATE JUDGE: North** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS

**NOW INTO COURT**, through undersigned counsel, come the *Ictech-Bendeck* Class Plaintiffs, Elias Ictech-Bendeck, Mona Bernard, Larry Bernard, Nicole Landry-Boudreaux, and Savannah Thompson, and proposed class representatives, Ophelia Walker, Ann Williams, Kayla Steele, Robyn Crossman, and Phil Adams (hereinafter sometimes collectively referred to as "Plaintiffs" or "Proposed Class Representatives"), who hereby oppose the Motion to Compel Responses to Discovery Requests filed by Defendants on December 29, 2023 (18-7889, R. Doc. 396), to wit:

## INTRODUCTION

By filing their Motion to Compel, Defendants, again, waste Plaintiffs' precious time and resources on confounding arguments that misstate case law in an effort to force Plaintiffs to produce irrelevant documents in furtherance of their fishing expedition.

## RELEVANT BACKGROUND

Having previously stated the facts of this case in detail, Plaintiffs will make known only the facts relevant to this motion.  Relative to this filing, Defendants served two sets of RFPs and Plaintiffs responded to both with timely objections. A meet and confer was held August 30, 2023 and some of the issues were able to be ironed out while others were not.  The basis of their Motion to Compel is regarding the issues that could not be resolved: (1) not producing the Proposed Class Representatives' fee agreements, (2) Plaintiffs' refusal to respond to RFP Nos. 1-12, (3) "subject to and without waiving" language in RFPs, and (4) allegedly "deficient privilege log."

## LEGAL STANDARD – DISCOVERY

At the discovery stage, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in that case."[1]

Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[2]

This broad scope is necessary given the nature of litigation, where determinations of discoverability are made well in advance of trial.[3]  Likewise, "broad discretion is afforded to the

---

[1] *Stevenson v. Benjamin*, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).

[2] *Dotson v. Edmonson*, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467,470 (N.D. Tex. 2/4/2005)).

[3] *Rangel*, 274 F.R.D. at 590 n.5.

district court when deciding discovery matters,"[4] and the Court must determine the scope of discovery "in light of the relevant facts of the particular case."[5]

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[6] discovery does have "'ultimate and necessary boundaries.'"[7] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope of Rule 26(b)(1)."[8] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[9] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[10]

---

[4] *Miller*, 986 F.3d at 891 (citing *Crosby v. la. Health Serv. & Indemnity Co.*, 647 F.3d 258, 261 (5th Cir. 2011)).

[5] See *Conboy v. Edward D. Jones & Co.*, 140 F. App'x 510, 517 (5th Cir. 2005).

[6] *Herbert v. Lando*, 441 U.S. 153,176 (1979) (citations omitted).

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

[8] FED. R. CIV. PRO. 26(b)(2)(C)(i)-(iii).

[9] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

[10] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. 7/14/2017) (citations omitted); see also *Crosby*, 647 F.3d at 264; *GanpaJv. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.).

"The party filing the motion to compel bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."[11]  "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[12]

## FEE AGREEMENTS

Defendants have failed to show the relevance of the Proposed Class Representatives' fee agreements to class certification discovery. Respectfully, this Honorable Court should decline Defendants' request to embark on a fishing expedition.

Defendants state, in a conclusory fashion, that the "proposed class representatives' fee agreements are relevant here to assessing the adequacy of representation."  Memo at p. 6 (Page 10 of 20). Defendants only offer two purported reasons as to why the fee agreements are relevant to adequacy of representation: (1) a potential (unarticulated) conflict due to Proposed Class Representatives being represented by different proposed class counsel and (2) the possible existence of incentive agreements. Plaintiffs address each in turn below.

Noting that certain firms represent certain Proposed Class Representatives, Defendants claim, without support or citation, that "[t]he fee agreements are thus essential to understanding which firms represent each of the proposed class representatives and assessing the potential conflicts that may arise between proposed class representatives represented by different attorneys or from the appointment of multiple class counsel." Doc. 396-1 at p. 7 (Page 11 of 20).

---

[11] Doc. 397 at p. 5-6 citing *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).

[12] Id.

At the outset, Defendants have failed to even suggest how this arrangement – where some firms represent some class representatives – could create any potential conflict as it pertains to adequacy of representation. Having failed to articulate how this could be considered a potential conflict that speaks to adequacy of representation, Defendants have failed to show the fee agreements are relevant.

