**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE"** | **CIVIL ACTION** |
| **ICTECH-BENDECK,** | |
| **Plaintiff** | |
| | |
| | |
| **VERSUS** | **NO.  18-7889** |
| | **c/w 18-8071,** |
| | **18-8218, 18-9312** |
| | |
| **WASTE CONNECTIONS** | **SECTION: "E" (5)** |
| **BAYOU, INC., ET AL.,** | |
| **Defendants** | |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | |
| | |
| | |
| **VERSUS** | **NO.  19-11133** |
| | **c/w 19-14512** |
| | |
| **LOUISIANA REGIONAL** | **SECTION: "E" (5)** |
| **LANDFILL COMPANY, ET AL.,** | |
| **Defendants** | |

*Applies to: All Cases*

## ORDER AND REASONS

Before the Court are two contested discovery motions: Plaintiffs' Motion to Compel

Discovery Against the Waste Connections Defendants (hereinafter "Motion to Compel")[1]

and a Motion to Quash the *Addison* Plaintiffs' Subpoena to SCS Engineers (hereinafter

"Motion to Quash") filed by Defendants Waste Connections Bayou, Inc., Waste

Connections US, Inc., and Louisiana Regional Landfill Company (collectively the "Waste

---

[1] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). Defendants opposed. R. Doc. 329 (18-7889); R. Doc. 383 (19-11133). Plaintiffs replied. R. Doc. 389 (19-11133). Plaintiffs filed a supplemental memorandum. R. Doc. 393 (19-11133). Defendants filed a supplemental reply. R. Doc. 394 (19-11133).

Connections Defendants" or "Defendants").[2] Presently, the only outstanding issues in these contested motions relate to documents involving Stearns, Conrad & Schmidt, Consulting Engineers, Inc. ("SCS Engineers"),[3] which are categorized into nine "Categories of Work" as identified in Attachment A to the Court's Order and Reasons issued on January 12, 2024.[4] This Order and Reasons concerns certain documents related to Category #7, the Jefferson Parish Landfill Special Waste Odor Evaluation prepared by Jeffrey Marshall and James Walsh of SCS Engineers dated September 24, 2019 (the "2019 Special Waste Odor Evaluation"), and Category #9, the Expert Report of Jeffrey Marshall dated April 30, 2021 (the "2021 Marshall Expert Report").

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. The Court's Order and Reasons issued on January 2, 2024 (the "January 2 Order") presents background relevant to the discovery motions.[5]

## LEGAL STANDARD

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[6] "Information within the scope of discovery need not be admissible in evidence to be discovered."[7] At

---

[2] R. Doc. 368 (19-11133). Plaintiffs filed a Motion to Enforce Subpoena, which the Court construes as an opposition to the Motion to Quash. R. Doc. 381 (19-11133). Defendants filed a Reply Memorandum in Support of Their Motion to Quash. R. Doc. 388 (19-11133). *See also* Subpoena to Produce Documents Issued to SCS Engineers, R. Doc. 381-5 (19-11133).

[3] *See* Requests for Production 58-66, *Addison* Plaintiffs' Second Set of Requests for Production of Documents to the Waste Connections Defendants, R. Doc. 329-2 at pp. 4-7 (18-7889).

[4] *See* R. Doc. 406-1 (18-7889); R. Doc. 483-1 (19-11133). Attachment A is based on Attachment A to the Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to the Court (Dec. 1, 2023). The "Chart Showing Status of Production" attached to the December 1, 2023 Letter contained comments from both the Waste Connections Defendants and Plaintiffs. The Court assigned numbers to the Categories of Work for ease of reference.

[5] R. Doc. 397 (18-7889); R. Doc. 468 (19-11133).

[6] FED. R. CIV. P. 26(b); *see also Miller v. Sam Houston Univ.*, 986 F.3d 880, 891 (5th Cir. 2021).

[7] *Id.*

the discovery stage, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in that case."[8] "[T]he threshold for relevance at the discovery stage [under Rule 26(b) of the Federal Rules of Civil Procedure] is lower than at the trial stage" under Federal Rule of Evidence 401.[9] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[10] If relevance is in doubt, the court should be permissive in allowing discovery.[11] This broad scope is necessary given the nature of litigation, where determinations of discoverability are made well in advance of trial.[12] Likewise, "broad discretion is afforded to the district court when deciding discovery matters,"[13] and the Court must determine the scope of discovery "in light of the relevant facts of the particular case."[14]

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[15] discovery does have "'ultimate and necessary boundaries.'"[16] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other

---

[8] *Stevenson v. Benjamin*, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).

