## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**  **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-7889**  **c/w 18-8071,**  **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,**  **Defendants** | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**  **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-11133**  **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**  **Defendants** | **SECTION: "E" (5)** |

*Applies to: All Cases*

## ORDER AND REASONS

Before the Court are two contested discovery motions: Plaintiffs' Motion to Compel Discovery Against the Waste Connections Defendants (hereinafter "Motion to Compel")[1] and a Motion to Quash the *Addison* Plaintiffs' Subpoena to SCS Engineers (hereinafter "Motion to Quash") filed by Defendants Waste Connections Bayou, Inc., Waste Connections US, Inc., and Louisiana Regional Landfill Company (collectively the "Waste

---

[1] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). Defendants opposed. R. Doc. 329 (18-7889); R. Doc. 383 (19-11133). Plaintiffs replied. R. Doc. 389 (19-11133). Plaintiffs filed a supplemental memorandum. R. Doc. 393 (19-11133). Defendants filed a supplemental reply. R. Doc. 394 (19-11133).

Connections Defendants" or "Defendants").[2] Presently, the only outstanding issues in these contested motions relate to documents involving Stearns, Conrad & Schmidt, Consulting Engineers, Inc. ("SCS Engineers"),[3] which are categorized into nine "Categories of Work" as identified in Attachment A to the Court's Order and Reasons issued on January 12, 2024.[4] This Order concerns certain documents related to Category #6, the Air Modeling and HRA Screening Reports dated August 12 and 15, 2019 (the "August 2019 Reports").

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. The Court's Order and Reasons issued on January 2, 2024 (the "January 2 Order") presents background relevant to the discovery motions.[5]

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[6] "Information within the scope of discovery need not be admissible in evidence to be discovered."[7] At the discovery stage, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in

---

[2] R. Doc. 368 (19-11133). Plaintiffs filed a Motion to Enforce Subpoena, which the Court construes as an opposition to the Motion to Quash. R. Doc. 381 (19-11133). Defendants filed a Reply Memorandum in Support of Their Motion to Quash. R. Doc. 388 (19-11133). *See also* Subpoena to Produce Documents Issued to SCS Engineers, R. Doc. 381-5 (19-11133).

[3] *See* Requests for Production 58-66, *Addison* Plaintiffs' Second Set of Requests for Production of Documents to the Waste Connections Defendants, R. Doc. 329-2 at 8, 12 (18-7889).

[4] *See* R. Doc. 406-1 (18-7889); R. Doc. 483-1 (19-11133). Attachment A is based on Attachment A to the Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to the Court (Dec. 1, 2023). The "Chart Showing Status of Production" attached to the December 1, 2023 Letter contained comments from both the Waste Connections Defendants and Plaintiffs. The Court assigned numbers to the Categories of Work for ease of reference.

[5] R. Doc. 397 (18-7889); R. Doc. 468 (19-11133).

[6] FED. R. CIV. PRO. 26(b); *see also Miller v. Sam Houston Univ.*, 986 F.3d 880, 891 (5th Cir. 2021).

[7] FED. R. CIV. PRO. 26(b)(1).

that case."[8] "[T]he threshold for relevance at the discovery stage [under Rule 26(b) of the Federal Rules of Civil Procedure] is lower than at the trial stage" under Federal Rule of Evidence 401.[9] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[10] If relevance is in doubt, the court should be permissive in allowing discovery.[11] This broad scope is necessary given the nature of litigation, where determinations of discoverability are made well in advance of trial.[12] Likewise, "broad discretion is afforded to the district court when deciding discovery matters,"[13] and the Court must determine the scope of discovery "in light of the relevant facts of the particular case."[14]

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[15] discovery does have "'ultimate and necessary boundaries.'"[16] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;

---

[8] *Stevenson v. Benjamin*, 21-30253, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).

[9] *Rangel*, 274 F.R.D. at 590.

[10] *Dotson v. Edmonson*, 16-15371, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005)).

[11] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 5/11/2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

[12] *Rangel*, 274 F.R.D. at 590 n.5.

[13] *Miller*, 986 F.3d at 891 (citing *Crosby v. la. Health Serv. & Indemnity Co.*, 647 F.3d 258, 261 (5th Cir. 2011)).

[14] *See Conboy v. Edward D. Jones & Co.*, 140 F. App'x 510, 517 (5th Cir. 2005).

[15] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).

