**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK, <br>     **Plaintiff** | CIVIL ACTION <br><br> NO. 18-7889 <br> c/w 18-8071, <br> 18-8218, 18-9312 |
| VERSUS | |
| WASTE CONNECTIONS BAYOU, INC., ET AL., <br>     **Defendants** | SECTION: "E" (5) |
| *Related Case:* | CIVIL ACTION |
| FREDERICK ADDISON, ET AL., <br>     **Plaintiffs** | NO. 19-11133, c/w 19-14512 |
| | SECTION: "E" (5) |
| VERSUS | |
| LOUISIANA REGIONAL LANDFILL COMPANY, ET AL., <br>     **Defendants** | JUDGE: Morgan <br> MAGISTRATE JUDGE: North |

**PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO THE WASTE CONNECTIONS DEFENDANTS' MOTION TO UPHOLD EXPERT DESIGNATION OF BISHOW SHAHA, PH.D**

Pursuant to this Honorable Court's April 2, 2024 Minute Entry (19-11133, R.Doc. 517; 18-7889, R.Doc. 425), Plaintiffs submit this Supplemental Opposition to the Waste Connections' Defendants' Motion to Uphold Expert Designation of Bishow Shaha, Ph.D. For the reasons stated herein, and in Plaintiffs' original Opposition (19-11133, R.Doc. 450; 18-7889, R.Doc. 390), the Waste Connections Defendants' Motion should be denied, Dr. Shaha's designation should not be upheld, and his testimony should be excluded in its entirety.  A copy of his Report is attached as **Exhibit 1.**  Excerpts of his deposition are attached as **Exhibit 2.**

## I.     INTRODUCTION.

On September 29, 2023, the Waste Connections Defendants designated Dr. Bishow Shaha as an expert witness to replace Mr. Jeffrey Marshall, who, they said, could no longer serve as their expert for medical reasons.  R.Doc. 418 at 3.  After Plaintiff's objected to the substitution, Waste Connections moved to "uphold" his designation as an expert, and Plaintiffs opposed the motion. 19-11133, R. Docs. 444 (Motion) and 450 (Opposition); 18-7889, R. Docs. 388 (Motion) and 390 (Opposition).  The Court has not yet ruled on that Motion.

During the April 2, 2024 status conference, the topic of the Waste Connections Defendants' attempted substitution of Dr. Shaha for Mr. Marshall was discussed. Upon being informed that Dr. Shaha had not reviewed Mr. Marshall's prior expert report and testimony before rendering his opinions in this matter, this Honorable Court advised the parties that if Dr. Shaha and Mr. Marshall express different opinions on the same topics, then there may be a problem with the designation of Dr. Shaha as the parties are not entitled to a "redo" for things already covered during General Causation.

In its April 2, 2024 Minute Entry (19-11133, R.Doc. 517; 18-7889, R.Doc. 425), this Honorable Court permitted the filing of supplemental memoranda as to the pending Motion.

For the reasons set forth below, and in Plaintiffs' original opposition, Dr. Shaha's designation should not be upheld, and his proposed testimony should be excluded in its entirety.

## II.     DR. SHAHA'S OPINIONS ARE BARRED BY LAW OF THE CASE.

Dr. Shaha's testimony purports to be limited to a critique of the expert report and opinions of Plaintiffs' expert Dr. Jaana Pietari, who opined upon the generation of hydrogen sulfide gas from the spent lime deposited in the Jefferson Parish Landfill ("JPLF") between October 2016 and July 2019.  (**Exhibit 1, Shaha Report at 5**.)  Dr. Pietari's opinions were provided in advance of the trial on General Causation and have not changed since that time.  This Court directed that any

*Daubert* challenge to Dr. Pietari's methodologies be presented before the General Causation trial and would be decided as part of those proceedings. Defendants' *Daubert* challenge, which was limited to an attack on her reliance of Safety Data Sheets (SDSs) as to sulfate content of the Rain Carbon spent lime buried at the JPLF, was denied by the Court on November 8, 2021. R.Doc. 256 at 9. Accordingly, any challenges to the reliability of Dr. Pietari's methodologies have been heard and decided.

"The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *United States v. Samak*, No. CR 91-189, 2019 WL 2026900, at \*4 (E.D. La. May 8, 2019) (Morgan, J.) *quoting Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011). Under the "law of the case" doctrine, "an issue decided at one stage of a case is binding at later stages of the same case." *Matter of AKD Invs.*, 79 F.4th 487, 491 (5th Cir. 2023). Generally, "when a court decides" an issue, "that decision should continue to govern the same issues in subsequent stages of the same case." *Id*. The rule applies to issues expressly decided as well as issues decided by necessary implication. *Id*.

