1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3    In re:

4    FREDERICK ADDISON, et al.,

5              Plaintiffs,

6    vs.                          Case No. 19-CV-11133

7    LOUISIANA REGIONAL LANDFILL

8    COMPANY, et al.,

9              Defendants.

10   _____/

11

12      The Above-Captioned Video-Recorded Deposition of

13                  MICHAEL CORN, CPA

14              10:10 a.m. - 6:52 p.m.

15                  April 23, 2024

16

17

18

19

20

21

22

23   REPORTED BY:

24   STEVEN POULAKOS, RPR

25   JOB NO:  J11168216



1    Q      Yeah.  But how do you match it up with the
2    timing of the emission for a specific facility?
3    A      Well, emissions from those facilities came
4    for their Title 5 emissions that are minor permit
5    emissions.  They were there all the time and the --
6    Q      But you performed no analysis destination
7    as to the release rate and concentrations on an hourly
8    basis or daily basis, correct?
9    A      Not other than what's in their Title 5
10   permit and not other than they did list pounds of
11   emissions on some of the events.
12   Q      You have rendered no opinion that any
13   emissions from any of these potential other sources
14   reached any plaintiff location at any specific
15   concentration on any given day, correct?
16           MS. BRILLAULT:  Object to form.
17           THE WITNESS:  I did not look at that.  I
18   did rely that they smelled something from the incident
19   reports.  So it did reach their sites high enough that
20   they can smell it maybe.
21   BY MR. LANDRY:
22   Q      Well, something -- something reached their
23   sites, right?
24   A      I agree and multiple sites were around all
25   of these -- the residents that are on the cases.



```
 1              MS. BRILLAULT:  Object to form.
 2              THE WITNESS:  Can you repeat that?
 3   BY MR. LANDRY:
 4       Q      You have not performed any air dispersion
 5   modeling to support your opinion that any Addison trial
 6   plaintiff was impacted by any emissions from any of the
 7   alleged 15 nonlandfill potential other sources on any
 8   given day in any given concentration, correct?
 9       A      I have not --
10              MS. BRILLAULT:  Object to form.
11              THE WITNESS:  I have not done dispersion
12   modeling.
13   BY MR. LANDRY:
14       Q      And you have not performed any air
15   dispersion modeling to support your opinion that any
16   proposed class representative or punitive class
17   plaintiff was impacted by any emissions from any of the
18   alleged 15 nonlandfill potential other sources on any
19   given day in any concentration, correct?
20              MS. BRILLAULT:  Object to form.
21              THE WITNESS:  I have not done dispersion
22   modeling.
23   BY MR. LANDRY:
24       Q      In fact, nowhere in your reports have you
25   rendered an opinion that any Addison trial plaintiff
```



1   these sites and really the distance is what makes the

2   difference.

3   BY MR. LANDRY:

4        Q      And wind direction is the game, right?

5        A      Wind direction and speed, the amount that's

6   released.  We do have incident reports.

7        Q      How about the time it's released?

8        A      The time it's released.

9        Q      Again, back to my original question, Mr.

10  Corn.  Where can you show me in your reports where

11  you've identified any specific concentration of any

12  emission from any of these 15 facilities when they

13  impacted any Addison trial plaintiff or any punitive

14  class member on any given day?

15              MS. BRILLAULT:  Object to form.

16              THE WITNESS:  I've done that by listing the

17  distances from these sites to each of these people and

18  the first one is Bernards.  The second one is

19  Ictech-Bendeck.  And then the previous table 32 we

20  actually give where the different chemicals that

21  they've described can come from.

22  BY MR. LANDRY:

23       Q      Okay.  But the question, Mr. Corn, is:

24  These chemicals that you describe and you list table

25  32, where do you render an opinion that any specific



1   concentration of any of those emitted chemicals reached

2   any Addison trial plaintiff, any proposed class

3   representative or any punitive class member?

4             MS. BRILLAULT:  Object to form.

5             THE WITNESS:  I would have to go back and

6   look at our -- I know we describe incident reports and

7   the incident reports do describe it reaching individual

8   people in the area.

9   BY MR. LANDRY:

10       Q     At what concentration?

11       A     The concentration is usually not given.

12  All that's given is the people basically detected it.

13       Q     Was any concentration ever given to any

14  incident report?

