UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 18-7889<br>        c/w 18-8071,<br>        18-8218, 18-9312 |
| WASTE CONNECTIONS BAYOU, INC., ET AL.,<br>    Defendants | SECTION: "E" (5) |

*Related Case:*

| | |
|---|---|
| FREDERICK ADDISON, ET AL.,<br>    Plaintiffs | CIVIL ACTION |
| VERSUS | NO. 19-11133<br>        c/w 19-14512 |
| LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,<br>    Defendants | SECTION: "E"(5) |

*Applies to: All Cases*

**ORDER AND REASONS**

Before the Court is a contested "Motion to Uphold Expert Designation of Bishow Shaha, Ph.D." by the Waste Connections Defendants.[1] Plaintiffs filed a memorandum in opposition.[2] Defendants filed a reply in support of their Motion.[3] On April 2, 2024, this Court issued a Minute Entry permitting the parties to file on or before June 6, 2024 supplemental memoranda to support their positions related to "Defendants' Motion to

---

[1] R. Doc. 388 (18-7889); R. Doc. 444 (19-11133).
[2] R. Doc. 390 (18-7889); R. Doc. 450 (19-11133).
[3] R. Doc. 392 (18-7889); R. Doc. 454 (19-11133).

1

Uphold Expert Designation of Bishow Shaha."[4] Plaintiffs timely filed a supplemental memorandum in opposition.[5] The Waste Connections Defendants filed a reply to Plaintiffs' supplemental opposition.[6]

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill in Waggaman, Louisiana (the "Landfill"), and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019 (the "relevant time period"). Plaintiffs, who are Jefferson Parish residents, filed several individual lawsuits that were consolidated into a mass action, *Addison v. Louisiana Regional Landfill Co.*, which contains over 500 individual Plaintiffs.[7] Plaintiffs assert negligence and nuisance claims under Louisiana state law[8] against Defendants: Jefferson Parish, which owns and contracts with others to operate the Landfill; Aptim Corporation, which managed the gas and leachate collection systems of the Landfill from July 2017 to May 2019; and three entities that operated the Landfill from May 2013 to December 2020: Louisiana Regional Landfill Company;[9] Waste Connections Bayou, Inc.;[10] and Waste Connections US, Inc.[11] Jefferson Parish residents also filed several related class actions, which were consolidated into one case, *Ictech-Bendeck v. Waste Connections Bayou, Inc.*[12]

On November 5, 2019, the Court issued the first Case Management Order ("CMO"), which established a bifurcated litigation schedule under which the issue of general

---

[4] R. Doc. 425 (18-7889); R. Doc. 517 (19-11133).
[5] R. Doc. 441 (18-7889); R. Doc. 556 (19-11133).
[6] R. Doc. 444 (18-7889); R. Doc. 604 (19-11133).
[7] *See generally* Second Amended Complaint, R. Doc. 431 (19-11133).
[8] *See* Second Amended Complaint, R. Doc. 431 at p. 64 (19-11133).
[9] Louisiana Regional Landfill Company is formerly known as IESI LA Landfill Corporation.
[10] Waste Connections Bayou, Inc. is formerly known as Progressive Waste Solutions of LA, Inc.
[11] Second Amended Complaint, R. Doc. 431 at pp. 52-53 (19-11133).
[12] *See* R. Doc. 48 (18-7889).

causation would be resolved first.[13] The Court held a trial on general causation in early 2022.[14] On November 29, 2022, the Court issued its Findings of Fact and Conclusions of Law as to General Causation (the "General Causation Order"),[15] determining that, during the relevant time period: (1) odors and gases were emitted by the Landfill;[16] (2) the emissions of gases and odors from the Landfill occurred during the relevant time period;[17] and (3) exposure to the odors and gases emitted by the Landfill at a level of five parts per billion for thirty minutes "is sufficient by itself for individuals generally to be able to smell hydrogen sulfide and for the exposure to cause a reaction."[18] Having found that Plaintiffs established general causation for certain Allowed Injuries, the Court ordered that a trial be conducted with a select number of *Addison* Plaintiffs (the "Trial Plaintiffs").[19] The first *Addison* trial was set to begin on September 5, 2023,[20] and has since been continued to begin on August 12, 2024 (the "first *Addison* Trial").[21]

Relevant to the instant motion, Defendants originally retained Mr. Jeffrey Marshall, a licensed professional engineer employed by SCS Engineers, to rebut opinions of Plaintiffs' expert, Dr. Jaana Pietari.[22] Plaintiffs retained Dr. Pietari to opine on the "fate and transport of the contaminant of landfills" and "the amount of hydrogen sulfide generated by the spent lime and fly ash accepted by Jefferson Parish Landfill."[23] Both Dr.

