UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK, **Plaintiff** | CIVIL ACTION<br><br>NO. 18-7889<br>c/w 18-8071,<br>18-8218, 18-9312 |
| **VERSUS** | |
| **PROGRESSIVE WASTE SOLUTIONS OF LA, INC., ET AL.,** **Defendants** | SECTION: "E" (5)<br><br>JUDGE: Morgan<br>MAGISTRATE JUDGE: North |
| *Applies to: All Cases* | |

### SETTLEMENT AGREEMENT

This Settlement Agreement, dated September 15, 2024 ("Agreement"), sets forth the terms and conditions agreed upon by the Parties for the settlement of this matter. This Agreement is intended by the Parties to fully, finally, and forever settle and release the Claims, subject to the terms and conditions herein. The Parties recognize additional documents will be required in order to implement the Agreement. The Parties agree to work in good faith to present to the Court all documents needed to implement the Agreement and agree that, in the absence of agreement by the Parties with respect to such documents, the Court shall resolve disputes between the Parties consistent with the terms of this Agreement.

## ARTICLE I
## RECITALS

1.1. WHEREAS, there was an alleged release of hydrogen sulfide and other sulfur compounds from the Jefferson Parish Landfill in the time period of July 1, 2017 through December 31, 2019.

1.2. WHEREAS, Class Counsel has concluded that it is in the best interests of the Class Members to compromise, settle and release the Claims asserted, or that could have been asserted, against the Parish of Jefferson in consideration of the terms and benefits of the Agreement. After arm's length negotiations, Class Counsel have considered, among other things: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the litigation and amount of discovery and testimony completed; (3) the potential for prevailing on the merits; (4) the range of possible recovery and certainty of damages; and (5) the existing rulings of the Court; and have determined the Agreement is fair, reasonable, adequate, and in the best interests of the Class Members.

1.3. WHEREAS, the Parish of Jefferson has concluded that it is in its interests to compromise and settle the Claims asserted, or that could have been asserted, against them, in consideration of the terms and benefits of the Agreement. After arm's length negotiations, the Parish of Jefferson and counsel have considered, among other things: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the litigation and amount of discovery and testimony completed; (3) the burdens of litigation; (4) the



potential for prevailing on the merits; and (5) the range of possible recovery and certainty of damages; and have determined the Agreement is fair, reasonable, adequate and in their best interests to resolve any alleged fault, liability and/or responsibility attributable to the Parish of Jefferson.

1.4.     WHEREAS, this Agreement sets forth the terms and conditions agreed upon to settle and resolve all Claims of the Class Members that have been or could have been made against the Released Parties arising out of or related to the Release Occurrence (as defined below in Article II, Section 2.19), which shall be resolved and dismissed with prejudice in accordance with the terms of this Agreement.

THEREFORE, the Parties agree as follows:

**ARTICLE II**
**DEFINITIONS**

For purposes of this Agreement, terms with initial capital letters have the meanings set forth below:

2.1. "Action" means Ictech-Bendeck v. Waste Connections, et al; No. 18-7889 United States District Court for the Eastern District of Louisiana and all consolidated matters, including 18-8071, 18-8218 and 18-9312

2.2. "Administrative Costs" means all costs associated with the implementation and administration of the notice, allocation and claims processes contemplated by this Agreement, including without limitation Court-approved compensation and costs associated with the Administrator, including any vendors, experts or legal counsel retained by the Administrator, costs of the Notice Program(s), costs of establishing, implementing and administering the claims process, costs of the Claims Program, costs of establishing and operating the Settlement Fund, costs of distributing the Settlement Payment, and all other costs and compensation associated with the implementation and administration of this Agreement, as set forth in this Agreement.

2.3. " Court Appointed Neutral" means a settlement administrator, court appointed neutral, or other person appointed by the Court to oversee the Notice Program and the allocation and distribution of the Settlement Payment to Class Members.

