**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** Plaintiff | **CIVIL ACTION** **NO. 18-7889** **c/w 18-8071,** **18-8218, 18-9312** |
| **VERSUS** | |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** Defendants | **SECTION: "E" (5)** |
| *Applies to: All Cases* | **JUDGE: Morgan** **MAGISTRATE JUDGE: North** |

**WASTE CONNECTIONS DEFENDANTS' OPPOSITION TO**
**REVISED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

Defendants Louisiana Regional Landfill Company ("LRLC"), Waste Connections Bayou, Inc., and Waste Connections US, Inc. (collectively, "Waste Connections Defendants") submit this memorandum in opposition to the Revised Motion for Preliminary Approval of Proposed Settlement (ECF Doc. #481) ("Motion") and respectfully request that, unless the Proposed Settlement[1] is revised in the manner suggested herein, the Court deny approval of the Proposed Settlement.[2]

**BACKGROUND**

LRLC operated portions of the Jefferson Parish Landfill pursuant to a contract with Jefferson Parish dated May 17, 2012 ("Contract").[3] The Contract provides, "This Agreement may

---

[1] ECF Doc. #481-1.

[2] In this brief, the Waste Connections Defendants also respond to various arguments raised by Plaintiffs and Jefferson Parish in their reply memoranda found at ECF Doc. Nos. 480, 482.

[3] Exhibit 1.

not be sold, subleased, assigned or transferred at [any time] by either party without the prior written approval of the other party…."[4]

Despite this clear and unambiguous language, the Proposed Settlement purports to assign all of the Parish's rights under the Contract to Plaintiffs, providing: "The Parish agrees to assign its rights (but not obligations) under any applicable contract between the Parish and either Aptim or the Waste Connections Defendants, their subsidiaries and affiliates to the Class" (hereafter, the "Assignment Provision").[5] The Waste Connections Defendants have not been asked to consent to the Assignment Provision and no consent to such an assignment has been given. To the contrary, the Waste Connections Defendants object to any proposed assignment of rights under the Contract to Plaintiffs.

<u>**ARGUMENT**</u>

1. **The Waste Connections Defendants have standing to object to the Proposed Settlement.**

Plaintiffs and Jefferson Parish concede[6] that non-settling defendants have standing to object to a proposed settlement when it will cause them "plain legal prejudice." *See Dunn v. Sears, Roebuck & Co.,* 639 F.2d 1171, 1173 (5th Cir. 1981) (non-settling defendant properly objected to settlement that affected the availability of witnesses at trial); *see also Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983) (holding that non-settling party has standing to challenge a partial settlement where it demonstrates "plain legal prejudice"). Plaintiffs also concede that the Seventh Circuit's *Agretti* decision is instructive here,[7] and rely heavily on it. That decision holds

---

[4] Exhibit 1, p. 38, Section IV(Z)(3).

[5] ECF Doc. #481-1, p. 4, Section 3.3; p. 7, Section 5.1(c).

[6] ECF Doc. Nos. 480, 482.

[7] ECF Doc. #480, p. 3.

that "any interference with a party's contract rights" constitutes plain legal prejudice. *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992).[8]

As set forth below, the Proposed Settlement would result in plain legal prejudice to the Waste Connections Defendants because (1) the Proposed Settlement would create a settlement class with potential claims against them, depriving them of their right to contest class certification as they are entitled under Rule 23 of the Federal Rules of Civil Procedure; and (2) the Proposed Settlement would place any claim under the Operating Agreement in the hands of the Plaintiffs over the objections of LRLC, in violation of the anti-assignment clause that LRLC bargained for.

### a. The Proposed Settlement would create a settlement class as to claims against Waste Connections Defendants.

Plaintiffs are attempting to use the Proposed Settlement to improperly bypass the requirements of Rule 23 and achieve certification of a class with pending claims against the Waste Connections Defendants, without allowing the Waste Connections Defendants an opportunity to challenge the certification of the class. In the absence of an agreement to a settlement class (which the Waste Connections Defendants have not agreed to), Rule 23 allows for certification of a class against a defendant only when plaintiffs have proved typicality, ascertainability, adequacy of representation, predominance, superiority, and other factors, which the *Ictech-Bendeck* Plaintiffs have not proven here with respect to claims against the Waste Connections Defendants. Thus, Rule 23 requires rejection of the Proposed Settlement, as it would improperly create a settlement class as to claims against the Waste Connections Defendants, when they have not agreed to the creation of such a class.

