**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** Plaintiff | **CIVIL ACTION** NO. 18-7889 c/w 18-8071, 18-8218, 18-9312 |
| **VERSUS** | |
| **PROGRESSIVE WASTE SOLUTIONS OF LA, INC., ET AL.,** Defendants | **SECTION: "E" (5)** **JUDGE: Morgan** **MAGISTRATE JUDGE: North** |
| *Applies to: All Cases* | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF REVISED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

NOW INTO COURT, come the undersigned Putative Class Counsel, on behalf of the

Putative Class Representatives and the Putative Class, who, in accordance with this Honorable

Court's Order (Doc. 486), file the instant Supplemental Memorandum in Support of Revised

Motion for Preliminary Approval of Proposed Settlement, to wit:

**I.    Preliminary Approval Should Be Granted.**

**A. Legal Standard.**

"Before an initial class ruling, a proposed class settlement may be effectuated by stipulation

of the parties agreeing to a temporary settlement class for purposes of settlement only."[1]

As Judge Barbier acknowledged in the *Deepwater Horizon* matter:

> Settlement classes are a typical feature of modern class litigation, and courts
> routinely certify them under the guidance of *Amchem Prods., Inc. v.
> Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), to facilitate
> the voluntary resolution of legal disputes. *See, e.g., In re Chinese–
> Manufactured Drywall Prods. Liab. Litig.,* MDL No. 2047, 2012 WL

---

[1] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 11-CV-1363, 2012 WL 92498, at *8 (E.D. La. Jan. 10, 2012) citing William B. Rubinstein, Alba Conte, and Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed.2010).

92498, at \*8–11 (E.D.La. Jan. 10, 2012); **\*914** *Stott v. Cap. Fin. Servs.,* 277 F.R.D. 316, 324–26 (N.D.Tex.2011); *see also* Manual for Complex Litigation (Fourth) § 21.612 (2004) ("Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits.").[2]

The certification requirements of Federal Rule of Civil Procedure 23 generally apply when certification is for settlement purposes.[3] "If the prerequisites of Rule 23(a) are met, the proposed class must additionally satisfy one of the three provisions for certification under Rule 23(b). For certification of a 23(b)(3) damages class, the district court must make a finding that questions of law or fact common to class members predominate over questions affecting only individual members and that a class action is the best way to adjudicate the controversy."[4] However, when considering predominance, "[a] district court need not consider 'whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'"[5]

As Judge Milazzo summarized in the context of preliminary approval:

> "[a] class action may not be dismissed or compromised without the district court's approval."[4] "The gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties."[5] "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval."[6]

---

[2] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 913–14 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

[3] *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 308 (E.D. La. 2015) citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

[4] *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. at 309.

[5] *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 308 (E.D. La. 2015) citing *Amchem*, 521 U.S. at 620 (citing FRCP 23(b)(3)(D)).

[6] *Jefferson Radiation Oncology v. Advanced Care Scripts, Inc.*, No. CV 15-1399, 2016 WL 9446128, at \*1 (E.D. La. July 18, 2016).

"As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval."[7]

"[T]he district court has discretion to approve a settlement that it determines is fair, reasonable, and adequate within the meaning of Rule 23(e)(2)."[8]

### B.  The Prerequisites of Rule 23(a) Are Met.

#### i.  Ascertainability is Satisfied.

Rule 23(a)'s implied requirement that the class be adequately defined and clearly ascertainable by reference to objective criteria is met here.[9]

The proposed definition of the Parish Settlement Class (Doc. 481 at p. 2-3) is based on objective geographical criteria, such as where a person lived or resided, and does not turn on the merits or delve into any person's subjective mental state.[10] Accordingly, ascertainability is met.

#### ii.  Rule 23(a)(1) Numerosity is Satisfied.

Generally, a potential class of over one hundred members is sufficient for numerosity, and some courts have noted that any class consisting of more than forty should raise a presumption

---

[7] *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. at 314 citing *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 86 (E.D.N.Y.2007); Manual, *supra* § 21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.")

[8] *Kemp v. Unum Life Ins. Co. of Am.*, No. CV 14-0944, 2015 WL 12564183, at *4 (E.D. La. July 6, 2015).

[9] *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 911 ("Rule 23(a) contains an implied requirement that the class be adequately defined and clearly ascertainable by reference to objective criteria.")

[10] See *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 914 (finding that the definition was "nearly the epitome of how a class in a mass tort action ought to be defined" because "Nothing in the class definition requires a determination on the merits or delves into any person's subjective mental state. The definition is based on objective criteria such as where a person resided, worked, received an offer to work, or owned property…").

that joinder is impracticable.[11] The Fifth Circuit also recognized that a putative class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement."[12]

The requirements of numerosity are unquestionably met here as all parties agree the Parish Settlement Class easily includes tens of thousands of members.

