UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK, <br> Plaintiff <br><br> VERSUS <br><br> WASTE CONNECTIONS BAYOU, INC., ET AL., <br> Defendants <br><br> *Applies to: All Cases* | CIVIL ACTION <br><br> NO. 18-7889 <br> c/w 18-8071, <br> 18-8218, 18-9312 <br><br> SECTION: "E" (5) <br><br><br> JUDGE: Morgan <br> MAGISTRATE JUDGE: North |

**WASTE CONNECTIONS DEFENDANTS'
SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO REVISED
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

Plaintiffs and Defendant Jefferson Parish ask the Court to approve the fairness and adequacy of a proposed settlement agreement that (1) violates the anti-assignment clause contained in Louisiana Regional Landfill Company's ("LRLC")[1] contract with Jefferson Parish (the "Contract"),[2] and (2) violates Rule 23 of the Federal Rules of Civil Procedure by establishing a class of plaintiffs for contract claims that are not yet the subject of any lawsuit.[3] In support, Plaintiffs and Jefferson Parish hang their hat on a *Deepwater Horizon* decision by Judge Barbier, where the non-settling defendants raised an objection specific to maritime law that is not applicable here.[4] Neither that case, nor any other authority cited by Plaintiffs or Jefferson Parish, speaks to the legal issues underlying the Waste Connections Defendants' objections, which are based on the plain language of Rule 23 and the Contract. Further, a recent amendment to the proposed settlement agreement proves that the disputed assignment is wholly unnecessary, further warranting its removal. The proposed class settlement should not be approved – rather, Plaintiffs and Jefferson Parish should negotiate a settlement that complies with Rule 23 and the Contract.

1. **The Proposed Class Settlement violates the Contract's anti-assignment provision, which the Court should address now.**

In their supplemental briefing, Plaintiffs and Jefferson Parish do not even attempt to show that their proposed class settlement agreement ("Proposed Class Settlement")[5] complies with the

---

[1] Together with Waste Connections Bayou, Inc., and Waste Connections US, Inc., LRLC is one of the Waste Connections Defendants, who submit this brief in opposition to the Revised Motion for Preliminary Approval of Proposed Settlement (ECF Doc. #481) and in accordance with the Court's order at ECF Doc. #486.

[2] As used herein, Contract refers to the contract dated May 17, 2012 and found at ECF Doc. #484-1.

[3] *See* Federal Rules of Civil Procedure, Rule 23(C)(1)(A) ("*Certification Order…Time to Issue.* At an early practicable time **after** a person sues or is sued as a class representative, the court must determine by order whether to certify **the action** as a class action." (emphasis added)).

[4] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891 (E.D. La. 2012), aff'd sub nom. *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (holding that non-settling defendants Halliburton and Transocean lacked standing to object to the settlement). Halliburton's objections, which Judge Barbier held were not sufficient to impart standing, are contained in a letter brief dated July 30, 2012, attached hereto as Exhibit A.

[5] ECF Doc. #501-2.

anti-assignment clause contained in the Contract between LRLC and Jefferson Parish. Rather, they wish for the Court to approve the Proposed Class Settlement, allow them to mail notices to more than 75,000 people that would bind those individuals to the terms of the Proposed Class Settlement,[6] and reserve for another day the question of whether the Proposed Class Settlement's assignment is valid under the Contract.

Neither Plaintiffs nor Jefferson Parish offer any justification for why the Court should approve this "shoot first and aim later" approach, and none exists. As the Waste Connections Defendants have already briefed,[7] the assignment in the Proposed Class Settlement violates the anti-assignment provision of the Contract. LRLC bargained for the right to ensure that all rights created by the Contract in favor of Jefferson Parish would at all times belong only to Jefferson Parish, not to unforeseen third parties such as the Proposed Settlement Class, unless LRLC specifically approved of an assignee.

Moreover, Rule 23(e)(2) requires that the adequacy and fairness of a settlement to a proposed class be determined before the approval of the settlement. The disputed issue of whether the assignment is legal bears directly on the adequacy and fairness of the Proposed Class Settlement to the putative class. Because the assignment is precluded under the terms of the Contract, the Proposed Class Settlement should not be approved unless the assignment provision is removed.

**2. The Proposed Class Settlement violates Rule 23's mandate that class certification occur *after* a claim is asserted.**

The Court should deny approval of the Proposed Class Settlement for a second reason: it

---

[6] See Plaintiffs' Memorandum in Support of Amended Motion to Certify Class at 28 (ECF Doc. 438-21) (estimating more than 75,000 potential class members).

