UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7889** **c/w 18-8071,** **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** **Defendants** | **SECTION: "E" (5)** |

*Applies to: All Cases*

## ORDER AND REASONS

Before the Court are objections[1] filed by the Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc. (collectively, the "Waste Connections Defendants") to putative class Plaintiffs' and Class Representatives', Elias Jorge "George" Ictech-Bendeck, Nicole M. Landry-Boudreaux, Larry Bernard Sr., and Mona Bernard, and Class Representatives, Phil Adams, Robyn Crossman, Kayla Anne Steele, Ann Williams, and Ophelia Walker ("Plaintiffs"), Revised Motion for Preliminary Approval of the Class Settlement[2] between Plaintiffs and Jefferson Parish. Plaintiffs,[3] Jefferson Parish,[4] and the Waste Connections Defendants[5] timely filed supplemental briefing in support of their positions.

---

[1] R. Doc. 484.
[2] R. Doc. 481.
[3] R. Doc. 501.
[4] R. Doc. 500.
[5] R. Doc. 507.

## BACKGROUND

### I.    The *Addison* and *Ictech-Bendeck* Actions

This case, *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, is a consolidation of several proposed class actions and concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors Plaintiffs allege were emitted from the Landfill causing damage from July 1, 2017 to December 31, 2019. Plaintiffs seek nuisance damages for violations of the obligations of neighborhood under Louisiana Civil Code articles 667-669.[6] *Addison v. Louisiana Regional Landfill Co.* was a consolidation of two mass actions containing over 500 individual Plaintiffs (the "*Addison* Plaintiffs"). The *Addison* Plaintiffs sought damages for negligence under Louisiana Civil Code articles 2315, 2315.1, and 2316 as well as for violations of the obligations of neighborhood under Louisiana Civil Code articles 667-669.[7] The Plaintiffs in both cases named the same Defendants: Jefferson Parish, Aptim Corporation, and the Waste Connections Defendants.[8]

The Court held a trial on general causation, which was applicable to both actions.[9] On November 29, 2022, the Court issued its Findings of Fact and Conclusions of Law as to general causation, determining odors and gases were emitted by the Landfill;[10] the emissions of gases and odors from the Landfill occurred during the relevant time period;[11] and exposure to the odors and gases emitted by the Landfill at a level of five ppb for thirty

---

[6] No. 18-7889, R. Doc. 48. The Plaintiffs also made claims for negligence, gross negligence, and potential premises liability in their Amended and Superseding Master Class Action Complaint for Damages, but they have since clarified the only causes of action they bring are under articles 667-669. No. 18-7889, R. Doc. 66 at 4.

[7] No. 19-11133, R. Doc. 109.

[8] No. 19-11133, R. Doc. 323, p. 2.

[9] No. 18-7889, R. Docs. 243-247, 256-259 (Minute Entries); No. 19-11133, R. Docs. 274-278, 286-289 (same).

[10] No. 19-11133, R. Doc. 323, at p. 5.

[11] *Id.* at p. 26.

minutes was capable of producing the injuries claimed by any one or more of the plaintiffs.[12]

Having found for Plaintiffs at the general causation stage, the Court proposed a trial be conducted with a select number of *Addison* plaintiffs to provide the parties with information helpful to settlement. The first *Addison* trial was scheduled to begin August 12, 2024.[13] In *Ictech-Bendeck*, Plaintiffs submitted a motion for class certification on May 15, 2024, which remains pending.[14]

On August 9, 2024, Jefferson Parish informed the Court on the record that Jefferson Parish and the Plaintiffs in both the *Addison* and *Ictech-Bendeck* actions had settled. On August 12, 2024, counsel for all parties confirmed that the *Addison* case had settled.[15] That same day, the Court entered a 60-day order of dismissal in the *Addison* case.[16] In the *Ictech-Bendeck* case, Plaintiffs' claims against the Waste Connections Defendants and Aptim Corporation remain.

On October 10, 2024, the *Addison* Plaintiffs requested an extension for their 60-day order, representing that "the *Addison* settlement with Jefferson Parish is conditioned upon the Court's approval of the Parish's settlement in the *Ictech-Bendeck* case."

