# APPENDIX C

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** <br> **Plaintiff** <br><br> **VERSUS** <br><br> **WASTE CONNECTIONS BAYOU, INC., ET AL.,** <br> **Defendants** <br><br><br> *Applies to: All Cases* | **CIVIL ACTION** <br><br> **NO. 18-7889** <br> **c/w 18-8071,** <br> **18-8218, 18-9312** <br><br><br> **SECTION: "E" (5)** <br><br><br> **JUDGE: Morgan** <br> **MAGISTRATE JUDGE: North** |

## WASTE CONNECTIONS DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO REVISED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Plaintiffs and Defendant Jefferson Parish ask the Court to approve the fairness and adequacy of a proposed settlement agreement that (1) violates the anti-assignment clause contained in Louisiana Regional Landfill Company's ("LRLC")[1] contract with Jefferson Parish (the "Contract"),[2] and (2) violates Rule 23 of the Federal Rules of Civil Procedure by establishing a class of plaintiffs for contract claims that are not yet the subject of any lawsuit.[3]  In support, Plaintiffs and Jefferson Parish hang their hat on a *Deepwater Horizon* decision by Judge Barbier, where the non-settling defendants raised an objection specific to maritime law that is not applicable here.[4] Neither that case, nor any other authority cited by Plaintiffs or Jefferson Parish, speaks to the legal issues underlying the Waste Connections Defendants' objections, which are based on the plain language of Rule 23 and the Contract. Further, a recent amendment to the proposed settlement agreement proves that the disputed assignment is wholly unnecessary, further warranting its removal. The proposed class settlement should not be approved – rather, Plaintiffs and Jefferson Parish should negotiate a settlement that complies with Rule 23 and the Contract.

1. **The Proposed Class Settlement violates the Contract's anti-assignment provision, which the Court should address now.**

In their supplemental briefing, Plaintiffs and Jefferson Parish do not even attempt to show that their proposed class settlement agreement ("Proposed Class Settlement")[5] complies with the

---

[1] Together with Waste Connections Bayou, Inc., and Waste Connections US, Inc., LRLC is one of the Waste Connections Defendants, who submit this brief in opposition to the Revised Motion for Preliminary Approval of Proposed Settlement (ECF Doc. #481) and in accordance with the Court's order at ECF Doc. #486.

[2] As used herein, Contract refers to the contract dated May 17, 2012 and found at ECF Doc. #484-1.

[3] *See* Federal Rules of Civil Procedure, Rule 23(C)(1)(A) ("*Certification Order…Time to Issue.* At an early practicable time **after** a person sues or is sued as a class representative, the court must determine by order whether to certify **the action** as a class action." (emphasis added)).

[4] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891 (E.D. La. 2012), aff'd sub nom. *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (holding that non-settling defendants Halliburton and Transocean lacked standing to object to the settlement). Halliburton's objections, which Judge Barbier held were not sufficient to impart standing, are contained in a letter brief dated July 30, 2012, attached hereto as Exhibit A.

[5] ECF Doc. #501-2.

anti-assignment clause contained in the Contract between LRLC and Jefferson Parish. Rather, they wish for the Court to approve the Proposed Class Settlement, allow them to mail notices to more than 75,000 people that would bind those individuals to the terms of the Proposed Class Settlement,[6] and reserve for another day the question of whether the Proposed Class Settlement's assignment is valid under the Contract.

Neither Plaintiffs nor Jefferson Parish offer any justification for why the Court should approve this "shoot first and aim later" approach, and none exists. As the Waste Connections Defendants have already briefed,[7] the assignment in the Proposed Class Settlement violates the anti-assignment provision of the Contract. LRLC bargained for the right to ensure that all rights created by the Contract in favor of Jefferson Parish would at all times belong only to Jefferson Parish, not to unforeseen third parties such as the Proposed Settlement Class, unless LRLC specifically approved of an assignee.

Moreover, Rule 23(e)(2) requires that the adequacy and fairness of a settlement to a proposed class be determined before the approval of the settlement. The disputed issue of whether the assignment is legal bears directly on the adequacy and fairness of the Proposed Class Settlement to the putative class. Because the assignment is precluded under the terms of the Contract, the Proposed Class Settlement should not be approved unless the assignment provision is removed.

**2. The Proposed Class Settlement violates Rule 23's mandate that class certification occur *after* a claim is asserted.**

The Court should deny approval of the Proposed Class Settlement for a second reason: it

---

[6] See Plaintiffs' Memorandum in Support of Amended Motion to Certify Class at 28 (ECF Doc. 438-21) (estimating more than 75,000 potential class members).

[7] ECF Doc. #484, pp. 7-9.

violates Rule 23 by establishing a class of plaintiffs for contract claims that are not yet the subject

of any lawsuit. Rule 23(c)(1)(A) states:

> (1) *Certification Order.*
>
> > (A) *Time to Issue.* At an early practicable time **after** a person
> > sues or is sued as a class representative, the court must determine
> > by order whether to certify **the action** as a class action.
>
> (emphasis added).

Here, Plaintiffs seek to establish a class of plaintiffs that would hold a claim against the Waste

Connections Defendants (a claim based on Jefferson Parish's contractual rights) *before* a lawsuit

has been filed against the Waste Connections Defendants as to that claim. That would violate the

plain language of Rule 23(c)(1)(A) and establish a class with pending claims against the Waste

Connections Defendants, without allowing the Waste Connections Defendants an opportunity to

challenge the certification of the class (including the definition of that class).[8] Plaintiffs cannot be

allowed to use the Proposed Class Settlement to bypass Rule 23 and subject the Waste Connections

Defendants to potential liability to a class without the opportunity to challenge certification of the

class.

Prejudice need not be shown to defeat class certification under Rule 23 – whether as a

settlement class or otherwise. Therefore, the Plaintiffs and the Parish are wrong to argue that the

Waste Connections Defendants should not complain because they will be "in the same position"

---

[8] Jefferson Parish is incorrect that the putative class in the Proposed Class Settlement is "identical" to the putative class in Plaintiffs' Amended Motion to Certify Class, and that "all members" of both proposed classes are "the same." ECF Doc. #500 at 2; *see also* ECF Doc. #501 at 22 (Plaintiffs making a similar assertion). The Proposed Class Settlement would include additional class members, residing at unknown addresses, identified in Exhibit A to the Proposed Settlement Agreement. ECF Doc. #501-2 at 3, 14. Plaintiffs also have identified subclasses in their Amended Motion to Certify Class, which do not encompass all areas within the broader proposed class area (i.e., the proposed class area contains members who are not in any subclass), and Plaintiffs have also proposed amending their class area in response to ascertainability issues identified by the Waste Connections Defendants in their opposition. ECF Doc. #438-21 at 20-21; ECF Doc. #450 at 13-14. Regardless, the Waste Connections Defendants have opposed class certification because the proposed class is not ascertainable, as well as on other grounds.

regardless of the assignment. And even if prejudice were at issue, the Waste Connections Defendants would be prejudiced by the assignment, as the cost of resolving the Parish's contractual claims would certainly be higher if such claims are assigned to a class of plaintiffs.[9]

Unlike litigation against a single entity such as the Parish, defending against claims by tens of thousands of class members would involve numerous procedural and administrative hurdles, each imposing burdensome time and expenses. For example, if Plaintiffs and the Waste Connections Defendants agreed to settle the Proposed Settlement Class's contractual claims, it could only be done with the Court's approval,[10] and would need to comply with the rules on class settlements, including mailing of notice,[11] providing an opportunity to object,[12] and holding a hearing to evaluate the fairness of the settlement.[13] This work would impose substantial administrative costs, including the cost of mailing notices, as well as paying for the substantial services involved in administering the claims, such as special masters[14] and/or accounting firms. For example, Plaintiffs have relied on *LeBlanc v. Texas Brine Co.,*[15] where the class was represented by the same law firm representing the *Ictech-Bendeck* Plaintiffs in this case. The *Texas Brine* docket reveals that resolution of the case involved at least $163,994.50 in fees paid to a court

---

[9] For this reason, the revised Proposed Settlement Agreement also does not moot the Waste Connections Defendants' objections.