Moreover, Defendants do not need the fee agreements to understand which firms represent each of the Proposed Class Representatives. As for the named Plaintiffs, Defendants have long been aware of which firms represent which plaintiffs since the filing of the four separate class action lawsuits which were later consolidated per this Court's order years ago. As for the other proposed class representatives (and the named Plaintiffs), Defendants have had the opportunity to ask (and for some, have asked) clarifying questions about which attorneys/firms represent them. Defendants will have that same opportunity when the last Proposed Class Representative, Phil Adams, sits for his deposition on Thursday, January 11, 2024. Defendants' claim that the production of the fee agreements is "essential" to potential conflicts – which they have not even attempted to articulate – rings hollow. Defendants' failure to explain how this arrangement could lead to a potential conflict of interest confirms this request is nothing more than a fishing expedition.

Defendants, presumably in reliance upon the U.S. Ninth Circuit's decision in *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009), also claim that "[t]he fee agreements also would shed light on any fee incentives for proposed class representatives." Doc. 396-1 at p. 7 (Page 11 of 20). Defendants' argument is based on a misunderstanding of the holding in *Rodriguez*. The U.S. Ninth Circuit did not broadly conclude that fee agreements are always "plainly relevant" to class certification discovery.

Defendants' broad interpretation of *Rodriguez* has been soundly rejected by various federal district courts:

> Defendants suggest that *Rodriguez* establishes that retainer agreements are always discoverable at the class certification stage, even without any indication that there exists any unusual incentive structure or conflict of interest. (Joint Stip. at 6-7.) However, this reading of *Rodriguez* is far too broad. *Rodriguez* held that an incentive structure should be disclosed if one exists, but it did not hold that retainer agreements are always discoverable in class action lawsuits. As one court recently held, retainer agreements should not be discoverable in class actions where there is no evidence of a suspect incentive structure or conflict of interest. *In re Google AdWords Litigation*, 2010 WL 4942516, at *4-5 (N.D. Cal. Nov. 12, 2010) ("While *Rodriguez* does state that the existence of an incentive agreement would be relevant at the class certification stage, the Court does not believe that it can be read to stand for the broad proposition that the fee arrangements between named plaintiffs and plaintiffs' counsel should be discoverable without any reason to think there is a potential conflict."); see also *In re Front Loading Washing Machine Class Action Litigation*, 2010 WL 3025141, at *4 (D.N.J. July 29, 2010) (denying motion to compel retainer agreements because they were not relevant or necessary and the requested information could be obtained through deposition); *Mitchell-Tracey v. United Gen'l Title. Ins. Co.*, 2006 WL 149105, at *1-3 (D. Md. Jan. 9, 2006) (finding fee arrangement documents irrelevant to class certification, reviewing cases, and characterizing defendant's relevance arguments as "bereft of any supporting authority (or basis in fact) and suggest[ive] of a fishing expedition that this court will not endorse.").

*Larsen v. Coldwell Banker Real Est. Corp.*, No. SACV1000401AGMLGX, 2011 WL 13131127, at *3 (C.D. Cal. Oct. 4, 2011).[13]

And Defendants have failed to articulate any reason why they believe such a potential conflict-producing incentive agreement exists here. *Larsen v. Coldwell Banker Real Est. Corp.*, 2011 WL 13131127, at *3 ("Defendants fail to articulate any reason to believe the retainer

---

[13] In *Larsen*, the court further rejected the defendants' reliance on *Porter v. Nationscredit Consumer Discount Co.*, 2004 WL 1753255, at *2 (E.D. Pa. July 8, 2004), finding "I agree with the reasoning of the majority of courts considering this issue and find that in light of the evidence before me, the documents requested in RFP No. 45 to be irrelevant and unlikely to lead to relevant evidence. See *Google AdWords*, 2010 WL 4942516, at *4-5; *Front Loading Washing Machine*, 2010 WL 3025141, at *4; *Mitchell-Tracey*, 2006 WL 149105, at *1-3." *Larsen v. Coldwell Banker Real Est. Corp.*, 2011 WL 13131127, at *3.

agreements will contain the type of agreements present in *Rodriguez*."); In re Google AdWords Litig., No. C08-03369 JW HRL, 2010 WL 4942516, at *5 (N.D. Cal. Nov. 12, 2010) ("At oral argument, Google failed to articulate how the relationships it cited are problematic. Indeed, after conceding that there is not a conflict simply because a plaintiff knows another plaintiff's counsel, Google said that it nevertheless should have the opportunity to check and see if there was a Rodriguez-type of situation here. But aside from the apparent friendship and professional relationships of some of the plaintiffs with one of the plaintiff's counsel, there is nothing to suggest that such a situation exists. The Court does not agree that Google's purely speculative inquiry serves to turn otherwise irrelevant documents into relevant ones.")