[9] *Id.*

[10] *Dotson v. Edmonson*, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005)).

[11] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 5/11/2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

[12] *Rangel*, 274 F.R.D. at 590 n.5.

[13] *Miller*, 986 F.3d at 891 (citing *Crosby v. la. Health Serv. & Indemnity Co.*, 647 F.3d 258, 261 (5th Cir. 2011)).

[14] *See Conboy v. Edward D. Jones & Co.*, 140 F. App'x 510, 517 (5th Cir. 2005).

[15] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).

[16] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope of Rule 26(b)(1)."[17] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[18] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[19]

"The party filing the motion to compel bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."[20] "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[21] "[T]he party asserting a privilege exemption from discovery . . . bears the burden of demonstrating the applicability of that privilege."[22] "Blanket assertions of privilege" are insufficient to carry a party's burden.[23]

## LAW AND ANALYSIS

In their motion, Plaintiffs seek to compel discovery of hundreds of documents.[24] After discussions with the parties, the Court categorized documents pertaining to the

---

[17] FED. R. CIV. P. 26(b)(2)(C)(i)–(iii).

[18] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

[19] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. 7/14/2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.).

[20] *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).

[21] *Id.*

[22] *Zahid Hotel Group, L.L.C. v. AmGUARD Insurance Co.*, 22-2792, 2023 WL 4353132, at *2 (E.D. La. July 5, 2023).

[23] *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981).

[24] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133).

outstanding discovery requests into nine categories. This Order and Reasons addresses discovery issues involving documents related to Categories #7 and #9.

The Court's January 2 Order resolved issues relating to all Category #7 documents included in the privilege log produced on November 13, 2023 (the "November 13 Privilege Log") and certain Category #7 documents included in the privilege log produced on December 4, 2023 (the "December 4 Privilege Log"), concerning Dawn Thibodeaux, Matt Crockett, and David Jones.[25] Accordingly, this Order and Reasons considers only the following documents related to Category #7 in the December 4 Privilege Log: Entries 0203, 0204, 0204_001, 0209, 0209_001, 0209_002, 0209_003, 0209_004, 0209_005, 0210, 0210_001, 0211, 0211_001, 0212, 0213, 0214, 0214_001, 0215, 0216, 0216_001, 0222, 0222_001, 0242, 0287, 0289, 0296, 0297, 0300, 0355, 0386, 0427, 0428, 0429, 0430, 0447, 0447_001, 0447_002, 0447_003, 0447_004, 0447_005, 0448, 0448_001, 0454, 0455, 0456, 0457, 0462, 0463, 0463_001, 0463_002, 0463_003, 0463_004, 0463_005, 0470, 0471, 0471_001, 0471_002, 0471_003, 0471_004, 0471_005, 0472, 0472_001, 0473, 0474, 0478, 0479, 0480, 0483, 0484, 0485, 0486, 0487, 0487_001, 0488, 0488_001, 0493, 0495, 0496, 0497, 0504, 0505, 0506, 0507, 0508, 0509, 0509_001, 0509_002, 0509_003, 0509_004, 0509_005, 0509_006, 0510, 0511, 0512, 0515, 0516, 0517, 0517_001, 0517_002, 0517_003, 0517_004, 0517_005, 0517_006, 0544, 0545, 0545_001, 0546, 0565, 0566, 0567,

---

[25] In the January 2 Order, the Court ordered the Waste Connections Defendants to produce the following documents related to Category #7 in full without redactions: 0520, 0521, 0524, 0525, 0526, 0531, 0532, 0533, 0534, 0535, 0536, 0537, 0539, 0540, 0545, 0546, 0547, 0548, 0549, 0550, 0551, and 0557 in November 13 Privilege Log; and 0288, 0290, 0292, 0293, 0294, 0303, 0304, 0339, 0341, 0379, 0380, 0384, 0385, 0387, 0411, 0423, 0451, 0452, 0453, and 0494 in the December 4 Privilege Log. R. Doc. 397 (18-7889); R. Doc. 468 (19-11133). The Court further ordered Defendants to produce entry 0573 in the November 13 Privilege Log with a limited redaction. *Id.* Defendants moved the Court to reconsider its order that Defendants produce in whole documents 0288, 0288_001, and 0290 as identified in the December 4 Privilege Log. R. Doc. 398 (18-7889); R. Doc. 470 (19-11133). The Court granted in part the Motion to Reconsider, determining Defendants need not produce documents 0288 (email only) and 0290, and allowing Defendants to redact portions of document 0288_001. *Id.*