[16] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

or (iii) the proposed discovery is outside the scope of Rule 26(b)(1)."[17] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[18] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[19]

"The party filing the motion to compel bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."[20] "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[21] "[T]he party asserting a privilege exemption from discovery . . . bears the burden of demonstrating the applicability of that privilege."[22] "Blanket assertions of privilege" are insufficient to carry a party's burden.[23]

## LAW AND ANALYSIS

In their motion, Plaintiffs seek to compel discovery of hundreds of documents.[24] After discussions with the parties, the Court categorized documents pertaining to the outstanding discovery requests into nine categories. This Order and Reasons addresses discovery issues involving documents related to Category #6. Defendants claim the relevant documents in the Privilege Logs they provided to the Court are properly withheld

---

[17] FED. R. CIV. PRO. 26(b)(2)(C)(i)–(iii).

[18] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

[19] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, 16-17277, 2017 WL 3011144, at *4 (E.D. La. 7/14/2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.).

[20] *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).

[21] *Id.*

[22] *Zahid Hotel Group, L.L.C. v. AmGUARD Insurance Co.*, 22-2792, 2023 WL 4353132, at *2 (E.D. La. July 5, 2023).

[23] *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981).

[24] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133).

because the documents are privileged under the work product doctrine, consulting expert work product protection, and/or attorney-client privilege.[25] Specifically, the Waste Connections Defendants claim the following documents in the privilege log provided to the Court on November 13, 2023 (the "November 13 Privilege Log"), which relate to Category #6, are properly withheld: Entries 0562, 0563, 0564, 0565, 0566, 0567, 0571, and 0572.[26] Several orders and reasons issued by the Court in early 2024 resolved discovery disputes concerning certain Category #6 documents included in the privilege log provided to the Court on December 4, 2023 (the "December 4 Privilege Log").[27] Accordingly, this Order and Reasons considers only the following documents related to Category #6 in the December 4 Privilege Log: Entries 0158, 0460, 0468, 0469, 0475, 0476, 0491, 0492, and 0599.[28]

## I.  The Work Product Doctrine and Consulting Expert Work Product Privilege

"Federal law governs . . . parties' assertions that certain information is protected from disclosure by the work product doctrine."[29] "The work product doctrine is not an

---

[25] R. Doc. 386 (18–7889); R. Doc. 438 (19–11133).

[26] Defendants argue all of these documents are privileged based on the work product doctrine, consulting expert work product privilege, and the attorney-client privilege.

[27] These documents are associated with both Category #6 and Category #7, the Jefferson Parish Landfill Special Waste Odor Evaluation prepared by Jeffrey Marshall and James Walsh of SCS Engineers, dated September 24, 2019. In the January 2 Order, the Court ordered the Waste Connections Defendants to produce in full, without redactions Entry 0288 in the December 4 Privilege Log, which is also associated with Category #7. R. Doc. 397 (18–7889); R. Doc. 468 (19–11133). Defendants moved the Court for reconsideration of that order and the Court granted in part, determining Defendants need not produce document 0288 (email only) and allowing Defendants to redact portions of document 0288_001. R. Doc. 398 (18–7889); R. Doc. 470 (19–11133). In the Order and Reasons dated January 30, 2024, the Court resolved discovery issues related to Entries 0212, 0213, 0214, 0215, 0216, and 0222 in the December 4 Privilege Log, which are also associated with Category #7. R. Doc. 414 (18–7889); R. Doc. 494 (19–11133). In the Order and Reasons dated March 6, 2024, the Court resolved discovery issues related to Entries 0502 and 0612 in the December 4 Privilege Log, which are also associated with the off-site survey of area odor sources performed by SCS Engineers in July and August 2019. R. Doc. 421 (18–7889); R. Doc. 505 (19–11133).

[28] Defendants argue all of these documents are privileged based on the work product doctrine and consulting expert work product privilege, and argue all of these documents except for 0158 are privileged based on the attorney-client privilege.

[29] *Southern Scrap Material Co. v. Fleming*, 01-2554, 2003 WL 21474516, at *5 (E.D. La. June 18, 2003) (citing *Naquin v. Unocal Corp.*, 01-3124, 2002 WL 1837838, at *2 (E.D. La. 2002)).

umbrella that shades all materials prepared by a lawyer."[30] "The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation."[31] The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[32] "Excluded from the work-product doctrine are materials assembled in the ordinary course of business."[33] The doctrine does not place work product outside the scope of discovery, but instead "creates a form of qualified immunity from discovery" for materials prepared in anticipation of litigation.[34] "Rule 26(b)(3) protects documents prepared by a party's agent from discovery, as long as they were prepared in anticipation of litigation."[35]

The level of protection depends on whether the materials prepared in anticipation of litigation constitute "opinion" work product or non-opinion, "fact" work product.[36] The "mental impressions, conclusions, opinions or legal theories of an attorney" are opinion work product subject to a higher showing for production.[37] "Fact work product, on the other hand, is any material 'prepared in anticipation of litigation or for trial by or for another party or its representative' under Rule 26(b)(3)(A) but 'not the "mental impressions, conclusions, opinions or legal theories of an attorney"' under subsection (b)(3)(B)."[38] A party seeking discovery of ordinary fact work product must make a showing of "substantial need and the inability to obtain the substantial equivalent