No newly discovered facts justify what is, through a change of experts from Mr. Jeffrey Marshall to Dr. Shaha, essentially a "redo" of Defendants' challenge to Dr. Pietari during General Causation. Defendants could have chosen to engage Dr. Shaha as an expert to critique Dr. Pietari during the General Causation Phase. Dr. Shaha is a co-author of one of the scholarly papers that Dr. Pietari considered and relied upon in formulating her opinions back in 2021. At the time he wrote the paper (in 2020), Dr. Shaha was a doctoral candidate at Florida Atlantic University, working under the tutelage of Dr. Daniel Meeroff, Ph.D., who was the Associate Chair and Professor in the Department of Civil, Environmental, and Geomatics Engineering at FAU. When

Waste Connections was seeking to replace Mr. Marshall, it initially contacted Dr. Meeroff, the co-author of Dr. Shaha's 2020 paper, who was not interested and forwarded the contact information to Dr. Shaha.  (**Exhibit 2, Shaha Dep. at 8**.)

Accordingly, Dr. Shaha's testimony should be excluded for these reasons.

**III.    DR. SHAHA IS NOT A PROPER REPLACEMENT FOR MR. MARSHALL.**

As set forth in the Opposition, the parties in this case were precluded from designating new experts in areas of expertise addressed during General Causation and, if any such substitution was to be allowed, then Dr. Shaha should be limited to the same opinions as expressed by Mr. Marshall. 19-11133, R. Doc. 450 at 1, 4; 18-7889, R. Doc. 390 at 1, 4.

When Dr. Shaha produced his report, however, it was immediately clear that Dr. Shaha's opinions were all new and completely untethered to Mr. Marshall.  For example, absent from Dr. Shaha's report were any opinions speaking to the myriad critiques Mr. Marshall lodged against Dr. Pietari during General Causation, including those concerning uncertainty about the calcium sulfate content of the Rain Carbon spent lime or the presence at the JPLF of the conditions necessary for the generation of hydrogen sulfide gas.  Mr. Marshall's name was not even mentioned in the Shaha Report.  The Report did not list Mr. Marshall's prior reports or his prior deposition or trial testimony as material considered.  (**Exhibit 1, Shaha Report at 5**.)  When Dr. Shaha was deposed, he was asked about a number of opinions expressed by Mr. Marshall, and (with two exceptions) Dr. Shaha had not formed any opinion on any of them.  (**Exhibit 2, Shaha Dep. at 45, 54-56, 58-59, 62-63, 66-67, 69-74, 78-83, 87, 89-90, 106, 112-114, 122-123, 130, 139-141, 155-156, 272, and 296**.)

As a result, it is apparent that the Waste Connections Defendants' attempt to replace Mr. Marshall with Dr. Shaha is one motivated by strategy, not necessity. With Mr. Marshall's absence, now gone are the attacks against Dr. Pietari for purportedly not having sufficient data as to the

sulfate content of the spent lime. What had been one of the main thrusts of Mr. Marshall's critiques of Dr. Pietari has now vanished, ostensibly because of mounting evidence supporting Dr. Pietari's opinion that the Rain Carbon spent lime had a total calcium sulfate content far above the amount indicated in the Rain Carbon SDSs.

At a bare minimum, Dr. Shaha should be precluded from testifying as to any of Mr. Marshall's prior opinions as to which Dr. Shaha is not opining and Dr. Shaha should only be able to rely on the same analytical framework and factual bases that Mr. Marshall did to support his opinions.  In other words, the only opinions that Dr. Shaha should be able to offer at trial are those that fall within the area of overlap in a Venn diagram comparing Mr. Marshall's and Dr. Shaha's opinions and the bases therefore.  There does not appear to be much overlap, however.

Although it is true that Dr. Shaha continues to echo Mr. Marshall's opinion that Dr. Pietari lacks hydrogen sulfide concentration data to validate her estimate, the absence of which appears to have been by design, a direct result of Defendants' control over the landfill and decision not to capture data they knew was relevant to estimate H2S generation from the spent lime, Mr. Marshall's absence conveniently frees the Waste Connections Defendants' from the unwanted baggage tethered to his continued retention. As this Honorable Court is aware, Mr. Marshall testified at trial that he concluded by February 27, 2019, that the Rain Carbon spent lime was the one waste accepted at the JPLF with significant H2S generation potential. 19-cv-11133, Doc. 307, p. 1697:6-22; see also 19-cv-11133, Doc. 307, p. 1714; 19-cv-11133, Doc. 308, p. 1770. Mr. Marshall also testified that at this time he "seriously considered" applying the Anderson et al. (2010) first order decay model to estimate the H2S generated from the Spent Lime in Phase IVA. However, he concluded that they did not have the site-specific H2S concentration measurements either from the header or all wells in Phase IVA necessary to run the model. 19-cv-11133, Doc.