15             MS. BRILLAULT:  Object to form.

16             THE WITNESS:  Not that I remember.  Now,

17  they did -- they did -- some people did measurements in

18  the area.  IMTT did modeling of emissions from their

19  site.  I'm trying to remember who else did some

20  testing.

21  BY MR. LANDRY:

22       Q     I'm not -- I'm not -- the question is not

23  about concentrations.  Right now it's not about

24  concentrations at the site as it's released.  It's what

25  concentrations impacted any plaintiffs at their



1  plaintiff locations on any given day?

2      A      Well, if we look back at the incident

3  reports, they do talk about being able to detect an

4  odor.  You have to put all those together to say that

5  it more likely than not, it came from that site.

6      Q      Okay.  Let's change this up a bit.  Let's

7  go to a specific Addison trial plaintiff, Mary Ann

8  Winningkoff.  Where in your Addison report,

9  Exhibit 1579, do you render any opinion that Ms.

10  Winningkoff was impacted by a specific concentration on

11  any given day from any specific of your alleged 15

12  nonlandfill potential other sources?

13      A      Winningkoff is on the mass case, right?

14      Q      Yes.  Addison trial plaintiff.  That's why

15  I referred you to Exhibit 1579, your Addison report.

16      A      Okay.  Probably the best thing to start

17  with is figure 3.  It's on my page 23 of the mass

18  report.  Ms. Winningkoff has basically got several

19  different facilities that surround her in her -- if you

20  go back to -- let me find her in the back, which would

21  be on table 38, page 115 and she's got the Soniat

22  Canal, Wood Materials, Kirby Inland, Harahan, IMTT,

23  Artco Fleeting Services.  They're all close enough to

24  have impacted her location.  She's surrounded by these

25  facilities.



MICHAEL CORN, CPA                                                April 23, 2024
Addison vs Louisiana Regional Landfill                                        78

1        Q      You understand my question, Mr. Corn?

2        A      I do understand your question.

3        Q      Okay.  And where in your response was there

4    any discussion of a specific concentration from any of

5    those potential other sources that impacted Ms.

6    Winningkoff specifically at her plaintiff location on

7    any specific day?

8        A      There was not -- I don't believe I address

9    that.

10       Q      You don't address that for any Addison

11   trial plaintiff, any proposed class representative or

12   the punitive class members, correct?

13       A      What I've --

14              MS. BRILLAULT:  Object to form.

15              THE WITNESS:  What I've addressed is is

16   there a possibility that these people surrounded by all

17   these other facilities can be impacted by those

18   facilities.

19   BY MR. LANDRY:

20       Q      Mr. Corn, if that were the extent of your

21   testimony, then that would be fine, but you go beyond

22   that.  You go from potential, it could have impacted

23   people to it more than likely than not did impact

24   people, correct?

25              MS. BRILLAULT:  Object to form.



MICHAEL CORN, CPA                                    April 23, 2024
Addison vs Louisiana Regional Landfill                          79

1              THE WITNESS:  I'm not sure there's a

2     difference between that.

3     BY MR. LANDRY:

4          Q     You don't understand the difference between

5     possibility and probability?

6          A     Well, there's a probability to every

7     possibility.  So, no, I do not understand that.

8          Q     You don't understand the difference between

9     something could possibly occur versus it most likely

10    did occur?

11         A     Well, we do know that odors did get to

12    these people and they've described the odors.  So we

13    have a pretty good feel that if it was hydrogen

14    cyanide, it didn't come from the landfill, but it

15    probably came from one of the facilities that deal with

16    hydrogen cyanide.

17         Q     Okay.  So trial is going to go forward in

18    August, right?

19         A     I believe that's so.

20         Q     And so when it comes to Ms. Mary Ann

21    Winningkoff, what are you going to say while you're

22    under oath on the stand as to when and in what

23    concentration Ms. Winningkoff was impacted by any of

24    these potential other sources in a concentration

25    sufficient to cause her complaint of injury?



1          Q       How?

2          A       If you look at distance and if you look at

3    what they've explained as odor, we've identified where

4    those odors can come from.

5          Q       They can come from other potential sources

6    is what you're saying, right?

7          A       That's my whole reports.  There are 15

8    sources that impacted the 41-and-a-half square mile

9    area.

10         Q       There's a difference between they could

11   have potentially impacted plaintiffs versus they likely

12   did impact plaintiffs, right?