---

[13] R. Doc. 82 (18-7889); R. Doc. 80, pp. 1-2 (19-11133).
[14] R. Docs. 243-247, 256-259 (18-7889); R. Docs. 274-278, 286-289 (19-11133).
[15] R. Doc. 285 (18-7889); R. Doc. 323 (19-11133).
[16] *Id.* at p. 5.
[17] *Id.* at p. 26.
[18] *Id.* at p. 27.
[19] *Id.* at pp. 44, 46. *See also* R. Doc. 642 (19-11133) (defining the Allowed Injuries).
[20] R. Doc. 305 (18-7889); R. Doc. 340 (19-11133).
[21] R. Doc. 514 (18-7889); R. Doc. 495 (19-11133).
[22] R. Doc. 441-3 at p. 4 (18-7889); R. Doc. 213 at pp. 23-24 (18-7889); R. Doc. 556-3 at p. 4 (19-11133); R. Doc. 248 at pp. 23-24 (19-11133).
[23] R. Doc. 372 (18-7889); R. Doc. 416 at p. 3 (19-11133).

3

Pietari and Mr. Marshall testified at the general causation trial.[24] On September 29, 2023, Waste Connections filed its witness list for the *Addison* trial and designated Mr. Bishow Shaha[25] as its expert in "hydrogen sulfide generation in landfills, landfill design and permitting, landfill gas management systems, leachate collection system management, and landfill waste disposal," to rebut testimony offered by Plaintiffs as to hydrogen sulfide generation estimates from the Landfill.[26] Waste Connections stated that "the Waste Connections Defendants' prior expert on hydrogen sulfide generation, Jeffrey Marshall, is recovering from a serious health issue that prevents him from serving as an expert witness in preparing for and at the trial of the *Addison* Trial Plaintiffs."[27]

On November 22, 2023, Waste Connections filed the instant motion to uphold the designation of Dr. Shaha, a Ph.D. in engineering and author of one of the two field-based studies on hydrogen sulfide modeling.[28] Waste Connections informed the Court that Mr. Marshall had been diagnosed with cancer earlier in the year, and his health complications affected his ability to work, preventing him from continuing as an expert in the matter.[29]

On February 2, 2024, Dr. Pietari issued a second expert report on hydrogen sulfide generation from spent lime at the Jefferson Parish Landfill.[30] On March 8, 2024, Dr.

---

[24] R. Doc. 285 at p. 3 (18-7889); R. Doc. 323 at p. 3 (19-11133).
[25] Dr. Shaha is one of the authors of a 2020 field-scale study estimating the generation of hydrogen sulfide from sulfate-containing waste disposed of in landfills. Dr. Pietari relies upon Dr. Shaha's models in conducting her own modeling of the Jefferson Parish Landfill.
[26] R. Doc. 377 at p. 3 (18-7889); R. Doc. 418 at p. 3 (19-11133). Waste Connections informed the Court it retained Dr. Shaha in August 2023. R. Doc. 388 at p. 4 (18-7889); R. Doc. 444 at p. 4 (19-11133).
[27] R. Doc. 388 at p. 4 (18-7889); R. Doc. 444 at p. 4 (19-11133).
[28] R. Doc. 388 (18-7889); R. Doc. 444 (19-11133); R. Doc. 441 at pp. 4-5 (18-7889); R. Doc. 556-1 at pp. 4-5 (19-11133).
[29] R. Doc. 388-2 (18-7889); R. Doc. 444-2 (19-11133).
[30] R. Doc. 444-2 (18-7889); R. Doc. 604-2 (19-11133).