2.4. "Claims" means all past, present, and future claims of any nature whatsoever arising from or related to the Release Occurrence and related acts and/or omissions, including all liabilities, demands, causes of action, rights of action, complaints, lawsuits, regulatory proceedings, obligations, responsibilities, assertions, allegations, entitlements, expectations, demands, debts, expert opinions, interventions, assigned claims, cross-claims, third-party claims, subrogation claims, arbitration or mediation demands, injunctive claims and/or obligations of any kind or character, known or unknown, foreseen or unforeseen, asserted or unasserted, made or which could have been made or which could be made in the future, existing or contingent, whether at law or in equity, whether sounding in, grounded in or based upon or in tort, contract, quasi-contract, equity, third-party beneficiary, citizen suit, obligation, nuisance, trespass, negligence, gross negligence, negligence per se, servitude law, mineral law, lease law, strict liability, absolute liability, unjust enrichment, intentional or deliberate conduct, derivative or vicarious liability, vicinage, abuse of rights and/or any past, present or future law, statute, standard, jurisprudence, regulation or other legal theory or basis of liability whatsoever, whether local, state or federal, and whether for compensatory damages, special damages, punitive damages, exemplary damages, bad faith damages, property damages, mitigation, loss of income, lost profits,

future income, specific performance, injunction, lost rental value, lost rentals, loss of business or business opportunities, breach of contract, lost royalties, loss of land, subsidence, lost property value, diminution in property value, clean-up claims, costs, taxes, remediation, restoration, removal expenses, response costs, investigation costs, pollution, corrective action, loss of use, economic damages, stigma damages, natural resource damages, environmental damages, groundwater, surface-water and/or soil contamination, environmental monitoring, attorney fees, litigation or investigation expenses, experts or consultant fees or costs and/or any other loss, damage, cost, fine, penalty, tax, fee or expense of any kind whatsoever.

      2.6. "Claims Program" means the program to distribute the Settlement Payment to the Class Members, as described in Article IV

      2.7. "Class" or "Class Members" means any and all individuals who, during the time period of July 1, 2017 through December 31, 2019, lived and/or resided in the Class Area, and the individuals listed in Exhibit A.

      2.8. "Class Counsel" means Lawrence J. Centola, III, Jason Z. Landry, Bruce C. Betzer, Douglas S. Hammel, Kacie F. Gray, John D. Sileo, and Seth H. Schaumburg.

      2.9 "Class Period" means the time period of July 1, 2017 through December 31, 2019.

      2.10. "Court" means the United States District Court for the Eastern District of Louisiana, in <u>Ictech-Bendeck v. Waste Connections, et al;</u> No. 18-7889 and all consolidated matters, Judge Susie Morgan, presiding.

      2.11. "Effective Date" means the date on which the approval order described in Section 7.6 becomes Final.

      2.12. "Final," with respect to any order of the Court, means an order for which either of the following has occurred: (1) the day following the expiration of the deadline for appealing the entry of the order, if no appeal or writ is filed, or (2) if an appeal of the order is filed, the date upon which all appellate courts with jurisdiction (including the United States Supreme Court by petition for writ of certiorari) affirm such order, or deny any such appeal or petition for writ of certiorari.

      2.13. "Notice Program" means any and all notice to Class Members ordered by the Court in relation to this Agreement, including any reminder notices and termination notices.

      2.14. "Opt-Outs" means those persons who meet the definition of Class Members, but who timely and properly exercise their rights to opt out of the Class and therefore are not Class Members, as described in Article VIII.

      2.15. "Parties" means the Parish of Jefferson and the Class.

      2.16. "Released Parties" means the Parish of Jefferson.

      2.17. "Settlement Fund" means the interest-bearing escrow account established for the benefit of the Class to receive the Settlement Payment to be established at Western Alliance Bank unless otherwise agreed to by all the parties and administered in accordance with the Settlement Agreement and pursuant to the applicable regulations of the United States Internal Revenue Service regarding qualified settlement funds.

2.18. "Settlement Payment" means the sum of $4,500,000 U.S. dollars ("USD") paid by, or on behalf of, Parish of Jefferson to resolve the Claims.

2.19. "Release Occurrence" means the release of hydrogen sulfide and other sulfur compounds from the Jefferson Parish Landfill in the time period of July 1, 2017 through December 31, 2019.

# ARTICLE III
## SETTLEMENT PAYMENT

3.1. The Parish of Jefferson shall make, or have another make on their behalf, the Settlement Payment to resolve the Claims. After making the Settlement Payment, the Parish of Jefferson shall not be required to make, or have another make on their behalf, any further payments pursuant to this Agreement.