---

[8] When citing *Agretti* on page 3 of their motion, Plaintiffs did not include the preceding sentence in which the court stated that "Plain legal prejudice has been found to include **any interference with a party's contract rights** or a party's ability to seek contribution or indemnification." *Agretti v. ANR Freight Sys., 982 F.2d 242, 247* (1992) (citing *Quad/Graphics*, 724 F.2d at 1232) (emphasis added).

The Assignment Provision purports to assign rights "to the Class."[9] The Proposed Settlement is deliberately vague on the question of what "class" would inherit such rights, including for example, whether the rights are being transferred to the settlement class that Plaintiffs and the Parish propose to be certified by the Court pending approval of the settlement between Plaintiffs and Jefferson Parish ("Settlement Class"), or some other class to potentially be certified at a later date.

On October 3, 2024, the parties attended a remote video conference for a meet and confer on the Proposed Settlement. During this meeting, the Waste Connections Defendants asked Plaintiffs to clarify the identity of "the class" that would inherit the contractual rights under the Assignment Provision. Plaintiffs responded with conflicting and confusing responses, and at one point indicated that they indeed interpreted the Assignment Provision as assigning rights to the Settlement Class, implying that a class that would be created by the Court's approval of the Proposed Settlement. Regardless of Plaintiffs' interpretation, as currently drafted the Proposed Settlement could indeed be interpreted as creating a class as to claims against the Waste Connections Defendants without consideration of whether Plaintiffs have proved predominance, superiority, and the other factors required by Rule 23 for their assigned claim or allowing the Waste Connections Defendants an opportunity to challenge that certification.

As to Plaintiffs' original class allegations, the Waste Connections Defendants have opposed class certification and demonstrated that Plaintiffs have failed to prove typicality, adequacy of representation, predominance, and superiority.[10] Now, Plaintiffs are seeking to obtain breach of contract rights against the Waste Connections Defendants, and to have the Court certify

---

[9] ECF Doc. #474-1, p. 4, Section 3.3; p. 7, Section 5.1(c).

[10] ECF Doc. #447.

a Settlement Class that will assert those rights against the Waste Connections Defendants, while bypassing the question of whether Plaintiffs have proved that certification is appropriate under Rule 23. This would force the Waste Connections Defendants into litigation against a class while depriving them of the right to object to certification of the class.

Plaintiffs and the Parish seek to prevent the Court from even considering the prejudice cited by the Waste Connections Defendants, claiming the Waste Connections Defendants do not have standing, but none of the cases they have cited support this position. First, in *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir. 1992), the non-settling defendants did not argue the proposed settlement would affect their own legal interests – instead they argued the proposed settlement violated "federal labor law, national labor law policy, and threaten[ed] to destabilize the collective bargaining relationship." Second, *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1231 (7th Cir. 1983) (cited by both Plaintiffs and the Parish) and *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1156 (5th Cir. 1985) did not involve class actions and do not feature the sort of prejudice claimed by the Waste Connections Defendants herein. Third, the class in *Transamerican Ref. Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992) had *already* been certified, which distinguishes it from the instant matter.

At least one of Plaintiffs' cases, a recent Fifth Circuit case, holds that the Court *should* allow the Waste Connections Defendants to be heard. In *LeBlanc v. Texas Brine Co., L.L.C.*, 989 F.3d 359, 363 (5th Cir. 2021), notwithstanding the distinguishing factor of a class having already been certified, the district court allowed the non-settling defendant to argue its objection at the fairness hearing and *before* approval of the settlement. Plaintiffs cite *LeBlanc* in an effort to wholly foreclose the Waste Connections Defendants from voicing their objections to the Court, but that

case indicates that the Court should indeed allow the Waste Connections Defendants to present their objections before the settlement is approved.

This result is also supported by *In re Cendant Corp. Sec. Litig.*, Civ. No. 98-1664, 2007 WL 2164241, at *4 (D.N.J. July 25, 2007), where the district court found the non-settling defendant had standing where the proposed settlement agreement "touche[d]" its interests. There, the proposed settlement did not extinguish any of the non-settling defendant's rights to pursue any legal claims, but the agreement did bar claims from one settling party while explicitly preserving another settling party's claims. Similarly, in *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 716 (E.D. Pa. 2001), the district court allowed a non-settling party to object to an assignment in the settlement based on its belief that the assignment was champertous. The court noted whether the non-settling party had standing to object to the assignment was a close call but considered the objection nonetheless. *Id.*, n.12. *See also In re PNC Fin. Servs. Grp., Inc.*, 440 F.Supp.2d 421, 452 (W.D. Pa. 2006) (analyzing non-settling defendant's objection to assignment of settling defendant's claims to plaintiffs).