### iii.    Rule 23(a)(2) Commonality is Satisfied.

In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court held that class claims "must depend upon a common contention" and that this common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[13] "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."[14] In short, there must be some "glue" holding the class claims together that will produce a standard answer to the proposed common contention.[15]

As the Fifth Circuit interprets *Wal–Mart*, "[t]o satisfy the commonality requirement under Rule 23(a)(2), class members must raise <u>at least one contention that is central to the validity of each class member's claims</u>."[16] "[T]he principal requirement of Wal–Mart is <u>merely a single common contention that enables the class action 'to generate common answers apt to drive the resolution of the litigation.</u>'"[17] "These '<u>common answers</u>' may indeed relate to the injurious effects

---

[11] *Street v. Diamond Offshore Drilling*, 2001 WL 568111 (E.D.La. May 25, 2001, Duval, J.); see also *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5ᵗʰ Cir. 1999); *Slocum*, 2019 WL 2192099, at *3.

[12] See *Mullen*, *supra*.

[13] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[14] *Id*. (citation omitted; emphasis in original).

[15] *Wal-Mart*, 564 U.S. at 352.

[16] *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) (emphasis added).

[17] *Id*. at 811 (emphasis added).

experienced by the class members, but they <u>may also relate to the defendant's injurious conduct</u>."[18] Thus, "the legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."[19]

Here, commonality is clearly satisfied based on the common issues of law and facts surrounding the Defendants' liability (and respective fault) as they relate to the noxious emissions emanating from the Landfill during the relevant period. The issues pertaining to the geographic scope, frequency, duration, and concentrations of the Landfill's noxious emissions, the conduct of Defendants in creating and/or failing to prevent these noxious emissions from leaving the Landfill, and the apportionment of their respective fault affect all potential class members.

Critically, the claims of all putative class members hinge on common questions regarding the geographic scope, frequency, duration, and concentrations of the Landfill's noxious emissions over the 30-month period at issue, the Defendants' liability for same, and the apportionment of fault among them. Once the common liability questions are determined as to the Landfill's noxious emissions, including who was responsible for causing 23,000 tons of sulfate-containing spent lime to be buried in Phase 4A, who was responsible for the leachate collection system failures, who was responsible for the gas collection system failures, and who was accountable for landfill cover issues, those common issues will be decided for all class members in "one stroke."

In short, there is a common source and cause for all putative class members. Thus, if these common questions are answered as to one plaintiff, they will necessarily be answered for all class members. Consequently, these questions contain the "glue" necessary for the Plaintiffs to meet their burden to show commonality under Rule 23 since the claims of all putative class members

---

[18] *Id.* (emphasis added).
[19] *Id.* at 810–11.

hinge on these common questions of fact and law concerning the Defendants' liability for the emissions that emanated from the Landfill for the 30-month period at issue.

### iv.  Rule 23(a)(3) Typicality is Satisfied.

Rule 23(a)(3) requires that the class representatives' claims are typical of the class's claims or defenses as a whole. Fed. R. Civ. P. 23(a)(3). Typicality does not require a complete identity of claims but simply requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

Like commonality, the test for typicality is not demanding. It exists when the claims of the named and unnamed plaintiffs have a common source and rest upon the same legal and remedial theories.[20] Here, the claims of the proposed class representatives and the putative class members arise from the same set of facts, and they both seek the same relief through the same legal theories.

Plaintiffs have identified Class Representatives in various nearby geographic locations who allege to have been harmed by the Landfill's noxious emissions. The Class Representatives' claims and alleged damages are similar, if not identical, to the claims of other plaintiffs and potential class members. Further, the theories of liability among the Class Representatives and potential class members are alike: they are suing Defendants for their violations of the obligations of neighborhood (i.e., nuisance) under Louisiana Civil Code articles 667-669 arising from the emission of noxious odors from the Landfill.

In short, the claims of the class representatives are based upon the same source of emissions (pervasive and persistent emissions of noxious odors coming from the Landfill) caused by the same course of conduct (Defendants' actions/inactions in maintaining and operating the Landfill)

---

[20] *Mullen v. Treasure Chest Casino*, 186 F.2d at 625; *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 605 (E.D. La. 2006) "Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics—a similar course of conduct, or the same legal theory.").

over the same 30-month period for which they seek relief under the same theories of liability. *See*

*In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 915 ("Typicality is satisfied here,

as the class representatives—like all class members—allege economic and/or property damage

stemming directly from the *Deepwater Horizon* spill."). Thus, typicality is satisfied.