[7] ECF Doc. #484, pp. 7-9.

violates Rule 23 by establishing a class of plaintiffs for contract claims that are not yet the subject of any lawsuit. Rule 23(c)(1)(A) states:

> (1) *Certification Order.*
>
>> (A) *Time to Issue.* At an early practicable time **after** a person sues or is sued as a class representative, the court must determine by order whether to certify **the action** as a class action.
>
> (emphasis added).

Here, Plaintiffs seek to establish a class of plaintiffs that would hold a claim against the Waste Connections Defendants (a claim based on Jefferson Parish's contractual rights) *before* a lawsuit has been filed against the Waste Connections Defendants as to that claim. That would violate the plain language of Rule 23(c)(1)(A) and establish a class with pending claims against the Waste Connections Defendants, without allowing the Waste Connections Defendants an opportunity to challenge the certification of the class (including the definition of that class).[8] Plaintiffs cannot be allowed to use the Proposed Class Settlement to bypass Rule 23 and subject the Waste Connections Defendants to potential liability to a class without the opportunity to challenge certification of the class.

Prejudice need not be shown to defeat class certification under Rule 23 – whether as a settlement class or otherwise. Therefore, the Plaintiffs and the Parish are wrong to argue that the Waste Connections Defendants should not complain because they will be "in the same position"

---

[8] Jefferson Parish is incorrect that the putative class in the Proposed Class Settlement is "identical" to the putative class in Plaintiffs' Amended Motion to Certify Class, and that "all members" of both proposed classes are "the same." ECF Doc. #500 at 2; *see also* ECF Doc. #501 at 22 (Plaintiffs making a similar assertion). The Proposed Class Settlement would include additional class members, residing at unknown addresses, identified in Exhibit A to the Proposed Settlement Agreement. ECF Doc. #501-2 at 3, 14. Plaintiffs also have identified subclasses in their Amended Motion to Certify Class, which do not encompass all areas within the broader proposed class area (i.e., the proposed class area contains members who are not in any subclass), and Plaintiffs have also proposed amending their class area in response to ascertainability issues identified by the Waste Connections Defendants in their opposition. ECF Doc. #438-21 at 20-21; ECF Doc. #450 at 13-14. Regardless, the Waste Connections Defendants have opposed class certification because the proposed class is not ascertainable, as well as on other grounds.

4

regardless of the assignment. And even if prejudice were at issue, the Waste Connections Defendants would be prejudiced by the assignment, as the cost of resolving the Parish's contractual claims would certainly be higher if such claims are assigned to a class of plaintiffs.[9]

Unlike litigation against a single entity such as the Parish, defending against claims by tens of thousands of class members would involve numerous procedural and administrative hurdles, each imposing burdensome time and expenses. For example, if Plaintiffs and the Waste Connections Defendants agreed to settle the Proposed Settlement Class's contractual claims, it could only be done with the Court's approval,[10] and would need to comply with the rules on class settlements, including mailing of notice,[11] providing an opportunity to object,[12] and holding a hearing to evaluate the fairness of the settlement.[13] This work would impose substantial administrative costs, including the cost of mailing notices, as well as paying for the substantial services involved in administering the claims, such as special masters[14] and/or accounting firms. For example, Plaintiffs have relied on *LeBlanc v. Texas Brine Co.*,[15] where the class was represented by the same law firm representing the *Ictech-Bendeck* Plaintiffs in this case. The *Texas Brine* docket reveals that resolution of the case involved at least $163,994.50 in fees paid to a court

---

[9] For this reason, the revised Proposed Settlement Agreement also does not moot the Waste Connections Defendants' objections.

[10] Rule 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval.").

[11] Rule 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to [approve that the settlement is fair, reasonable, and adequate].").

[12] Rule 23(e)(5)(A) ("Any class member may object to the proposal if it requires court approval under this subdivision (e).").

[13] Rule 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate…").

[14] As the Court is aware, two sets of special masters submitted applications to assist in administering the claims related to the Parish's settlement of *Ictech-Bendeck.* The proposed rates were as high as $650/hour.