## II.    *Ictech-Bendeck* **Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement Agreement**

On August 20, 2024, the Court held a status conference and scheduled a hearing on preliminary approval of the settlement between Plaintiffs and Jefferson Parish in the

---

12 *Id.* at p. 27.
13 No. 19-11133, R. Doc. 495.
14 No. 18-7889, R. Doc. 438. On September 10, 2024, the Court held oral argument on the Rule 23 issues of predominance, superiority, and bifurcation of the issues. No. 18-7889, R. Doc. 473.
15 No. 19-11133, R. Doc. 755.
16 No. 19-11133, R. Doc. 756.

*Ictech-Bendeck* action, pursuant to Federal Rule of Civil Procedure 23.[17] The Court also ordered a deadline for the parties to submit a joint motion for a Court-appointed neutral for purposes of administering the proposed settlement.[18] After Plaintiffs submitted their joint motion for appointment of the neutral,[19] the Court granted the motion and issued an order explaining the procedure for parties to apply for the position.[20]

On September 19, 2024, Plaintiffs submitted a Motion for Preliminary Approval of the proposed Class Settlement between *Ictech-Bendeck* Plaintiffs and Jefferson Parish pursuant to Rule 23 of the Federal Rules of Civil Procedure.[21] Plaintiffs attached to their motion the proposed Settlement Agreement[22] and requested the Court find the agreement is "fair, reasonable, adequate, entered into good faith and without collusion, and within the range of possible judicial approval."[23] Plaintiffs also requested the Court to preliminarily approve the certification of the Settlement Class, to approve the dissemination of notices to the class, and to set a date for the fairness hearing.[24]

On September 30, 2024, the Waste Connections Defendants submitted an opposition with objections to the proposed Settlement Agreement.[25] Initially, Waste Connections Defendants argued the proposed Settlement Agreement contained "incorrect or misleading information about the Waste Connections Defendants" which should be removed or revised prior to approval.[26] Waste Connections argued they have standing to object to certain language in the proposed Settlement Agreement because,

---

[17] R. Doc. 467 (hereinafter in 18-7889); FED. R. CIV. P. 23.
[18] *Id.*
[19] R. Doc. 468.
[20] R. Doc. 469.
[21] R. Doc. 474; FED. R. CIV. P. 23.
[22] R. Doc. 474-1.
[23] R. Doc. 474, p. 9.
[24] *See generally id.*
[25] R. Doc. 477.
[26] *Id.* at pp. 4-5.

under the terms of the Agreement, Waste Connections Defendants are legally prejudiced.[27] Waste Connections argued "the Proposed Settlement Agreement purports to assign rights to a contract that LRLC is a party to, in violation of the plain terms of the contract."[28] Waste Connections also requested the Court to clarify "that it is not certifying a class for any purpose other than settlement."[29]

The Court ordered the Plaintiffs and Jefferson Parish to file responses to the objections, and Plaintiffs and Jefferson Parish informed the Court they would revise parts of their Motion for Preliminary Approval.[30] Plaintiffs agreed to work with the Waste Connections Defendants to revise some of the language in the proposed Settlement Agreement and Notices.[31] On October 4, 2024, Plaintiffs submitted their Revised Motion for Preliminary Approval of the Proposed Settlement.[32] Plaintiffs and Jefferson Parish also filed responses to the Waste Connections Defendants' first set of objections.[33] Plaintiffs represented that the revised Settlement Agreement and revised Notices reflected the edits suggested by Waste Connections to cure the objections to the notice language regarding the Waste Connections Defendants.[34]

The Court ordered the parties to file any unresolved objections to the revised motion.[35] Waste Connections Defendants timely filed their unresolved objections, including an additional argument that "the Proposed Settlement would create a

---

[27] R. Doc. 477 at pp. 1-2.
[28] *Id.* at p. 2. Waste Connections Defendants argued Louisiana Civil Code Article 2653 prohibits this assignment of rights to the class because the Parish and LRLC contracted to prohibit assignment without consent of the other party. LA. C.C. ART. 2653 ("A right cannot be assigned when the contract from which it arises prohibits the assignment of that right . . . .").
[29] *Id.* at p. 6.
[30] R. Doc. 478.
[31] *Id.*
[32] R. Doc. 481.
[33] R. Docs. 480, 482.
[34] R. Doc. 480, pp. 1-2.
[35] R. Doc. 483.

settlement class as to the claims against Waste Connections Defendants" because of Jefferson Parish's assignment of rights "to the Class," which is an "improper[] bypass [of] the requirements of Rule 23."[36]

The Court held oral argument on the Motion for Preliminary Approval on October 9, 2024.[37] After discussing the outstanding objections further during a status conference, the Court ordered the parties to submit additional briefing on the issues.[38] Plaintiffs,[39] Jefferson Parish,[40] and Waste Connections[41] timely filed their supplemental briefing.