[10] Rule 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval.").

[11] Rule 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to [approve that the settlement is fair, reasonable, and adequate].").

[12] Rule 23(e)(5)(A) ("Any class member may object to the proposal if it requires court approval under this subdivision (e).").

[13] Rule 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate…").

[14] As the Court is aware, two sets of special masters submitted applications to assist in administering the claims related to the Parish's settlement of *Ictech-Bendeck.* The proposed rates were as high as $650/hour.

[15] 989 F.3d 359 (5th Cir. 2021).

disbursing agent, and another $16,328.48 in fees paid to a special master.[16] *Texas Brine*'s costs are similar to other cases.[17]

In any settlement, such administrative costs would be passed on to the Waste Connections Defendants (either directly or baked into the cost of the settlement). The Waste Connections Defendants would bear the greatest need to ensure that sufficient notice of the settlement is given, as they would need to ensure that the tens-of-thousands of Plaintiffs are located so that *res judicata* could be achieved as to all potential claimants.[18] The Waste Connections Defendants would not face this burden if litigating against Jefferson Parish alone.

And if the contractual claims were not settled, any verdict in favor of the Proposed Settlement Class would involve a gargantuan effort to administer the claims and ensure that the potentially tens of thousands of class members are identified, located, and paid. Further, in a merits decision, the Waste Connections Defendants might bear these costs, as some courts have recognized a district court's discretion to impose notice and claim administration costs on the class defendant.[19]

---

[16] *See* Civil Action No. 12-2059, Eastern District of Louisiana, ECF Doc. Nos. 2073, 2174, and 2514.

[17] *See, e.g., Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) (class action defendant paid $239,000 "for the fees and costs associated with the Notice Program and Settlement administration."); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1040, 1078 (S.D. Tex. 2012) (valuation of the proposed class settlement properly included $270,000 in administrative costs); *In re Shell Oil Refinery*, 155 F.R.D. 552, 557 (E.D. La. 1993) (approving a settlement which called for a maximum of $7.5 million "for class administrative costs and expenses.").

[18] *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040, 1078 (S.D. Tex. 2012) (when a class is certified for settlement, "[t]he defendant, as the party with the greatest interest in obtaining a res judicata effect for the settlement decree, should normally bear the costs of settlement notice.") (citing 4 RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 11:53; AGGREGATE LITIGATION § 3.04 cmt. a; *see also In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 195 (5th Cir. 2010) ($21 million settlement fund included the cost of "Notice Costs, Special Master fees and costs, Escrow Agent costs and fees, CADA [Court Appointed Disbursing Agent] fees and costs, the fees and costs of any Person retained by the Special Master or CADA, and other costs, fees and expenses incurred in the implementation of the Class Settlement Agreement.").

[19] 3 Newberg and Rubenstein on Class Actions § 8:33 (6th ed.) (district courts have discretion to shift administrative costs to class action defendants "when there has been some preliminary finding of the defendant's liability."); *Bakov v. Consol. World Travel, Inc*., 68 F.4th 1053 (7th Cir. 2023) (district court acted within its discretion in shifting costs of class notice to defendants).

The proposed assignment would inevitably lead to other procedural quagmires that this Court need not wade into. For example, if members of the settlement class choose to assert their contractual claims, the Waste Connections Defendants could find themselves defending against these claims in multiple different jurisdictions with multiple different sets of plaintiff attorneys. Plaintiffs herein will surely take the position that only the *Ictech-Bendeck* class counsel approved by this Court could assert such claims, and only in this Court – but that is not at all clear from Plaintiffs' proposed order of settlement approval, which appoints class counsel as to "the Class Action"[20] and provides that the Court will retain jurisdiction only "over the settlement proceedings to assure the effectuation thereof for the benefit of the Class, including the allocation and distribution of all available settlement funds and hearing thereon."[21] Thus, it is not clear that the *Ictech-Bendeck* class counsel would have sole authority to direct where and when any assigned contractual claims would later be filed against the Waste Connections Defendants, nor is it clear that this Court would have jurisdiction over a breach of contract claim asserted by the Proposed Settlement Class against the Waste Connections Defendants.

This uncertainty is amplified by the fact that the persons who would inherit the Parish's contractual rights would extend beyond just the group of individuals who submit claim forms to the *Ictech-Bendeck* class counsel – rather, it would encompass *all* persons meeting the definition of a "Class Member," as defined by the Proposed Settlement Agreement,[22] except those who opt out.[23] Any individual or group of Class Members could remain silent through the proposed notice

---

[20] ECF Doc. #501-1, p. 4.

[21] ECF Doc. #501-1, p. 5.

[22] *See* ECF Doc. #501-1, p. 2 (defining "Class" or "Class Members" as "any and all individuals who, during the time period of July 1, 2017 through December 31, 2019, lived and/or resided in the Class Area AND anyone specifically named in Exhibit A to the Agreement."); ECF Doc. #501-2, section 3.3 (calling for an assignment to "the Class").

[23] Plaintiffs incorrectly claim that only class members who submit valid claim forms would "obtain the right to share in any monetary recovery from the Parish's claims against the non-settling defendants." ECF Doc. #501, p. 22. That

and claim period, then choose to pursue the Parish's assigned claims against the Waste Connections Defendants with new counsel in different courts. The risk that the Waste Connections Defendants would face litigation against multiple sets of Plaintiffs, in multiple different forums, is yet another reason why the Court should not allow the proposed assignment.

In short, the Waste Connections Defendants have good reason to oppose the class litigation proposed by Plaintiffs and the myriad expenses that come with it. And they should not be forced to defend against a class action when there has been no finding that the Rule 23 factors are satisfied, particularly since they specifically bargained for the right to ensure that they would be dealing with Jefferson Parish, not unforeseen third parties, as to any disputes over the Contract. The Court should deny approval of the Proposed Class Settlement as currently drafted.

### 3. Judge Barbier's decision in *Deepwater Horizon* does not support approval of the Proposed Class Settlement.

Plaintiffs have not cited a single case that states that class settlements can be used to bypass Rule 23 and deprive non-settling defendants of their right to object to class certification. Plaintiffs cite a *Deepwater Horizon* decision by Judge Barbier,[24] but that case says nothing about the legal issue before this Court. *Deepwater Horizon* was governed by general maritime law, and the non-settling defendant's (Halliburton) objections to the proposed settlement were based on general maritime law and application of the "proportionate share rule" established in the maritime case of *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994).[25] Halliburton argued that co-defendant BP was

---

ignores the language of the Proposed Class Settlement, which would allow putative class members to opt out of the class. Unless a class member affirmatively opts out of the class, they are indeed a member of "the Class" even if they do not submit a claim form, and under the terms of the Proposed Class Settlement, would inherit contractual rights from the Parish.