Moreover, Defendants here have had the opportunity to ask the Proposed Class Representatives about any possible incentive agreements during their depositions. However, to date, not one question has been asked of any Proposed Class Representative about the terms of their fee agreements. Notably, this failure occurred after Plaintiffs' counsel, during the relevant meet and confer, disputed Defendants' assertion that fee agreements are always relevant to adequacy of representation and expressly noted that case law provides that they can ask about the terms of their individual fee agreements during deposition. Defendants' failure to ask questions in deposition confirms that their attempt to lay eyes on the fee agreements is nothing more than a fishing expedition. See *In re Google AdWords Litig.*, No. C08-03369 JW HRL, 2010 WL 4942516, at *5 (N.D. Cal. Nov. 12, 2010) ("The Court does not agree that Google's purely speculative inquiry serves to turn otherwise irrelevant documents into relevant ones. And if that were not enough, Google's contention is also belied by the fact that it never followed up on these relationships when deposing Plaintiffs or asked about the terms of Plaintiffs' legal representation. Were it truly concerned with the relationships disclosed by Plaintiffs, presumably it would have

asked Plaintiffs to elaborate on these topics then. Without more, this Court does not believe that the documents requested by Google have any bearing on the certification of the class in this action.").

To be clear, no such incentive agreements exist here, let alone with a structure such as that found to be questionable in *Rodriguez*.[14] Not one of the fee agreements signed by the Proposed Class Representatives binds any proposed class counsel to apply for an incentive award. And should this Honorable Court desire, the undersigned will produce the fee agreements for an *in camera* review to confirm the accuracy of the foregoing representations.

## **RFP NOS. 1-12**

As an initial matter, Defendants' Motion to Compel does not recite each discovery request and response, verbatim.  Instead, Defendants combine their requests, and take liberties with the actual words in their requests and in Plaintiffs' responses.

Notwithstanding these procedural deficiencies, the Defendants' claim that RFP Nos. 1-12 "seek **basic facts** from the proposed class representatives that are clearly discoverable."  RFP No. 2 says, "All documents relating to your definition of the Class Area and its boundaries and composition."  RFP No. 3 says, "All documents relating to your contention that the proposed class is so numerous that joinder of all members is impracticable."

---

[14] At issue in *Rodriguez* were incentive agreements entered into between certain class counsel and certain class representatives which "obligated class counsel to seek payment for each of these five in an amount that slid with the end settlement or verdict amount: if the amount were greater than or equal to $500,000, class counsel would seek a $10,000 award for each of them; if it were $1.5 million or more, counsel would seek a $25,000 award; if it were $5 million or more, counsel would seek $50,000; and if it were $10 million or more, counsel would seek $75,000." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d at 957. The court found these to be problematic because "by tying their compensation—in advance—to a sliding scale based on the amount recovered, the incentive agreements disjoined the contingency financial interests of the contracting representatives from the class." *Id.* at 959.

Specific to RFP No. 1, Plaintiffs requested clarification from Defendants about what was meant by "documents that only apply to General Causation."[15]  Defendants responded that "Request No. 1 simply reflects Plaintiffs' continuing obligation to produce documents containing general causation information."[16]

During the General Causation phase, Defendants did not propound Discovery on Plaintiffs. Therefore, the Plaintiffs did not produce any documents during the General Causation phase, and the Plaintiffs still seek clarification about what documents Defendants believe only apply to General Causation, and their relevance to class certification.

Next, Defendants combine RFP Nos. 2-7 together and call them "contention RFPs." Contention RFPs can be used effectively to (1) identify and narrow the scope of unclear claims and (2) target claims that the propounding party reasonably suspects may be proper for dismissal. RFP Nos. 2-7 are not "contention RFPs"; instead, they are thinly veiled attempts to gain the trial strategy, work product, and mental impressions of the Plaintiffs' attorneys.  Taking the space in this opposition to address each of the RFP's is unnecessary, particularly when the Defendants lumped them all together. Nonetheless, a cursory look at the individual requests exposes the clear underlying intent of RFP Nos. 2-7, and they certainly do not seek "basic facts."