5

0567_001, 0568, 0568_001, 0616, 0620, 0666, 0667, 0668, 0669, 0669_001, 0669_002, 0670, 0670_001, 0670_002, 0671, 0672, 0672_001, 0673, 0674, 0675, 0676, 0676_001, 0736, 0736_001, 0792, 0793, 0793_001, 0793_002, 0793_003, 0793_004, 0793_005, 0793_006, 0793_007, 0793_008, 0793_009, 0793_010, 0794, 0794_001, 0794_002, 0794_003, 0794_004, 0794_005, 0794_006, 0794_007, 0794_008, 0794_009, 0794_010, 0794_011, 0794_012, 0794_013, 0794_014, 0794_015, 0794_016, 0794_017, 0794_018, 0794_019, 0794_020, 0794_021, 0794_022, 0794_023, 0794_024, 0794_025, 0794_026, 0794_027, 0794_028, 0794_029, 0797, 0799, 0799_001, 0800, and 0805.[26] The privilege logs identify only one document related to Category #9, Entry 0808 in the December 4 Privilege Log, which the Court likewise considers in this Order and Reasons.[27]

Plaintiffs' discovery requests related to Category #9, the 2021 Marshall Expert Report, center on whether the reliance materials for Mr. Marshall's 2019 work as a consulting expert must be produced because they also are reliance materials for his 2021 report and testimony for Defendants at the General Causation hearing.[28] Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires parties to disclose the identity of any

---

[26] The Waste Connections Defendants argue all of these documents are privileged based on the work product doctrine and consulting expert work product privilege. Defendants further argue the following documents are properly withheld under the attorney-client privilege: 0212, 0213, 0214, 0214_001, 0215, 0216, 0216_001, 0222, 0222_001, 0287, 0289, 0296, 0297, 0300, 0355, 0386, 0470, 0473, 0480, 0483, 0484, 0485, 0486, 0487, 0487_001, 0488, 0488_001, 0493, 0497, 0506, 0511, 0515, 0517, 0517_001, 0517_002, 0517_003, 0517_004, 0517_005, 0517_006, 0544, 0545, 0545_001, 0546, 0567, 0567_001, 0568, 0568_001, 0616, 0620, 0666, 0667, 0668, 0669, 0669_001, 0669_002, 0671, 0672, 0672_001, 0673, 0674, 0675, 0676, 0676_001, 0736, 0736_001, 0793, 0793_001, 0793_002, 0793_003, 0793_004, 0793_005, 0793_006, 0793_007, 0793_008, 0793_009, 0793_010, 0794, 0794_001, 0794_002, 0794_003, 0794_004, 0794_005, 0794_006, 0794_007, 0794_008, 0794_009, 0794_010, 0794_011, 0794_012, 0794_013, 0794_014, 0794_015, 0794_016, 0794_017, 0794_018, 0794_019, 0794_020, 0794_021, 0794_022, 0794_023, 0794_024, 0794_025, 0794_026, 0794_027, 0794_028, 0794_029, 0797, 0799, 0799_001, 0800, and 0805.
[27] The Waste Connections Defendants argue document 0808 is privileged based on the work product doctrine, consulting expert work product privilege, and the attorney-client privilege.
[28] *See* R. Doc. 329-2, pp. 6-7 (18-7889); R. Doc. 385, pp. 16-18 (18-7889); R. Doc. 436 (19-11133).

testifying expert and provide other parties with a written report prepared by the expert containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.[29]

Plaintiffs concede Defendants provided the 2019 Special Waste Odor Evaluation and 2021 Marshall Expert Report, as well as reliance materials for Mr. Marshall's 2021 testifying expert report, but argue documents related to Mr. Marshall's work on the 2019 report as a consulting expert must likewise be disclosed.[30] Plaintiffs contend "once Mr. Marshall donned the hat of a testifying expert, Waste Connections waived any protection over materials provided to [him]" noting "the Case Management Order required Waste Connections to produce all documents and data considered by its experts in rendering their opinions."[31] Specifically, Plaintiffs argue documents underlying the 2019 Special Waste Odor Evaluation (Category #7) must be produced because "[i]n both [consulting and testifying expert] roles, Mr. Marshall's mission was [the same,] to determine whether materials disposed of . . . in the Landfill, and particularly the spent lime, could have been the source of the odors."[32] Thus, Plaintiffs contend, the documents underlying the 2019 Special Waste Odor Evaluation (Category #7) are improperly withheld reliance materials for the 2021 Marshall Expert Report (Category #9).[33]