---

[30] *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).
[31] *Id.*
[32] FED. R. CIV. P. 26(b)(3)(A).
[33] *Treece v. Perrier Condominium Owners Ass'n, Inc.*, 17-10153, 2019 WL 12289568, at *4 (E.D. La. Jun 20, 2019); *see also Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 562, 565 (N.D. Tex. 1988) ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.").
[34] *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993).
[35] *Southern Scrap Material*, 2003 WL 21474516, at *6.
[36] *Id.* at *7.
[37] *In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1240 (5th Cir. 1982).
[38] *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487 (W.D. Tex. 2020).

6

elsewhere."[39] "However, absent a showing of *compelling* need and the inability to discover the substantial equivalent by other means, work product evidencing mental impressions of counsel, conclusions, opinions and legal theories of an attorney are not discoverable."[40]

Under Rule 26(b)(4)(D), a party may discover "facts known or opinions held" by a non-testifying expert retained "in anticipation of litigation . . ., only upon showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[41] The rule "creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances."[42]

Plaintiffs argue the Waste Connections Defendants have not demonstrated "how the air modeling work done by SCS was [to] assist in trial preparation and ha[ve] not shown how the immunity for work product is applicable to it."[43] Plaintiffs contend that defense counsel's decision to share the August 2019 Reports with "mid-level employees,"[44] "dispels any notion that the reports were done to assist the lawyers in the lawyers' trial preparation work."[45] Plaintiffs further claim "[i]n any event, the data upon which SCS [Engineers] relied in providing its reports would not be privileged."[46]

In response, Defendants argue they "did not waive any work product protection by distributing the reports to a few Waste Connections personnel after the[] [reports] were shared by outside counsel in Document 0572 [in the November 13 Privilege Log]—with

---

[39] *Southern Scrap Material*, 2003 WL 21474516, at *7, 13.

[40] *Id.* at *7.

[41] FED. R. CIV. PRO. 26(b)(4)(D).

[42] *Will Uptown, LLC v. B&P Restaurant Group, LLC*, 15-51, 2016 WL 4620200, at *5 (M.D. La. Sept. 6, 2016).

[43] R. Doc. 385 at p. 16 (18-7889).

[44] Letter from Eric C. Rowe and S. Eliza James, Counsel for the Plaintiffs, to the Court and the Waste Connections Defendants (June 6, 2023) [hereinafter "Plaintiffs' June 6 Letter"].

[45] R. Doc. 385 at p. 15 (18-7889).

[46] Plaintiffs' June 6 Letter.

the directive 'DO NOT share. Confidential' and an express reference to SCS's preparation of the work product as a consulting expert."[47] Further, Defendants contend documents related to the August 2019 Reports are properly withheld because SCS Engineers based its analyses in the reports "on data and information to which Plaintiffs have access."[48]

Having conducted in camera review, the Court finds certain documents related to Category #6 constitute "fact" work product, which contain no "mental impressions, conclusions, opinions or legal theories of an attorney."[49] Plaintiffs have demonstrated the requisite "substantial need" and "inability to obtain the substantial equivalent elsewhere,"[50] and "exceptional circumstances" that hinder their ability to obtain facts on the same subject matter by other means to render these documents discoverable.[51] Further, to the extent these documents contain opinion work product, Plaintiffs demonstrate the requisite "compelling need and the inability to discover the substantial equivalent by other means."[52]

Accordingly, the Court denies Defendants' claims of privilege based on work product and consulting expert work product protection with respect to Entries 0564, 0565, and 0566 in the November 13 Privilege Log.

## II.    The Attorney-Client Privilege

The work-product doctrine is distinct from and broader than the attorney-client privilege.[53] "[T]he work product privilege [exists] . . . to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of

---

[47] R. Doc. 386 at p. 19 (18-7889).
[48] *Id.* at pp. 19-20.
[49] *See In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d at 1240.
[50] *See Southern Scrap Material*, 2003 WL 21474516, at *7, 13.
[51] FED. R. CIV. PRO. 26(b)(4)(D).
[52] *See Southern Scrap Material*, 2003 WL 21474516, at *7.
[53] *See United States v. Nobles*, 422 U.S. 225, 238 (1975).

an opponent," whereas "[t]he attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship."[54]

"The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client."[55] "The purpose of the attorney-client privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[56] "For a communication to be protected under the privilege, the proponent 'must prove: (1) that . . . a confidential communication [was made]; (2) to a lawyer or his subordinate, (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding."[57] "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential communications."[58] "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'apply only where necessary to achieve its purpose."[59] "Further, 'the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."[60]