307, p. 1629:5-18, 1634:8-19, 1635:25-1636:6, 1669:16-1672:1, 1674:12-1675:13; 19-cv-11133, Doc. 308, p. 1766:19-1769:1. Despite this conclusion, despite his testimony that landfill operators typically collect this data when faced with odor concerns (19-cv-11133, Doc. 307 at p. 1632:3-1633:5), despite his testimony that when he was retained in 2018 he was aware of odors concerns at the JPLF (19-cv-11133, Doc. 307 at p. 1673:11-22), and despite his testimony that once you are aware you do not have the data, the next step is to go get the data (19-cv-11133, Doc. 307 at p. 1657:18-1658:4), Mr. Marshall confirmed that the Defendants did not capture this data and could not explain why (19-cv-11133, Doc. 307, p. 1632:3-1633:5, 1656:19-1659:8; 19-cv-11133, Doc. 308, p. 1766:18-1769:1, 1771:3-1773:15). The Waste Connections Defendants' attempted transition to Dr. Shaha is an obvious effort to avoid these inconvenient facts.

Dissatisfied with Mr. Marshall's unavailing attacks on Dr. Pietari, the Waste Connections Defendants pivoted to an appeal-to-authority approach, retaining an author of one of the papers relied upon by Dr. Pietari in conducting her estimate of hydrogen sulfide generation from the Rain Carbon spent lime to opine that "Dr. Pietari misapplied the methodology I developed (Shaha & Meeroff 2020), and as a consequence, the generated H2S data from the model lacks scientific credibility." (**Exhibit 1, Shaha Report at 7**.) As. Dr. Shaha claimed in his deposition, Dr. Pietari has only applied his modeling approach to estimate the hydrogen sulfide generated by the spent lime.  (**Exhibit 2, Shaha Dep. at 55, 66-67, 69-71**.)

This pivot effected a significant departure from the critiques rendered by Mr. Marshall, who focused his critique of Dr. Pietari's modeling on her application of the Anderson, et al. (2010) model. (See **Exhibit 3, Marshall Expert Report, at 8 (Opinion 2)**.)  In fact, his critique as to Dr. Pietari's reliance upon Shaha & Meeroff (2020) was essentially limited to her assumption that the decay rate constant (k value) and hydrogen sulfide generation potential (S0) for spent lime and

C&D waste at the JPLF were the same as the C&D debris at the landfill which was the subject of the Shaha & Meeroff (2020) paper. (See **Exhibit 3, Marshall Expert Report, at 26-28 (Section 5.5)**.) While Mr. Marshall expressed other opinions as to whether Dr. Pietari's use of the Shaha & Meeroff methodology could be applied to reliably estimate H2S generation from the spent lime, Dr. Shaha has rendered additional new critiques focusing on Dr. Pietari's reliance upon and purported application of only the Shaha & Meeroff 2020 methodology that Mr. Marshall did not.

These new critiques include his Opinion 1(a) regarding inapplicability of his modeling approach because of differences in objectives (**Exhibit 1, Shaha Report at 7 ¶18(a)**), his Opinion 1 regarding the unknown nature of the peak H2S concentrations (**Exhibit 1, Shaha Report at 7 ¶18(c)**), his Opinion 2 regarding Dr. Pietari's reliance on an estimation of landfill gas generation using LandGEM (**Exhibit 1, Shaha Report at 7, ¶19**), his Opinion 3 regarding how low sulfur content with a higher S0 value could potentially meet the H2S concentration constraint (**Exhibit 1, Shaha Report at 8 ¶20**), his Opinion 4(b) regarding Dr. Pietari's focus on the parabolic relationship of the k and S0 values (**Exhibit 1, Shaha Report at 8 ¶21(b)**), and his Opinion 4(c) regarding Dr. Pietari's estimated H2S concentrations purportedly not replicating certain measurements taken at the JPLF (**Exhibit 1, Shaha Report at 8 ¶21(c)**). These specific new critiques rendered by Dr. Shaha, could have been rendered by Mr. Marshall during General Causation, but they were not. In fact, as to Dr. Shaha's Opinion 3, Mr. Marshall opined in the complete opposite manner, asserting that the higher S0 values were not likely based on the literature, including Shaha & Meeroff 2020. (See General Causation Trial Exhibit 1316; 19-cv-11133, Doc. 307, p. 1660-1665.)