13         A       We know they did impact not necessarily the

14   plaintiffs here, but they did impact people within that

15   area and many of those people -- those people are all

16   in that 41-and-a-half square mile area.

17         Q       Back to the Cornerstone ammonia release,

18   the 900 plus pounds.  Nowhere in your expert report is

19   any analysis as to where those specific emissions of

20   ammonia on that specific day actually traveled in the

21   proposed class area and where and what concentrations

22   they were when they reached those areas, right?

23         A       I have not done dispersion modeling, that

24   is correct.

25         Q       You haven't done any type of modeling,



1  right?

2      A     I have not done any modeling for

3  dispersion.

4      Q     So you can't say that any one class

5  representative or Addison trial plaintiff was exposed

6  to any of the ammonia from that particular Cornerstone

7  release that day had any concentration sufficient to

8  cause the complaint of injuries, correct?

9            MS. BRILLAULT:  Object to form.

10           THE WITNESS:  I have not done that analysis

11 specifically from a source to a location other than the

12 fact that the wind does blow from Cornerstone towards

13 those plaintiffs a certain percent of the time.

14 BY MR. LANDRY:

15     Q     When you say I have not done that analysis,

16 that holds true for all the potential other nonlandfill

17 sources and all the reported releases that you identify

18 in your expert reports, correct?

19           MS. BRILLAULT:  Object to form.

20           THE WITNESS:  Other than I've looked at the

21 wind direction and speed and done an analysis or not

22 done an analysis, but looked at that to determine that

23 it can reach those locations.

24 BY MR. LANDRY:

25     Q     Okay.  But, again, not for those specific



MICHAEL CORN, CPA                                    April 23, 2024
Addison vs Louisiana Regional Landfill                         88

1   days of those specific releases that you've identified,

2   correct?

3        A     I have not done a specific day other than

4   I've done a general thing of I looked at the month and

5   I looked at the yearly and the wind directions were

6   fairly consistent between the month and the year.

7        Q     Again, for various emissions events that

8   you've identified in your expert reports for the 15

9   alleged nonlandfill potential other sources, there's no

10  analysis specific to where the emissions from those

11  specific events on those specific days traveled to,

12  correct?

13            MS. BRILLAULT:  Object to form.

14            THE WITNESS:  Not on specific days.  I have

15  not done that.  I've done it for the month and the year

16  and those were very consistent as far as which way the

17  winds blew.  They were basically consistent.

18  BY MR. LANDRY:

19       Q     But when you say looked at the winds and

20  direction, you're referring to the wind rose averages,

21  right?

22            MS. BRILLAULT:  Object to form.

23            THE WITNESS:  For a month and for a year,

24  that is correct.

25  BY MR. LANDRY:



1  odors during the relevant time period, right?

2       A       Well, they're always emitting.  They are

3  permitted to emit chemicals.  So they're always

4  emitting.  There are times when they emit more and

5  those are unpermitted discharges.  So we always know

6  that they are emitting the chemicals.

7       Q       Do you have any idea what they are always

8  emitting on any given day?

9       A       Well, that's in their permit and they put

10  in the permit because they are emitting that.  Unless

11  they're shut down, they may not be emitting.  But if

12  they're operating, they are emitting those chemicals

13  typically.

14       Q       So you agree with my question?  The first

15  step is figuring out when they emitted emissions,

16  right?

17       A       And I will repeat they're always emitting.

18  So, yes.  When I look at the permit, I know they're

19  emitting.

20       Q       The next thing you can do, Mr. Corn, is

21  after figuring out when it is they're emitting, you can

22  model the emissions for those time periods, right?

23       A       That is one option.

24       Q       You did not do that, right?

25       A       I have not done any modeling.



1      Q      You could do an air dispersion model that

2   would show where the emissions say from Cornerstone

3   went when and in what concentrations based on the

4   meteorological data, correct?

5      A      I have not been asked to do that and I have

6   not done that.

7      Q      That's not the question, Mr. Corn.  The

8   question is:  You could do that, right?

9      A      If I was asked to do that, I could do that.

10      Q      But you just didn't do that, right?  You

11   weren't asked to do that?

12      A      I was not asked to do that.  That's not my

13   assignment.