4

Shaha issued his first report rebutting the opinions of Dr. Pietari.[31] Dr. Pietari issued her rebuttal report to Dr. Shaha on March 29, 2024.[32]

## LEGAL STANDARD

Rule 26(a)(2)(D) requires a party to make expert witness disclosures "at the times and in the sequence that the court orders[, or] [a]bsent a stipulation or a court order, the disclosures must be made: (i) at least 90 days before the date set for trial or for the case to be ready for trial; or (ii) . . . within 30 days after the other party's disclosure" if the expert is "intended solely to contradict or rebut evidence on the same subject matter identified by another party."[33]

Federal Rule of Civil Procedure 16(b)(4) provides "[a] schedule may be modified only for good cause." "Good cause requires a showing that the relevant scheduling order deadline cannot reasonably be met despite the diligence of the party needing the extension." Courts consider several factors in determining whether a party has provided good cause to modify a discovery deadline, including:

> (1) [T]he explanation for the untimely conduct; (2) the importance of the requested untimely action; (3) potential prejudice in allowing the untimely conduct; and (4) the availability of a continuance to cure such prejudice.' Additionally, courts consider [(5)] the length of time since the expiration of the deadline, [(6)] the length of time that the moving party has known about the discovery, [(7)] whether the discovery deadline has been extended, [(8)] whether dispositive motions have been scheduled or filed, [(9)] the age of the case, and [(10)] disruption of the court's schedule.[34]

---

[31] R. Doc. 441 (18-7889); R. Doc. 556-1 (19-11133).
[32] R. Doc. 444-5 (18-7889); R. Doc. 604-5 (19-11133).
[33] FED. R. CIV. P. 26(a)(2)(D).
[34] *Louisiana Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, No. CV 22-2398, 2023 WL 2185981 at *4 (E.D. La. Feb. 23, 2023) (quoting *Huey v. Super Fresh/Sav-A-Center, Inc.*, No. 07-1169, 2008 WL 2633767, at *1 (E.D. La. June 25, 2008)).

A failure to comply with the disclosure requirements of Rule 26 is governed by Rule 37(c), which provides:

> (1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

A district court may exercise discretion in determining whether to exclude an expert on these grounds.[35] In determining whether a party's failure to disclose or supplement is harmless or substantially justified, a court generally considers: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[36]

"Courts have held that the death [or a serious medical issue] of an expert generally constitutes a substantial justification supporting late disclosure of an expert not in accord with the Scheduling Order."[37] To minimize the inevitable prejudice caused by the substitution of an expert, "[c]ourts granting motions to substitute experts after the close of discovery have routinely required the new expert's testimony to be limited to the subject matter opinions espoused in the first expert's report."[38] "Although the substitute expert's testimony and report are generally restricted to the same subject matter as the prior expert, the substitute is not normally required to simply adopt the prior expert's

---

[35] *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).
[36] *Id.*
[37] *Collins v. A.B.C. Marine Towing, L.L.C.*, No. CV 14-1900, 2016 WL 9412669, at *2 (E.D. La. Jan. 11, 2016); *Collins v. Benton*, No. CV 18-7465, 2021 WL 6091095, *4 (E.D. La. Nov. 13, 2021).
[38] *Am. Can! v. Arch Ins. Co.*, No. 3:20-CV-0850-X-BH, 2022 WL 1467424 (N.D. Tex. Apr. 6, 2022) (citing *Medpace, Inc. v. Biothera, Inc.*, No. 1:12-CV-179, 2014 WL 1045960, at *4 (S.D. Ohio Mar. 17, 2014)).

6

conclusions verbatim."[39] The substitute expert "may use different language and even reach 'slightly broader conclusions' so long as the new report is 'substantially similar in all material respects' to the previous report."[40]

## LAW AND ANALYSIS

In their Motion to Uphold Expert Designation, the Waste Connections Defendants argue they properly designated Dr. Shaha as a testifying expert witness in accordance with the Court's orders and applicable rules, which govern the designation of testifying experts for trial.[41] The Court established September 29, 2023 as the deadline for the Waste Connections Defendants to file and serve their list of experts.[42] The Waste Connections Defendants filed and served their list of experts naming Dr. Shaha on September 29, 2023.[43] Defendants further argue that they should be allowed to replace Mr. Marshall with a new expert because Mr. Marshall is recovering from prostate cancer.[44] Defendants argue Rule 16(b)(4) of the Federal Rules of Civil Procedure allows a party to obtain modification of a case management order "for good cause and with the judge's consent," and Mr. Marshall's cancer is good cause.[45] Defendants contend "Mr. Marshall's prostate cancer and complications from its treatment prohibits him from continuing to serve as a testifying expert witness in this litigation."[46] Alternatively, Defendants argue Rule 37(c)(1) should not preclude them from using Dr. Shaha at trial even if the Court