3.2. Under no circumstances shall the Parish of Jefferson have any liability for amounts in excess of the Settlement Payment. All damages to Class Members, attorneys' fees and costs, common benefit fees and expenses, and Administrative Costs shall be paid from the Settlement Payment.

3.3 The Parish agrees to assign its rights (but not obligations) under any applicable contract between the Parish and either Aptim or the Waste Connections Defendants, their subsidiaries and affiliates to the Class. Further, The Parish agrees to defend and indemnify the Class from any claims made by either Aptim or the Waste Connections Defendants, their subsidiaries and affiliates arising out of the contracts or the action.

# ARTICLE IV
## DISTRIBUTION OF SETTLEMENT PAYMENT

4.1. <u>Claims Program.</u> Subject to the terms and conditions herein, Class Counsel shall arrange to establish a Court-supervised Claims Program for the Class members.

    (a)    Class Counsel shall, within [14] days of filing of this Agreement, recommend to the Court a person to serve as the Court Appointed Neutral, subject to Court approval.

    (b)    The Court Appointed Neutral with the Claims Administrator shall develop the Claims Program, subject to the approval of the Court, and shall implement the Claims Program subject to Court supervision. The Claims Program shall account for the distance of the Class Member's property from the Jefferson Parish Landfill, the Class Members' activities during the Class Period, and any other factors the Court Appointed Neutral deems appropriate.

    (c)    The Parish of Jefferson shall be entitled to standard reports of claims data and may request additional information.

    (d)    The Claims Program is intended to distribute funds remaining after Administrative Costs have been paid. Distribution of the Settlement Payment under the Claims Program shall not occur until after the Effective Date occurs and the order approving the Claims Program is Final. The fact that the Court retains jurisdiction, after the Effective Date occurs and the order approving the Claims Program

is Final, to oversee the Claims Program or other aspects of the administration of the Settlement Fund, shall not impact the timing of distribution of the Settlement Payment.

(e)     In the event that funds remain in the Settlement Fund following implementation of the Claims Program in accordance with the orders of the Court, Class Counsel shall make a proposal, subject to the review and approval of the Court, for the distribution of the remaining funds to the Class Members, or for the distribution of funds *cy pres,* or for such other distribution as the Court may approve. Class Counsel may seek the assistance of the Administrator in making the proposal for the distribution of remaining funds.

4.2. <u>Administrative Costs.</u> Subject to the supervision of the Court, the Administrator shall disburse funds as needed from the Settlement Fund to cover Administrative Costs. Funds may be disbursed to cover Administrative Costs beginning as soon as the Settlement Payment is made into the Settlement Fund.

4.3. <u>Attorneys' Fees.</u>

(a)     Subject to Court approval, all common benefit fees and all common benefit expenses incurred in connection with prosecuting this Action, will be paid by the Administrator from the Settlement Fund. The Released Parties shall not be responsible for the payment of any common benefit fees, common benefit expenses or other costs/expenses above or beyond the funds in the Settlement Fund

(b)     Class Counsel and the Released Parties have made no agreement regarding what the award of common benefit fees and expenses should be.

(c)     Class Counsel shall prepare and file with the Court a common benefit fee application, specifying the total amount of costs and fees it seeks for (i) the reimbursement of reasonable costs and expenses incurred for the benefit of the Class, and (ii) the reasonable fees for services performed for the benefit of the Class, which shall be determined in accordance with applicable standards for such fees, including, as appropriate, consideration of the results achieved and the contingencies involved in the performance of such services. Class Counsel shall comply with the provisions of FRCP 23(h) in regard to the fee application.

(d)     The Parties acknowledge and agree that neither Class Counsel, nor other attorneys who have represented the Class Members, nor Class Members, nor their respective agents, assigns, successors, creditors, lienholders, claimants or representatives, shall have any claim whatsoever against the Released Parties for payment of attorneys' fees, expenses or other costs, other than the common benefit fees and expenses described in this Agreement, which shall be paid from the Settlement Fund.