Here, Plaintiffs are attempting to use the Proposed Settlement to improperly bypass the requirements of Rule 23 and achieve certification of a class as to claims against the Waste Connections Defendants, without allowing the Waste Connections Defendants to contest the certification of the class. This would strip the Waste Connections Defendants of their rights under Rule 23, constituting plain legal prejudice and imparting them with standing to object to the Proposed Settlement.

**b.  The Proposed Settlement would interfere with LRLC's contractual rights by forcing it to deal with the Plaintiffs to resolve any contractual disputes.**

LRLC[11] has standing for another reason – the Proposed Settlement would interfere with its contractual rights, which is a recognized form of plain legal prejudice. *Agretti,* 982 F.2d at 247. Specifically, LRLC deliberately bargained for the right to ensure that all rights created by the Contract in favor of Jefferson Parish would indeed at all times belong only to Jefferson Parish (unless LRLC agreed otherwise), not unforeseen third parties such as the Settlement Class. These rights could be based on several provisions in the Contract, and the anti-assignment clause recognizes the value of the original parties' mutual interpretation of those provisions. However, the Proposed Settlement would force LRLC to deal with the Plaintiffs to resolve any disputes over breach of the Contract, despite the explicit prohibition by the Contract's anti-assignment clause. As a party to the contract, LRLC has standing to enforce its terms. *See Morial v. U.S. Dep't of Hous. & Urb. Dev*., Civ. No. 01-3820, 2002 WL 246334, at *3 (E.D. La. Feb. 20, 2002).

Under Louisiana law, a contractual right cannot be assigned when the contract prohibits assignment of that right. Louisiana Civil Code art. 2653. Thus, the assignment called for by the Proposed Settlement is prohibited by the Contract's anti-assignment clause. *See In Re Katrina Canal Breaches Litig.*, 2010-1823 (La. 5/10/11), 63 So.3d 955, 960-62 (observing that article 2653 is broad, applies to all assignments, and clearly indicates the Louisiana legislature's "intent to allow parties freedom to contractually prohibit assignment of rights.").

Plaintiffs and the Parish argue that the Contract's anti-assignment provision prohibits only assignment of rights related to "trash collection and landfill operation and maintenance."[12] That is

---

[11] Among the Waste Connections Defendants, LRLC is the proper party to seek to enforce adherence to the Contract and its anti-assignment provision, as LRLC (the successor to IESI LA Landfill Corporation) is the only Waste Connections Defendant who was a party to the Contract.

[12] ECF Doc. #480, p. 6.

not what the Contract says. Rather, the Contract broadly prohibits assignment of "[t]his Agreement," in other words, all of the rights and obligations under the Contract.[13] Under Louisiana law, a contract is a set of rights and obligations created by agreement of two or more parties.[14] Here, when the Parish and Plaintiffs seek to assign rights under the Contract (namely, the right to enforce obligations under the Contract), they are seeking to assign a portion of the Contract – exactly what is prohibited by the anti-assignment provision of the Contract. *See Traxler Const., Inc. v. 300 Mile Investments, Ltd.*, Civ. No. 13-2533, 2014 WL 6871400, at *3 (W.D. La. Dec. 2, 2014) (granting summary judgment as to breach of contract claim when the contract provided that it could not be assigned to a third party). Indeed, under the terms of the Proposed Settlement, the Plaintiffs and the Parish seek to assign *every* right created by the Contract, in direct violation of the Contract's provision that "[t]his Agreement" may not be assigned.

The anti-assignment provision does not need to "clearly and unambiguously express that it applies to the post-loss assignment," as the Parish contends. That rule, as articulated in *In Re Katrina*, only applies to insurance contracts, and the holding of that case was premised on the adhesionary nature of the contracts at issue – not the case here, where the Contract was negotiated by two sophisticated parties. 63 So. 3d at 963; *see also Morgan v. Americas Ins. Co.*, Civ. No. 16-13900, 2017 WL 479528, at *2 (E.D. La. Feb. 6, 2017) (insurance policies must clearly state that post-loss assignments are prohibited); *I Say I Say I Say, LLC v. Auto. Ins. Co. of Hartford, Connecticut*, Civ. No. 23-5116, 2024 WL 3639526, at *4 (E.D. La. Aug. 2, 2024) ("The right to pursue damages for an insurer's failure to comply with its duties is not such a strictly personal obligation. Although the insurer's duties are owed only to the insured, 'claims for breach of [those]

---

[13] Exhibit 1, p. 38, Section IV(Z)(3).

[14] *See* La. Civil Code art. 1906 ("[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.").

duties [may] be asserted by ... someone who derives his right from the insured."). This is not an insurance contract and therefore the distinction that the Parish relies on in *In Re Katrina* is inapposite.