### v. Rule 23(a)(4) Adequacy of Representation is Met.

Rule 23(a)(4)'s adequacy requirement "encompasses class representatives, their counsel,

and the relationship between the two."[21] Thus, "the adequacy requirement mandates an inquiry

into [1] the zeal and competence of the representatives' counsel and [2] the willingness and ability

of the representatives to take an active role in and control the litigation and to protect the interests

of the absentees."[22] Finally, "'[t]he adequacy inquiry also serves to uncover conflicts of interest

between the named plaintiffs and the class they seek to represent.'"[23]

The claims of the proposed class representatives are interrelated with the claims of the

absent class members to such a degree that it is certain that the interests of the absent class members

will be adequately and fairly protected. All claims of the proposed Class Representatives and

putative class members are based on exposures to the Landfill's noxious emissions due to

Defendants' fault. Here, the proposed Class Representatives and putative class members raise

identical odor nuisance claims relating to the same alleged conduct and according to the same

theory of damages.[24]

---

[21] *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 912 citing *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir.2001).

[22] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d at 912 citing *Id.* (citations, quotations, and alterations omitted).

[23] *In re Oil Spill by Oil Rig Deepwater Horizon i*, 910 F. Supp. 2d at 912 citing *Id.* (quoting *Amchem*, 521 U.S. at 625, 117 S.Ct. 2231).

[24] *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 310 (E.D. La. 2015) ("the interests of the Class Representatives are aligned with the interests of the class, because Class Members all raise identical claims relating to the same alleged conduct and according to the same theory of damages."); *Kemp v. Unum Life Ins. Co. of Am.*, No. CV 14-0944, 2015 WL 12564183, at *5 (E.D. La. July 6, 2015) ("Here,

Likewise, Class Representatives and their counsel are aware of no conflicts of interest between the Class Representatives and absent class members and assert that no such conflicts of interest could be said to exist given that the Class Representatives and the absent class members all advance the same legal theories and pursue the same legal relief. Moreover, the Class Representatives are knowledgeable concerning the subject matter of this action, possess strong personal interests in the subject matter of the lawsuit, will assist counsel in the prosecution of this litigation, and are willing to see this case through to the end.

The proposed Class Representatives have retained counsel familiar with these types of cases. Proposed Class Counsel represents that they satisfy the criteria set forth in Rule 23(g), having extensive experience in the prosecution of class actions, having the resources to ensure the adequate prosecution of same, and that they will adequately represent the interests of the class. Class Counsel has competently prosecuted this litigation and negotiated a favorable partial settlement agreement with the Parish to benefit the putative class members.

### C.  The Prerequisites of Rule 23(b) Are Met.

#### i.  Rule 23(b)(3) Predominance is Satisfied.

While a single common question will satisfy commonality, to satisfy predominance, "common issues must constitute a significant part of the individual cases."[25]  The predominance inquiry ordinarily "requires the court to assess how the matter will be tried on the merits, which 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'"[26]

---

as discussed in the Court's analysis of typicality, the interests of the proposed class representatives are aligned with the interests of the class, as they raise identical claims as all other plaintiffs. Thus, the Court sees no conflict of interest between the proposed settlement class representatives and the settlement class.").

[25] *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 311 (E.D. La. 2015) citing *Mullen,* 186 F.3d at 626.

[26] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d at 912.

However, in the class settlement context, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."[27] Where "defendants' liability predominates over any individual issues involving plaintiffs, and the Settlement Agreement will insure that funds are available" to compensate plaintiffs, predominance is satisfied.[28]

The complex class-wide common issues concerning Defendants' liability for the Landfill's noxious emissions, allocation of fault among Defendants for those emissions, and the impact on the surrounding communities in terms of geographic scope, frequency, duration, and concentration predominate under Rule 23(b)(3). These are not only common substantive questions that "generate common answers apt to drive the resolution of the litigation,"[29] but are also complex issues underlying each putative class member's claim, which predominate over any potential and less complex individualized issues presented by these odor nuisance claims.[30]

The "central factual basis for all of Plaintiffs' claims" is the release of noxious emissions from the Landfill, including how much was emitted, how those emissions occurred, and where those emissions went, when, and in what concentrations.[31] Notably, the fact that the noxious emissions at issue may not have spread uniformly throughout the area, and different geographic

---

[27] *In re Deepwater Horizon*, 739 F.3d 790, 818 (5th Cir. 2014) citing *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231.

[28] *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 921 citing *In re Chinese–Manufactured Drywall Prods. Liab. Litig.*, 2012 WL 92498, at *11 (E.D.La. Jan. 10, 2012).

[29] As the Fifth Circuit interprets Wal-Mart Stores, Inc. V. Dukes, 564 U.S. 338, 350 (2011) "[t]hese 'common answers' may indeed relate to the injurious effects experienced by the class members, but they may also relate to the defendant's injurious conduct."

[30] *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 922 ("All of the key factual questions in this litigation are common among members of the class. These categories of questions include BP's share of liability compared to other defendants, the facts of defendants' conduct in designing the well, and the facts of BP's conduct in seeking to control and contain the spill.")

[31] *Id*.

sub-areas may have received differing degrees of noxious emissions does not preclude class treatment.[32] Thus, "[t]here is a large area of factual overlap in the Plaintiffs' causes of action" that supports predominance.[33] Numerous issues predominate the Defendants' liability concerning the legal theories asserted by the Plaintiffs.