[15] 989 F.3d 359 (5th Cir. 2021).

disbursing agent, and another $16,328.48 in fees paid to a special master.[16] *Texas Brine*'s costs are similar to other cases.[17]

In any settlement, such administrative costs would be passed on to the Waste Connections Defendants (either directly or baked into the cost of the settlement). The Waste Connections Defendants would bear the greatest need to ensure that sufficient notice of the settlement is given, as they would need to ensure that the tens-of-thousands of Plaintiffs are located so that *res judicata* could be achieved as to all potential claimants.[18] The Waste Connections Defendants would not face this burden if litigating against Jefferson Parish alone.

And if the contractual claims were not settled, any verdict in favor of the Proposed Settlement Class would involve a gargantuan effort to administer the claims and ensure that the potentially tens of thousands of class members are identified, located, and paid. Further, in a merits decision, the Waste Connections Defendants might bear these costs, as some courts have recognized a district court's discretion to impose notice and claim administration costs on the class defendant.[19]

---

[16] *See* Civil Action No. 12-2059, Eastern District of Louisiana, ECF Doc. Nos. 2073, 2174, and 2514.

[17] *See, e.g., Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) (class action defendant paid $239,000 "for the fees and costs associated with the Notice Program and Settlement administration."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1078 (S.D. Tex. 2012) (valuation of the proposed class settlement properly included $270,000 in administrative costs); *In re Shell Oil Refinery*, 155 F.R.D. 552, 557 (E.D. La. 1993) (approving a settlement which called for a maximum of $7.5 million "for class administrative costs and expenses.").

[18] *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040, 1078 (S.D. Tex. 2012) (when a class is certified for settlement, "[t]he defendant, as the party with the greatest interest in obtaining a res judicata effect for the settlement decree, should normally bear the costs of settlement notice.") (citing 4 RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 11:53; AGGREGATE LITIGATION § 3.04 cmt. a; *see also In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 195 (5th Cir. 2010) ($21 million settlement fund included the cost of "Notice Costs, Special Master fees and costs, Escrow Agent costs and fees, CADA [Court Appointed Disbursing Agent] fees and costs, the fees and costs of any Person retained by the Special Master or CADA, and other costs, fees and expenses incurred in the implementation of the Class Settlement Agreement.").

[19] 3 Newberg and Rubenstein on Class Actions § 8:33 (6th ed.) (district courts have discretion to shift administrative costs to class action defendants "when there has been some preliminary finding of the defendant's liability."); *Bakov v. Consol. World Travel, Inc.*, 68 F.4th 1053 (7th Cir. 2023) (district court acted within its discretion in shifting costs of class notice to defendants).

The proposed assignment would inevitably lead to other procedural quagmires that this Court need not wade into. For example, if members of the settlement class choose to assert their contractual claims, the Waste Connections Defendants could find themselves defending against these claims in multiple different jurisdictions with multiple different sets of plaintiff attorneys. Plaintiffs herein will surely take the position that only the *Ictech-Bendeck* class counsel approved by this Court could assert such claims, and only in this Court – but that is not at all clear from Plaintiffs' proposed order of settlement approval, which appoints class counsel as to "the Class Action"[20] and provides that the Court will retain jurisdiction only "over the settlement proceedings to assure the effectuation thereof for the benefit of the Class, including the allocation and distribution of all available settlement funds and hearing thereon."[21] Thus, it is not clear that the *Ictech-Bendeck* class counsel would have sole authority to direct where and when any assigned contractual claims would later be filed against the Waste Connections Defendants, nor is it clear that this Court would have jurisdiction over a breach of contract claim asserted by the Proposed Settlement Class against the Waste Connections Defendants.

This uncertainty is amplified by the fact that the persons who would inherit the Parish's contractual rights would extend beyond just the group of individuals who submit claim forms to the *Ictech-Bendeck* class counsel – rather, it would encompass *all* persons meeting the definition of a "Class Member," as defined by the Proposed Settlement Agreement,[22] except those who opt out.[23] Any individual or group of Class Members could remain silent through the proposed notice

---

[20] ECF Doc. #501-1, p. 4.

[21] ECF Doc. #501-1, p. 5.

[22] *See* ECF Doc. #501-1, p. 2 (defining "Class" or "Class Members" as "any and all individuals who, during the time period of July 1, 2017 through December 31, 2019, lived and/or resided in the Class Area AND anyone specifically named in Exhibit A to the Agreement."); ECF Doc. #501-2, section 3.3 (calling for an assignment to "the Class").