## III.    Standing of the Waste Connections Defendants

The Waste Connections Defendants argue they have standing to object to the proposed Settlement Agreement because the Agreement affects their rights under the May 2012 Operating Agreement between Jefferson Parish and LRLC.[42] The Waste Connections Defendants argue

> the Proposed Settlement would result in plain legal prejudice to the Waste Connections Defendants because (1) the Proposed Settlement would create a settlement class with potential claims against them, depriving them of their right to contest class certification as they are entitled under Rule 23 of the Federal Rules of Civil Procedure; and (2) the Proposed Settlement would place any claim under the Operating Agreement in the hands of the Plaintiffs over the objections of LRLC, in violation of the anti-assignment clause that LRLC bargained for.[43]

The Waste Connections Defendants argue Plaintiffs and Jefferson Parish have conceded that non-settling defendants have standing to object to a proposed settlement when it will

---

[36] R. Doc. 484, pp. 3, 6.
[37] R. Doc. 485.
[38] R. Doc. 486.
[39] R. Doc. 501.
[40] R. Doc. 500.
[41] R. Doc. 507.
[42] R. Doc. 477, pp. 1-2.
[43] R. Doc. 484, p. 3.

cause them "plain legal prejudice."[44] Non-settling Defendants further argue that, "as a party to the [Operating Agreement] contract, LRLC has standing to enforce its terms."[45]

Plaintiffs argue that, although a non-settling defendant may object to an agreement when defendant suffers "plain legal prejudice" by terms of the agreement, the Waste Connections Defendants cannot prove they will suffer "plain legal prejudice" as a result of the proposed Settlement Agreement.[46] Plaintiffs point out that Courts have held that "a settlement which does not prevent the later assertion of a non-settling party's claims, although it may force a second lawsuit against the dismissed parties, does not cause plain legal prejudice to the non-settling party."[47] Plaintiffs argue that a "judgment approving the Proposed Settlement will resolve claims between the Plaintiff Class and the Parish of Jefferson . . . [but] such a judgment would not purport to decide any substantive legal rights of the Waste Connections Defendants."[48] Plaintiffs argue that, "to the extent the Waste Connection Defendants possess any claims of contribution or indemnity from the Parish, those claims remain undisturbed."[49] Plaintiffs further argue that Waste Connections will not suffer legal prejudice by the assignment provision because if the claims are assigned to the Settlement Class, Waste Connections will be in no different position than if Jefferson Parish pursued the same claims.[50]

The Court analyzes the Waste Connections Defendants' arguments in more detail below to determine whether the proposed Settlement Agreement in current form causes "plain legal prejudice" to the non-settling Defendants.

---

[44] *Id*. at p. 2.
[45] *Id*. at p. 7.
[46] R. Doc. 480, pp. 3-4.
[47] *Id*. at p. 3 (quoting *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 247 (7th Cir. 1992)).
[48] *Id*. at p. 4.
[49] *Id*.
[50] R. Doc. 501, p. 19.

## IV.   The Anti-Assignment Provision and the Proposed Settlement Agreement Assignment Clause

The relevant provision of the 2012 Operating Agreement states:

3. <u>Assignability:</u> This Agreement may not be sold, subleased, assigned or transferred at anytime by either party without the prior written approval of the other party, which shall not be unreasonably withheld; provided, however, that IESI[51] may assign this Agreement to any direct or indirect affiliate or subsidiary of IESI or to any person or entity succeeding to all or substantially all of IESI's assets (whether by operation of law, merger, consolidation or otherwise) without the Parish's consent, effective upon written notice to Parish as provided herein. Except as otherwise provided herein, IESI shall not assign any interest in this Agreement, and shall not transfer any interest in the same (whether by assignment or novation), nor shall IESI assign any monies due or to become due to it under this Agreement without the prior written consent of the Parish thereto, nor without the consent of the surety unless the surety has waived its right to notice of assignment.[52]