[24] *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891 (E.D. La. 2012), aff'd sub nom. *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

[25] Exhibit A, pp. 5-7.

improperly seeking to assign its right of contribution against Halliburton to the class, in violation of maritime law's "settlement bar rule" that precludes contribution actions by settling maritime defendants.[26] Halliburton raised no objection about the proposed assignment being barred by a contract with BP. Ultimately, Judge Barbier declined to resolve Halliburton's objections, holding that Halliburton lacked standing to object.[27]

*Deepwater Horizon* is distinguishable for several reasons. First, the Waste Connections Defendants have standing to challenge the Proposed Class Settlement because the assignment provision in the Proposed Settlement Agreement interferes with LRLC's contractual rights (i.e. the anti-assignment provision).[28] Second, Halliburton did not raise Rule 23's bar on certification of a class before a lawsuit has been filed as to the assigned claims, nor did it raise any contractual bar on the proposed assignment. Thus, Judge Barbier's decision in *Deepwater Horizon* did not address the legal issues presently before the Court.

Finally, Halliburton's objections in *Deepwater Horizon* related to whether the settlement class could validly inherit any contribution rights against Halliburton. But in this case, Plaintiffs are not seeking to obtain contribution rights against the Waste Connections Defendants, as no such contribution rights exist under Louisiana law. Louisiana is a pure comparative fault state, meaning that Jefferson Parish would not have any contribution rights even if they later come to believe that they paid more than their fair share.[29] As Plaintiffs have admitted to the Court, what they really

---

[26] Exhibit A, pp. 5-7.

[27] *Deepwater Horizon* 910 F. Supp. 2d at 942–43.

[28] ECF Doc. #484, pp. 7-9 (citing *Agretti v. ANR Freight Sys., Inc*., 982 F.2d 242, 247 (7th Cir. 1992) ("any interference with a party's contract rights" constitutes plain legal prejudice)).

[29] Under Louisiana's comparative fault scheme, the Parish can settle only for its own divisible portion of the obligation owed to Plaintiffs – in other words, it is not possible for the Parish to pay more than its fair share. Similarly, Waste Connections Defendants can be held liable, at most, for their share of fault. *See* La. Civil Code art. 2324 ("If liability is not solidary pursuant to Paragraph A [addressing intentional acts], then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person,

seek is to obtain the Parish's rights (if any exist) to pursue reimbursement from the Waste Connections Defendants for expenses that the Parish spent on improvements to its landfill.[30] Such reimbursement rights could only exist pursuant to the Contract – the same Contract that explicitly states that it may not be assigned to unforeseen third parties such as the Proposed Settlement Class. Judge Barbier's opinion in *Deepwater Horizon* addressed none of these contractual issues and does not change the fact that the Proposed Class Settlement violates Rule 23 and the Contract.

The other cases cited by Plaintiffs are likewise distinguishable. *See* R. Doc. 501 at 20-21. In *Williams v. Homeland Ins. Co. of New York*, 18 F.4th 806, 810 (5th Cir. 2021), the class had already been certified as to the non-settling defendant. Another case, *State Farm Fire & Cas. Co. v. LaFuria*, 2008 WL 5479635, at *3 (W.D. La. Oct. 22, 2008), *report and recommendation adopted*, 2009 WL 774102 (W.D. La. Jan. 7, 2009), was not even a class action. None of Plaintiffs' cited cases involved a non-settling party who objected that it was deprived of its right to object to class certification.

This Court should not blaze a new trail by allowing Plaintiffs to bypass Rule 23 and deprive non-settling defendants of their right to object to class certification. Instead, the Court should direct Plaintiffs and the Parish to negotiate a settlement that complies with Rule 23 and the Contract.

## 4. The assignment in the Proposed Class Settlement is unnecessary.

Finally, the Court should deny approval of the Proposed Class Settlement because not only

---

including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable."); *Gardes Directional Drilling, Inc. v. Bennett*, 2001-0080 (La. App. 3 Cir. 6/6/01), 787 So. 2d 1201, 1206 ("Contribution is allowed only among tortfeasors who are solidarily liable…Noncontractual solidary liability was abolished in 1996, except as to those tortfeasors who conspire to cause intentional or willful harm.").

[30] ECF Doc. #501, pp. 14-15 ("As this Honorable Court is aware, faced with odor issues at the Jefferson Parish Landfill and thousands of community odor complaints, the Parish spent millions of dollars mitigating such odors. If the non-settling defendants are found responsible for the odor issues, the Parish may be entitled to recover significant amounts of those expenses from those parties.").

is the assignment invalid, but it is also unnecessary. Plaintiffs and the Parish have included an alternative item of consideration in their latest version of a Proposed Class Settlement – "Alternatively, the Parish agrees to pursue its rights and causes of action against Aptim and the Waste Connections Defendants, their subsidiaries and affiliates, and that any monies recovered from said action(s) will be paid to the benefit of the Settlement Class." This alternative provision is proof that Plaintiffs can obtain additional rights from the Parish, on top of the $4.5 million payment, without improperly subjecting the Waste Connections Defendants to litigation against a Proposed Settlement Class.[31]

The Court should not be tasked with approving a settlement that violates Rule 23 and the Contract, especially when the offending provisions are wholly unnecessary. Plaintiffs and the Parish should revise the Proposed Class Settlement to omit the assignment language accordingly. Otherwise, the Court should deny its approval.

## <u>CONCLUSION</u>

For all of the reasons above, as well as the reasons set forth in their prior briefs on this motion, the Waste Connections Defendants respectfully request that, unless the Proposed Class Settlement is revised in the manner suggested herein, the Court should deny approval of it.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    /s/ Michael C. Mims
   Michael C. Mims (#33991)
   Michael Cash (#31655)
   Cherrell Simms Taplin (#28227)
   Kelly B. Becker (#27375)
   Kathryn Z. Gonski (#33442)

---

[31] The Waste Connections Defendants deny that they have any liability to the Parish and reserve all defenses to any litigation based on alleged liability to the Parish.

Brady M. Hadden (#37708)
Alec Andrade (#38659)
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's electronic case management system on November 14, 2024.

*/s/ Michael C. Mims*



**DALLAS** HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:    214.939.4412
DIRECT FAX:    214.939.4803
DGodwin@GodwinRonquillo.com

July 30, 2012

**VIA EMAIL: Sally_Shushan@laed.uscourts.gov**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

      Re:    *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL-No. 2179 (including but not limited to Cause Nos. 12-968 and 12-970)

Dear Judge Shushan:

      According to the positions taken by BP and the PSC, Halliburton Energy Services, Inc. ("HESI") purportedly faces billions of dollars in potential liability in this case whether from contribution actions, actual damages, exemplary damages, or all of the above. Despite this extreme liability exposure, BP and the PSC postulate that HESI should sit idly by, and be precluded from, the process leading to the certification and fairness hearing, the results of which BP and the PSC will undoubtedly use in an attempt to establish the fairness and reasonableness of the settlement as relating to claims asserted against HESI. For this and the other reasons set out in this letter, HESI has legal standing to participate in the certification and fairness hearing process, including taking discovery, and the law supports HESI's position.