RFP No. 8 seeks a computation of the Plaintiffs' damages.  In the General Causation trial, the Plaintiffs established the various types of damages capable of being produced by odors which emanated from the JPLF. The combination of those damages is best expressed as nuisance

---

[15] See **Exhibit A**, October 9, 2023 email from Douglas Hammel to Katrina Krebs.

[16] See **Exhibit B**, October 17, 2023 email from Katrina Krebs to Douglas Hammel at paragraph beginning "Third…"

damages. Awards for damages are commonly reserved for the jury.[17] Following that, a mathematical computation of damages may fall within the purview of an expert's opinion.

In RFP Nos. 9-11 Defendants are seeking documents concerning any persons who experienced symptoms or illness caused by *on-site* exposure to Emissions at the JPLF, River Birch Landfill or Hwy 90 Construction and Demolition Debris Landfill.  By the time this Motion to Compel is considered by this Court, all of the Proposed Class Representatives' depositions will have been completed.  At their respective depositions, each Proposed Class Representative has been asked (or Defendants had the opportunity to ask each of them) what they know about each of the three landfills, and if they have ever visited any of the three landfills, and if they have, did they experience symptoms or illness from exposure to *on-site* odors – meaning while they were at those landfills.  Thus far, none of the named Class Representatives have testified to experiencing any illness or symptoms from exposure to odors while *on-site* at any of the three landfills.  Since none of them have experienced symptoms or illness from exposure to odors, *on-site*, clearly, there are no documents responsive to this request.  Defendants have already obtained the information they seek in RFP No. 11 as contemplated by FRCP 26, rendering this inquiry moot.

RFP No. 12 seeks "every other document relevant to your claims and proposed certification of the putative class."  In their Memorandum, Defendants describe their final RFP as a "catchall, so there are no surprises related to the documents the proposed class representatives intend to rely on in support of class certification or for their individual claims."[18]  Plaintiffs maintain their objections to this catch-all request as it is outside the scope of FRCP 26(b)(1), as well as being overly broad, and vague for lacking specificity.

---

[17] The *Addison* Plaintiffs are scheduled to proceed to trial and a computation of damages will be easily determinable.

[18] See RFP No. 12 and Defendants' Memorandum, page 10.

## "SUBJECT TO AND WITHOUT WAIVING"

Defendants claim that Plaintiffs' use of the phrase, "subject to and without waiving" before substantive responses to requests for production prevents Defendants from being able to determine if documents are being withheld or not. Further, Defendants claim that this Court has already determined that including this same language in the Defendants' responses was improper. Juxtaposing the responses, Defendants claim this ruling should be applied similarly to Plaintiffs' responses.

The fault in this "good for the goose, good for the gander" logic is that when the Court made this determination, Defendants had not produced a privilege log with their responses. Defendants omit the fact that they only produced a privilege log of the documents they were withholding under this Court's Order, and months after their Discovery responses were due. Therefore, Plaintiffs were left to guess whether documents were being withheld when Defendants said "subject to and without waiving" in their responses.

Unlike Defendants' concealment of documents from discovery, Plaintiffs produced a privilege log that lists the documents that are being withheld, and why. Admittedly, there is not much on the privilege log, mostly due to the lack of documentation associated with nuisance injuries, and Defendants' incongruent requests. This too was addressed in Plaintiffs' communication to the Defendants in the October 9, 2023 email.[19]

## PRIVILEGE LOG

The Rule governing information that must be disclosed in privilege logs is promulgated in F.R.C.P. 26(b)(5)(A), which states:

(5) Claiming Privilege or Protecting Trial-Preparation Materials.

---

[19] See **Exhibit A**.

(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Plaintiffs' privilege log comports with all of the above requirements.

Defendants claim they are unable to evaluate the first entry on the privilege log, as it states, "pre-suit" without the specific dates of communications between Elias Jorge Ictech-Bendeck (Mr. Bendeck) and one of his attorneys, Seth Schaumburg.