---

[29] FED. R. CIV. P. 26(a)(2)(B).
[30] *See* R. Doc. 385, pp. 16-18 (18-7889); R. Doc. 436 (19-1133).
[31] *Id.*
[32] R. Doc. 385, p. 17 (18-7889); R. Doc. 436 (19-11133).
[33] *See id.*

Regarding Category #7, the Waste Connections Defendants argue "although after Mr. Marshall's expert deposition the Court ordered the disclosure of [the 2019 Special Waste Odor Evaluation], drafts of that report and related work product should remain privileged," because "Mr. Marshall prepared [the 2019 Special Waste Odor Evaluation] in his capacity as a non-testifying consulting expert prior to his designation as a testifying expert witness."[34] Regarding Category #9, Defendants attest "all of the underlying information that Mr. Marshall considered for the [2021 Marshall Expert] [R]eport . . . has been produced to Plaintiffs" and contend that the documents related to the 2019 Special Waste Odor Evaluation are properly withheld because Mr. Marshall did not cite that report in support of his expert report.[35]

## I.   The Work Product Doctrine and Consulting Expert Work Product Privilege

"Federal law governs . . . parties' assertions that certain information is protected from disclosure by the work product doctrine."[36] "The work product doctrine is not an umbrella that shades all materials prepared by a lawyer. The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation."[37] The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[38] "Excluded from the work-product doctrine are materials assembled in the ordinary course of business."[39] The doctrine does not place work product outside the

---

[34] R. Doc. 368-1, p. 19 (19-11133).
[35] R. Doc. 386 (18-7889); R. Doc. 438 (19-11133).
[36] *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, at *5 (E.D. La. June 18, 2003) (citing *Naquin v. Unocal Corp.*, 2002 WL 1837838, at *2 (E.D. La. 2002)).
[37] *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).
[38] Fed. R. Civ. P. 26(b)(3)(A).
[39] *Treece v. Perrier Condominium Owners Ass'n, Inc.*, 2019 WL 12289568, at *4 (E.D. La. Jun 20, 2019); *see also Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 562, 565 (N.D. Tex. 1988) ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.").

scope of discovery, but instead "creates a form of qualified immunity from discovery" for materials prepared in anticipation of litigation.[40] "Rule 26(b)(3) protects documents prepared by a party's agent from discovery, as long as they were prepared in anticipation of litigation."[41]

The level of protection depends on whether the materials prepared in anticipation of litigation constitute "opinion" work product or non-opinion, "fact" work product.[42] The "mental impressions, conclusions, opinions or legal theories of an attorney" are opinion work product subject to a higher showing for production.[43] "Fact work product, on the other hand, is any material 'prepared in anticipation of litigation or for trial by or for another party or its representative' under Rule 26(b)(3)(A) but 'not the "mental impressions, conclusions, opinions or legal theories of an attorney"' under subsection (b)(3)(B)."[44] A party seeking discovery of ordinary fact work product must make a showing of "substantial need and the inability to obtain the substantial equivalent elsewhere."[45] "However, absent a showing of *compelling* need and the inability to discover the substantial equivalent by other means, work product evidencing mental impressions of counsel, conclusions, opinions and legal theories of an attorney are not discoverable."[46]

Under Rule 26(b)(4)(D), a party may discover "facts known or opinions held" by a non-testifying expert retained "in anticipation of litigation . . . only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[47] The rule "creates a safe

---

[40] *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993).
[41] *Southern Scrap Material*, 2003 WL 21474516, at *6.
[42] *Id.* at *7.
[43] *In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1240 (5th Cir. 1982).
[44] *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487 (W.D. Tex. 2020).
[45] *Southern Scrap Material*, 2003 WL 21474516, at *7, 13.
[46] *Id.* at *7.
[47] FED. R. CIV. PRO. 26(b)(4)(D).

harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances."[48]