---

[54] *Shields v. Sturm, Ruger, & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).
[55] *Earl v. Boeing Co.*, 17-10153, 2021 WL 963405, at *2 (E.D. Tex. Mar. 15, 2021) (quoting *United States v. Mobil Corp.*, No. 4:19-cv-507, 149 F.R.D. 533, 536 (N.D. Tex. 1993)), *vacated in part, on other grounds, by In re Boeing Co.*, 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021).
[56] *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).
[57] *Id.* (quoting *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)).
[58] *Id.* (quoting *O'Malley v. Pub. Belt R.R. Comm'n for City of New Orleans*, 17-4812, 2018 WL 814190, at *2 (E.D. La. Feb. 9, 2018)).
[59] *Id.* (quoting *BDO USA*, 876 F.3d at 695).
[60] *Id.* (quoting *Upjohn*, 449 U.S. at 395).

"Application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'"[61] "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof.'"[62] "'Attorney-client privilege is not presumed'[63] . . . and 'ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.'"[64]

When a corporate setting is involved, courts have recognized the attorney-client privilege analysis "presents unique challenges."[65] In *Stoffels v. SBC Communications, Inc.*, the United States District Court for the Western District of Texas stated:

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The critical inquiry is, therefore, whether any particular communication facilitated the rendition of *predominantly legal advice or services* to the client.[66]

"Even though this standard is 'time-consuming' and 'requires a document-by-document analysis,' it 'ensures a balance between forbidding a company from trying to cloak non-privileged communications with protection by unnecessarily sending them to attorneys and encouraging in-house counsel involvement early and often in corporate decision-making.'"[67]

---

[61] *Id.* at *3 (quoting *In re Auclair*, 961 F.3d 65, 68 (5th Cir. 1992)).

[62] *Id.* (quoting *BDO USA*, 986 F.3d at 695).

[63] *Id.* (quoting *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986)).

[64] *Id.* (quoting *BDO USA*, 986 F.3d at 695).

[65] *Id.* at *4.

[66] *Id.* (quoting *Stoffels v. SBC Comms., Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)).

[67] *Id.* at *3 n.3 (quoting *Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?*, 16 STAN. J. L. BUS. & FIN. 288, 307 (2011)).

"Legal advice, as contrasted with business advice, 'involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'"[68] "If advice offered by in-house counsel intertwines business and legal advice, attorney-client privilege protects the communication only if the legal advice predominates."[69] "Simply labeling communications as 'legal advice' is conclusory and insufficient to satisfy the privilege-proponent's burden."[70] Moreover, "[w]hen a corporation simultaneously sends communications to both lawyers and non-lawyers, . . . 'it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'"[71]

Of the documents related to Category #6 to which the Court determined work product doctrine and consulting expert work product privileges do not attach, the Waste Connections Defendants argue Entries 0564, 0565, and 0566 in the November 13 Privilege Log are privileged attorney-client communications. "[T]he attorney-client privilege does not apply to every communication involving counsel," but only those "communications made in confidence between a client and his lawyer for the purpose of obtaining legal advice."[72] Defendants have not met the burden of demonstrating that the primary purpose of Entries 0564, 0565, and 0566 in the November 13 Privilege Log was to obtain advice on specified legal issues as required for attorney-client privilege to attach.[73]

---

[68] *Id.* (quoting *BDO USA*, 856 F.3d at 365).

[69] *Id.* (quoting *Neuder v. Battelle Pac. Nw. Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000)).

[70] *Id.* (citing *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000)).

[71] *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 524 (E.D. La. 2021) (quoting *In re Vioxx Prod. Liability Lit.*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007)).

[72] *Tonti Management Co., Inc. v. Soggy Doggie, LLC*, 19-13134, 2020 WL 9172077, at *9 (E.D. La. June 25, 2020).

[73] *See id.*

Defendants' assertions of work product, consulting expert work product, and attorney-client privileges on the remaining documents related to Category #6 are proper. Accordingly, Defendants are not required to produce them to Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART and DEFERRED IN PART** [74] as stated herein.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash is **DENIED IN PART and DEFERRED IN PART**.[75]

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce the following documents in full, without redactions, by **March 15, 2024**:

- Entries 0564, 0565, and 0566 in the November 13 Privilege Log.

**New Orleans, Louisiana, this 13th day of March, 2024.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[74] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). The Court has ruled on the relevant documents related to Category #6 only in this Order. The Court defers ruling on the remaining issues raised in Plaintiffs' motion to compel at this time.
[75] R. Doc. 368 (19-11133).