The new opinions rendered by Dr. Shaha in his critique of Dr. Pietari's estimation of the hydrogen sulfide generated by the spent lime could have been rendered by Mr. Marshall during

General Causation. However, they were not. The Waste Connections Defendants should not be afforded a second bite at the apple to do what could have been done three years ago. Accordingly, the Waste Connections Defendants should not be allowed to designate Dr. Shaha, and he should not be allowed to render any opinions at all.

At the very least, Dr. Shaha should be precluded from offering the following testimony or opinions:

1. Whether spent lime was used to solidify wastewater treatment plant sludge at the JPLF. (**Exhibit 2, Shaha Dep. at 45**.)

2. To critique Dr. Pietari related to whether she considered the Pace Analytical results. (**Exhibit 2, Shaha Dep. at 54**.)

3. Whether the SDS approach employed by Dr. Pietari overestimates the amount of sulfate disposed of in the JPLF.  (**Exhibit 2, Shaha Dep. at 55**.)

4. Whether the SDS approach employed by Dr. Pietari likely overestimates the amount of H2S generated by the spent lime. (**Exhibit 2, Shaha Dep. at 55-56, 66-67, 69-72**.)

5. To critique Dr. Pietari's use of the SDS to deduce the sulfate content of the spent lime. (**Exhibit 2, Shaha Dep. at 58-59**.)

6. To render an opinion regarding the sulfate content in the Rain Carbon spent lime. (**Exhibit 2, Shaha Dep. at 59**.)

7. To critique Dr. Pietari for assuming that the spent lime from Rain Carbon was completely dry.  (**Exhibit 2, Shaha Dep. at 59**.)

8. That Rain Carbon's beneficial use applications from 2017 are not reliable for purposes of determining the composition of the spent lime.  (**Exhibit 2, Shaha Dep. at 62**.)

9. Whether, if the spent lime had a 40-50% composition of calcium sulfate hydrates, it would be bound with more molecules of water than if it was simple calcium sulfate dihydrate. (**Exhibit 2, Shaha Dep. at 63**.)

10. That it was not possible for the spent lime to have a calcium sulfate content greater than 20%.  (**Exhibit 2, Shaha Dep. at 71**.)

11. To critique Dr. Pietari regarding her ability to validate H2S generation models based on lack of sulfate composition information.  (**Exhibit 2, Shaha Dep. at 73-74**.)

12. To testify that Dr. Pietari relied on the Anderson first-order decay model in to opine that reliable application of the Anderson first-order decay model is impossible in this case. (**Exhibit 2, Shaha Dep. at 78-81**.)

13. That there is a lack of site-specific quantities and composition of sulfate-containing waste disposed of in JPLF.  (**Exhibit 2, Shaha Dep. at 81-82**.)

14. That weekly measurements of H2S concentration and landfill gas and landfill gas flow rate over the relevant time period are required for proper calibration and validation of the H2S generation model.  (**Exhibit 2, Shaha Dep. at 82-83**.)

15. That a reliable estimate of H2S generation from spent lime and C&D waste in a landfill would incorporate many complex inputs and is not practical with respect to JPLF where no data exist to quantify those inputs.  (**Exhibit 2, Shaha Dep. at 87**.)

16. To critique Dr. Pietari based on whether she analyzed how the biological conversion of sulfate to H2S by SRB is limited by the amount of dissolved sulfate available, which can result in overestimation of the H2S generation rate.  (**Exhibit 2, Shaha Dep. at 89**.)

17. Whether spent lime was disposed of in bulk at JPLF.  (**Exhibit 2, Shaha Dep. at 90**.)

18. To critique Dr. Pietari for relying on the sulfate composition of C&D fines discussed in Anderson 2010 to determine the sulfate composition in the C&D waste disposed into JPLF. (**Exhibit 2, Shaha Dep. at 106**.)

19. To critique Dr. Pietari for accepting an S0 value of 573 in considering what to accept or reject in her original studies.  (**Exhibit 2, Shaha Dep. at 112-114**.)

20. That there are too many variables to provide a reliable and defendable quantitative model that can estimate the rate at which sulfates are converted to H2S by the SRB.  (**Exhibit 2, Shaha Dep. at 122-123**.)

21. To critique Dr. Pietari regarding whether disposal at the Florida landfill which was subject of the Shaha & Meeroff 2020 paper was co-disposal with MSW and that the Florida landfill can be equated with the JPLF.  (**Exhibit 2, Shaha Dep. at 130**.)