14      Q      Then go to the next page, page 6 of your

15   Ictech-Bendeck report.  It's your opinion the

16   concentration of the air pollutant that reaches an

17   individual location is also different from each

18   individual location for each pollutant due to the

19   dispersion and transformation of different chemicals,

20   right?

21      A      Correct.

22      Q      Are you saying that the concentration of

23   the air pollutant that reaches a specific class

24   representative's location on a given day at a given

25   time will always be different from that class



1     A      At one point or another, yes.

2     Q      When?

3     A      During the two-and-a-half year period.

4     Q      Can you point me for any proposed class

5  representative, any Addison trial plaintiff, can you

6  point me to when one of those individuals was impacted

7  by a specific concentration of emissions from a

8  specific potential other source that you've identified

9  on a particular day?

10    A      You're asking for an exact hour or minute?

11    Q      Day.  Day will work.

12    A      I have not done that analysis.  I'm looking

13  at the whole two-and-a-half year period.

14    Q      Can you tell me what month a single

15  proposed class representative or Addison trial

16  plaintiff was impacted by an emission and the

17  concentrations capable of causing the complaint of

18  injuries during the relevant time period?

19           MS. BRILLAULT:  Object to form.

20           THE WITNESS:  I have not looked at

21  injuries, so I can't answer that question.

22  BY MR. LANDRY:

23    Q      You have looked at thresholds necessary to

24  cause injuries complained of versus any concentrations

25  at any impacted point in the class area, right?



1          MS. BRILLAULT:  Object to form.

2          THE WITNESS:  I have not looked at that at

3    all that I know of.

4    BY MR. LANDRY:

5       Q     Here, Mr. Corn, you have a section for

6    ammonia and here do you see that 17 parts per million?

7       A     Yes, sir.

8       Q     Okay.  I just want to show I wasn't

9    misrepresenting anything to you.

10      A     I remember when you said 17 that that's in

11   there.  So I can't remember every number that's in my

12   report, but some of them I can remember after you

13   shaked my memory.

14      Q     So we have ammonia.  We have methyl

15   mercaptan.

16      A     Let me correct that.  I put methyl

17   mercaptan, but there's like six or seven different

18   mercaptans they use in gases.  And I just used methyl

19   mercaptan as a -- as that's one of the things that's

20   smelling.  It is a mercaptan.  We don't know exactly

21   which one.

22      Q     That's fine.  Well, I just lost my --

23      A     You're not there.

24          MS. BRILLAULT:  Is this a good time for a

25   break?



1  | sources.

2  |          Now, with respect -- with the exception of

3  | the River Birch landfill and the Highway 90 landfill,

4  | is it your opinion that they were exposed to odors,

5  | gases, dust, particulates of all of the rest of them;

6  | is that right?

7  |     A     At some point based on the wind direction.

8  |     Q     Okay.  All right.  Now, that takes care of

9  | Interrogatory number 1.  There was also an

10 | Interrogatory number 2 that was -- that was asked in

11 | this case.  And it says with respect to each emission

12 | from each other source that you contend caused the

13 | injuries complained of by plaintiffs instead of or in

14 | addition to emissions from the Jefferson Parish

15 | landfill, please state, A, the chemical substance that

16 | you contend caused the injury, B, the dates, times,

17 | durations and concentrations of each emission and, C,

18 | the contact information of persons with knowledge of

19 | the emissions.

20 |          Do you see that?

21 |     A     Yes, sir.

22 |     Q     Now, were you asked to formulate opinions

23 | with regard to each one of those answers A, B and C?

24 |          MS. BRILLAULT:  Object to form.

25 |          THE WITNESS:  No.  I did not do anything on



1  injury.  I did not do any durations and concentrations

2  of each emission and dates and times and the contact

3  person with knowledge.  I have not contacted anybody.

4  So no on -- no on all three.

5  BY MR. ROWE:

6      Q     Okay.  And so just to make sure that I'm

7  clear about all three of these that where you said the

8  chemical substance that you contend caused the injury,

9  you're not making any opinions on any actual chemical

10  causing any actual injury, right?

11     A     No, sir.  I'm not a toxicologist.

12     Q     Okay.  And do you even know what Waste

13  Connections contends are the chemical substances that

14  caused injuries in this case?

15           MS. BRILLAULT:  Object to form.

16           THE WITNESS:  I don't know anything about

17  injuries.  I know nothing about that question.