---

[39] *Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 04-CV-00396, 2010 WL 3892860, at *3 (N.D. Ind. Sept. 30, 2010).
[40] *Am. Can!*, 2022 WL 1467424 at *3 (citing *Lefta Assocs., Inc. v. Hurley*, No. 1:09-CV-2487, 2013 WL 12239510, at *2 (M.D. Pa. Feb. 13, 2013)).
[41] R. Doc. 388-1 at p. 4 (18-7889); R. Doc. 444-1 at p. 4 (19-11133).
[42] R. Doc. 369 (18-7889); R. Doc. 413 (19-11133).
[43] R. Doc. 377 at p. 3 (18-7889); R. Doc. 418 at p. 3 (19-11133).
[44] R. Doc. 388 at pp. 5-7 (18-7889); R. Doc. 444 at pp. 5-7 (19-11133).
[45] FED. R. CIV. P. 16(b)(4).
[46] R. Doc. 377 at p. 6 (18-7889); R. Doc. 444 at p. 6 (19-11133).

finds his disclosure was untimely, because Defendants' failure to disclose Dr. Shaha is "substantially justified and harmless" under the rule.[47]

Defendants also direct the Court to *Murphy v. Magnolia Electric Power Association*, where the Fifth Circuit identified four factors to determine whether untimely disclosed expert evidence should be excluded:

> [(1)] the explanation, if any, for the failure to name the witness[;]
> [(2)] the importance of the testimony of the witness[;]
> [(3)] the need for time to prepare to meet the testimony[;]
> [and (4)] the possibility of a continuance.[48]

Defendants argue that the *Murphy* factors weigh in favor of including Dr. Shaha's testimony.[49] First, Defendants point to the "Mr. Marshall's unfortunate health condition" as "a valid explanation for the addition of Dr. Shaha."[50] Second, Defendants assert Dr. Shaha's testimony is "inherently important, as it addresses a key element - causation - in Plaintiffs' negligence claims."[51] Third, Defendants contend "Plaintiffs will not be prejudiced [by Dr. Shaha's inclusion] since this designation is occurring before Plaintiffs serve their expert reports" and Defendants only intend to use Dr. Shaha to rebut Plaintiffs' causation expert.[52] Finally, Defendants attest that "any continuance would not be necessary" should Dr. Shaha's testimony be included.[53] Defendants argue just because Dr. Shaha is well-suited to testify as an expert because of his expertise on the subject, given that he is an author of one of the studies on which Dr. Pietari bases her opinions, this is not a sufficient

---

[47] *Id.* at pp. 6-7.
[48] *Murphy v. Magnolia Electric Power Ass'n*, 639 F. 2d 232, 234 (5th Cir. 1981).
[49] R. Doc. 377 at pp. 6-7 (18-7889); R. Doc. 444 at pp. 6-7 (19-11133).
[50] *Id.* at p. 7.
[51] *Id.*
[52] *Id.*
[53] *Id.*

8

ground to warrant his exclusion under Rule 37.[54]

Finally, Defendants argue the Court should not require they replace Mr. Marshall with another expert from SCS Engineers because Mr. Marshall's testimony at the General Causation hearing was "solely for the purpose of rebutting Plaintiffs' expert Dr. Pietari, and [Mr. Marshall] did not rely on any data collected by SCS Engineers."[55]

In opposition, Plaintiffs argue the Waste Connections Defendants' designation of Dr. Shaha as a substitute for Mr. Marshall deviates from the Court's instruction prohibiting the parties from designating new experts to render opinions on topics relevant to the General Causation phase.[56] Next, Plaintiffs contend the substitution will be highly prejudicial to them.[57] Plaintiffs claim "the specific causation phase of the litigation will not involve a brand-new battle as it relates to estimating hydrogen sulfide gas generation at the Landfill," rather it will rely on information already presented at the General Causation hearing.[58] Plaintiffs claim the substitution will require their expert to rebut "new and unknown opinions" in a short response time and argue "the Waste Connections Defendants are using this attempted substitution merely to secure an advantage in this litigation."[59] Plaintiffs contend "Defendants are trying to make a 'replacement plus' by substituting Mr. Marshall with Dr. Shaha who is an author of one of the two papers that Dr. Pietari relied upon to produce her estimate of the H2S generated by the spent lime