(e)     In the event any dispute arises out of the allocation of such common benefit fees and expenses, the Parties agree that the Released Parties are not responsible for any liability, costs or expenses related thereto, and the Released Parties shall in no circumstance have any liability for costs or expenses above and beyond the funds in the Settlement Fund.

4.4. <u>Timing of Distributions.</u> After the Effective Date, distributions to Class Members shall occur as soon as practicable, or in a timeframe ordered by the Court, consistent with the terms and conditions of this Agreement.

4.5. <u>Appeal of Distributions.</u> The Court Appointed Neutral's decisions with respect to the amount of the Settlement Payment to be distributed to each Class Member making a claim under the Claims Program may be appealed to the Court or to a Magistrate Judge designated by the Court to hear any appeals.

4.6. <u>Class Representative Incentive Award.</u> Class Counsel intends to make an application for an incentive award to Class Representatives not to exceed $7500 each contemporaneous with the application for an award of attorneys' fees, costs and expenses.

4.7. <u>Administration and Funding of Settlement Payment.</u>

(a)   The Settlement Payment shall be placed in the Settlement Fund. The Settlement Fund, including all accounts and subaccounts thereof, shall be treated as (i) a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, et seq., and (ii) a qualified settlement fund or other analogous fund described in any other applicable local, state or foreign law (as described in (i) or (ii), a "QSF"). The Administrator shall be the administrator of the QSF pursuant to Treas. Reg. § 1.468B-2(k)(3) and any other applicable law and shall be responsible for the timely and proper performance of the undertakings specified in the regulations promulgated under 26 U.S.C. § 4688 and any analogous provisions of local, state or foreign law, including, but not limited to, the obtaining of an employer identification number for the Settlement Fund, the filing of all required tax returns in accordance with Treas. Reg. § 1.468B-2(k)-(l), any required withholding of tax, the payment of any taxes (including estimated taxes) and associated penalties, interest or additions for which the Settlement Fund may be liable, and responding to any questions from or audits regarding such taxes by a tax authority. In cooperation with the Released Parties, Class Counsel and the Administrator shall be responsible for and take all steps necessary for establishing and treating the Settlement Fund as a QSF and, to the fullest extent permitted by applicable law, shall not take a position (nor permit an agent to take a position) in any filing or before any tax authority inconsistent with such treatment. Class Counsel and the Administrator shall treat the Settlement Fund as a QSF from the earliest possible date, including through the making of a "relation-back" election as described in Treas. Reg. § 1.468B-1(j)(2) with respect to the Settlement Fund and any analogous election under other applicable law.

(b)   The Administrator shall maintain and oversee the Settlement Fund. If any dispute arises with respect to the maintenance and oversight of the Settlement Fund or the scope and responsibilities of the Administrator, the Court will resolve the matter consistent with the terms of this Agreement.

(c)   The Settlement Payment shall be held in the Settlement Fund until distribution, except that approved Administrative Costs may be disbursed from the Settlement Fund before the Effective Date. Upon the Effective Date, all income earned on money held in the Settlement Fund, net of taxes, shall be subject to allocation by the Administrator.

## ARTICLE V
## **RELEASE OF CLAIMS**

5.1. <u>Release of Claims.</u> In consideration of the Settlement Payment and the terms and conditions of this Agreement, the Class Members and Class Counsel agree that, upon the Effective Date, the Final order and judgment approving the Agreement shall operate as a release of the Released Parties by each Class Member, of any and all Claims, releasing, waiving, acquitting, and forever discharging, the Released Parties from, and covenanting not to sue the Released Parties regarding, any and all Claims.

(a)     Class Counsel, on behalf of the Class, acknowledges that the release provided for herein will be, and may be raised as, a complete defense to and will preclude any action or proceeding against the Released Parties regarding any Claims.

(b)     In connection with the release provided for herein, Class Counsel acknowledges on behalf of the Class that claims presently unknown or unsuspected, or facts in addition to or different from those now known or believed to be true with respect to the matters released herein, may be discovered. Nevertheless, it is the intention of the Parties to fully, finally and forever settle and release all such matters, and all Claims relating thereto, that hereafter may exist, or might have existed with respect to the Claims.