LRLC would plainly be prejudiced if the Court invalidates its contractual right to approve or reject an assignee of the Contract. *Agretti,* 982 F.2d at 247. It bargained for the right to ensure that all rights created by the Contract in favor of Jefferson Parish would at all times belong only to Jefferson Parish, and not to unforeseen third parties such as the Settlement Class, without prior notice and approval by LRLC. This is a valuable and enforceable piece of consideration under Louisiana law, and LRLC is the proper party to seek to enforce it. *See* La. Civil Code art. 2653. Because the Proposed Settlement interferes with LRLC's contractual rights, it would cause plain legal prejudice to LRLC and therefore LRLC has standing to object to the Proposed Settlement.

## 2. The Court should resolve this dispute now as it is central to the fairness of the Proposed Settlement.

Plaintiffs and the Parish want the Court to formally approve the Proposed Settlement, notwithstanding the invalidity of the Assignment Provision, and wait for another day to resolve whether the Settlement Class is actually inheriting any valid rights related to the Contract. The Court should not defer decision on this issue, for several reasons.

As discussed above, approval of the Proposed Settlement would result in certification of a class against the Waste Connections Defendants, in derogation of their rights under Rule 23. That would result in immediate prejudice and should be resolved promptly.

Further, the Proposed Settlement would incorrectly advise more than 75,000 proposed class members[15] that they have certain rights against the Waste Connections Defendants, when in fact

---

[15] *See* Plaintiffs' Memorandum in Support of Amended Motion to Certify Class at 28 (ECF Doc. 438-21) (estimating more than 75,000 potential class members).

they do not.[16] Potential class members, who are weighing the pros and cons of joining a class action, should be provided accurate information about the settlement for which they are signing up.

Finally, the entire reason that Rule 23 requires the Court to approve any proposed settlement is to ensure that the settlement is resulting in fair and adequate compensation to the class members. The only way for the Court to determine whether the compensation is fair and adequate is for the Court to determine whether the compensation is "real" – in other words, will the Settlement Class actually inherit a right against the Waste Connections Defendants or not? The Court must answer this question before it concludes that the Proposed Settlement is fair under Rule 23.

### 3. Alternatively, the Court should make clear that any approval of the Proposed Settlement will not prejudice the Waste Connections Defendants.

The Court should not approve the Proposed Settlement until it is revised to remove the Assignment Provision as it is invalid under the Contract. Delaying resolution of this dispute would cause plain legal prejudice to the Waste Connections Defendants and would create uncertainty about the purported fairness of the Proposed Settlement under Rule 23.

In the alternative only, if the Court chooses to wait until another day to determine whether the Assignment Provision is valid (which it should not), the Court should make it clear that the Waste Connections Defendants are not being prejudiced by the Court's approval of the Proposed Settlement. This would include requiring the parties to revise the Proposed Settlement to remove any ambiguity about which persons are inheriting rights under the Assignment Provision. Further, if a "class" is to inherit such rights, it must only be whatever class, if any, is found to exist after

---

[16] To be precise, the proposed notice does not mention the Assignment Provision. But the notice does direct putative class members to visit the class website, where the Proposed Settlement would be posted.

resolving Plaintiffs' motion for class certification.[17] Further, the Court's approval of the Proposed Settlement should make it clear that the Court is not resolving the question of whether the Assignment Provision is valid, who it is valid against, and that the Waste Connections Defendants are preserving their rights and will be allowed to seek dismissal of any claim asserted by Plaintiffs on the basis that the Assignment Provision is invalid.

## CONCLUSION

For all of the reasons above, the Waste Connections Defendants respectfully request that, unless the Proposed Settlement is revised in the manner suggested herein, the Court should deny approval of the Proposed Settlement.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    /s/ Michael C. Mims
       Michael C. Mims (#33991)
       Michael Cash (#31655)
       Cherrell Simms Taplin (#28227)
       Kelly B. Becker (#27375)
       Kathryn Z. Gonski (#33442)
       Brady M. Hadden (#37708)
       Alec Andrade (#38659)
       701 Poydras Street, Suite 5000
       New Orleans, LA 70139
       Telephone: (504) 581-7979
       Telefax: (504) 556-4108

       BEVERIDGE & DIAMOND, P.C.

       Megan R. Brillault (*pro hac vice*)
       Michael G. Murphy (*pro hac vice*)
       John H. Paul (*pro hac vice*)
       Katelyn E. Ciolino (*pro hac vice*)

---

[17] ECF Doc. #438.

Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional
Landfill Company, Waste Connections
Bayou, Inc., and Waste Connections US, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel

of record via the Court's electronic case management system on October 7, 2024.

*/s/ Michael C. Mims*