In fact, the predominant issues here are remarkably similar to those the Louisiana Supreme Court found predominated in *McCastle*,[34] a nuisance class action under Articles 667-669, thereby warranting the conclusion that a "common nucleus of operative facts" exists to certify this settlement class. Thus, it cannot be reasonably disputed that the issue of liability predominates in the context of nuisance claims under Louisiana law.[35]

If the class members' claims against the Parish are not resolved via the settlement class, each putative class member would likely have to litigate each of these factual and legal questions individually, and doing so "would be a massive waste of judicial resources, as the vast majority of the issues of law and fact in this case ... are common to all the class members."[36]

Moreover, the fact that the issues of specific causation and compensatory damages are individualized does not defeat a finding of predominance under Rule 23(b)(3). As Judge Barbier found in the *Deepwater Horizon* matter:

> the core causation issues in this litigation should be decided on a class-wide basis. <u>Although the common issues are numerous, certain causation issues remain that would have to be decided on an individual basis were the cases not being settled.</u> These include, for example, the extent to which the

---

[32] *See Turner*, 234 F.R.D. at 606.

[33] *Id.*

[34] *McCastle v. Rollins Env't Servs. of Louisiana, Inc.*, 456 So. 2d 612, 619–20 (La. 1984).

[35] See *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 608-609 (E.D. La. 2006); *Slocum v. Int'l Paper Co.*, No. CV 16-12563, 2019 WL 2192099, at *7 (E.D. La. May 21, 2019) (finding Louisiana nuisance claims supported predominance requirement for liability class for explosion at facility that released alleged hazardous waste into the atmosphere and surrounding community).

[36] *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 922–23 citing *In re Dell Inc.*, No. 06–726, 2010 WL 2371834, at *4 (W.D.Tex. June 11, 2010), aff'd, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir.2012).

Deepwater Horizon incident versus other factors caused a decline in the income of an individual or business. <u>These limited individualized issues do not defeat predominance in light of the core common issues that are appropriate for classwide treatment.</u>[37]

As the U.S. Fifth Circuit aptly noted when affirming the BP settlement:

<u>predominance was based not on common issues of damages but on the numerous common issues of liability</u>. In the present case, the district court did not include a formula for classwide measurement of damages among its extensive listing of the "common issues" that weighed in favor of certification. <u>The district court always recognized that the class members' damages "would have to be decided on an individual basis were the cases not being settled,"</u> as would "the extent to which the Deepwater Horizon incident versus other factors caused a decline in the income of an individual or business."[38]

The Fifth Circuit continued:

Accordingly, BP and the Objectors are quite correct to suggest that, although the analysis of BP's injurious conduct gives rise to numerous common questions, the class members' damage calculations give rise primarily to individual questions that are not capable of classwide resolution.

<u>But this is not fatal to class certification.</u> As we stated in *Bell Atlantic Corp. v. AT&T Corp.,* 339 F.3d 294, 306 (5th Cir.2003), "[e]ven wide disparity among class members as to the amount of damages" does not preclude class certification "and courts, therefore, have certified classes even in light of the need for individualized calculations of damages." Accordingly, as we recognized in **\*816** *Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598, 603 (5th Cir.2006), <u>it is indeed "possible to satisfy the predominance ... requirements of Rule 23(b)(3) in a mass tort or mass accident class action" despite the particular need in such cases for individualized damages calculations. On this basis, therefore, we have previously affirmed class certification in mass accident cases, as in other cases in which "virtually every issue prior to damages is a common issue."</u>[39]

Although the issues of specific causation and damages may be individualized, these odor nuisance claims do not present complex questions regarding medical causation for personal

---

[37] *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 924 (emphasis added).

[38] *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) (emphasis added).

[39] In re Deepwater Horizon, 739 F.3d 790, 815–16 (5th Cir. 2014) (emphasis added).

injuries typically present in mass toxic tort actions involving temporary, transitory exposures over the course of a few hours or days. The nuisance claims herein do not include symptoms of severe medical illness alleged to have occurred due to a temporally limited exposure event. Rather, the nuisance claims involve symptoms of annoyance and inconvenience associated with up to 30 months of exposure to the Landfill's noxious emissions. These individualized issues are not fatal to a finding that the common complex issues as to liability, allocation of fault, and odor dispersion predominate under these circumstances. As the U.S. Fifth Circuit pronounced,

> the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish "liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members." As explained above, this is precisely how the district court planned to calculate the claimants' damages, which "would have to be decided on an individual basis were the cases not being settled."[40]

Furthermore, courts have certified Rule 23(b)(3) classes in environmental accidents and other mass tort suits. As Judge Barbier concluded in approving the BP settlement:

> Courts have repeatedly held that in certain factual circumstances common issues may predominate over individual issues in environmental and other mass tort cases. See Klonoff Decl. ¶ 46. This is one of those cases. As the Supreme Court recognized in *Amchem*, where "mass tort cases aris[e] from a common cause or disaster," class certification may be appropriate, and "District Courts, since the late 1970's, have been certifying such cases in increasing number." *Amchem*, 521 U.S. at 625, 117 S.Ct. 2231. The reason for this doctrine is that although each plaintiff might have suffered different damages, the heart of each plaintiff's complaint is common to the class.[41]

---

[40] *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014).