[23] Plaintiffs incorrectly claim that only class members who submit valid claim forms would "obtain the right to share in any monetary recovery from the Parish's claims against the non-settling defendants." ECF Doc. #501, p. 22. That

7

and claim period, then choose to pursue the Parish's assigned claims against the Waste Connections Defendants with new counsel in different courts. The risk that the Waste Connections Defendants would face litigation against multiple sets of Plaintiffs, in multiple different forums, is yet another reason why the Court should not allow the proposed assignment.

In short, the Waste Connections Defendants have good reason to oppose the class litigation proposed by Plaintiffs and the myriad expenses that come with it. And they should not be forced to defend against a class action when there has been no finding that the Rule 23 factors are satisfied, particularly since they specifically bargained for the right to ensure that they would be dealing with Jefferson Parish, not unforeseen third parties, as to any disputes over the Contract. The Court should deny approval of the Proposed Class Settlement as currently drafted.

3. **Judge Barbier's decision in *Deepwater Horizon* does not support approval of the Proposed Class Settlement.**

Plaintiffs have not cited a single case that states that class settlements can be used to bypass Rule 23 and deprive non-settling defendants of their right to object to class certification. Plaintiffs cite a *Deepwater Horizon* decision by Judge Barbier,[24] but that case says nothing about the legal issue before this Court. *Deepwater Horizon* was governed by general maritime law, and the non-settling defendant's (Halliburton) objections to the proposed settlement were based on general maritime law and application of the "proportionate share rule" established in the maritime case of *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994).[25] Halliburton argued that co-defendant BP was

---

ignores the language of the Proposed Class Settlement, which would allow putative class members to opt out of the class. Unless a class member affirmatively opts out of the class, they are indeed a member of "the Class" even if they do not submit a claim form, and under the terms of the Proposed Class Settlement, would inherit contractual rights from the Parish.

[24] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891 (E.D. La. 2012), aff'd sub nom. *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

[25] Exhibit A, pp. 5-7.

8

improperly seeking to assign its right of contribution against Halliburton to the class, in violation of maritime law's "settlement bar rule" that precludes contribution actions by settling maritime defendants.[26] Halliburton raised no objection about the proposed assignment being barred by a contract with BP. Ultimately, Judge Barbier declined to resolve Halliburton's objections, holding that Halliburton lacked standing to object.[27]

*Deepwater Horizon* is distinguishable for several reasons. First, the Waste Connections Defendants have standing to challenge the Proposed Class Settlement because the assignment provision in the Proposed Settlement Agreement interferes with LRLC's contractual rights (i.e. the anti-assignment provision).[28] Second, Halliburton did not raise Rule 23's bar on certification of a class before a lawsuit has been filed as to the assigned claims, nor did it raise any contractual bar on the proposed assignment. Thus, Judge Barbier's decision in *Deepwater Horizon* did not address the legal issues presently before the Court.

Finally, Halliburton's objections in *Deepwater Horizon* related to whether the settlement class could validly inherit any contribution rights against Halliburton. But in this case, Plaintiffs are not seeking to obtain contribution rights against the Waste Connections Defendants, as no such contribution rights exist under Louisiana law. Louisiana is a pure comparative fault state, meaning that Jefferson Parish would not have any contribution rights even if they later come to believe that they paid more than their fair share.[29] As Plaintiffs have admitted to the Court, what they really

---

[26] Exhibit A, pp. 5-7.

[27] *Deepwater Horizon* 910 F. Supp. 2d at 942–43.

[28] ECF Doc. #484, pp. 7-9 (citing *Agretti v. ANR Freight Sys., Inc*., 982 F.2d 242, 247 (7th Cir. 1992) ("any interference with a party's contract rights" constitutes plain legal prejudice)).

[29] Under Louisiana's comparative fault scheme, the Parish can settle only for its own divisible portion of the obligation owed to Plaintiffs – in other words, it is not possible for the Parish to pay more than its fair share. Similarly, Waste Connections Defendants can be held liable, at most, for their share of fault. *See* La. Civil Code art. 2324 ("If liability is not solidary pursuant to Paragraph A [addressing intentional acts], then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person,

seek is to obtain the Parish's rights (if any exist) to pursue reimbursement from the Waste Connections Defendants for expenses that the Parish spent on improvements to its landfill.[30] Such reimbursement rights could only exist pursuant to the Contract – the same Contract that explicitly states that it may not be assigned to unforeseen third parties such as the Proposed Settlement Class. Judge Barbier's opinion in *Deepwater Horizon* addressed none of these contractual issues and does not change the fact that the Proposed Class Settlement violates Rule 23 and the Contract.