Section 3.3 of the proposed Settlement Agreement states:

The Parish agrees to assign its rights (but not obligations) under any applicable contract between the Parish and either Aptim or the Waste Connections Defendants, their subsidiaries and affiliates to the Class. Further, The Parish agrees to defend and indemnify the Class from any claims made by either Aptim or the Waste Connections Defendants, their subsidiaries and affiliates arising out of the contracts or the action.[53]

In the most recent supplemental memorandum filed by the Plaintiffs, Plaintiffs included

the following clause in addition to Section 3.3 as attached to the Revised Motion for

Preliminary Approval of the Class Settlement:[54]

Alternatively, the Parish agrees to pursue its rights and causes of action against Aptim and Waste Connections Defendants, their subsidiaries and affiliates, and that any monies recovered from said action(s) will be paid to the benefit of the Settlement Class. The Parish's rights and causes of action subject to this section are those which arise out of the factual basis set forth in the Action, and expressly include any rights and causes of action arising out of the acts and omissions of Aptim and the Waste Connections

---

[51] IESI LA Landfill Corporation changed its name to Louisiana Regional Landfill Company. *See* R. Doc. 8, p. 1.
[52] R. Doc. 477, p. 39.
[53] R. Doc. 481-1, p. 4.
[54] *Id.*

Defendants, their subsidiaries and affiliates which gave rise to the Release Occurrence.[55]

The Waste Connections Defendants argue "the assignment called for by the Proposed Settlement is prohibited by the [Operating Agreement's] anti-assignment clause," and Defendants have not consented to the assignment as required by the contract.[56] The Waste Connections Defendants argue they bargained for the right to contract with Jefferson Parish, not unforeseen third parties.[57] The Waste Connections Defendants argue that Louisiana law, as provided for in Louisiana Civil Code Article 2653, prohibits assignment of a contractual right when parties contracted to prohibit the assignment of that right.[58] Defendants argue the assignment "broadly prohibits assignments of '[t]his Agreement,'" including "all of the rights and obligations created by agreement of two or more parties.[59] Defendants distinguish the Louisiana Supreme Court case *In Re Katrina Canal Breaches Litigation*, which held that contractual post-loss assignment clause prohibitions must "clearly and unambiguously express that the non-assignment clause applies to post-loss assignments."[60] Defendants argue this holding applies only to adhesionary insurance contracts, not to the Operating Agreement executed between LRLC and Jefferson Parish.[61]

In response, Plaintiffs and Jefferson Parish argue that the anti-assignment clause in the Operating Agreement applies only to rights under the Agreement "regarding the operation, management, or maintenance of the Jefferson Parish Sanitary Landfill Site."[62]

---

[55] R. Doc. 501-2, p. 4.
[56] R. Doc. 477, p. 3.
[57] R. Doc. 484, p. 7; R. Doc. 507, p. 3.
[58] *Id.*
[59] R. Doc. 484, p. 8.
[60] 63 So.3d 955, 963 (La. 2011).
[61] R. Doc. 484, p. 9.
[62] R. Doc. 482, pp. 2-3; R. Doc. 480, p. 6 ("The Putative Class adopts the arguments of the Parish of Jefferson regarding the assignment of rights.").

Plaintiffs and Jefferson Parish argue that the *In Re Katrina Canal Breaches* holding is applicable to the extent the Louisiana Supreme Court "specifically delineated the difference between an anti-assignment clause applying to a contract itself and a right that arises later (even if it is related to the initial contract)."[63] The settling parties argue "the generic anti-assignment clause in the contract regarding the operation, management, or maintenance of the Jefferson Parish Sanitary Landfill Site has nothing to do with assignment of post-loss assignments of indemnification [rights.] If the provision were to apply, [they argue,] it would need to 'clearly and unambiguously express that it applies to the post-loss assignment.'"[64]