      For BP and the PSC to argue that HESI has no standing to object to the Settlement Agreements is to ignore clear and binding precedent and is on its face a transparent attempt to deny HESI due process. Although HESI is not a named party to the Settlement Agreements as such, the Settlement Agreements implicate and, in many cases, prejudice HESI's substantive rights. And, despite BP's and the PSC's contentions, non-settling defendants such as HESI have every right to challenge a class action settlement if the settlement agreement results in plain legal prejudice to their rights. *In re: Vioxx Prods. Liab. Litig*., 388 Fed. Appx. 391, 395 (5th Cir. 2010). The law is also clear that plain legal prejudice occurs when a partial settlement deprives a non-settling party of a substantive right. *Newby v. Enron Corp. (In re Enron Corp. Sec).*, MDL-1446, Civil Action No. H-01-3624, Consolidated Cases Civil Action No. H-02-4788 (Coordinated), 2008 U.S. Dist. LEXIS 48516, at *31-*33 (S.D. Tex. June 24, 2008) (citing *In re: Beef Industry Antitrust Litigation*, 607 F.2d 167, 172 (5th Cir. 1979)). This line of cases clearly

The Honorable Sally Shushan
July 30, 2012
Page 2 of 15

supports HESI's standing to both object to the fairness and reasonableness of the Settlement Agreements and to conduct discovery into them.

**I.      HESI HAS STANDING**

   **A.      BP Mischaracterizes the "Law of the Case" Doctrine and Appellate Law**

           1.      *Law of the Case*

   BP's statement that the Court's preliminary approval order is somehow law of the case is misleading and inaccurate.  The law of the case doctrine is not applicable without an appellate court ruling.  *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967) (a determination of a legal issue or issues by an **appellate court** establishes the law of the case).  In this situation, not only was there no appellate court ruling on HESI's standing, there was no ruling or order from this Court as to HESI's standing.  The Court merely stated in a footnote that "[i]t also **does not appear** that HESI has shown any other form of legal prejudice that would give it standing to object."  Doc. 6418 at 17 n.18 (emphasis added).  This is not a ruling, but an aside, and an indefinite aside at that.  As stated by the Court at the preliminary approval hearing:

> Before we begin, I want to remind everyone, just so there is no misunderstanding or misapprehension of why we're here today, that this is not, I repeat, this is not a final approval of anything. This is only a very preliminary stage of proceeding on forward with these proposed settlements. ***I'll note that there have been a few filings made by other parties, objections to the preliminary consideration, motions for preliminary approval. That's fine. I'll note those for the record. I'll certainly consider those. But no one waives any rights by filing or not filing anything here today or prior to today.***

*Transcript of Hearing on the Motions for Conditional Certification of Rule 23(b)(3) Classes for Settlement Purposes* (April 25, 2012), 12:3-13 (emphasis added).

   In its argument that the Court's footnoted aside as to HESI's standing is law of case, BP relies on *Murtha*, 377 F.2d at 431.  *Murtha*, however, demonstrates that the law of the case doctrine is inapplicable here:

> While the "law of the case" doctrine is not an inexorable command, a decision of a legal issue or issues by an appellate court establishes the "law of the case" and must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court, unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.

*Id.*  In fact, the law of the case doctrine "provides that an appellate court's determination on a legal issue is binding on both the trial court on remand and an appellate court on a subsequent appeal given the same case and substantially the same facts."  BLACK'S LAW DICTIONARY 887 (6th ed. 1990).  Obviously, this doctrine has no application here.  As the Fifth Circuit explained, "[u]nder the law of the case doctrine, an issue of fact or law **decided on appeal** may not be

The Honorable Sally Shushan
July 30, 2012
Page 3 of 15

reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) (citations omitted, emphasis added). Again, law of the case applies to issues **actually decided by an appellate court**, not statements made by the trial court in passing. *United States v. Hatter*, 532 U.S. 557, 566 (2001) ("The law of the case doctrine presumes a hearing on the merits."). The issue of HESI's standing has never been heard by this Court on the merits, and certainly has never been ruled upon by an appellate court. At any rate, for BP to claim that a footnoted aside in a preliminary order somehow forecloses (through law of the case or otherwise) HESI's right to conduct discovery and to participate in the final fairness hearing is a gross misstatement of the law and the facts.

2. *Appeal of the Preliminary Order*

Additionally, for BP to suggest that HESI should have appealed the Preliminary Approval Order is a misstatement of basic appellate law. First, the Preliminary Approval Order is not a final appealable order. *See, e.g., In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 138 (D. Mass. 2004) ("[A] preliminary approval of a settlement and a conditional certification of a settlement class does not dispose of the litigation as significant hurdles must be met and cleared if a final settlement is to be approved."). Second, Judge Barbier assured all parties that the preliminary approval was simply a step in the direction of evaluating the Settlement Agreements, and not a final determination of anything:

> So if I issue an order giving preliminary approval, which frankly, I'll state for the record, I'm leaning in favor of doing, but I'm not going to do that from the bench here today, but that will simply launch the ship, so to speak, get this thing on its journey. Because unless and until there is preliminary approval, there can be no due process given to the putative class members. There can be no notice. There has to be formal notice. There has to be a schedule of final fairness hearing, an opportunity for appointment of class representatives, opportunities for people to file formal objections that can be briefed and considered by the Court before any final approval hearing or at any final approval hearing, an opportunity for people to opt out if they care to do that after consideration.

*Transcript of Hearing on the Motions for Conditional Certification of Rule 23(b)(3) Classes for Settlement Purposes* (April 25, 2012), 95:21-96:9. Accordingly, BP's arguments in this regard are without merit.

**B.    Binding Precedent Establishes HESI's Standing**

It is true that in the context of class settlements, non-settling parties like HESI generally lack standing to challenge the settlement, based on the rationale that the settlement will not affect substantive legal rights of the non-settling parties. *In re: Vioxx Prods. Liab. Litig.*, 388 Fed. Appx. at 395. However, BP gives short shrift to the significant and well-known exception to this general rule: where the rights of a non-settling party are **substantially prejudiced** by the settlement ("plain legal prejudice" is also used), the non-settling defendant has standing to object; in this regard, plain legal prejudice occurs when a partial settlement deprives a non-

The Honorable Sally Shushan
July 30, 2012
Page 4 of 15

settling party of a **substantive right**.  *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 2008 U.S. Dist. LEXIS 48516 at *31-*33 (*citing In re: Beef Industry Antitrust Litigation*, 607 F.2d 167, 172 (5th Cir. 1979)).  *See also Schmerling v. Acromed Corp. (In re Orthopedic Bone Screw Prods. Liab. Litig.)*, MDL Docket No. 1014, Civil Action No. 96-2749, Civil Action No. 97-381, 1997 U.S. Dist. LEXIS 4165, at *16-*17 (E.D. Pa. Mar. 26, 1997) ("The Court Will Give All Non-Settling Defendants a Voice. . . . The court believes that the . . . non-settling Defendants should not be completely shut out of the class certification and settlement approval process. Some of the issues they have raised, especially concerning the scope and structure of the class and [settling defendant's] financial condition, are extremely important.  There is no question that their arguments will assist the court in making the proper decisions concerning these difficult issues in what otherwise would be a non-adversarial setting.").  In this regard, examples of plain legal prejudice include, but are not limited to, the following:

1.  Settlement that strips a non-settling defendant of the right to assert a defense.  *Florida Power Corp. v. Granlund*, 82 F.R.D. 690 (M.D. Fla. 1979).

2.  Settlement that strips a non-settling defendant of contract rights.  *Quad / Graphics, Inc. v. Fass*, 724 F.2d 1230 (7th Cir. 1983).

3.  Settlement that attempts to deprive a non-settling party of the right to present evidence at trial.  *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1173-74 (5th Cir. 1981) (making potential witnesses unavailable to remaining defendants).

4.  Settlement that strips a non-settling defendant of a legal claim or cause of action, including a cross-claim.  *In re Integra Realty Res. Inc.*, 262 F.3d 1089, 1102-03 (10th Cir. 1992); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1002 (8th Cir. 1990).