In support of their demand for Plaintiffs to provide the specific dates, Defendants cite *Dickie Brennan and Co., Inc. v. Lexington Insurance Co..*[20] That case involves a claim for business interruption insurance when a civil authority ordered an evacuation as a preventative measure. In that case, Lexington, the insurer, was claiming large portions of the claims file were privileged, and "the Privilege Log lacks ANY description of the documents withheld."[21] (*emphasis added*). The facts surrounding the privilege log in that case is distinguishable from ours, first, because a considerably more complicated block of information was being claimed as privileged. Then, in support of their claimed privilege, the Lexington Defendants submitted an affidavit that, according to Magistrate Judge Wilkinson, "makes only conclusory statements that the withheld documents are protected by the attorney-client privilege and/or were created in anticipation of litigation or for trial preparation. Aside from producing the documents themselves, defendant has not provided

---

[20] *Dickie Brennan and Co., Inc. v. Lexington Insurance Co.*, No. 09-cv-3866, 2010 WL 11538482 (E.D.La. Mar. 12, 2010).

[21] Id.

ANY evidence to support these statements." *(emphasis added)*. The log in that case was so deficient of basic information that the Plaintiffs could not assess the privilege.

Here, the privilege log complies with F.R.C.P. 26(b)(5)(A) and provides ample information to evaluate the attorney-client privilege, including; the names of the parties communicating, the form of the protected communication, what the protected communication is regarding, as well as the timeframe of the communications, although not the specific dates.  Without the specific dates, there is more than enough for Defendants to evaluate the privilege claim. Admittedly, Plaintiffs' counsel included this entry on the privilege log without being able to lay eyes on these communications. This was due to the fact that both parties could no longer access these communications on their mobile devices. Accordingly, Plaintiffs' counsel relied upon the representations of Messrs. Schaumburg and Bendeck as to the fact that these privileged communications took place and thus were included on the privilege log provided.

The crux of Defendants' argument is that Mr. Bendeck and Mr. Schaumburg are friends, and the Defendants do not know if the communications were made as friends or as protected attorney-client communications.  As evidence, Defendants include a photo from Dana Bendeck's (Mr. Bendeck's wife) Facebook page from 2014.  The photo captures Mr. Schaumburg sled riding.

Messrs. Bendeck and Schaumberg's relationship has existed for more than twenty-five years.[22]  However, at the time the odors from the JPLF invaded River Ridge in 2017, the attorney-client relationship between Mr. Schaumburg and Mr. Bendeck was well established.[23] Notwithstanding the fact that Mr. Bendeck and Mr. Schaumburg have known one another for over twenty-five years their communications regarding potential litigation from the odors is privileged.

---

[22] **Exhibit C**, Bendeck declaration at ¶1; **Exhibit D**, Schaumburg declaration at ¶1.

[23] **Exhibit C**, Bendeck declaration at ¶2-4; **Exhibit D**, Schaumburg declaration at ¶2-4.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully pray that this Honorable Court deny the

Defendants' Motion to Compel.

Dated:  January 9, 2024                    Respectfully Submitted:

<div style="margin-left: 40%;">

*/s/ Bruce C. Betzer*
Bruce C. Betzer (Bar No. 26800)
Jennifer S. Avallone (Bar No. 35613)
THE LAW OFFICE OF BRUCE C. BETZER
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
bruce@brucebetzer.com

Douglas S. Hammel (Bar No. 26915)
HAMMEL LAW FIRM, LLC
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
douglashammel@gmail.com

Scott R. Bickford (#1165)
srb@mbfirm.com
Lawrence J. Centola, Iii (#27402)
ljc@mbfirm.com
Jason Z. Landry (#33932)
jzl@mbfirm.com
Jeremy J. Landry (#30588)
jjl@mbfirm.com
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 – FACSIMILE

Anthony D. Irpino (#24727)
Louise C. Higgins (#31780)
Pearl Robertson (#34060)
Kacie F. Gray (#36476)
IRPINO, AVIN & HAWKINS
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501
airpino@irpinolaw.com
lhiggins@irpinolaw.com
probertson@irpinolaw.com

</div>

14

kgray@irpinolaw.com

John D. Sileo (La Bar No. 17797)
LAW OFFICE OF JOHN D. SILEO
320 N. Carrollton Ave.,
Suite 101 New Orleans, LA 70119
(504) 486-4343
jack@johnsileolaw.com
*Counsel for Ictech-Bendeck Plaintiffs*