Rule 26(a)(2)(B) plainly requires a testifying expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them."[49] In this case, Mr. Marshall "dons and doffs the 'privileged hat' of a litigation consultant and the 'non-privileged hat' of the testifying witness."[50] The documents at issue related to Category #7 were clearly prepared by Mr. Marshall in his capacity as a consulting expert. However, whether the documents related to the 2019 Special Waste Odor Evaluation constitute materials on which Mr. Marshall relied in preparation of the 2021 Marshall Expert Report turns on "the extent of the *substantive* relationship between [Mr. Marshall's] two expert roles."[51]

"The scope of the privilege must be narrowly construed against the expert's proponent,"[52] and a court "should order disclosure when there is at least an ambiguity as to whether the materials informed the expert's opinion."[53] In other words, there is a presumption in favor of the party seeking discovery when "the [withheld documents concern] subject matter directly relate[d] to the opinion in the expert report, [because] there will be at least an ambiguity as to whether the materials informed the expert's opinion."[54] Courts considering this issue have consistently concluded "an expert's proponent still may assert a privilege over such materials, but only over those materials

---

[48] *Will Uptown, LLC v. B&P Restaurant Group, LLC*, 15-51, 2016 WL 4620200, at *5 (M.D. La. Sept. 6, 2016).
[49] FED. R. CIV. P. 26(a)(2)(B). "[T]he overwhelming majority of courts have taken the language of Rule 26 to mean that providing otherwise protected materials to a testifying expert who considers them in forming an expert opinion generally waives the protection, whether the expert actually relies on the information or not." *Monsanto Co. v. Aventis Cropscience, N.V.*, 214 F.R.D. 545, 546 (E.D. Mo. 2002).
[50] *See SEC v. Reyes*, 06-4435, 2007 WL 963422, at *1 (N.D. Cal. Mar. 30, 2007).
[51] *See Yeda Rsch. and Dev. Co., Ltd. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 113 (D.D.C. 2013).
[52] *Reyes*, 2007 WL 963422, at *1-2.
[53] *Monsanto*, 214 F.R.D. at 547.
[54] *Id.*

generated or considered *uniquely* in the expert's role as consultant.'"[55] For example, in *Yeda Research and Development Co. v. Abbott GmbH & Co.*, the U.S. District Court for the District of Columbia compelled disclosure of materials related to a report prepared by a consulting expert who later testified on the subject matter related to that report.[56] The Court concluded that the plaintiff waived work product protection of the expert's work as a consultant by designating him as a testifying expert, reasoning that "[e]ven a man as highly educated as [the expert] cannot be expected to draw a mental line in the sand between information gleaned [in his capacity as a consulting witness] and information he learned otherwise."[57]

Conversely, in *Sara Lee Corp. v. Kraft Foods, Inc.*, the U.S. District Court for the Northern District of Illinois did not require a defense expert to produce materials related to his work as a consulting expert when he was "retained to testify about one of Plaintiff's advertisements and to consult, but not testify, about the other" because the expert's work as to one advertisement was unique from his work as to the other.[58] The court determined "the requested materials relate solely to [the expert's] role as a non-testifying consultant" and further concluded Plaintiff failed to compel disclosure of the protected work product under Rule 26(b)(3) in the alternative, because it failed to demonstrate a substantial need

---

[55] *Reyes*, 2007 WL 963422, at *1-2; *see also Monsanto*, 214 F.R.D. at 545, 547; *In re Commercial Money Ctr., Inc., Equipment Lease Litig.*, 248 F.R.D. 532, 538 (N.D. Ohio 2008); *Western Resources, Inc. v. Union Pacific R.R. Co.*, 00-2043, 2002 WL 181494, at *9 (D. Kansas Jan. 31, 2002); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of N.Y., Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997).

[56] 292 F.R.D. at 113-15. Plaintiffs cite to *Yeda Research* to support the argument that documents underlying the 2019 Special Waste Odor Evaluation must be produced. R. Doc. 385, p. 17 (18-7889).

[57] *Yeda*, 292 F.R.D. at 115 ("It would be impracticable to ask such a Herculean task of dual-hat experts, or even of experts generally; that is why courts eschew a subjective standard for whether a testifying expert has 'considered' 'facts or data,' and why courts construe the dual-hat expert rule in favor of the party seeking discovery." (citations omitted)).