22. To critique Dr. Pietari regarding whether she considered the different rainfall and temperature conditions at the northeast and south Florida landfills. (**Exhibit 2, Shaha Dep. at 139-140**.)

23. To opine that three of the nine landfills for which Anderson was not able to develop a model are examples of why Dr. Pietari's H2S generation model is not reliable. (**Exhibit 2, Shaha Dep. at 140-141**.)

24. To critique Dr. Pietari's modeling based on how much sulfate was in the spent lime. (**Exhibit 2, Shaha Dep. at 155-156**.)

9

25. To critique Dr. Pietari's conclusion that the spent lime may have had more than three times the sulfur content than Dr. Pietari assumed in her 2021 modeling.  (**Exhibit 2, Shaha Dep. at 272**.)

26. To opine that it is exceptionally unlikely that Phase 4A would have an average H2S concentration of 3000 ppmv in September 2018.  (**Exhibit 2, Shaha Dep. at 296**.)

## IV.    CONCLUSION.

Dr. Shaha's opinions are barred by the Court's prior decisions concerning substitution of experts and by the law of the case doctrine.  Dr. Shaha's new opinions are critiques of Dr. Pietari's work that could have been made by Mr. Marshall during General Causation but were not. Therefore, the Waste Connections Defendants' Motion to Uphold Expert Designation of Bishow Shaha, Ph.D, should be denied. In the alternative, should this Honorable Court be inclined to uphold the designation, the scope of Dr. Shaha's opinions should be limited as set forth above.

Respectfully submitted, this 6th day June, 2024.

|  |  |
|---|---|
| _/s/ S. Eliza James_ | _/s/ Bruce C. Betzer_ |
| Byron M. Forrest (La. Bar No. 35480) | Bruce C. Betzer (Bar No. 26800) |
| Nicholas V. Cressy (La. Bar No. 35725) | Jennifer S. Avallone (Bar No. 35613) |
| S. Eliza James (La. Bar No. 35182) | THE LAW OFFICE OF BRUCE C. BETZER |
| FORREST CRESSY & JAMES, LLC | 3129 Bore Street |
| 1222 Annunciation Street | Metairie, LA 70001 |
| New Orleans, Louisiana 70130 | Telephone: (504) 832-9942 |
| Tele:(504) 605.0777 | Facsimile: (504) 304-9964 |
| Fax: (504) 322.3884 | bruce@brucebetzer.com |
| Email: byron@fcjlaw.com | |
| nicholas@fcjlaw.com | Douglas S. Hammel (Bar No. 26915) |
| eliza@fcjlaw.com | HAMMEL LAW FIRM, LLC |
| | 3129 Bore Street |
| | Metairie, LA 70001 |
| _/s/ Eric C. Rowe_ | Telephone: (504) 832-9942 |
| C. Allen Foster (Admitted Pro Hac Vice) | Facsimile: (504) 304-9964 |
| Eric C. Rowe (Admitted Pro Hac Vice) | douglashammel@gmail.com |
| Harry S. Johnson (Admitted Pro Hac Vice) | |
| James Jeffcoat (Admitted Pro Hac Vice) | _/s/ Jason Z. Landry_ |
| Masten Childers, III (Admitted Pro Hac Vice) | Scott R. Bickford (#1165) |
| WHITEFORD, TAYLOR & PRESTON, L.L.P. | srb@mbfirm.com |
| 1800 M Street, NW, Suite 450N | Lawrence J. Centola, Iii (#27402) |
| Washington, DC 20036 | ljc@mbfirm.com |
| | Jason Z. Landry (#33932) |

Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@wtplaw.com
erowe@wtplaw.com
mchilders@wtplaw.com
*Counsel For Addison Plaintiffs*

jzl@mbfirm.com
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 – FACSIMILE

Val Patrick Exnicios, Ta (#19563)
LISKA, EXNICIOS & NUNGESSER
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937
vpexnicios@exnicioslaw.com

Anthony D. Irpino (#24727)
Louise C. Higgins (#31780)
Pearl Robertson (#34060)
Kacie F. Gray (#36476)
IRPINO, AVIN & HAWKINS
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501
airpino@irpinolaw.com
lhiggins@irpinolaw.com
probertson@irpinolaw.com
kgray@irpinolaw.com

John D. Sileo (La Bar No. 17797)
Casey W. Moll (La. Bar No. 35925)
LAW OFFICE OF JOHN D. SILEO
320 N. Carrollton Ave.,
Suite 101 New Orleans, LA 70119
(504) 486-4343
jack@johnsileolaw.com
casey@johnsileolaw.com

*Counsel for Ictech-Bendeck Plaintiffs*