18  BY MR. ROWE:

19     Q     Okay.  And then Mr. Landry asked you a

20  number of questions here about the dates, times,

21  durations and concentrations of each emission and I

22  think you just told me that you did not do any of that;

23  is that right?

24     A     Not --

25           MS. BRILLAULT:  Object to form.



1              THE WITNESS:  Not in my report.  I did

2    report on when emissions occurred, but not -- not in

3    this detail.

4    BY MR. ROWE:

5        Q      Okay.  And so that mean -- so with regard

6    to Tyrone Thompson and Terrance Thompson, you have not

7    rendered an opinion on either of the chemical substance

8    that -- from these other emissions that are contended

9    to have caused the injury or any dates, any times, any

10   durations or any concentrations of any such emissions,

11   correct?

12             MS. BRILLAULT:  Object to form.

13             THE WITNESS:  I did not talk about duration

14   of emissions.  I did talk about potential distances

15   from the sources that I listed to the plaintiffs'

16   locations.

17   BY MR. ROWE:

18       Q      Do you even know what the plaintiffs are

19   contending their injuries are in this case?

20       A      I think I have what they -- no, not the

21   injury.  I know what they said they smelled.  Does

22   that -- does that answer your question?

23       Q      Well, my question was whether you know what

24   the -- what the injuries are that the plaintiffs are

25   claiming, what injuries plaintiffs are claiming in this



1    A        The rate at which it happened, it can't go

2   over the Title 5 emissions except during the startup,

3   shutdown and maintenance activities which they give

4   a -- get a pass on that.

5    Q        The rate is not one of those things that

6   sets out in the TRO -- TRI report, correct?

7    A        Except for the fact that they're limited on

8   the Title 5 emission rates, emission amounts.  So

9   that's -- those two have to go hand and hand.

10    Q        With regard to -- similarly with regard to

11   the Gremillions, that be Wendy, Scott, Braxton

12   Gremillion, you're not telling us today that any of

13   them were actually exposed to any particular gas or

14   chemical on any particular day, correct?

15              MS. BRILLAULT:  Object to form.

16              THE WITNESS:  Other than the fact that

17   they're in the wind direction from some of these

18   plants, all of the plants at one time or another that

19   I've listed.  So they would be exposed at some

20   concentration.

21   BY MR. ROWE:

22    Q        But you haven't told us what they were

23   exposed to exactly or when they were exposed to it

24   exactly.  All your testimony is they might have been

25   exposed to it at some point, right?



1              MS. BRILLAULT:  Object to form.

2              THE WITNESS:  I have listed in there what

3    the plants that they're downwind from and we know what

4    those plants produced.  We know what their Title 5

5    permit limits are.  So I have indicated what they

6    may -- what concentrate -- what chemicals could reach

7    their site from these different locate -- from the

8    different 15 industries' city that I've listed.

9    BY MR. ROWE:

10       Q     Okay.  But you haven't told us that any

11   chemical actually did reach their residence at any

12   specific concentration at any specific time, right?

13             MS. BRILLAULT:  Object to form.

14             THE WITNESS:  I have not told you what the

15   concentration might reach them, that is correct.

16   BY MR. ROWE:

17       Q     And the same is true with Andrew Section

18   and Jonathan Tank, correct?

19             MS. BRILLAULT:  I'll object to form while

20   he's looking.

21             THE WITNESS:  Again, I just again pointed

22   out which plants are closest to them which they for all

23   practical purposes would be exposed from those plants

24   based on wind direction.

25



 1  BY MR. ROWE:

 2      Q     But, again, no specific chemical or gas and

 3  no specific concentration, right?

 4            MS. BRILLAULT:  Object to form.

 5            THE WITNESS:  No concentration.  The gases

 6  would be from the plants that we've listed as being

 7  close to them.

 8  BY MR. ROWE:

 9      Q     And no specific times, right?

10      A     When the winds are blowing in those

11  directions.

12      Q     And so you have not set out anywhere in

13  your report and you can't tell us that on any

14  particular day where any of these plaintiffs were

15  actually exposed to anything, can you?

16      A     I have not --

17            MS. BRILLAULT:  Object to form.

18            THE WITNESS:  I have not been asked to do

19  that, no.