---

[54] *Id.*
[55] *Id.* at p. 8. The Defendants argue there is no standard of law or requirement by this Court that an expert must be replaced by someone with the same professional associations. Further, Defendants argue a lack of professional association between Mr. Marshall and Dr. Shaha does not prejudice the Plaintiffs.
[56] R. Doc. 390 at pp. 2-5 (18-7889); R. Doc. 450 at pp. 2-5 (19-11133).
[57] *Id.* at p. 5.
[58] *Id.*
[59] *Id.* at p. 6.

9

buried at the Landfill."[60] Further, Plaintiffs claim "[m]oving on to Dr. Shaha conveniently wipes out" several "credibility issues related to Mr. Marshall" that would "likely cause problems for the Waste Connections Defendants" if the Court denied the motion to uphold the expert designation of Dr. Shaha.[61]

Third, Plaintiffs argue Defendants fail to sufficiently demonstrate Mr. Marshall's health issues preclude him from testifying a trial.[62] Plaintiffs claim "it is clear that Mr. Marshall is currently capable of working and his lack of confidence espoused in his declaration falls short of establishing good cause to replace him with Dr. Shaha at this juncture" because Defendants have not offered medical proof of his condition as they required of Plaintiffs for the substitution of testifying expert Mr. Soler in this litigation.[63] Plaintiffs further contend "no substitution is warranted here" because "Defendants have the benefit of Mr. Marshall's trial testimony [at the General Causation hearing] which can be read to the jury should Mr. Marshall be unavailable for trial."[64]

Fourth, Plaintiffs argue Defendants' failure to replace Mr. Marshall with another expert from SCS Engineers results from Defendants' interest in securing an advantage via substitution by replacing Mr. Marshall with an expert who authored a paper upon which Plaintiffs' expert Dr. Pietari relied at the General Causation hearing.[65] Plaintiffs further rebut Defendants' assertion that Mr. Marshall did not rely on SCS Engineers data or opinions of other SCS Engineers employees by pointing to the 2018 Special Waste Odor

---

[60] *Id.*
[61] *Id.* at pp. 7-9.
[62] *Id.* at pp. 9-11.
[63] *Id.* at p. 10.
[64] *Id.* (citing *Vedms*, 2015 WL 13540240 (party requesting substitution did not have transcript available for trial); *Collins v. Nat'l Football League*, 566 F. Supp. 3d 586, 596-97 (E.D. Tex. 2021)).
[65] *Id.* at pp. 12-14.

Evaluation and a report and email authored by SCS Engineers employees, identified by Mr. Marshall as reliance materials for his opinion at the General Causation hearing.[66]

Defendants argue in their reply that "any purported prejudice to the Plaintiffs is mitigated by the abundant notice to the Plaintiffs of the new designation and their opportunity to serve a rebuttal to Dr. Shaha's expert report and depose Dr. Shaha prior to trial."[67] Defendants argue this Court did not rely on the opinions of Dr. Pietari and Mr. Marshall in issuing its findings of fact and conclusions of law, so "all parties will be presenting their modeling analysis for fresh evaluation" during the *Addison* trial.[68] Defendants state that, if Plaintiffs' experts issue no new reports or opinions about hydrogen sulfide generation, Defendants "will agree to limit Dr. Shaha's testimony to opinions that are substantively similar to Mr. Marshall's, or that are required to rebut the opinions disclosed by Plaintiffs' experts."[69]

On April 2, 2024, this Court issued a Minute Entry allowing the parties the opportunity to file supplemental memoranda in support of their arguments.[70] On June 6, 2024, Plaintiffs filed their supplemental opposition to the Waste Connections Defendants' motion to uphold Dr. Shaha.[71] Plaintiffs first argue that Dr. Shaha's opinions are barred by the law of the case because this Court already "heard and decided" Dr. Pietari's methodologies, so Dr. Shaha's challenges to Dr. Pietari's methods should be precluded.[72] Plaintiffs further argue there are no new facts that would entitle Defendants to "redo" the challenge they raised to Dr. Pietari's testimony during the General Causation