(c)     The Parish agrees to assign its rights (but not obligations) under any applicable contract between the Parish and either Aptim or Waste Connections, its subsidiaries and affiliates to the plaintiffs.  Further, The Parish agrees to defend and indemnify plaintiffs from any claims made by either Aptim or Waste Connections, its subsidiaries and affiliates arising out of the contracts or the action.

## ARTICLE VI
## NO ADMISSION OF LIABILITY

6.1. The Parties agree that the negotiation and execution of this Agreement, or any payments made thereunder, are to compromise disputed claims and are not an admission of wrongdoing, non-compliance, or liability.

6.2. Regardless of whether the Agreement is approved in any form by the Court, not consummated for any reason, or otherwise terminated or canceled, this Agreement and all documents related to the Agreement (and all negotiations, discussions, statements, acts, or proceedings in connection therewith) shall not be offered or received against any Party as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any Party with respect to the truth of any fact alleged or the validity of any claim that was or could have been asserted against the Parish of Jefferson arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Release Occurrence, or of any liability, negligence, recklessness, fault, or wrongdoing of the Parish of Jefferson or construed against any Party as an admission, concession, or presumption that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial.

## ARTICLE VII
## SETTLEMENT APPROVAL

7.1. Approval.

(a)     The Parties agree to take all actions reasonably necessary for preliminary and final approval of the Agreement, and approval of the additional documents described herein.

(b)     Pursuant to Section 7.5 below, on or before September 24, 2024, Class Counsel shall file with the Court a motion for preliminary approval of this Agreement, unless the Parties agree to a different schedule for the filing of such motion.

7.2. Cooperation.

(a)     The Parish of Jefferson agrees to reasonably cooperate in seeking approval of this Agreement and satisfaction of all conditions precedent to the occurrence of the Effective Date of this Agreement.

7.3.   Class Notice.

(a)     The Notice Program shall be as approved by the Court to meet all applicable Fed. R. Civ. P. 23 notice requirements; shall include individual mailed notice where practicable; and shall include a website and toll-free number.

(b)     Class Counsel shall propose the Notice Program, and Class Counsel shall submit the Notice Program to the Court for its approval. The Notice Program shall include a description of the Claims Program prepared by the Administrator and the manner in which Class Members may submit claims for payment.

7.4.   Objections.

(a)     Any Class Member who intends to object to the fairness, reasonableness and adequacy of this Agreement ("Objector") must file a written objection ("Objection Form") with the Court and mail a copy to Class Counsel and the Parish of Jefferson at the addresses set forth below in Section 9.4. The Notice Program shall specify a deadline, not less than 30 days from the commencement of the Notice Program, for the filing and postmarking of the mailings of objections. Class Counsel shall propose the Objection Form, subject to review and approval by the Parish of Jefferson. Objectors must set forth in the Objection Form their full name, telephone number, email address, provide proof of membership in the Class, and provide a description of any property wholly or partially located within the Class area where they resided during the Class Period. In addition to the above, Objectors must state in their Objection Form the reasons for objecting, and a statement whether the Objector intends to appear in Court at any final fairness hearing either with or without separate counsel. Subject to the Court's discretion, any Class Member shall be entitled to be heard in Court at any hearing (whether individually or through separate counsel), or to object to the Settlement Agreement, provided that such Class Member submits written notice of the Class Member's objection in compliance with the deadline and other requirements specified in this Section 7.4, and in the Notice Program. Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections.

(b)     Class Counsel agrees not to represent any Objectors to this Settlement Agreement.

7.5. Preliminary Approval Order. Promptly after this Agreement is executed, Class Counsel shall, in consultation with the Parish of Jefferson, prepare and file with the Court a motion for preliminary approval of this Agreement requesting that the Court:

(a)     Preliminarily confirm the Class Representatives proposed by Class Counsel;

(b)     Preliminarily certify the Class for settlement purposes only;

(c)     Preliminarily approve the Agreement as fair, reasonable, and adequate; and

8

(d)     Find that the Notice Program proposed by the Court Appointed Neutral/Administrator and/or Class Counsel satisfies the requirements set forth in Federal Rule of Civil Procedure 23;

(e)     Set forth procedures and deadlines associated with the notice process and fairness hearing;

(f)     Issue an injunction permanently barring and preventing each and all Class Members from prosecuting against the Released Parties any Claims or bringing any subsequent claims or causes of action in law or in equity that arise from, or are related to, directly or indirectly, the Claims. This provision is not intended to prevent or impede the enforcement of claims or entitlement to benefits under this Agreement.