[41] *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 926 (emphasis added). Judge Barbier also expressly noted how the Fifth Circuit in *Watson v. Shell Oil Co.*, 979 F.2d 1014 (5th Cir. 1992), in affirming the district court's certification order for a class of 18,000 individuals harmed by an explosion at a Shell manufacturing facility, observed that "[t]he class issues to be determined by the Phase 1 jury form integral elements of the claims asserted by each of the more than 18,000 plaintiffs," such that there "can be no serious contention that the district court abused its discretion in determining that these issues predominate for the purpose of class certification." *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 926 citing *Watson*, 979 F.2d at 1022-23. He further noted the Fifth Circuit's reliance upon *Watson* when upholding the certification of a class of casino employees harmed by a defective ventilation system in *Mullen*, "because the class is… linked by a common complaint [and] the fact that the class is defined with reference to an ultimate issue of causation does not prevent certification." *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d at 926 citing *Mullen*, 186 F.3d at 624 n. 1.

Given the common complex factual and legal issues as to liability, fault, and the dispersion of odors from the Landfill which underly each putative class member's claim, and thus constitute a significant part of each individual claim, and given that the existence of the Revised Settlement Agreement allows this Honorable Court to dispense altogether with considering the potential difficulties in trying these cases, predominance is satisfied.

### ii. Rule 23(b)(3) Superiority is Satisfied.

FRCP 23(b)(3) requires that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

Here, the class action settlement is superior to other methods of adjudicating the putative class members' claims against the Parish. As the Supreme Court has explained:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.[42]

That logic applies here, where the amount at stake for any individual plaintiff for his or her odor nuisance claims would likely not make individual litigation worth the time, money, or effort, particularly considering the expert costs and other litigation costs required to try each case to resolution. Certifying the Parish Settlement Class allows the odor nuisance claims of many thousands of individuals against the Parish to be resolved efficiently at one time.[43]

---

[42] *Kemp v. Unum Life Ins. Co. of Am.*, No. CV 14-0944, 2015 WL 12564183, at *7 (E.D. La. July 6, 2015) quoting *Amchem Products, Inc.*, 521 U.S. at 617 (citation omitted).

[43] See *Kemp*, 2015 WL 12564183, at *7 (E.D. La. July 6, 2015); *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. at 314; *Jefferson Radiation Oncology*, 2016 WL 9446128, at *2 ("A class action is a superior mechanism by which to resolve these issues because it would be uneconomical to pursue these damages on an individual basis."); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 929 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ("there can be no serious doubt that a class action is a superior method of resolving this litigation.")

### D.  The Proposed Settlement is Fair, Reasonable, and Adequate.

The Proposed Settlement was negotiated between the parties at arms' length for several months, and the parties were represented by attorneys on both sides who, after more than five (5) years of litigation, including discovery, motion practice, and the trial on General Causation, were familiar with the factual and legal issues presented. There was no fraud or collusion behind the Proposed Settlement. See Doc. 481 at p. 4, ¶8.

Class Counsel thoroughly investigated and analyzed this case's factual and legal issues. They have considered the risks and expenses of pursuing claims against the Parish, including the likelihood of recovering damages that exceed those obtained through the negotiated settlement. Additionally, they have evaluated how the lengthy nature of the litigation might impact the Class, as well as the costs and potential outcomes associated with the Parish's continued involvement. Class Counsel has also assessed the complexity, expense, and expected duration of the litigation, the probability of the plaintiffs' success on the merits concerning the Parish, and the range of possible compensatory damages recoverable from the Parish.  See Doc. 481 at p. 4-5, ¶9. 10.

After such investigation and analysis, it is Class Counsel's opinion that the economic terms of the settlement are fair and adequate, especially given the uncertainties and vagaries of further litigation with the Parish, and particularly considering this is a partial settlement against one defendant such that two groups of defendants will remain.

For this partial settlement, at minimum, the Settlement Class will receive compensation from the Parish in the amount of $4,500,000 to settle odor nuisance claims. However, the compensation could be much higher if monetary recoveries are achieved from the Parish's rights and causes of action against the non-settling defendants (i.e., the most culpable defendants). As this Honorable Court is aware, faced with odor issues at the Jefferson Parish Landfill and thousands

of community odor complaints, the Parish spent millions of dollars mitigating such odors. If the non-settling defendants are found responsible for the odor issues, the Parish may be entitled to recover significant amounts of those expenses from those parties.