The other cases cited by Plaintiffs are likewise distinguishable. *See* R. Doc. 501 at 20-21. In *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 810 (5th Cir. 2021), the class had already been certified as to the non-settling defendant. Another case, *State Farm Fire & Cas. Co. v. LaFuria*, 2008 WL 5479635, at *3 (W.D. La. Oct. 22, 2008), *report and recommendation adopted*, 2009 WL 774102 (W.D. La. Jan. 7, 2009), was not even a class action. None of Plaintiffs' cited cases involved a non-settling party who objected that it was deprived of its right to object to class certification.

This Court should not blaze a new trail by allowing Plaintiffs to bypass Rule 23 and deprive non-settling defendants of their right to object to class certification. Instead, the Court should direct Plaintiffs and the Parish to negotiate a settlement that complies with Rule 23 and the Contract.

**4. The assignment in the Proposed Class Settlement is unnecessary.**

Finally, the Court should deny approval of the Proposed Class Settlement because not only

---

including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable."); *Gardes Directional Drilling, Inc. v. Bennett*, 2001-0080 (La. App. 3 Cir. 6/6/01), 787 So. 2d 1201, 1206 ("Contribution is allowed only among tortfeasors who are solidarily liable…Noncontractual solidary liability was abolished in 1996, except as to those tortfeasors who conspire to cause intentional or willful harm.").

[30] ECF Doc. #501, pp. 14-15 ("As this Honorable Court is aware, faced with odor issues at the Jefferson Parish Landfill and thousands of community odor complaints, the Parish spent millions of dollars mitigating such odors. If the non-settling defendants are found responsible for the odor issues, the Parish may be entitled to recover significant amounts of those expenses from those parties.").

10

is the assignment invalid, but it is also unnecessary. Plaintiffs and the Parish have included an alternative item of consideration in their latest version of a Proposed Class Settlement – "Alternatively, the Parish agrees to pursue its rights and causes of action against Aptim and the Waste Connections Defendants, their subsidiaries and affiliates, and that any monies recovered from said action(s) will be paid to the benefit of the Settlement Class." This alternative provision is proof that Plaintiffs can obtain additional rights from the Parish, on top of the $4.5 million payment, without improperly subjecting the Waste Connections Defendants to litigation against a Proposed Settlement Class.[31]

The Court should not be tasked with approving a settlement that violates Rule 23 and the Contract, especially when the offending provisions are wholly unnecessary. Plaintiffs and the Parish should revise the Proposed Class Settlement to omit the assignment language accordingly. Otherwise, the Court should deny its approval.

## CONCLUSION

For all of the reasons above, as well as the reasons set forth in their prior briefs on this motion, the Waste Connections Defendants respectfully request that, unless the Proposed Class Settlement is revised in the manner suggested herein, the Court should deny approval of it.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    /s/ Michael C. Mims
       Michael C. Mims (#33991)
       Michael Cash (#31655)
       Cherrell Simms Taplin (#28227)
       Kelly B. Becker (#27375)
       Kathryn Z. Gonski (#33442)

---

[31] The Waste Connections Defendants deny that they have any liability to the Parish and reserve all defenses to any litigation based on alleged liability to the Parish.

11

            Brady M. Hadden (#37708)
            Alec Andrade (#38659)
            701 Poydras Street, Suite 5000
            New Orleans, LA 70139
            Telephone: (504) 581-7979
            Telefax: (504) 556-4108

            BEVERIDGE & DIAMOND, P.C.

            Megan R. Brillault (*pro hac vice*)
            Michael G. Murphy (*pro hac vice*)
            John H. Paul (*pro hac vice*)
            Katelyn E. Ciolino (*pro hac vice*)
            Katrina M. Krebs (*pro hac vice*)
            825 Third Avenue, 16th Floor
            New York, NY 10022
            (212) 702-5400

            James B. Slaughter (*pro hac vice*)
            1900 N Street, NW, Suite 100
            Washington, DC 20036
            (202) 789-6000

            Michael F. Vitris (*pro hac vice*)
            400 W. 15th Street, Suite 1410
            Austin, TX 78701
            (512) 391-8035

            *Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's electronic case management system on November 14, 2024.

            */s/ Michael C. Mims*