Additionally, Plaintiffs argue the Court should apply principles of contract interpretation to construe the Operating Agreement's anti-assignment clause as pertaining to two separate groups of rights: "(1) anti-assignability of the contract for trash collection and landfill operation and maintenance itself; and (2) anti-assignability of certain specific interests held by IESI related to the contract."[65] Plaintiffs argue the language prohibiting assignment of "this Agreement" by either party contrasts with the following sentence, which provides *only* that IESI "shall not assign any interest in this Agreement . . . [nor] any monies due or to become due . . . ."[66] Plaintiffs argue that, because the assignability clause does not expressly prohibit Jefferson Parish from assigning a specific right arising under the agreement, but it prohibits IESI from assigning specific rights and interests under the agreement, the "absence of any such language speaking to specific rights of the Parish supports the conclusion that the anti-assignability clauses

---

[63] R. Doc. 482, p. 3.
[64] *Id.*
[65] R. Doc. 480, p. 6.
[66] *Id.* at p. 7.

. . . must be given limited effect."[67] Plaintiffs argue the language prohibiting assignment of IESI's rights "would be entirely superfluous" if the provision prohibiting assignment of "this Agreement" applied to any and all rights by either party.[68]

Finally, the settling parties argue Waste Connections' objections to the assignment are premature because Waste Connections retains the ability to defend against the Settlement Class at a later point, if the settling parties pursue the assigned rights.[69] Plaintiffs also highlight cases in which courts preliminarily approved class action settlements involving settling defendants assigning their rights against non-settling defendants to the class.[70]

## **LEGAL STANDARD**

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."[71] "While Federal Rule of Civil Procedure 23, governing class actions, does not expressly provide for a preliminary fairness evaluation, '[r]eview of a proposed class action settlement generally involves two hearings,' the first of which is a 'preliminary fairness evaluation' made by the Court."[72] The Court must make a preliminary determination that (1) the proposed settlement class

---

[67] *Id.*

[68] *Id.*

[69] R. Doc. 482, p. 3.

[70] *See* R. Doc. 501, pp. 19-21 (*citing In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 909 (E.D. La. 2012), *aff'd sub nom.*, *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 810 (5th Cir. 2021); *State Farm Fire & Cas. Co. v. LaFuria*, No. CIV.A. 07-1285, 2008 WL 5479635, at *1 (W.D. La. Oct. 22, 2008); *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 93 (2d Cir. 2003); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 83 (2d Cir. 2001); *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 741 (7th Cir. 2013); *G.M. Sign, Inc. v. St. Paul Fire & Marine INS. Co.*, 768 F. App'x 982, 984 (11th Cir. 2019)).

[71] Fed. R. Civ. P. 23(e).

[72] *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2004)).

satisfies criteria in Rules 23(a) and 23(b), that (2) the terms of the proposed settlement agreement are fair, reasonable, and adequate, and (3) the Court "must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."[73] "The preliminary hearing . . . is held to evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing."[74] "If the Court finds portions of the proposed settlement problematic, it may indicate preliminary disapproval of the agreement and recommend that the parties make certain revisions or modifications."[75]

"Non-settling parties generally lack standing to object to a settlement agreement."[76] Generally, for a party to have standing, they must have suffered an injury that is concrete, particularized, actual, and imminent.[77] In the Fifth Circuit, a non-settling party may object to a settlement agreement when they face "plain legal prejudice" as a result of the settlement, such as through stripping the non-settling defendant of rights to contribution or indemnity.[78] "Mere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice."[79] "The 'plain legal prejudice' standard is 'narrowly construed and occurs only when a partial settlement deprives a non-settling party of a substantive right.'"[80]

---

[73] *Id.* (quoting MANUAL FOR COMPLEX LITIGATION § 21.6).

[74] *Cope v. Duggins*, 2001 WL 333102, at *1 (E.D. La. Apr. 4, 2001).

[75] *Id.*

[76] *LeBlanc v. Tex. Brine Co.*, L.L.C., 989 F.3d 359, 364 (5th Cir. 2021) (citing *Transamerican Refin. Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992)); *see also Agretti v. ANR Freight Sys.*, 982 F.2d 242, 246 (7th Cir. 1992).

[77] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[78] *LeBlanc*, 989 F.3d at 364; § 13:24. *Standing to object—Nonsettling defendants and nonparties*, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:24 (6th ed.).