5.  Settlement that extinguishes property rights.  *Zupnick v. Fogel*, 989 F.2d 93 (2nd Cir. 1993).

6.  Settlement that includes a bar order cutting off rights of contribution and indemnity.  *In re: Granada Partnership Securities Litigations*, 803 F.Supp. 1236, 1238-39 (S.D. Tex. 1992); *New Eng. Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008) ("Plain legal prejudice sufficient to confer standing upon a non-settling litigant in a class action has been found to include any interference with a party's contract rights or a party's ability to seek contribution or indemnification.") (citations omitted).

### C. The Settlement Agreements Deprive HESI of Substantive Legal Rights[1]

BP and the PSC have carefully structured their Settlement Agreements in an attempt to preserve contingent contribution claims against HESI, as well as certain other actual and punitive damage claims. One can only assume that BP and/or the PSC will eventually attempt to use the amounts paid under the Settlement Agreements as the basis for any contingent contribution claims, as well as the basis for assessing punitive damages, assuming any claim for punitive damages exists. In fact, neither BP nor the PSC has availed itself of the opportunity to disclaim the likelihood of such future reliance. *See Transcript of Working Group Conference* (July 20, 2012), 22:12-23:18. In the face of these potential claims, one of HESI's defenses will be the reasonableness of the underlying settlement amounts. *See, e.g., Durgin v. Crescent Towing & Salvage, Inc.*, Civil Action No. 00-1602, 2002 U.S. Dist. LEXIS 20126, at *13 (E.D. La. Oct. 18, 2002) (holding under general maritime law that cross-plaintiff paid disputed amounts above and beyond maintenance and cure prior to the filing of plaintiff's lawsuit, and that these pre-suit payments in excess of its legal liability were unreasonable as a matter of law, thus precluding contribution or indemnification for the excess portion). It takes no stretch of the imagination to recognize that BP and/or the PSC will attempt to use any determination made by this Court at the conclusion of the certification and fairness process as a defense to any attack HESI may later make on the reasonableness of the settlement amounts, thus attempting to strip HESI of one of its defenses to the claims asserted. Despite these well-founded, acknowledged, and largely undisputed facts, BP and the PSC would preclude HESI from participation in the very process leading to this Court's determination regarding the fairness and adequacy of the proposed Settlement Agreements. While HESI does not concede that the Court's determination in the certification and fairness proceeding is ultimately binding on HESI, BP's and the PSC's careful crafting and drafting cannot conceal the reality that their actual intent is to strip HESI of a potential legal defense. This basis alone is sufficient under governing law to provide HESI with standing to participate in the certification and fairness process.

But HESI can also demonstrate plain legal prejudice on several additional fronts. As just an example, the Settlement Agreements purport to assign claims against HESI to the Economic Class Members, including claims for contribution and for actual and punitive damages. (Doc. 6276, Ex. 21, § 1.1.3). This assignment is void on its face as a violation of the settlement bar rule. In *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), the U.S. Supreme Court, while discussing the inconsistencies related to contribution issues, adopted the proportionate-share approach for calculating damages in admiralty cases involving joint tortfeasors. *Id.* at 217. As a result, it anticipated that by adopting the proportionate-share approach for damage calculations, when an admiralty case is pursued to judgment against a non-settling tortfeasor, no suits for contribution would be permitted nor would they be necessary because the proportionate-share approach would preclude a judgment debtor in an admiralty case from paying more than that

---

[1] *See New Eng. Health Care Employees Pension Fund v. Woodruff*, 520 F.3d 1255, 1256-58 (10th Cir. 2008) (Baldock, J. dissenting from denial for panel rehearing) (arguing that non-settling defendant with standing to object to any part of settlement may object to all of it: "core tenets of our standing jurisprudence demonstrate that Appellants need only demonstrate 'plain legal prejudice' under one provision of the partial settlement agreement to have standing to challenge the district court's approval of the agreement").

The Honorable Sally Shushan
July 30, 2012
Page 6 of 15

judgment debtor's share of any judgment. *Id.* at 209, 212; *see also Ondimar Transportes Maritimos v. Beatty St. Props.*, 555 F.3d 184, 187 (5th Cir. 2009); *Murphy v. Florida Keys Elec. Co-op. Ass'n, Inc.*, 329 F.3d 1311, 1314-15 (11th Cir. 2003). Under the damage calculation method, an amount paid by a settling tortfeasor diminishes the amount that a claimant has against other joint tortfeasors by the equitable share of the obligation of the settling tortfeasor. *McDermott*, 511 U.S. at 212.

"An essential tenet of this [*McDermott*] approach is that when a tortfeasor settles a claim against it, but does not obtain a release for the other tortfeasors, it has settled only its proportionate share of the total damages, no more and no less." *Murphy*, 329 F.3d at 1314. Thus, "[n]o suit for contribution will lie against a nonsettling defendant who is not released from liability, because that defendant remains liable for its proportionate share of damages regardless of the terms of the settlement the other defendant made." *Id.* at 1315. Likewise, the law is clear that parties may not avoid the impact of the settlement bar rule by creative attempts to assign claims. *Ondimar Transportes Maritimos*, 555 F.3d at 188-89. Plaintiffs may ultimately be barred from recovering actual damages against HESI based on BP's full payment of plaintiffs' claims. Nonetheless, without a full release as to HESI, as opposed to one that seeks to preserve and assign claims, BP cannot seek contribution from HESI, and, thus, it cannot assign such a claim to the PSC. Any attempt to do so prejudices HESI's substantive rights.

As well, the Settlement Agreements purport to assign claims for punitive damages, without proof of liability for, or amount of, compensatory damages. Punitive damages cannot exceed the amount of properly determined compensatory damages. *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) (applying 1:1 ratio of compensatory to punitive damages). While HESI disputes any basis for punitive damages against it, without a clear delineation between compensatory and punitive damages, there is no valid method for assessing any punitive damages that may be awarded against HESI. Further, under the Settlement Agreements, the Risk Transfer Premium ("RTP") is apparently meant, in part, to liquidate legal disputes about punitive damages against BP; nevertheless, BP purports to assign claims for punitive damages against HESI to the plaintiffs, without a method to segregate the amounts already paid via RTP from the amounts purportedly subject to collection via assignment. The facts that no claim exists for punitive damages against HESI,[2] that such an assignment violates the settlement bar rule, and

---

[2] *See, e.g., Neal v. Barisich, Inc.*, 707 F. Supp. 862, 873 (E.D. La. 1989), *aff'd*, 889 F.2d 273 (5th Cir. 1989) (applying general maritime law, the district court dismissed claims for punitive damages because plaintiffs could not show evidence of actual damages); *Parr v. Theriot*, No. 89-3295, 1990 U.S. Dist. LEXIS 5952, at *8 (E.D. La. May 17, 1990) (applying general maritime law, a plaintiff may not recover punitive damages absent a recovery for compensatory damages); *AmWest Sav. Ass'n v. Statewide Capital*, 144 F.3d 885, 890 n.6 (5th Cir. 1998) (under Texas law there can be no punitive damages absent recovery of compensatory damages). *See also Virgilio v. City of New York*, 407 F.3d 105, 116-18 (2nd Cir. 2005) (under New York law, punitive damages cannot be invoked without some compensatory injury and "[o]nce the compensatory claim [is] satisfied, the parasitic claim for punitive damages [is] also extinguished."); *Thrall Car Mfg. Co. v. Lindquist*, 495 N.E.2d 1132 (Ill. App. Ct. 1986) (under Illinois law, a plaintiff who has been fully compensated for actual damages cannot maintain an action solely for punitive damages against other defendants); *Hilbert v. Roth*, 149 A.2d 648 (Pa. 1959) (under Pennsylvania law, although plaintiff suffered actual damages, plaintiff could no longer sue second joint tortfeasor for actual or punitive damages, as they are a "mere incident" to the underlying cause of action).

that the Settlement Agreements obfuscate rather than clarify these issues necessarily prejudice HESI's substantive legal rights.