[58] 273 F.R.D. 416-17, 419-20 (N.D. Ill. 2011). Defendants cite to *Sara Lee Corp.* to support the argument that "Mr. Marshall's status as both a consulting expert and testifying expert does not render non-privileged his communications related only to his work as a consulting expert." R. Doc. 386, p. 15 (18-7889).

for materials underlying the expert report.[59] The court assumed *arguendo* that the requested materials were relevant to the expert's role as a testifying expert and found, after review in camera, that "[n]one of the communications contained facts, data, or assumptions that [the expert] could have considered in assembling his expert report," but rather contained consulting expert-attorney communications protected under the work product doctrine.[60]

Having reviewed both reports prepared by Mr. Marshall, the Court finds the Waste Connections Defendants waived privilege over certain documents related to Category #7 when it designated Mr. Marshall as a testifying expert because certain requested materials underlying the 2019 Special Waste Odor Evaluation relate to Mr. Marshall's role as a testifying expert in the General Causation Phase. In preparation of the 2019 Special Waste Odor Evaluation, Mr. Marshall reviewed the Landfill's waste records from 2014 through 2019 to inform his evaluation of "the potential for the special wastes and solidification agents disposed at the Landfill to generate and release compounds . . . such as hydrogen sulfide."[61] The 2019 report estimated the potential of certain categories of materials to generate hydrogen sulfide and highlighted the importance of liquid water to the biodegradation of those materials to hydrogen sulfide.[62] The 2019 report further evaluated rates at which sulfates are converted to hydrogen sulfide and concluded "there are too many variables to provide a reliable and defendable quantitative estimate."[63]

The 2021 Marshall Expert Report focused on rebutting the testimony of Plaintiffs' expert Jaana Pietari regarding hydrogen sulfide generation modeling. Like the 2019 Special Waste Odor Evaluation, the 2021 report evaluated the potential for hydrogen

---

[59] *Sara Lee Corp.*, 273 F.R.D. at 420.
[60] *Id.* at 420-21 (citing FED. R. CIV. P. 26(b)(4)(C)).
[61] 2019 Special Waste Odor Evaluation, at p. 4.
[62] *Id.* at pp. 6, 8.
[63] *Id.* at p. 9.

sulfide generation at the Landfill during a similar period, 2016 through 2019.[64] The 2021 report also emphasized the significance of liquid water to biodegradation of certain materials to hydrogen sulfide.[65] Further, the 2021 report evaluated rates of hydrogen sulfide generation and, like the 2019 report, concluded determining a rate of generation "depends on too many complex variables to create a reliable . . . model."[66]

The subject matter overlap between the two reports is further illustrated by Mr. Marshall's testimony at the General Causation hearing. At the hearing, Mr. Marshall discussed the importance of liquid water to the biodegradation of certain materials to hydrogen sulfide[67] and, on direct examination, provided his opinion on the potential generation of hydrogen sulfide at the Landfill from 2016 through 2019.[68] On cross-examination, Plaintiffs' counsel raised "the confidential report [Mr. Marshall] wrote for Waste Connections back in 2019."[69] Mr. Marshall acknowledged his role in preparing the 2019 Special Waste Odor Evaluation[70] and discussed his conclusions in that report concerning potential hydrogen sulfide generation at the Landfill.[71]

Courts evaluating any "dual-hat expert" generally "order disclosure when there is at least an ambiguity as to whether the materials [related to the expert's consultant role] informed the expert's [testimonial] opinion."[72] Although Mr. Marshall did not cite the 2019 report explicitly in his 2021 expert report, the Court finds the overlap between the contents of the two reports suggests there is at least an ambiguity as to whether the materials underlying the 2019 Special Waste Odor Evaluation informed Mr. Marshall's

---

[64] 2021 Marshall Expert Report, at pp. 6, 15.
[65] *Id.* at pp. 8, 12.
[66] *Id.* at p. 42.
[67] Tr. of Bench Trial Gen. Causation/Daubert Hearing Proceedings, 1599:16-1600:19, 1684:13.
[68] *Id.* at 1659:18-19.
[69] *Id.* at 1694:11-12.
[70] *Id.* at 1704:5-7.
[71] *See id.* at 1697:13-22.
[72] *See Monsanto*, 214 F.R.D. at 547.