20  BY MR. ROWE:

21      Q     Okay.  And the same is true with Mary Ann

22  Winningkoff, Geneva Green, Stanley Myles and Reshaun

23  Richardson, correct?

24      A     Ms. Winningkoff we have discussed that her

25  next-door neighbor would get odors and she would not.



1   So around about way, we've talked about that.

2        Q     Okay.  But my question was about whether or

3   not your opinion involves specific concentrations of

4   specific gases at specific times?

5        A     I have not -- I'm sorry.

6        Q     You have not been asked to do that I think

7   is what you told me.

8              MS. BRILLAULT:  Object to form.

9              THE WITNESS:  That is -- I have not been

10  asked to look at concentrations, that is correct.

11             MR. ROWE:  Okay.  Can we go off the record

12  for just a second?

13             MS. BRILLAULT:  Sure.

14             THE VIDEOGRAPHER:  We are off the record at

15  4:38.

16             (Deposition recessed at 4:38 p.m.)

17             (Deposition resumed at 4:41 p.m.)

18             THE VIDEOGRAPHER:  We are back on the

19  record at 4:41.

20             MR. ROWE:  Thank you, Mr. Corn.  I don't

21  have any other questions.  Jason has got some more I

22  know.  And I appreciate, you know, letting me kind of

23  getting here in the middle so I can catch my airplane

24  in a few minutes.  Thank you very much and thank you

25  for being here today.



```
 1                    FURTHER EXAMINATION BY MR. LANDRY
 2        Q       All right, Mr. Corn, I'm going to follow-up
 3   with --
 4                 MS. BRILLAULT:  Jason, you're not on video.
 5                 MR. LANDRY:  I'm trying.  There we go.
 6                 MS. BRILLAULT:  There you go.
 7                 MR. LANDRY:  Using my mouse with my left
 8   hand.
 9   BY MR. LANDRY:
10        Q       Mr. Corn, following up on the questions
11   that Mr. Rowe just asked you this time switching gears
12   to the proposed class representatives, you do not offer
13   any opinion that any of these potential other sources
14   impacted these proposed class representatives at
15   concentrations sufficient to cause their complaint of
16   injuries, correct?
17                 MS. BRILLAULT:  Object to form.
18                 THE WITNESS:  I have not looked at
19   injuries.  My report does talk about the different
20   facilities that can impact those residences.
21   BY MR. LANDRY:
22        Q       But you're not saying that these proposed
23   class representatives who are set forth in your report
24   at various sections that they were exposed to any
25   chemical from any of these potential other sources on
```



 1  any given day at any specific concentration, correct?

 2              MS. BRILLAULT:  Object to form.

 3              THE WITNESS:  I am saying that they do get

 4  exposed to a concentration from these facilities

 5  because of the wind, but I'm not talking about

 6  toxicology.

 7  BY MR. LANDRY:

 8      Q     But you can't identify at what

 9  concentration any of these class representatives were

10  exposed on any given day from these potential other

11  sources, correct?

12              MS. BRILLAULT:  Object to form.

13              THE WITNESS:  I have not calculated

14  concentrations.  I've calculated what the chemicals

15  that can get to them could be based on the different

16  industries that are downwind from them or upwind from

17  them.

18  BY MR. LANDRY:

19      Q     I understand, Mr. Corn.  But you haven't

20  opined as to any specific concentration that reached

21  any of these proposed class representatives at any

22  specific day, correct?

23              MS. BRILLAULT:  Object to form.

24              THE WITNESS:  I have not listed individual

25  days other than from incident reports and other than



1  the fact that some of these facilities emit all the

2  time.

3  BY MR. LANDRY:

4      Q      But, again, the question is really

5  regarding concentrations.  You have not identified any

6  concentration of any chemical from any of these

7  potential other sources that impacted any of these

8  proposed class representatives at any given day during

9  the relevant time period, correct?

10              MS. BRILLAULT:  Object to form.

11              THE WITNESS:  At specific locations, I have

12  not have projected concentrations.  I projected what

13  they may be exposed to or are exposed to, but I have

14  not talked about what the concentration is from those

15  exposures.

16  BY MR. LANDRY:

17      Q      You have not opined that any chemicals from

18  any of these potential other sources reached any of

19  these proposed class representatives at any specific

20  concentration at any given time during the relevant

21  time period, correct?

22              MS. BRILLAULT:  Object to form.

23              THE WITNESS:  I have not opined on

24  concentration that reaches individual locations.