---

[66] *Id.* at p. 12.
[67] R. Doc. 392 at p. 2 (18-7889); R. Doc. 454 at p. 2 (19-11133).
[68] *Id.* at p. 2.
[69] *Id.* at p. 8.
[70] R. Doc. 425 (18-7889); R. Doc. 517 (19-11133).
[71] R. Doc. 441 (18-7889); R. Doc. 556 (19-11133).
[72] *Id.* at pp. 2-3.

11

trial. Second, Plaintiffs argue Dr. Shaha is not a proper replacement for Dr. Shaha because his opinions are "new and completely untethered to Mr. Marshall."[73] At the least, Plaintiffs acknowledge that, if this Court were to permit Dr. Shaha to testify, Dr. Shaha should only be able to testify to the same opinions relying on the same "analytical framework and factual bases that Mr. Marshall did to support his opinions."[74]

In their reply, Defendants argue that since the filing of Defendants' original motion, Dr. Pietari has authored a second report in which she "completely overhauled her analysis of the spent lime disposed of at the Jefferson Parish Landfill," by including modeling inputs that estimate "10 times the amount of sulfate she had assumed during the General Causation phase."[75] Defendants argue "Plaintiffs should not be allowed to make material changes to Dr. Pietari's expert disclosures and then complain about purported differences between Dr. Shaha's proposed testimony and Mr. Marshall's General Causation opinions."[76] Defendants argue that Dr. Shaha's opinions are substantively similar to Mr. Marshalls, and any purported prejudice to Plaintiffs by the substitution has been cured by Plaintiffs' longstanding knowledge that Dr. Shaha was retained, they have deposed him, and their expert, Dr. Pietari, has issued a report rebutting Dr. Shaha's opinions.[77]

The Court finds Defendants timely designated Dr. Shaha as an expert for the *Addison* trial. This Court established September 29, 2023 as the deadline for the Waste Connections Defendants to file and serve their list of experts.[78] The Waste

---

[73] *Id.* at p. 4.
[74] *Id.* at p. 5.
[75] R. Doc. 444 at p. 2 (18-7889); R. Doc. 604 at p. 2 (19-11133).
[76] *Id.*
[77] *Id.* at p. 3.
[78] R. Doc. 369 (18-7889); R. Doc. 413 (19-11133).

12

Connections Defendants timely filed and served their list of experts naming Dr. Shaha on September 29, 2023.[79] To the extent Plaintiffs argue that Mr. Marshall's substitution by Dr. Shaha unfairly prejudices them because Dr. Shaha opines on matters (1) already determined by the law of the case and that are (2) beyond the scope of Mr. Marshall's original report, the Court addresses these arguments below.

### I. Dr. Shaha may testify as an expert in the *Addison* Trial because the law-of-the-case doctrine does not prohibit his testimony.

Plaintiffs are correct in stating that both Mr. Marshall and Dr. Pietari testified at the General Causation trial in this matter.[80] The law-of-the-case doctrine requires that when the Court decides an issue, "that decision should continue to govern the same issues in subsequent stages of the same case."[81] However, the doctrine "applies only to issues that were actually decided rather than all questions in the case that might have been decided but were not."[82] In its Findings of Fact and Conclusions of Law, this Court did not rule on any opinion expressed by Dr. Pietari or Mr. Marshall on hydrogen sulfide generation modeling.[83] This Court ruled only that, "for both the *Addison* and Class Actions, during the relevant time period, odors and gases were emitted by the Landfill; the emissions of gases and odors from the Landfill occurred during the relevant time period; and exposure to the odors and gases emitted by the Landfill at a level of five parts per billion for thirty minutes 'is sufficient by itself for

---

[79] R. Doc. 377 at p. 3 (18-7889); R. Doc. 418 at p. 3 (19-11133).
[80] R. Doc. 285 at p. 3 (18-7889); R. Doc. 323 at p. 3 (19-11133).
[81] *See United States v. Garza*, 624 F. App'x 208, 211 (5th Cir. 2015) (citing *United States v. Agofsky*, 516 F.3d 280, 283 (5th Cir. 2008)).
[82] *See Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001). *See* R. Doc. 642 (19-11133) (explaining the law-of-the-case doctrine with reference to the General Causation Trial).
[83] *See* R. Doc. 285 (18-7889); R. Doc. 323 (19-11133).