7.6. Final Approval. Class Counsel, on behalf of the Class Members, shall seek the following Final order of the Court that:

(a)     Confirms the class representatives proposed by Class Counsel;

(b)     Certifies the Class for settlement purposes only;

(c)     Approves the Agreement as fair, reasonable, and adequate;

(d)     Incorporates the terms of this Agreement and provides that the Court retains continuing and exclusive jurisdiction over the Parties to interpret, implement, administer and enforce the Agreement in accordance with its terms;

(e)     Approves the Settlement Fund, finds that the Settlement Fund is a QSF, and provides that the Settlement Fund is subject to the continuing jurisdiction of the Court in accordance with the terms of this Agreement;

(f)     Finds that the Notice Program, as carried out by the Administrator, satisfies the requirements set forth in Federal Rule of Civil Procedure 23;

(g)     Permanently bars and enjoins the Class and each Class Member from commencing, asserting, and/or prosecuting any and all Claims against the Released Parties;

(h)     Dismisses the Released Parties from the Action with prejudice; and

(i)     Dismisses with prejudice and releases all of the Claims asserted by, or that could have been asserted by, the Class Members against the Released Parties.

## ARTICLE VIII
## OPT-OUTS

8.1. To validly exclude themselves and opt-out from the Class, a Class Member must, no later than a date to be determined by the Court (the "Opt-Out Deadline"), submit a written request to opt-out that complies with applicable instructions set forth in this Agreement and the Notice Program. A written request to opt out must be signed with the handwritten signature of the person (or representative of the entity) opting out. Such handwritten signature may be scanned and/or submitted in PDF form or by fax.

8.2. Class Counsel and the Parish of Jefferson shall be provided with identifying information on Opt-Outs on a weekly basis. Fourteen **(14)** days after the Opt-Out Deadline, the Administrator and/or Class Counsel shall provide to the Parish of Jefferson information showing the identity of all of the Opt-Outs.

8.3. All Class Members who do not timely and properly opt out shall in all respects be bound by all the terms of this Agreement and the Final order(s) with respect to the class contemplated herein, and shall be permanently and forever barred from commencing, instituting, maintaining or prosecuting any action based on any Claim against any of the Released Parties in any court, arbitration tribunal, or administrative or other forum.

8.4. Class Counsel, as well as Favret, Demarest, Russo, Lutkewitte and Schaumburg; Hammel Law Firm, LLC; Irpino, Avin & Hawkins; Law Office of Bruce Betzer; Law Office of John D. Sileo and Liska, Exnicios & Nungesser agrees not to represent any Opt-Outs to this Agreement.

## ARTICLE IX
## ADDITIONAL PROVISIONS

9.1. Exhibits. Any exhibits to this Agreement are incorporated by reference as if fully set forth herein.

9.2. Entire Agreement. This Agreement contains the entire agreement between the Parties concerning the subject matter thereof and supersedes and cancels all previous agreements, negotiations, and commitments, whether oral or in writing, with respect to the subject matter of this Agreement. No representations, warranties or inducements have been made to any Party concerning the Agreement or its exhibits other than the representations and warranties contained and memorialized in the Agreement and its exhibits. This Agreement may be amended from time to time only by written agreement of the Parties, subject to Court approval.

9.3. Additional Documentation. The Parties recognize additional documents will be required in order to implement the Agreement, and agree to be bound by the terms set forth herein with respect to such additional documentation. However, the Parties agree that this Agreement contains all of the essential terms necessary for a full, final, binding and enforceable Settlement Agreement between the Parties.

9.4. Notice.

(a) Written notice to Class Counsel and/or Class Members must be given to:

Martzell, Bickford & Centola
Lawrence J. Centola, III
338 Lafayette Street
New Orleans, LA 70130
504-581-9065
lcentola@mbfirm.com

(b) Written notice to the Parish of Jefferson must be given to:

Connick and Connick, LLC
Michael S. Futrell
3421 N. Causeway Blvd, Suite 408
Metairie, LA 70002

      (c)     All notices required by the Agreement shall be sent by overnight delivery and by electronic mail.