Moreover, it is (and has long been) Class Counsel's opinion that the Parish was the least culpable defendant regarding the Jefferson Parish Landfill's odor issues, which impacted the Settlement Class and thus formed the basis of their odor nuisance claims. Because the odor nuisance claims remain against Aptim and the Waste Connections Defendants, Class Counsel believes that recoveries from those non-settling defendants will likely be greater than the amounts received through this partial settlement.

It is Class Counsel's opinion that the $4,500,000 (at minimum) compensation provided by this partial settlement with the Parish is reasonable and fair, given the risks inherent in this fervently disputed litigation and the remaining claims against the most culpable non-settling defendants. Ultimately, "Class counsel's opinion should be presumed reasonable because they are in the best position to evaluate fairness due to an intimate familiarity with the lawsuit."[44]

Accordingly, Class Counsel prays that preliminary approval be granted for these reasons.

### E. The Proposed Notices of Settlement are Adequate.

The Waste Connections Defendants' objections to the substance of the proposed notices were cured by the revised notices filed as part of the Plaintiffs' Revised Motion for Preliminary Approval. Doc. 481-2, Doc. 481-3.

The specific deadlines for the notices can be quickly revised upon this Honorable Court's grant of preliminary approval.

---

[44] *Bardales v. Fontana & Fontana, LLC*, No. CV 19-340-WBV-DMD, 2020 WL 5819873, at *9 (E.D. La. Sept. 30, 2020).

**F. Plaintiffs' Proposed Order on the Instant Motion.**

At the October 9, 2024, hearing on the Revised Motion for Preliminary Approval of Proposed Settlement, this Honorable Court noted that no proposed order accompanied the Motion. The plaintiffs' proposed Order is being submitted contemporaneously with this Supplemental Memorandum. See **Exhibit 1**.

**II.    The Waste Connections Defendants' Objections Should Be Overruled.**

The Waste Connections Defendants' only remaining objections to the Motion for Preliminary Approval of the Proposed Settlement are based on its purported right under the anti-assignment clause to object to the Parish's assignment of rights to the Settlement Class. For the reasons set forth below, their objections lack merit and should be overruled.

**A. The Revised Settlement Agreement Moots the Waste Connections Defendants' Objections.**

The Revised Settlement Agreement dated October 31, 2024, limits the rights and causes of action being assigned by the Parish to the Settlement Class to those that arise out of the claims that form the basis of this litigation. See **Exhibit 2** at Section 3.3.

Thus, contrary to the Waste Connections Defendants' contentions, the Proposed Settlement does not place *any* claim under the Operating Agreement in the hands of the Settlement Class such that it would interfere with the Waste Connections Defendants' contractual rights under the contract with the Parish.

Moreover, the alternative language in Section 3.3. of the newly Revised Settlement Agreement provides for the contingency that if the Parish's assignment of rights is deemed invalid in the future for any reason, the Parish agrees to pursue its claims against the non-settling defendants and has guaranteed that any recoveries from the adjudication of those claims will be paid to the Parish Settlement Class.  See **Exhibit 2** at Section 3.3.

Even assuming the Waste Connections Defendants have a right to object and/or consent to the Parish's assignment of rights under the Anti-Assignment Clause, the Contract certainly did not contemplate that the Waste Connections Defendants would ever have any right under its contract with the Parish to have a say as to what the Parish could do with the monies recovered after adjudicating its claims against them.

Thus, whether via the Parish's assignment of rights or the Parish's promise to pay recoveries to the class after it pursues those rights, the Settlement Class will inherit the rights to monetary recoveries garnered from the Parish's claims against the Waste Connections Defendants.

Stated differently, without deciding the validity of the assignment itself at this juncture, this Honorable Court can consider these benefits conferred by the Parish to the class when deciding at the final approval stage whether the compensation to the Settlement Class is fair and adequate.

Accordingly, the Revised Settlement Agreement's alternative language renders moot the Waste Connections Defendants' remaining objections based on the anti-assignment clause.

## B. The Waste Connections Defendants' Novel and Unsupported Rule 23 Argument Should Be Rejected.

Contrary to the Waste Connections Defendants' contentions, this Court is not required to adjudicate the proposed class certification against the non-settling defendants prior to approving the Proposed Settlement and, thus, the Parish Settlement Class. Nor does the approval of the Parish Settlement Class require the Waste Connections Defendants' consent under Rule 23.

Notably, yet unsurprisingly, the Waste Connections Defendants failed to cite any case in support of its strained argument. Nor were the undersigned able to locate even one case wherein any such argument was made.

The Proposed Settlement is not some untoward conspiracy to bypass the requirements of Rule 23 to achieve class certification against the Waste Connections Defendants.

17

The Parish's assignment of rights (or alternatively promise of payment of monetary recoveries therefrom) concerns only the claims of one juridical person: the Parish of Jefferson. The assignment does not concern multiple individuals' independent causes of action against the Waste Connections Defendants. Nor does it create additional causes of action against the Waste Connections Defendants.