[79] *Agretti*, 982 F.2d at 247.

[80] § 13:24. Standing to object—Nonsettling defendants and nonparties, 4 Newberg and Rubenstein on Class Actions § 13:24 (6th ed.) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2008 WL 2566867, *4 (S.D. Tex. 2008)).

**LAW AND ANALYSIS**

I.    **Under Louisiana law, the anti-assignment clause in the 2012 Operating Agreement between LRLC and Jefferson Parish does not prohibit the assignment provision in the proposed Settlement Agreement.**

Louisiana Civil Code Article 1984 provides that "[r]ights and obligations arising from a contract are heritable and assignable unless the law, the terms of the contract or its nature preclude such effects."[81] Article 2642 states that "[a]ll rights may be assigned, with the exception of those pertaining to obligations that are strictly personal."[82] Strictly personal obligations are obligations that can only be enforced by the obligee or only against the obligor, such as when the performance requires special skill or qualification, or the obligation is for personal services.[83] Article 2653 provides that "[a] right cannot be assigned when the contract from which it arises prohibits the assignment of that right."[84] The Louisiana Supreme Court has recognized that Article 2653 "appears to apply to all assignments," including those in insurance contracts.[85]

In *In re Katrina Canal Breaches Litigation*, the Louisiana Supreme Court, answering a certified question from the United States Court of Appeals for the Fifth Circuit, examined "public policy considerations relative to post-loss assignments" in the context of insurance contracts.[86] The court reviewed other Louisiana cases recognizing the difference between "assignment of a policy before and after loss has accrued thereon" as well as the common law recognition that "[a]n assignment of the policy after loss is in effect no more than an assignment of a claim against the company," and anti-assignment

---

[81] LA. C.C. ART. 1984.
[82] LA. C.C. ART. 2642.
[83] *See* LA. C.C. ART. 1766.
[84] LA. C.C. ART. 2653.
[85] *In re Katrina Canal Breaches Litig.*, 63 So. 3d 955, 960 (La. 2011).
[86] *Id.*

clauses applied to post-loss claims are "void against public policy."[87] The court distinguished assignment provisions that apply pre-loss from those that apply post-loss, reasoning that for post-loss assignments, "insurer's obligations are fixed at the time the loss occurs, and the insurer is obligated to cover the loss agreed to under the terms of the policy. This obligation is not altered when the claimant is not the party who was originally insured."[88] Thus, "while the Louisiana legislature has clearly indicated an intent to allow parties freedom to assign contractual rights, by enacting La. C.C. art. 2653 it has also clearly indicated an intent to allow parties freedom to contractually prohibit assignment of rights."[89]

The court ultimately held "that [while] parties may contract to prohibit post-loss assignments . . . the contract language must clearly and unambiguously express that the non-assignment clause applies to post-loss assignments."[90] While the case concerned post-loss assignments in the context of insurance contracts, the court stated that, in any contract, courts should analyze assignment provisions according to general rules of contract interpretation and the Civil Code.[91] Finally, the court instructed federal district courts "to evaluate the relevant anti-assignment clauses on a policy-by-policy basis to determine whether the language is sufficient to prohibit post-loss assignments."[92]

Louisiana appellate courts and federal district courts have employed principles of contract interpretation to analyze the intended scope of assignment clauses. In *Lomark, Inc. v. LavigneBaker Petroleum, L.L.C.*, a supply contract case, the Louisiana Court of

---

[87] *Id.* at 961 (quoting Ruling Case Law, verbo "Insurance," vol. 14, p. 182).
[88] *Id.*
[89] *Id.* at 962.
[90] *Id.* at 963.
[91] *Id.*
[92] *Id.* at 964.