In sum, BP has entered into the Settlement Agreements, but attempts to keep its contribution claims viable in an inherently flawed and void assignment of these claims to the PSC. This assignment flies in the face of the law. And, no doubt, BP is trying to have its cake and eat it too by on the one hand claiming HESI has no standing to challenge the Settlement Agreements, while at the same time assigning a claim against HESI based, at least in part, on the Settlement Agreements. BP should not be allowed to maintain and assign its alleged contribution claim—in contravention of governing law—and then try to deny HESI standing to object to settlements that implicate HESI as a possible contribution target.

In addition to the issues previously discussed, the Settlement Agreements are ripe with examples of plain legal prejudice to HESI's substantive rights to the extent that they: (1) eliminate or modify the standards of proof for causation and damages, including BP's voluntary waiver of the liability cap of $75M plus removal costs under OPA; (2) improperly seek to restrict HESI's access to key witnesses; and (3) affect HESI's ability to independently settle with the PSC and/or individual members of the putative classes.

Below is a non-exhaustive summary of HESI's substantive rights prejudiced by the Settlement Agreements:

1. *The Economic and Property Damages Settlement Agreement Deprives HESI of Its Substantive Rights In this Litigation, Resulting In Plain Legal Prejudice*

- BP purports to assign its claims against HESI to the Economic Class Members, including claims for contribution and for compensatory and punitive damages. (Doc. 6276, Ex. 21, § 1.1.3). This is an end-run around the settlement bar rule.

- By presuming causation for certain claimants, rather than requiring strict proof, any claim for contribution subjects HESI to potential liability that may not be established by the appropriate legal standard, thus depriving HESI of a claim or legal defense.

- The Agreement presumes satisfaction of the presentment requirement for Oil Pollution Act claims. (Doc. 6276, § 7.3). While BP is directly liable under OPA, HESI is not. Nonetheless, BP's waiver of the presentment requirement will improperly increase the amount of contribution ultimately sought from HESI. Further, BP's attempts to assign contribution claims against HESI are not limited by the OPA cap for such damages. To the extent BP has voluntarily waived the liability cap of $75M plus removal costs under OPA § 1004(a)(3), any claim by BP for contribution for compensatory damages should be capped at the maximum of HESI's share of $75M plus removal costs. Assignment of contribution rights for any amount over that cap improperly increases the amount of contribution ultimately sought from HESI. Likewise, to the extent the assigned claims include any portion related to the $57M fund to promote the Gulf Coast, the $5M fund for a supplemental publicity campaign managed by the PSC, or the $15M fund to

The Honorable Sally Shushan
July 30, 2012
Page 8 of 15

improve healthcare capacity and health literacy, such amounts are beyond the legal obligations of HESI,[3] but no restriction is included in the purported assignment of claims.

- The Agreement limits the availability of witnesses and evidence from BP employees, and requires the Economic Class to "use its best efforts to avoid having to call BP employees as witnesses in court for a trial or other proceedings pursuing Assigned Claims." (Doc. 6276, § 1.1.3.8). This is particularly problematic where, as here, many witnesses are outside the subpoena power of the Eastern District of Louisiana. *See Dunn*, 639 F.2d 1173-74 (a settlement that attempts to deprive a non-settling party of right to present evidence at trial, such as making potential witnesses unavailable to remaining defendants, violates a substantive right).

- The Agreement attempts to limit HESI's ability to settle with the Economic Class, Plaintiffs, and/or Economic Class Members. (Doc. 6276, Ex. 21, § 1.1.2.5). Such a restriction prejudices HESI by improperly imposing BP's review over any settlement with the PSC.

- The structure of the Agreement makes it impossible for HESI to assess the basis of any compensatory payment, as well as the amount of any exemplary or punitive damages payment (through the RTP) that may be the object of a contribution claim.

- The Agreement bars HESI from reviewing the underlying Claims Forms. (Doc. 6276, §§ 4.4.14, 5.11.2, 5.11.5). Whether HESI is asked to defend against claims by claimants directly, or to defend a claim for contribution by BP or the PSC, the Agreement precludes HESI from accessing the underlying documentation supporting the claim, making a reasonableness defense much more difficult, if not impossible.

- HESI has no access to information regarding individuals and entities that opt-out of the settlement class. (Doc. 6276, § 21.3.6). Without this information, HESI cannot assess the efficacy of the proposed Agreement, or if Rule 23's numerosity, commonality, predominance, or superiority requirements are met.

- The Agreement tolls statutes of limitation. (Doc. 6276, § 7.3). Tolling the statute of limitations as to claims against BP may improperly increase the amount of contribution ultimately sought from HESI.

---

[3] Halliburton cannot be liable in contribution for payments BP makes without a legal obligation to do so. *See Durgin v. Crescent Towing and Salvage, Inc.*, No. 00-1602, 2002 U.S. Dist. LEXIS 20126, at *11-13 (E.D. La. Oct. 18, 2002). The Settlement Agreements purport to make HESI liable for amounts not established by proper proof at trial. For example, in their joint motions the PSC and BP concede that the $2.3B Seafood Compensation Program "exceeds the annual revenue of these industries many times over." Even if HESI is liable for contribution, which it is not, HESI should not be liable for any portion of such over-payment. Likewise, HESI should not be liable for a portion of the $57M fund BP is voluntarily providing to promote the Gulf Coast, BP's voluntary commitment to provide up to $5M in funds for a supplemental publicity campaign managed by the PSC, the $105M BP is voluntarily providing over five years to integrated programs designed to improve healthcare capacity and health literacy, or attorneys' fees BP voluntarily agrees to pay.

- The Agreement appears to pay amounts to claimants for pure economic loss claims, absent a physical injury, in violation of *Robins Dry Dock*. While BP is liable for an expanded base of economic loss claims under OPA, HESI is not. BP's agreement to pay these amounts, without any classification or breakdown, will improperly increase the amount of contribution ultimately sought from HESI, obscure which claims are based on pure economic damages, and make it virtually impossible for HESI to determine which claimants present proper claims under *Robins Dry Dock*.

   2.   *The Medical Damages Settlement Agreement Also Deprives HESI of Its Substantive Rights In this Litigation, Resulting In Plain Legal Prejudice*

- By presuming causation for certain claimants, rather than requiring strict proof, any claim for contribution subjects HESI to potential liability that may not be established by the appropriate legal standard.

- The Agreement prohibits the proof or litigation of the alleged fault of BP in a settlement class member's back-end litigation option lawsuit for a later-manifested physical condition. (Doc. 6273-1, § VIII.G.3.b.ii., p. 70/193). Given HESI's cross-claims against BP, this provision of the Agreement again attempts to strip HESI of a legal claim or defense.

- The Agreement attempts to limit HESI's ability to settle with the Class Members unless BP is also released. (Doc. 6273-1, § XVII.B.5., p. 116-17/193). Such a restriction prejudices HESI by improperly imposing BP's review over any potential HESI settlement.

- The Agreement tolls statutes of limitations. (Doc. 6273-1, § X.E., p. 90/193). Tolling the statute of limitations as to claims against BP will potentially improperly increase the amount of contribution ultimately sought from HESI.