2021 expert opinion concerning potential hydrogen sulfide generation at the Landfill during the relevant time period.[73]

Further, having conducted in camera review of the materials related to Categories #7 and #9, withheld by Defendants under assertions of work product doctrine and consulting expert work product protection,[74] the Court finds certain documents contain "facts or data considered" by Mr. Marshall in both consulting and testifying expert roles.[75] Accordingly, the Court denies Defendants' claims of privilege based on work product and consulting expert work product protection with respect to the following documents:

- Entries 0427, 0428, 0429, 0430, 0447_002, 0447_003, 0447_004, 0447_005, 0448_001, 0454, 0455, 0456, 0457, 0462, 0463_002, 0463_003, 0463_004, 0463_005, 0471_001, 0471_002, 0471_003, 0471_004, 0496, 0505, 0507, 0508, 0509_002, 0509_003, 0509_004, 0509_005, 0509_006, 0517_002, 0517_003, 0517_004, 0517_005, 0517_006, 0792, 0793_001, 0793_002, 0793_003, 0793_004, 0793_005, 0793_006, 0793_007, 0793_008, 0793_009, 0793_010, 0794_001, 0794_002, 0794_003, 0794_004, 0794_005, 0794_006, 0794_007, 0794_008, 0794_009, 0794_010, 0794_011, 0794_012, 0794_013, 0794_016, 0794_017, 0794_018, 0794_019, 0794_020, 0794_021, 0794_022, 0794_023, 0794_024, 0794_025, 0794_026, 0794_027, 0794_028, 0794_029, and 0799_001 in the December 4 Privilege Log.

---

[73] *Id.*

[74] R. Doc. 386 (18-7889); R. Doc. 438 (19-11133).

[75] *See* FED. R. CIV. P. 26(a)(2)(B). To the extent these documents are expert-attorney communications, the Court finds they "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed." *See* FED. R. CIV. P. 26(b)(4)(C)(iii).

## II.     The Attorney-Client Privilege

The work-product doctrine is distinct from and broader than the attorney-client privilege.[76] "[T]he work product privilege [exists] . . . to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent," whereas "[t]he attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship."[77]

"The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client."[78] "The purpose of the attorney-client privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'"[79] "For a communication to be protected under the privilege, the proponent 'must prove: (1) that . . . a confidential communication [was made]; (2) to a lawyer or his subordinate, (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'"[80] "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential communications.'"[81] "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'apply only

---

[76] *See United States v. Nobles*, 422 U.S. 225, 238 (1975).

[77] *Shields v. Sturm, Ruger, & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

[78] *Earl v. Boeing Co.*, 2021 WL 963405, at *2 (E.D. Tex. Mar. 15, 2021) (quoting *United States v. Mobil Corp.*, No. 4:19-cv-507, 149 F.R.D. 533, 536 (N.D. Tex. 1993)) (vacated in part, on other grounds, by *In re Boeing Co.*, No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021)).

[79] *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

[80] *Id.* (quoting *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)).

[81] *Id.* (quoting *O'Malley v. Pub. Belt R.R. Comm'n for City of New Orleans*, No. 17-4812, 2018 WL 814190, at *2 (E.D. La. Feb. 9, 2018)).

where necessary to achieve its purpose.'"[82] "Further, 'the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.'"[83]

"Application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'"[84] "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof.'"[85] "'Attorney-client privilege is not presumed'[86] . . . and 'ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.'"[87]

When a corporate setting is involved, courts have recognized the attorney-client privilege analysis "presents unique challenges."[88] In *Stoffels v. SBC Communications, Inc.*, the United States District Court for the Western District of Texas stated:

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The critical inquiry is, therefore, whether any particular communication facilitated the rendition of *predominantly legal advice or services* to the client.[89]

"Even though this standard is 'time-consuming' and 'requires a document-by-document analysis,' it 'ensures a balance between forbidding a company from trying to cloak non-privileged communications with protection by unnecessarily sending them to attorneys

---

[82] *Id.* (quoting *BDO USA*, 876 F.3d at 695).
[83] *Id.* (quoting *Upjohn*, 449 U.S. at 395).
[84] *Id.* at *3 (quoting *In re Auclair*, 961 F.3d 65, 68 (5th Cir. 1992)).
[85] *Id.* (quoting *BDO USA*, 986 F.3d at 695).
[86] *Id.* (quoting *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986)).
[87] *Id.* (quoting *BDO USA*, 986 F.3d at 695).
[88] *Id.* at *4.
[89] *Id.* (quoting *Stoffels v. SBC Comms., Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)).

and encouraging in-house counsel involvement early and often in corporate decision-making.'"[90]