25  BY MR. LANDRY:



MICHAEL CORN, CPA                                      April 23, 2024
Addison vs Louisiana Regional Landfill                      220

1        Q       You have not opined that any chemicals from
2    any of these potential other sources reached any
3    punitive class member at any specific location at any
4    specific concentration during the relevant time period,
5    correct?
6        A       Not --
7                MS. BRILLAULT:  Object to form.
8                THE WITNESS:  Not on concentration.
9    BY MR. LANDRY:
10       Q       Now let's go back to the wonderful world,
11   Mr. Corn, of your potential other sources and I think
12   we left off --
13               MS. BRILLAULT:  You're back in the Ictech
14   report, right, Jason?
15               MR. LANDRY:  I'm going to be, yes.  I'm not
16   sure what page I'm on.
17   BY MR. LANDRY:
18       Q       Is it the Roehm chemical?
19               MS. BRILLAULT:  That's where you left off.
20               THE WITNESS:  Roehm America.
21               MR. LANDRY:  It was.  Okay.  Thank you.  So
22   my Adobe crashed again, so these reports are too big.
23               MS. BRILLAULT:  So it's not PDF, but just
24   page 52 of the report if that helps.
25               MR. LANDRY:  That does help.  Thank you.



1    impacting each and every area within the proposed class

2    area at the exact same time?

3              MS. BRILLAULT:  Object to form.

4              THE WITNESS:  I can't answer that.  That

5    was my understanding, but maybe I'm wrong on that.

6    BY MR. LANDRY:

7       Q      Here -- here's a good one too.  116, you

8    say when the class representative is upwind from the

9    emission source, he or she cannot be impacted by the

10   emission source.

11             Do you see that?

12      A      Yes.

13      Q      Do you think expert testimony is needed for

14   this point?

15      A      It's just a statement.  It's a true

16   statement.

17      Q      You think -- you think that statement is in

18   dispute?

19             MS. BRILLAULT:  Object to form.

20             THE WITNESS:  It's a statement that I've

21   made.  I do not know if it's in dispute or not.

22   BY MR. LANDRY:

23      Q      You say it is my opinion that the impact

24   from when source of air emissions cannot affect the

25   entire proposed class area much less impact it in the



MICHAEL CORN, CPA                                              April 23, 2024
Addison vs Louisiana Regional Landfill                                    303

1   same way to the same extent, right?

2        A      That's a correct statement.

3        Q      One way to test that hypothesis of yours

4   would be to actually perform air dispersion modeling

5   for the emissions from that one source, right?

6                MS. BRILLAULT:  Object to form.

7                THE WITNESS:  That's one way to do it, yes.

8   BY MR. LANDRY:

9        Q      And you didn't do that here, did you?

10       A      I did not do that.

11       Q      Page 118, here you state that the river is

12  a natural barrier for the transport of these

13  pollutants, right?

14       A      Let me see what -- yes, correct.

15       Q      Are you aware of the air modeling done by

16  your clients' expert air modeler showing impacts from a

17  source across the river?

18       A      I have not seen air modeling from our side,

19  I guess.

20       Q      Would you defer to the -- your clients'

21  other expert as to whether the river is, in fact, a

22  natural barrier that would prevent these pollutants

23  from crossing the river?

24                MS. BRILLAULT:  Object to form.

25                THE WITNESS:  And I think where the barrier



MICHAEL CORN, CPA                                        April 23, 2024
Addison vs Louisiana Regional Landfill                              310

```
 1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

 2                I, Steven Poulakos, registered

 3    Professional Reporter, the officer before whom the

 4    foregoing proceedings were taken, do hereby certify

 5    that the foregoing transcript is a true and correct

 6    record of the proceedings; that said proceedings were

 7    taken by me stenographically and thereafter reduced to

 8    typewriting under my supervision; and that I am neither

 9    counsel for, related to, nor employed by any of the

10    parties to this case and have no interest, financial or

11    otherwise, in its outcome.

12                IN WITNESS WHEREOF, I have hereunto set my

13    hand and affixed my notarial seal this 23rd day of

14    April 2024.

15    My commission expires:

16    May 31, 2024

17

18

19

20    

21    --------------------------

22    NOTARY PUBLIC IN AND FOR

23    THE DISTRICT OF COLUMBIA

24

25
```