individuals generally to be able to smell hydrogen sulfide and for the exposure to cause' any of the Allowed Injuries."[84]

Accordingly, this Court did not "decide" any issues related to hydrogen sulfide generation, which is the subject of both Dr. Pietari and Dr. Shaha's expert opinions, during the General Causation trial. The Court also rejects Plaintiffs' arguments that Defendants' motion to uphold the designation of Dr. Shaha is in some way an impermissible "redo" of their earlier, unsuccessful *Daubert* challenge to Dr. Pietari.[85]

## II. Defendants have established good cause to substitute Mr. Marshall with Dr. Shaha. Plaintiffs are not prejudiced by Mr. Marshall's substitution because they have had ample time to prepare for and address Dr. Shaha's opinions: Dr. Pietari was able to update and bolster her opinions by issuing a second report, Dr. Pietari authored a rebuttal report to Dr. Shaha's report, and Plaintiffs deposed Dr. Shaha.

The Court finds that Defendants have established good cause for substituting Dr. Shaha for Mr. Marshall as a rebuttal expert on hydrogen sulfide generation in the *Addison* Trial. Defendants represent that Mr. Marshall was diagnosed with prostate cancer in early 2023, as stated in his notarized affidavit.[86] Mr. Marshall represents that he underwent surgery in April 2023 and has since suffered complications, requiring periods of hospitalization, that have affected his ability to work.[87] Courts have found an expert's "serious medical issue that will prohibit [the expert] from testifying at trial" as sufficient grounds to substitute the expert.[88] Thus, the Court

---

[84] R. Doc. 642 at p. 9 (19-11133) (citing R. Doc. 323 (19-11133)).
[85] *See* R. Doc. 285 at p. 3 (18-7889); R. Doc. 556 at p. 3 (19-11133). The instant motion is a motion to uphold the designation of Dr. Shaha rather than a *Daubert* motion challenging the admissibility of Dr. Pietari's testimony. Defendants never filed a *Daubert* motion to exclude the testimony of Dr. Pietari at the *Addison* trial.
[86] R. Doc. 388-1 at p. 3 (18-7889); R. Doc. 444-1 at p. 3 (19-11133); R. Doc. 388-2 at p. 2 (18-7889); R. Doc. 444-2 at p. 2 (19-11133).
[87] R. Doc. 388-2 at p. 2 (18-7889); R. Doc. 444-2 at p. 2 (19-11133).
[88] *Collins v. Benton*, 18-7465, 2021 WL 6091095, at *3-4 (E.D. La. Nov. 13, 2021). District courts have ample discretion to allow for substitution of experts. For example, a court exercised discretion in permitting

14

finds Mr. Marshall's cancer diagnosis and subsequent health complications constitute good cause for permitting his substitution.

Furthermore, the Court finds any potential prejudice to the Plaintiffs in allowing the substitution of Mr. Marshall with Dr. Shaha has been cured in many ways. First, on February 2, 2024, Dr. Pietari issued a second report, which expanded on her opinions and analysis "of the H2S generation at the JPL from the Spent Lime" through only "amend[ing her] prior reports with new information on the Spent Lime composition that became available after [she] had submitted [her] supplemental expert report."[89] In her February 2024 report, Dr. Pietari incorporated new laboratory data on quantities of spent lime into her modeling to increase her estimates of sulfate generated at the landfill.[90] She incorporated additional scientific studies into her analysis and bolstered her opinions on the impact of landfill moisture on sulfate generation.[91] In response, Dr. Shaha issued his report on March 8, 2024, which generally rebuts Dr. Pietari's analysis by opining there are flaws in her modeling and data, specifically with her application of the Anderson and Shaha models.[92] On March 29, 2024, Dr. Pietari issued a rebuttal report to Dr. Shaha's report.[93] Plaintiffs deposed Dr. Shaha on April 30, 2024.[94] In total, upon