      9.5. <u>Choice of Law.</u> This Agreement shall be interpreted in accordance with the laws of the State of Louisiana, without giving effect to conflict of laws principles.

      9.6. <u>Continuing Jurisdiction.</u> The Court shall have continuing and exclusive jurisdiction to interpret, administer, implement, and enforce this Agreement, including through injunctive or declaratory relief.

      9.7. <u>No Waiver.</u> The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous.

      9.8. <u>Mutuality.</u> This Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against any of them by reason of authorship.

      9.9. <u>Counterparts.</u> This Agreement may be executed in counterparts, and a facsimile signature shall be deemed an original signature for purposes of this Agreement.

      9.10. <u>Headings.</u> The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

      9.11. <u>Singular and Plural.</u> For purposes of interpreting this Agreement, the single includes the plural and vice versa.

      9.12. <u>Assignment.</u> No Party to this Agreement shall assign or delegate any of the rights, interests, or obligations under or relating to this Agreement without the prior written consent of the Parties. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of and be enforceable by the Parties and their respective successors and permitted assigns.

      9.13. <u>Third-Party Beneficiaries.</u> There are no third party beneficiaries to this Agreement, except as expressly provided herein.

**ARTICLE X**
**<u>REPRESENTATIONS AND WARRANTIES REGARDING AUTHORITY</u>**

      10.1. Class Counsel on behalf of the Class Members represents and warrants that they have authority to enter into this Agreement on behalf of the Class, subject to the Court's appointment of Class Counsel. This Agreement has been duly and validly executed and delivered by Class Counsel,

and constitutes a legal, valid and binding obligation of the Class, subject to Court approval of the Agreement.

       10.2. The Parish of Jefferson represents and warrants that it has all requisite corporate power and authority to execute, deliver and perform this Agreement. The execution, delivery, and performance by the Parish of Jefferson of this Agreement has been duly authorized by all necessary corporate action and constitutes the legal, valid and binding obligation of the Parish of Jefferson, subject to Court approval.

The Parties have caused this Agreement to be duly executed, as of the date first written above.

THE PARISH OF JEFFERSON

By: _____
Name: Michael S. Futrell
Title: COUNSEL FOR THE PARISH OF JEFFERSON


CLASS COUNSEL, on behalf of the Class:

By: _____
Name:          Lawrence Centola
Title:          Class Counsel

Exhibit A: Class Inclusions

Exhibit B: Class Exclusions

Exhibit C: Class Area Map

# Exhibit A

Exhibit A to Settlement Agreement
Class Inclusions

The following persons are expressly included the Class as defined in Section 2.7 of the Agreement:

1. Albert Cooper
2. Tawarranda Dorsey
3. Marjorie Edwards
4. Trevor Edwards
5. Aubranette Havies
6. Leroy Havies
7. Flora Herbert
8. Irielle Love
9. Shaundrekia Love
10. Etta Love
11. Jaharin Paul
12. Kerry Petit
13. Florene Perry
14. Marchell Rainwater and minor daughter, J.E.
15. Joycelyn Robert
16. Kenneth Robert
17. Felix Roland
18. Rosalyn Ross
19. Kiyoda Stewart and minor daughter, L.S.
20. Tommy Troxler
21. Carleena Varmall
22. Diamond Varmall
23. DeCarlos Varmall

1

# Exhibit B

2

Exhibit B to Settlement Agreement
Class Exclusions

The following persons and entities are excluded from the Class as defined in Section 2.7 of the Agreement:

1. All named plaintiffs in <u>Addison, et al. v. Louisiana Regional Landfill Company, et al.</u>, No. 19-11133 c/w 19-14512

2. All Defendants' employees and relevant court personnel,

3. Owners of undeveloped land not connected to the property on which such owners reside

4. Any persons and/or entities whose claims were previously (i) settled and released, or (ii) dismissed by court order with prejudice.

3

# Exhibit C

Exhibit C to Settlement Agreement
Class Area Map

[Class Area Map appears on the following page]