Thus, the Proposed Settlement does not create a certified class against the Waste Connections Defendants wherein the individual rights and causes of action of many class members are being adjudicated by representation against the Waste Connections Defendants.

The Settlement Class merely steps into the shoes of the Parish as it relates to the Parish's claims against the Waste Connections Defendants. Whether by assignment of rights or according to the alternative language wherein the Parish pursues its claims and then pays any recoveries to the Settlement Class, by virtue of Section 3.3 the Parish Settlement Class will have ownership of any monetary recoveries from the Parish's claims against the non-settling defendants.

This means that after notice goes out, proof of claim forms are submitted, and proof of claim forms are subsequently approved by the court-appointed neutral (and then the Court), a known number of individuals will comprise the Parish Settlement Class. Those individuals who endure that process, and those individuals only, will have the right to share in the recoveries garnered from the Parish's claims against the non-settling defendants, should any such recoveries occur down the road.

The Waste Connections Defendants have no legal right to control what the Parish does with any monetary recoveries reaped via its claims against the Waste Connections Defendants. While the Settlement Class will have those rights to receive any monetary recoveries from the adjudication of the Parish's claims against the non-settling defendants, the non-settling defendants

maintain their rights under Rule 23 to object to the proposed class concerning the putative class members' direct claims against them.

Regardless of who pursues the Parish's rights and causes of action against the Waste Connections Defendants and who receives the recoveries, they will find themselves in the same position. The Waste Connections Defendants will defend against the same identical claims in either scenario: the Parish's claims only. Moreover, the Parish's claims against the Waste Connections Defendants maintain the same value regardless of who asserts them.

Furthermore, the Waste Connections Defendants entirely retain their rights of indemnity and contribution from the Parish. Section 3.3 of the Revised Settlement Agreement does not impact the Waste Connections Defendants' rights of indemnity and contribution from the Parish.

Thus, the Waste Connections Defendants will not be in any position different from that of the Parish pursuing the claims. Accordingly, the Waste Connections Defendants will not suffer any legal prejudice due to this Honorable Court approving the Parish Settlement Class.

For these reasons, the Waste Connections Defendants' objections should be rejected as an impediment to preliminary approval of the Proposed Settlement.

### C. The Parish's Assignment of Rights to a Settlement Class is Legally Proper and Favorable to the Settlement Class.

This Honorable Court has previously inquired as to examples wherein a settling defendant assigned its rights against non-settling defendants to a settlement class.

Plaintiffs respectfully direct this Honorable Court's attention to the BP Settlement in the *Deepwater Horizon* litigation wherein Judge Barbier approved BP's assignment of rights against the non-settling defendants (Halliburton and Transocean) to the settlement class.[45]

---

[45] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 909 (E.D. La. 2012), aff'd sub nom. In re Deepwater Horizon, 739 F.3d 790 (5th Cir. 2014) ("The Settlement

Therein, Judge Barbier expressly noted Transocean and Halliburton's arguments that such an assignment is not valid or enforceable and expressly refrained from opining on the validity of those assignments when granting final approval of the class settlement.[46] In doing so, Judge Barbier rightly determined that any attack on the validity of those assignments was not properly part of the settlement approval process.

There is no requirement for the validity of the assignment to be decided at this stage. In any event, the Revised Settlement Agreement now contains alternative language that renders any potential invalidity of the assignment moot.

To be clear, Judge Barbier did not blaze a new trail when approving the proposed settlement that included BP's assignment of rights against non-settling defendants to the settlement class. Instead, a settling defendant's assignment of rights to a settlement class, including those against non-settling defendants, has long been accepted as a proper benefit that can be part of the negotiated settlement recovery. See, for example, *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 810 (5th Cir. 2021) (settling defendant assigned to the Class its insurance overage claims against its insurer); *State Farm Fire & Cas. Co. v. LaFuri*a, No. CIV.A. 07-1285, 2008 WL 5479635, at *1 (W.D. La. Oct. 22, 2008), report and recommendation adopted, No. CIV.A. 07-1285, 2009 WL 774102 (W.D. La. Jan. 7, 2009) (settling defendant doctor assigning all causes of action, including any claims to insurance proceeds from his insurer, to the class of his former patients); *In re Austrian & German Bank Holocaust Litig*., 317 F.3d 91, 93 (2d Cir. 2003) (Austrian bank defendants assigned to settlement class all claims against German banks that had controlled

---

Agreement purports to assign certain of BP's spill-related claims against Transocean and Halliburton to the class.").