Appeals for the Fifth Circuit analyzed an assignment provision, where the assignor conveyed to the assignee "all of Assignor's rights, title and interest . . . in and to the following described contracts."[93] The court narrowly construed the assignment provision to "unambiguously" assign all "future rights and obligations," but held the provision was "unambiguously silent on the issue of whether assignors also assigned their personal rights . . . [such as] the right to sue for any alleged breaches of the covenants, duties, and obligations arising under the contracts occurring prior to execution of the assignment."[94] The court further explained that the assignment of rights was "nonspecific" and "fail[ed] to specifically and explicitly address the assignment of any personal rights accruing to plaintiffs arising under the contracts . . . ."[95] In *Addy's Burger, L.L.C. v. Paradigm Investment Group, L.L.C.*, a breach of contract case, the court, "guided by the Louisiana Civil Code and the actual words of the subject Assignment in determining whether [the] language is 'clear and explicit," interpreted an assignment provision assigning "all of Assignor's right, title and interest in, to and under the Lease . . . or any other claims arising under the Lease against any lessee thereunder."[96] The court held that the assignment language "clearly and unambiguously" assigned both future rights and obligations as well as those that arose prior to the assignment.[97] Further, the court reasoned that "any suggestion that the parties to the assignment did not intend to assign any pre-assignment rights is undermined by the specific mention of rights to arrears rents."[98]

---

[93] 110 So. 3d 1107, 1111 (La. Ct. App. 5th Cir. 2013), *writ denied*, 112 So. 3d 848 (La. 2013).
[94] *Id.* at 1112.
[95] *Id.* at 1113 (distinguishing *Caro Props. (A), L.L.C. v. City of Gretna*, 3 So.3d 29 (La. Ct. App. 5th Cir. 2008), where the court held the assignment provision was "specifically and explicitly of exact rights, i.e., 'any rights [it had] to pursue recovery from any responsible party . . . .").
[96] No. CV 17-2400, 2018 WL 2569928, at *4-5 (E.D. La. June 4, 2018).
[97] *Id.* at *5.
[98] *Id.*

Contractual terms "must be given their generally prevailing meaning."[99] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[100] "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[101] Guided by the Louisiana Supreme Court's reasoning in *In Re Katrina Canal Breaches Litigation*, principles of contract interpretation, and the relevant articles from the Louisiana Civil Code,[102] the Court finds the anti-assignment provision[103] in the Operating Agreement between LRLC[104] and Jefferson Parish does not prohibit the assignment of rights included in the proposed Settlement Agreement.[105] The clear and unambiguous language of the anti-assignment clause prohibits Jefferson Parish from assigning "*[t]his Agreement*," then stipulates that "IESI shall not assign *any interest in this Agreement* . . . nor shall IESI assign any monies due."[106] Interpreting these provisions in light of one another, the parties unambiguously differentiated between assignment of "the Agreement" and assignment of rights arising from "*any interest* in this Agreement" or "monies due."[107] By the plain language of the contract, it is clear the parties intended to prohibit IESI from assigning "any interest" in the agreement or "monies due," but they did not intend to prohibit Jefferson Parish from assigning claims arising under the agreement.[108] "*A right* cannot be assigned when the

---

[99] La. C.C. Art. 2047.
[100] La. C.C. Art. 2046.
[101] La. C.C. Art. 2050.
[102] La. C.C. Arts. 1984, 2642, 2653.
[103] R. Doc. 477, p. 39.
[104] Formerly IESI.
[105] R. Doc. 481-1, p. 4.
[106] R. Doc. 477, p. 39.
[107] *Id.*
[108] *See In Re Katrina Canal Breaches Litig.*, 63 So.3d 955, 963 (La. 2011) ("Post-loss assignment of claims arising under the policy is not equivalent to the assignment of the policy itself, or an interest in the policy.").

contract from which it arises prohibits the assignment of *that* right."[109] Because the parties did not "clearly and unambiguously express that [the anti-assignment provision] applies to post-loss assignments" of *Jefferson Parish's* rights and interests arising under the contract, the Court finds the anti-assignment clause in the Operating Agreement does not prohibit the assignment provision at issue in this case.[110]

      The Court is further persuaded by the *In Re Katrina Canal Breaches* court's recognition that, in the insurance context,

> allowing an insured to assign the right to coverage (pre-loss) would force the insurer to protect an insured with whom it had not contracted-an insured who might present a greater level of risk than the policyholder. However, allowing an insured to assign its right to the proceeds of an insurance policy (post-loss) does not modify the insurer's risk.