- The Agreement states that it does not create any third-party beneficiary, which potentially forecloses HESI's standing to enforce provisions of the Agreement that benefit HESI, as HESI is not a party to the Agreement. (Doc. 6273-1, § XXX.H., p. 190/193).[4]

---

[4] The requirements under Texas and federal maritime law regarding third-party beneficiaries are the same. "In order to recover as a third-party beneficiary to a contract, the plaintiff must prove that the parties to the contract intended to benefit the third-party as evidenced solely from the language of the contract." *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos De Ecuador*, No. 04-20911, 2008 U.S. App. LEXIS 914, at *9-10 (5th Cir. Jan. 16, 2008) (internal quotation marks and citations omitted). "Under well settled contract principles, a promise must be made directly for the benefit of a third party to support a claim by that third party under the contact. . . . intended third party beneficiaries of contracts may seek enforcement of the contract; incidental beneficiaries may not. . . ." *Atl. & Gulf Stevedores v. Revelle Shipping Agency*, 750 F.2d 457, 459 n.3 (5th Cir. 1985) (internal citations and quotation marks omitted). By the terms of the Agreement, BP and the PSC attempt to divest HESI of status as a third-party beneficiary, while also attempting to preserve any and all benefits that might accrue to BP and/or the PSC by actually making HESI a third party beneficiary to the Agreement. This duplicity constitutes plain legal prejudice to HESI.

The Honorable Sally Shushan
July 30, 2012
Page 10 of 15

According to binding precedent, the Settlement Agreements, as outlined above, establish the basis for HESI's standing to object to the Agreements and participate in the certification and fairness process.

### D. The PSC's Authority Does Not Require a Conclusion that HESI Lacks Standing

In their attempt to show that HESI has no standing, Plaintiffs incorrectly rely heavily on *Transamerican Ref. Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992). First, although *Transamerican* does present an analysis of the non-settling defendants' standing, the Fifth Circuit actually declined to determine the issue because the underlying judgment from which the appellants sought review was only a "partial final judgment," and thus appeal was not appropriate.[5] *Id.* at 900 ("This Court concludes that the appellants lack standing to pursue this appeal at present and accordingly dismiss the appeal."). Second, in *Transamerican* the class had already been certified. *Id.* at 899. The prior certification of a class lessens the scrutiny placed on the settlement agreement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (in the context of a settlement-only class certification, the specifications of Rule 23 designed to protect absentees by blocking unwarranted or overbroad class definitions require "undiluted, even heightened attention" by the judge). Third, in *Transamerican*, non-settling defendants primarily objected on the basis of lost contribution rights and issues related to proportionate fault and settlement credit. *Id.* at n.1. In its analysis, the court noted that these were "speculative and hypothetical" arguments. *Id.* at n.3. This is procedurally central to the holding. At the time the Fifth Circuit handed down its decision, the district court had yet to determine which law would apply and the Fifth Circuit noted that Texas law, the law of the forum, had no "settlement bar" statute. *Id.* at 900. Those issues were still before the district court. Thus, many of the non-settling defendants' arguments were not fully ripe and were still pending before the district court, making their claims speculative, and certainly distinguishing this case from the issues before the Court.

Unlike *Transamerican*, the Court has already determined that general maritime law applies. *See e.g.*, Doc. 3830 at 8. Given the determination that general maritime law applies to this case, HESI's rights and defenses are more established than those of the non-settling defendants in *Transamerican*, and cannot be dismissed as "speculative and hypothetical." The settlement bar rule is well established under general maritime law, *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), and the laws related to comparative negligence, proportionate fault, punitive damages, negligence, and procedural matters such as standards of proof are equally set by this Court's earlier determination. Thus, the authority upon which the PSC relies is not dispositive of HESI's standing.

---

[5] Subsequent history shows that the matter was never resurrected for full consideration by the Fifth Circuit or the Southern District of Texas.

The Honorable Sally Shushan
July 30, 2012
Page 11 of 15

## II.  HESI HAS NO INTENTION TO "HARM THE OVERALL INTEREST OF THE CLASSES' ACTUAL MEMBERS"

Despite BP's claims, HESI does not intend to limit recovery against BP available to the classes or to delay implementation of the settlement agreements unless the facts and legal authorities require they be delayed.  *See* BP Letter Brief at 14.  First, HESI wants nothing more than to ensure that its rights are protected to the fullest extent of the law—it is not focused upon what the recovery is *per se*, but rather upon the fairness of the terms of recovery as they implicate and impact HESI.  Second, as to BP's argument that HESI seeks through its request for discovery to somehow "delay implementation of the settlement agreements," *id.*, this flawed argument is belied by the fact that the GCCF and Mr. Juneau's fund have already paid out many millions of dollars to the plaintiffs.  Nothing HESI seeks from this Court would in any manner affect the timing of the plaintiffs' recovery which has been, and continues to be, part of an established process of claims review.

## III.  HESI IS ENTITLED TO DISCOVERY IN PREPARATION FOR THE FAIRNESS HEARING

### A.  HESI Requested Discovery at the Earliest Opportunity, and Any Delay Resulting From Discovery Would Be Minimal

BP complains that HESI's request for depositions of the class members is untimely.[6]  This is not so.  HESI indicated its need for and intention to take discovery in its preliminary objections, on April 24, 2012.  Doc. 6350 at 3.  Further, given the procedure between the Preliminary Approval Order and the Final Fairness Hearing, it is unlikely that depositions could have taken place any earlier.  Indeed, some of the discovery sought, depositions of BP's and the PSC's experts, could not be conducted earlier because BP and the PSC have not yet revealed the identity of those experts.  Further, the Preliminary Approval Order issued on May 2, 2012.  Notices were sent sometime thereafter directly to certain potential class members.  Notices were also published in various publications.  Given that BP and the PSC needed time to send and publish the notices, and potential class members needed to review the Settlement Agreements in light of their potential damages to decide whether they wished to challenge or join the Settlement Agreements, any earlier request would have been premature.

As well, BP claims that HESI's request for discovery would "inflict[] an undue burden upon the settling parties."  BP Letter Brief at 15.  However, BP **never** informs the Court what this undue burden would be.  In fact, as the Court well knows, the plaintiffs have received many millions of dollars in distributions from the GCCF and Mr. Juneau's fund, and those distributions

---

[6] BP's complaint that HESI's request for depositions was made too late rings hollow in light of comments made by Class Counsel for Plaintiffs who has argued that such depositions are, in fact, premature.  *See Transcript of Working Group Conference* (July 20, 2012), 19:1-18; 20:5-21:4.  Specifically, Class Counsel urged that depositions should be taken *after* the August 31, 2012 deadline for filing objections so individuals will not need to be "redepose[d]".  *Id.* at 19:1-13.  Class Counsel also argued that depositions should be taken only after supporting declarations are filed on August 13, 2012: "[O]ur submission isn't even due until August 13. So to schedule depositions of people who won't even be filing their declarations, if any, until the 13th doesn't make any sense."  *Id.* at 19:14-18.

The Honorable Sally Shushan
July 30, 2012
Page 12 of 15

continue to the present day. While HESI denies that discovery will necessitate any delay, the truth is that BP cannot demonstrate any prejudice or undue burden that any delays possibly arising from discovery would cause.