"Legal advice, as contrasted with business advice, 'involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'"[91] "If advice offered by in-house counsel intertwines business and legal advice, attorney-client privilege protects the communication only if the legal advice predominates."[92] "Simply labeling communications as 'legal advice' is conclusory and insufficient to satisfy the privilege-proponent's burden."[93] Moreover, "[w]hen a corporation simultaneously sends communications to both lawyers and non-lawyers, . . . 'it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'"[94]

Of the documents related to Categories #7 and #9 to which the Court determined work product doctrine and consulting expert work product privileges do not attach, the Waste Connections Defendants argue Entries 0517, 0793, 0794, and 0799 in the December 4 Privilege Log are privileged attorney-client communications. "[T]he attorney-client privilege does not apply to every communication involving counsel," but only those "communications made in confidence between a client and his lawyer for the purpose of obtaining legal advice."[95] The Court finds the emails logged as Entries 0517, 0793, 0794, and 0799 are protected by the attorney-client privilege. Defendants, however, fail to satisfy the burden of demonstrating that the primary purpose of certain documents

---

[90] *Id.* at *3 n.3 (quoting *Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?*, 16 STAN. J. L. BUS. & FIN. 288, 307 (2011)).
[91] *Id.* (quoting *BDO USA*, 856 F.3d at 365).
[92] *Id.* (quoting *Neuder v. Battelle Pac. Nw. Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000)).
[93] *Id.* (citing *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000)).
[94] *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 524 (E.D. La. 2021) (quoting *In re Vioxx Prod. Liability Lit.*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007)).
[95] *Tonti Management Co., Inc. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *9 (E.D. La. June 25, 2020).

attached to the email communications was to obtain advice on specified legal issues as required for the attorney-client privilege to attach.[96] Further, the Court finds that, with respect to the following documents attached to these communications, Plaintiffs are unable to "obtain the substantial equivalent" elsewhere and are entitled to their production:[97]

- Entries 0517_002, 0517_003, 0517_004, 0517_005, 0517_006, 0793_001, 0793_002, 0793_003, 0793_004, 0793_005, 0793_006, 0793_007, 0793_008, 0793_009, 0793_010, 0794_001, 0794_002, 0794_003, 0794_004, 0794_005, 0794_006, 0794_007, 0794_008, 0794_009, 0794_010, 0794_011, 0794_012, 0794_013, 0794_016, 0794_017, 0794_018, 0794_019, 0794_020, 0794_021, 0794_022, 0794_023, 0794_024, 0794_025, 0794_026, 0794_027, 0794_028, 0794_029, and 0799_001 in the December 4 Privilege Log.

Defendants' assertions of work product, consulting expert work product, and/or attorney-client privileges on the remaining documents related to Categories #7 and #9 are proper. Accordingly, Defendants are not required to produce them to Plaintiffs.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART and DEFERRED IN PART**[98] as stated herein.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash is **DENIED IN PART and DEFERRED IN PART**.[99]

---

[96] *See id.*

[97] *See Southern Scrap Material*, 2003 WL 21474516, at *5 (quoting FED. R. CIV. P. 26(b)(3)).

[98] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). The Court has ruled on the relevant documents related to Categories #7 and #9 only in this Order. The Court defers ruling on the remaining issues raised in Plaintiffs' motion to compel at this time.

[99] R. Doc. 368 (19-11133).

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce the following documents in full, without redactions, by **February 1, 2024**:

- Entries 0427, 0428, 0429, 0430, 0447_002, 0447_003, 0447_004, 0447_005, 0448_001, 0454, 0455, 0456, 0457, 0462, 0463_002, 0463_003, 0463_004, 0463_005, 0471_001, 0471_002, 0471_003, 0471_004, 0496, 0505, 0507, 0508, 0509_002, 0509_003, 0509_004, 0509_005, 0509_006, 0517_002, 0517_003, 0517_004, 0517_005, 0517_006, 0792, 0793_001, 0793_002, 0793_003, 0793_004, 0793_005, 0793_006, 0793_007, 0793_008, 0793_009, 0793_010, 0794_001, 0794_002, 0794_003, 0794_004, 0794_005, 0794_006, 0794_007, 0794_008, 0794_009, 0794_010, 0794_011, 0794_012, 0794_013, 0794_016, 0794_017, 0794_018, 0794_019, 0794_020, 0794_021, 0794_022, 0794_023, 0794_024, 0794_025, 0794_026, 0794_027, 0794_028, 0794_029, and 0799_001 in the December 4 Privilege Log.

**New Orleans, Louisiana, this 30th day of January, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**