---

substitution of an expert when the expert asserted they had a professional conflict of interest because they previously worked with the opposing party. *See, e.g.*, *Smith v. State Farm Lloyds*, 21-837, 2023 WL 359495 (E.D. Tex. Jan. 23, 2023).
[89] R. Doc. 444-2 at pp. 6, 16 (18-7889); R. Doc. 604-2 at pp. 6, 16 (19-11133).
[90] *Id.* at pp. 40-48.
[91] *See id.* at p. 14, 18, 24.
[92] R. Doc. 441-1 (18-7889); R. Doc. 556-1 (19-11133).
[93] R. Doc. 444-5 (18-7889); R. Doc. 604-5 (19-11133).
[94] *See* R. Doc. 441-2 (18-7889); R. Doc. 556-2 (19-11133).

15

commencement of the *Addison* on August 12, 2024, Plaintiffs will have known of Dr. Shaha's designation for nearly eleven months.[95]

With respect to Plaintiffs' challenges to the scope of Dr. Shaha's report which they argue exceeds that of Mr. Marshall, the Court finds that "as a substitute expert, [Dr. Shaha] is permitted to review all of the evidence, and, after conducting his own investigation, to express his own opinions and conclusions in his own words."[96] This includes his review of Dr. Pietari's new report. Because Dr. Pietari's February 2, 2024 report includes new materials and data, in order for Dr. Shaha to address "all the evidence," his opinions necessarily go beyond the scope of Mr. Marshall's opinions testified to in the General Causation trial.[97] Further, because Dr. Shaha is the author of one of the two modeling studies on which Dr. Pietari relies in her analysis, Dr. Shaha should have the opportunity to "express his opinions in his own language after reviewing the evidence and performing whatever tests prior experts on both sides were allowed to perform."[98] This includes framing his rebuttal of Dr. Pietari's opinions from the context of his knowledge of his own study and its modeling. Dr. Shaha logically may frame his analysis of hydrogen sulfide generation in the context of the proper application of his own study, just as Mr. Marshall framed his critiques of Dr. Pietari in the context of both the Anderson and Shaha studies.[99] Dr. Shaha's report, opining that Dr. Pietari unreliably conducted her hydrogen sulfide generation

---

[95] Courts typically evaluate prejudice to a party in the context of a last-minute expert substitution on the eve of trial where the concern is "ambushing the opposing side with new information days before the start of trial." *See Collins v. Benton*, 18-7465, 2021 WL 6091095, at *5 (E.D. La. Nov. 13, 2021).
[96] *Am. Can! v. Arch Ins. Co.*, 20-850, 2022 WL 1467424, *4 (N.D. Tex. Apr. 6, 2022).
[97] *See id.*
[98] *Sikkelee v. Precision Airmotive Corp.*, 07-886, 2021 WL 392101, at *5 (M.D. Pa. Feb. 4, 2021).
[99] Mr. Marshall opined on Dr. Pietari's application of the modeling techniques proposed in Dr. Shaha's 2020 study in addition to the Anderson 2010 study. The Court finds that allowing Dr. Shaha to do the same "in his own language" is substantively similar to the Mr. Marshall's critiques in his original report and testimony. *Am. Can!*, 2022 WL 1467424, at *3.

16

models, is substantively similar to Mr. Marshall's report that asserted the same general critique.[100]

Considering these facts and circumstances, the Court finds the Plaintiffs will not be unfairly prejudiced by Dr. Shaha's testimony.[101] Any concern regarding the scope of Dr. Shaha's testimony is remedied by the fact that Plaintiffs' own expert was given the opportunity to do a supplemental report. Plaintiffs have had ample opportunity to adequately prepare for addressing Dr. Shaha's opinions at trial.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Uphold the Expert Designation of Dr. Shaha is **GRANTED** as stated herein.[102]

**New Orleans, Louisiana, this 10th day of August, 2024.**

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　**SUSIE MORGAN**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

---

[100] *See* R. Doc. 441-1 (18-7889); R. Doc. 556-1 (19-11133); *see also* R. Doc. 441-3 (18-7889); R. Doc. 556-3 (19-11133).
[101] *Smith v. State Farm Lloyds*, 21-837, 2023 WL 359495, at *4 (E.D. Tex. Jan. 23, 2023).
[102] R. Doc. 388 (18-7889); R. Doc. 444 (19-11133).