[46] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d at 909 at fn 13 (E.D. La. 2012), aff'd sub nom. In re Deepwater Horizon, 739 F.3d 790 (5th Cir. 2014) ("The Court notes that Transocean and Halliburton argue that such an assignment is not valid or enforceable. In approving this Settlement, the Court does not express any opinion as to the validity of these assignments.").

the Austrian banks and looted their assets); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 83 (2d Cir. 2001) (same); *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 741 (7th Cir. 2013) (settling defendant assigned to the class representative all claims it may have against its liability insurers); *G.M. Sign, Inc. v. St. Paul Fire & Marine INS. Co.*, 768 F. App'x 982, 984 (11th Cir. 2019) (settling defendant assigned to the class all claims against and rights to payment from an insurer under policies).

Not only is it appropriate for a settling defendant to assign its rights against non-settling defendants to a settlement class, but by its very nature, the Parish's assignment of rights (or alternatively, the Parish's promise of monetary recoveries from the adjudication of those rights) is inherently favorable to the Parish Settlement Class. As Judge Barbier noted, the settling defendant's rights against non-settling defendants are benefits that otherwise may not be obtained in litigation. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 934 (E.D. La. 2012), aff'd sub nom. *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (finding that the settlement provides "benefits and accompanying features that may not be obtained in litigation, and which BP contends it had no legal obligation to pay or provide, including… (iii) assigning additional causes of action to the Class...")

The same conclusion is warranted here. Absent the bargain achieved via arms' length negotiations between Class Counsel and the Parish, no putative class member would ever be entitled to benefit from any monetary recoveries gained from the Parish's rights and causes of action against the non-settling defendants here. Moreover, if the Parish's claims against the non-settling defendants prove successful, the total compensation paid by the Parish to the Parish Settlement Class could far exceed the agreed settlement payment of $4,500,000.

**D. The Parish's Assignment of Rights to the Parish Settlement Class Does Not Create a Conflict.**

Finally, neither the Parish's assignment of rights nor its promise to pay any recoveries to the Settlement Class creates a conflict with the proposed Class against the non-settling defendants. Both the proposed Parish Settlement Class and the proposed revised Class Definition as to the non-settling defendants share the same geographic boundary. See Doc. 438-21 at p. 20 and Doc. 481 at p. 2-3. Thus, the putative class members of the proposed Class against the non-settling defendants will receive notice of the Parish Settlement Class.

Putative class members have a choice when it comes to the Proposed Settlement.

One option is to submit a valid proof of claim form. If they do so and through that process are deemed to have a valid claim and thus deemed to be a member of the Parish Settlement Class, then – and only then – would they obtain the right to share in any monetary recovery from the Parish's claims against the non-settling defendants (should, of course, those claims succeed).

The other option for putative class members is to opt out of the settlement. If they opt out, then they forego the right to potentially share in the recovery from the Parish's claims after they are adjudicated down the road.

Again, absent participation in the settlement, no putative class member would ever be entitled to share in any monetary recovery gained from the adjudication of the Parish's rights against the non-settling defendants.

**III. Conclusion.**

WHEREFORE, Class Counsel, on behalf of the Class, prays that the Court grant the Revised Motion for Preliminary Approval of Proposed Settlement and that the Court overrule the Waste Connections Defendants' remaining objection to the Proposed Settlement.

Date: October 31, 2024

Respectfully Submitted:

*/s/ Lawrence J. Centola, III*
Scott R. Bickford (#1165)
srb@mbfirm.com
Lawrence J. Centola, Iii (#27402)
ljc@mbfirm.com
Jason Z. Landry (#33932)
jzl@mbfirm.com
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 – FACSIMILE

*/s/ Bruce C. Betzer*
Bruce C. Betzer (Bar No. 26800)
THE LAW OFFICE OF BRUCE C. BETZER
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
bruce@brucebetzer.com

*/s/ Douglas S. Hammel*
Douglas S. Hammel (Bar No. 26915)
HAMMEL LAW FIRM, LLC
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
douglashammel@gmail.com

*/s/ Kacie F. Gray*
Anthony D. Irpino (#24727)
Louise C. Higgins (#31780)
Pearl Robertson (#34060)
Kacie F. Gray (#36476)
IRPINO, AVIN & HAWKINS
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501
airpino@irpinolaw.com
lhiggins@irpinolaw.com
probertson@irpinolaw.com
kgray@irpinolaw.com

*/s/ John D. Sileo*
John D. Sileo (La Bar No. 17797)
LAW OFFICE OF JOHN D. SILEO
320 N. Carrollton Ave.,
Suite 101 New Orleans, LA 70119
(504) 486-4343

jack@johnsileolaw.com
casey@johnsileolaw.com

*/s/ Seth H. Schaumburg*
Seth H. Schaumburg (La Bar No. 24636)
Favret Demarest Russo Lutkewitte & Schaumburg
1555 Poydras Street, Suite 1600
New Orleans, LA 70112
P: (504) 562-1006
F: (504) 523-0699
seth@favretlaw.com
*Counsel for Ictech-Bendeck Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Lawrence J. Centola, III*

CLASS COUNSEL, ON BEHALF OF THE CLASS