The Waste Connections Defendants make similar arguments: that LRLC bargained for the "right to ensure that all rights created by the Contract in favor of Jefferson Parish" would belong only to Jefferson Parish.[111] The Court finds that a similar rationale applies to the rights of the parties under the Operating Agreement: while LRLC and Jefferson Parish bargained for rights and performance under the Operating Agreement, if LRLC was found to have breached the contract, the rights and obligations arising from the breach are "not altered when the claimant is not the [original] party."[112]  In line with Article 2642's principle that all rights may be assigned, "[t]he right to pursue damages for . . . failure to comply with . . . duties is not such a strictly personal obligation . . . . [and]

---

[109] LA. C.C. ART. 2653 (emphasis added).
[110] *See In re MF Glob. Inc.*, 496 B.R. 315, 321-22 (S.D.N.Y. 2013) (applying Second Circuit precedent and principles of contract interpretation in holding that an anti-assignment clause prohibiting assignment of claims "arising under" the relevant contract "only apply to contractual claims arising from 'a literal interpretation or performance of the contract,' and not to the independent tort claims at issue.").
[111] R. Doc. 484, p. 7.
[112] *In Re Katrina Canal Breaches Litig.*, 63 So.3d at 961.

'claims for breach of [those] duties [may] be asserted by . . . someone who derives his right from the insured.'"[113]

By similar reasoning, the assignment provision in the proposed Settlement Agreement does not "circumvent Rule 23." Plaintiffs have specified the provision intends to assign Jefferson Parish's rights to "monetary recoveries" in any claim the Parish may have against the Waste Connections Defendants in connection with the instant suit.[114] The assignment of litigious rights operates to give an assignee the assignor's "rights to recover in a lawsuit," where the assignee "steps into the shoes" of the assignor for "purposes of [the] lawsuit."[115] Such assignments may take place through execution of a settlement agreement.[116] The proposed Settlement Agreement language does not purport to certify a separate class of Plaintiffs against the Waste Connections Defendants. Rather, the "Settlement Class merely steps into the shoes of the Parish as it relates to the Parish's claims against the Waste Connections Defendants."[117]

## II.     The Waste Connections Defendants lack standing to object to the proposed Settlement Agreement.

Because the assignment provision does not prohibit the assignment of rights enumerated in the proposed Settlement Agreement, the Court finds the Waste Connections Defendants do not suffer "plain legal prejudice" from the assignment provision. This conclusion is in line with the principles of Articles 2642 and 2653, allowing parties freedom to assign contractual rights as well as freedom to contractually

---

[113] *I Say I Say I Say, LLC v. Auto. Ins. Co.*, No. CV 23-5116, 2024 WL 3639526 (E.D. La. Aug. 2, 2024) (quoting *Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, Civ. A. No. 07-7965, 2009 WL 86671, at *5 (E.D. La. Jan. 13, 2009)).
[114] R. Doc. 501, pp. 18-19.
[115] *Woodfield v. Bowman*, 193 F.3d 354, 359 (5th Cir. 1999).
[116] *See id.*
[117] R. Doc. 501, p. 18.

limit specific rights when the assignment provision is clear and unambiguous. The Court also finds the non-settling Defendants' Rule 23 arguments unpersuasive. As a result, the Waste Connections Defendants lack standing to object to the proposed Settlement Agreement at this time.[118]

Accordingly;

**CONCLUSION**

**IT IS ORDERED** that the Waste Connections Defendants' Objections[119] to the Motion for Preliminary Approval of the Proposed Settlement Agreement[120] between Plaintiffs and Jefferson Parish are **OVERRULED.**[121]

**New Orleans, Louisiana, on this 20th day of December, 2024.**

*Susie Morgan*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[118] In the Fifth Circuit, a non-settling party may object to a settlement agreement when they face "plain legal prejudice" as a result of the settlement, such as through stripping the non-settling defendant of rights to contribution or indemnity. *LeBlanc v. Tex. Brine Co., L.L.C.*, 989 F.3d 359, 364 (5th Cir. 2021); § 13:24. *Standing to object—Nonsettling defendants and nonparties*, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:24 (6th ed.).

[119] R. Docs. 477, 484, 507.

[120] R. Doc. 481.

[121] Waste Connections Defendants also requested the Court to clarify "that it is not certifying a class for any purpose other than settlement." R. Doc. 477, p. 6. At this stage, the Court is considering only whether to certify a class for purposes of the settlement between Plaintiffs and Jefferson Parish pursuant to Rule 23(e).