**B.     HESI's Requested Discovery is Necessary to a Meaningful Assessment of the Fairness and Reasonableness of the Settlement Agreements**

"An informed evaluation is extremely difficult if discovery is incomplete or has been conducted against only a few of the defendants." DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.651 at 498 (4th ed. 2010). Such is precisely the situation here—although massive discovery has been undertaken in this case, **none** of this discovery addresses causation, plaintiffs' damages, or the opinions of the class representatives relating to the reasonableness of the settlements.[7] Certainly one of the primary purposes of the class representatives and expert witnesses is to offer evidence in support of the reasonableness of the Settlement Agreements. As the Settlement Agreements largely presume causation, an issue that has not been the subject of prior discovery, HESI requires the depositions of the class representatives and expert witnesses to assess claims that the Settlement Agreements are reasonable. Despite BP's claims, this information does not exist **anywhere** in the record, as all discovery to date relates to Phase I liability issues; thus, such discovery would be anything but duplicative of previous efforts. Accordingly, in order to have a meaningful assessment of whether the settlements are fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e)(2), discovery as to the plaintiffs, the class representatives, and the expert witnesses, albeit limited and narrowly tailored, should go forward. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C. 2001) (holding that the court may in its discretion allow discovery if it will help the court determine whether the settlement is fair, reasonable, and adequate).

More importantly, because HESI has standing to object, it is entitled to take this discovery and to participate in the certification and fairness hearing. *See Scardelletti v. Debarr*, 265 F.3d 195, 204 n.10 (4th Cir. 2001) (concluding that "the court should extend to any objector to the settlement leave to be heard, to examine witnesses and to submit evidence on the fairness of the settlement"). In this regard:

> Generally, the objector has neither independent evidence of the fairness or adequacy of the settlement nor sufficient knowledge or understanding of the grievances involved. Though the proponent's prior discovery and memoranda in support of the settlement may educate the objector as to the issues and problems involved, the evidence most probably will not supply the objector with the material necessary to support an attack on the proposed settlement. Therefore, the objector must secure evidence through independent discovery and presentation of witnesses at the settlement hearing.

4 ALBA CONTE AND HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:57 (4th ed. 2002).

---

[7] In fact, such discovery has been prohibited up to this point in the litigation. *See* Doc. 569 at 8-11 (defining the scope of Phase I discovery).

The Honorable Sally Shushan
July 30, 2012
Page 13 of 15

As well, additional discovery would be consistent with the widely accepted view that approval of settlement class actions under Fed. R. Civ. P. 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (calling for a "higher standard of fairness" in reviewing a settlement negotiated before class certification).

According to the PSC, "there must be a nexus between the discovery sought and a type of information the Court is lacking. Broad-based discovery will rarely, if ever, be permitted, and discovery regarding irrelevant subjects should never be permitted." PSC Letter Brief at 7. HESI generally agrees with this statement. However, given the procedural posture of this case, HESI lacks information concerning plaintiffs' damages, as well as information concerning the class representatives and expert witnesses upon whom BP and the PSC will rely in assessing the fairness and reasonableness of the proposed settlements. Thus, the information HESI seeks through discovery is necessary to meaningful review of the fairness and reasonableness of the Settlement Agreements.

### C. Despite BP's and PSC's Claims, HESI Has No Interest in Discovery Into the Settlement Negotiations Themselves

The PSC argues against a straw man when it states that "Even Assuming Arguendo Some Standing, Neither HESI Nor the State of Louisiana (Nor Any Party) Has the Right to the Requested Discovery Absent Some Showing of "Fraud" or "Collusion" (Which Doesn't Exist)." PSC Letter Brief at 5. This is an overstatement and a misunderstanding of HESI's position regarding its standing. While HESI is entitled to discovery, it does not seek discovery into settlement negotiations, the only type of discovery that would require a preliminary showing of collusion or other improper behavior. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.643 at 496; *Bowling v. Pfizer*, 143 F.R.D. 141, 153 & n.10 (S.D. Ohio 1992). But again, as HESI has no intention of pursuing such a line of discovery, this issue is moot.

## IV. HESI IS ENTITLED TO DISCOVERY IN PREPARATION FOR THE CERTIFICATION HEARING

The management of discovery sought by parties opposing class certification is committed to the sound discretion of the court. *Nat'l Org. for Women, Farmington Valley Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272 (D. Conn. 1980). Some discovery may be necessary when the facts relevant to any of the certification requirements are disputed or when the party opposing certification contends that proof of the claims or defenses unavoidably raises individual issues. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.14 at 369. Likewise, some discovery may be necessary where the affidavits, declarations, and arguments or representations of counsel do not provide sufficient reliable information. *Id.*

In the context of a settlement-only class certification such as this one, the specifications of Rule 23 designed to protect absentees by blocking unwarranted or overbroad class definitions require "undiluted, even heightened attention" by the judge. *Amchem Prods., Inc.*, 521 U.S. at 620. Further, "[t]he court should defer decision on certification pending discovery if the existing

The Honorable Sally Shushan
July 30, 2012
Page 14 of 15

record is inadequate for resolving the relevant issues." *In re American Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996).

Given the complexity of the underlying case and proposed Settlement Agreements, the amounts in controversy, and the potential substantial legal prejudice to HESI's rights as outlined herein, HESI respectfully requests discovery in preparation for the final class certification and fairness hearing through discovery from class representatives and expert witnesses to be called by BP and the PSC in support of the Settlement Agreements.

## V.     THE DISCOVERY HESI SEEKS IS NARROWLY TAILORED AND RELEVANT

HESI is not interested in embarking upon a fishing expedition—in fact, HESI is intimately familiar with, and was a driving force behind, the massive discovery undertaken to date in this matter. However, and not surprisingly since past discovery was principally related only to Phase I liability issues, there is a noticeable dearth of information concerning the plaintiffs' purported injuries, causation, and damages. Likewise, given the recent date of the Settlement Agreements, no discovery has occurred regarding proposed class representatives and expert witnesses offered in support of the fairness and reasonableness of the Settlement Agreements. HESI faces alleged liability in the billions of dollars, and it is beyond doubt that a portion of the basis for that liability, *i.e.,* contribution claims and claims for punitive damages, will potentially be addressed to some extent and manner by this Court's ruling on the fairness and reasonableness of the Settlement Agreements. HESI requests depositions of class representatives and experts retained by BP and the PSC in support of the Settlement Agreements.[8] Precluding HESI from conducting its requested limited and narrowly tailored discovery is not supported by logic, fairness, or the law. The discovery sought bears directly upon issues vital to HESI and is narrowly tailored only to obtain information relevant and necessary to protecting HESI's substantive legal rights at the upcoming certification and fairness hearing.

## VI.     CONCLUSION

HESI disputes the allegations of liability made by BP and the PSC. Nonetheless, BP's and the PSC's positions regarding HESI's liability have been made clear in the proceedings that pre-date the certification and fairness process, and have been highlighted by the terms of the Settlement Agreements. BP and the PSC seek to impose billions of dollars of liability upon HESI, while at the same time asking this Court to preclude HESI from participating in proceedings that could have a direct impact on the underpinning of that liability. The law requires that in these circumstances, HESI has standing to participate in the certification and fairness process. Based upon its legal standing and its right to due process, HESI asks that this Court grant HESI permission to conduct its requested discovery, to have access to information necessary to the evaluation of the claims against it, and to participate in the certification and fairness hearing.

---

[8] HESI also requests that it be allowed to conduct document discovery from the expert witnesses upon which BP and the PSC will rely in arguing for the fairness and reasonableness of the Settlement Agreements.

The Honorable Sally Shushan
July 30, 2012
Page 15 of 15

Respectfully submitted,

Donald E. Godwin