UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK, <br> Plaintiff <br><br> VERSUS <br><br> PROGRESSIVE WASTE SOLUTIONS OF LA, INC., ET AL., <br> Defendants <br><br> *Applies to: All Cases* | CIVIL ACTION <br><br> NO. 18-7889 <br> c/w 18-8071, <br> 18-8218, 18-9312 <br><br> SECTION: "E" (5) <br><br> JUDGE: Morgan <br> MAGISTRATE JUDGE: North |

MEMORANDUM IN SUPPORT OF
MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS

MAY IT PLEASE THE COURT:

The Class Representatives, individually and on behalf of all others similarly situated, and Class Counsel submit this memorandum in support of their Motion for Final Certification of Settlement Class. The Parish of Jefferson does not oppose this motion. The Court should approve this Settlement because it is fair, reasonable, adequate and in the best interest of the Class and individual Class Members.

I.  SETTLEMENT

A.  The Terms of the Settlement

The Settlement Agreement provides that each Class Member who timely files a valid proof of claim shall be considered for monetary payment for the Claims covered by the Settlement. These Claims include compensation for nuisance.

The Settlement Agreement provides for a gross payment of Four Million Five Hundred Thousand Dollars ($4,500,000) (the "Settlement Payment"). Participating Class Members'

1

allocations are subject to Court approval following recommendations by the Administrator/Neutrals appointed by this Court.

B.  **Preliminary Court Approval of the Settlement**

The Court preliminarily approved the Settlement Agreement executed by all Parties and the settlement proposed therein on January 10, 2025 (Rec.Doc. 516). By granting preliminary approval, the Court found that all applicable requirements of Federal Rule of Civil Procedure 23 were satisfied and that the Class Members were objectively identifiable, and preliminarily found that the terms of the proposed settlement were fair, reasonable, and adequate and thus within the range of possible judicial approval.

C.  **Notice**

Also on January 10, 2025, the Court approved the notices to Class Members and the method of dissemination. Notice was also posted at the website https://www.jplandfillclass.com.

In this Honorable Court's Order granting preliminary approval, this Court adopted Class Counsel's proposed Notice Program. The attached Declaration of Bradley Madden proves the manners in which notice was accomplished in accordance therewith. See Exhibit 1.

On February 12, 2025, the Parish of Jefferson provided notice to the U.S. Attorney General and the Louisiana Attorney General as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

D.  **Opt Outs**

The Notice provided to Class Members required Class Members to exercise their opt out rights on or before March 10, 2025 A total of four (4) opt outs were received, all of whom were tied to one specific residential address in Harahan, Louisiana.

### E. Objections

The Notice provided to Class Members required any Class Member who objected to the Settlement to send a written objection to the Administrator and to Class Counsel no later than March 10, 2025. No class member objected. The only objection that was received was from the Waste Connections Defendants. However, the Waste Connections Defendants do not have standing to object to the settlement. (See Rec.Doc. 508 – Order and Reasons Overruling the Waste Connections Objections.) Despite this Court's previous ruling that Waste Connections does not have standing to object, the Waste Connection Defendants filed another objection to this settlement (See Rec.Doc. 533). The Court should again overrule and dismiss the Waste Connections Defendants' objection as the Waste Connections Defendants have not proven that this settlement will cause the Waste Connections Defendants any legal prejudice.

*1. THE WASTE CONNECTIONS DEFENDANTS HAVE THE BURDEN TO PROVE "PLAIN LEGAL PREJUDICE."*

"Non-settling parties generally lack standing to object to a settlement agreement." *Leblanc v. Tex. Brine Co., L.L.C.*, 989 F.3rd 359, 364 (5th Cir. 1992); see also *Agretti v. ANR Freight Sys.*, 982 F.2nd 242, 246 (7th Cir 1992). 2 Herbert B. Newberg, Newberg on Class Actions § 11.54 (2d ed. 1985). In the Fifth Circuit, a non-settling party may object to a settlement when they face "plain legal prejudice" as a result of the settlement, such as through stripping the non-settling defendant of rights to contribution or indemnity. *Id.* "Mere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti*, 982 F.2d at 247. While there are some slim exceptions to the general rule, the 'plain legal prejudice' standard is narrowly construed and occurs only when a partial settlement deprives a non-settling party of a substantive right. Waste Connections has the

burden to prove that it suffered "plain legal prejudice." Waste Connections has not carried its burden and therefore lack the necessary standing to object.

"It is clear that the Waste Connections Defendants bear the burden of demonstrating that they have standing." *In re Sch. Asbestos Litig.,* 921 F.2d 1330, 1332 (3d Cir. 1990) *citing Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1961). Waste Connections has not and cannot prove that it has standing to object to this settlement.

    *2. WASTE CONNECTIONS' SECOND OBJECTION CLAIMS THE JEFFERSON PARISH CONTRACTUAL RIGHTS ARE NOT ASSIGNABLE AND VIOLATE RULE 23.*

Contract terms "must be given their generally prevailing meaning." Louisiana Civil Code Art. 2047. After analyzing the anti-assignment language, this Court determined, "it is clear that the parties unambiguously differentiated between assignment of 'the Agreement' and assignment of the rights arising from 'any interest in this Agreement'". Rec Doc 508 Page 16. This Court also reviewed anti-assignment contract cases and analyzed the difference between "assignment of a policy before and after loss has accrued thereon" as well as the common law recognition that "[a]n assignment of the policy after loss is in effect no more than an assignment of a claim against the company," and anti-assignment clauses applied to post-loss claims are "void against public policy." *In re Katrina Canal Breaches Litig.*, 63 So. 3d 955, 960 (La. 2011). Therefore, "the Court found the anti-assignment provision (Rec Doc 477 p. 39) in the Operating Agreement between LRLC and Jefferson Parish does not prohibit the assignment of rights included in the proposed Settlement Agreement. Rec Doc 508 p. 16.

    Here, the Settlement Class merely steps into the shoes of the Parish as it relates to the Parish's claims against the Waste Connections Defendants and does not circumvent Rule 23.

"The assignment of litigious rights operates to give an assignee the assignor's "rights to recover in a lawsuit," where the assignee "steps into the shoes" of the assignor for purposes of [the] lawsuit." *Woodfield v. Bowman*, 193 F.3d 354,359 (5th Cir 1999). The proposed Settlement language does not purport to certify a separate class of Plaintiffs against the Waste Connections Defendants.

F.   **Fairness Hearing**

A Final Fairness Hearing will be held before the Honorable Susie Morgan at 2:00 p.m., on March 26, 2025 to consider the fairness, reasonableness, and adequacy of the proposed Settlement and consider any objections to the proposed Settlement.

II.   **LAW AND ARGUMENT**

A.   **Settlement is Favored.**

It has been long held that "(c)ompromises of disputed claims are favored by the Court."[1] This is especially true of class actions.[2] Because voluntary, out-of-court settlements are highly favored by the law, a court should not substitute its own judgment for the good faith negotiations of experienced counsel.[3] This Settlement was reached after difficult and protracted litigation which preceded arm's length negotiations by experienced counsel. This creates a presumption that the settlement is fair, reasonable and adequate.[4]

---

[1] *Williams v. First Nat'l Bank*, 216 U.S.582, 595, 30 S.Ct. 441,54 L.Ed.2d 625 (1910)
[2] See, e.g., *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276(9th Cir.), *cert. denied*, 506 U.2.953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992) (there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").
[3] See *In Re "Agent Orange" Prods. Liab. Litig.*, 597 F.Supp. 740, 758-59 (E.D. N.Y. 1984), *aff'd*, 818 F.2d 145 (2nd Cir. 1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988)
[4] See, e.g., *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D.Mass, 1977) ("In general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair."); 2 Hebert Newberg & Alba Conte, *Newberg on Class Action*,§11.41(3d ed.1998) ("There is usually an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval"); *Manual for Complex Litigation*, Third, §30.42(1995)(same).

A class action may not be dismissed or compromised without the approval of the court, and noticed of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.[5] Courts recognize that class action settlements confer substantial benefits upon the parties and promote judicial economy.[6] It has additionally been recognized that certification of a settlement class is useful in resolving major class action disputes pursuant to Rule 23 of the Federal Rules of Civil Procedure.[7] "The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies."[8]

"In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."[9] The court, however, must not try the case in the settlement hearings because "the very purpose of the compromise is to avoid the delay and expense of such a trial."[10] The analysis must occur mindful that "the policy of the law generally to encourage settlements" could not be achieved "if the range of possible recovery had to be charted with precision."[11]

"The very uncertainty of the outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise [i.e., behind the creation of Rule 23(e)]. This is recognition of the policy of the law generally to

---

[5] See F.R.C.P. 23(e).
[6] *Manual for Complex Litigation Third*, §30.45 (1995).
[7] See, e. g., *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 207-210 (5th Cir.1981); *In re Beef Industry Antitrust Litigation*, 607 F2.d 167, 173-177 (5th Cir. 1979) *reh'g denied* 609 F.2d 1008, 1009, cert. denied, 101 S.Ct. 3029.
[8] *In re Beef Industry Antitrust Litigation*, 607 F.2d at 177 citing 3 Newberg, Class Actions§5570c at 476.
[9] *In re Beef Industry Antitrust Litigation*, 607 F.2d at 179 citing Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977); *In re Corrugated Container Antitrust Litigation*, 643 F2d 195, 207 (5th Cir. 1981).
[10] *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) citing *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971). *In re Beef Industry Antitrust Litigation*, 607 F.2d at 212.
[11] *In re Corrugated Container Antitrust Litigation*, 643 F.2d 212 (citations omitted).

encourage settlements [which] could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty."[12]

### B. The Settlement is Fair, Reasonable, and Adequate.

The general rule applicable to the court's exercise of its discretion in deciding the fairness of a proposed class action settlement is that the court must "ensure that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression."[13]

The Fifth Circuit has identified six factors which the district court must examine in determining whether a proposed settlement is fair, reasonable, and adequate:

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the class counsel, class representatives, and absent class members.[14]

In considering these factors, there is a strong presumption in favor of finding the settlement fair.[15] Plaintiffs submit that all of the *Reed* factors have been met in this Settlement.

---

[12] *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp. 2d 942, 959 (S.D. Tex 2000) quoting *In Re Corrugated Antitrust Litigation*, 643 F.2d at 212 (brackets in original).

[13] *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir.1983) quoting *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978*), cert. denied*, 439 U. S. 1115, 59 L.Ed. 2d 74,99 S.Ct. 1020 (1979)

[14] *In re Lease Oil Antitrust Litigation*, 186 F.R.D. 403, 431 (S. D. Tex. 1999) citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

1.   **There is No Fraud or Collusion.**

There is usually an initial presumption that a proposed settlement is fair and reasonable when, as here, it is the result of arm's length negotiations.[16] The requirement that the settlement be fair is designed to protect against collusion among the parties.[17] Generally, if the terms of the settlement on their face suggest that the settlement is the result of bona fide compromise, a presumption of regularity in the course of negotiations arises.[18] In fact, a strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arm's length negotiations between experienced counsel and was not tainted by fraud or collusion.[19]

Here, the proposed Settlement is the result of lengthy arm's length negotiations between the Parties' counsel. Class Counsel and counsel for Jefferson Parish were thoroughly familiar with the factual and legal issues in this action at the time they executed the Settlement Agreement and all counsel have tenaciously and vigorously represented their respective clients' interests throughout the litigation, including the negotiation process. This Settlement is clearly superior to more years of expensive, uncertain, and time-consuming litigation.

2.   **Complexity, Expense, and Likely Duration of the Litigation Supports Settlement.**

The complexity, expense, and likely duration of the litigation make the option of settlement a far better alternative in this case than proceeding in trial.[20] Protracted litigation

---

[15] *See Cotton*, 559 F.2d at 1331 ("Particularly in class action suits, there is an overriding public interest in favor of settlement.) (citing United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826 (5th Cir. 1975)).
[16] See 2 Newberg on Class Actions, § 11.40 at 451 (2nd ed. 1985)
[17] *In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F.Supp. 1379, 1383 (D.Md.1983).
[18] *See Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 359 (E.D.N.Y. 1982), *aff'd*, 721 F.2d 881 (2nd Cir. 1983), *cert denied*, 466 U. S. 944, 104 S.Ct. 1929, 80 L.Ed. 2d 474 (1984).
[19] *See Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2nd Cir. 2005).
[20] *See Turner v. Murphy Oil, USA, Inc.*, 472 F.Supp. 2d 830, 846 (E.D. La. 2007).

would have been very expensive, thus diminishing possible recovery. The prosecution and defense of this case presented many burdens, risks, uncertainties and expenses of litigation, which further justifies settlement of this suit.

While the Parties were, at all times, prepared to continue the litigation, the recovery to the Class Members from the Parish of Jefferson may or may not have yielded the amounts slated for distribution pursuant to the Settlement Agreement. The Settlement Agreement considers the risks of continuing litigation, was the product of hard-fought negotiations, and optimizes the benefits due the Plaintiff Class given these risks. As the Court in *In re Shell Oil Refinery* aptly noted:

> [T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'it has been held proper to take the bird in the hand instead of a prospective flock in the bush.'[21]

This factor supports final approval of the Settlement.

### 3. Stage of the Proceedings and Amount of Discovery Completed Supports Settlement.

The Parties to this settlement have developed an in-depth understanding of the case, the potential liability, and the anticipated testimony of additional witnesses and experts. The Parties have conducted a thorough examination of the law and an investigation of the facts relating to the matters set forth in the Complaint, including, but not limited to, exchanging numerous documents, taking depositions, interviewing witnesses, conducting inspections and consulting numerous experts. The Parties also litigated the disputed issue of General Causation and disputed class certification issues before a settlement was reached. Indeed, the settlement confected herein between the Class and the Parish of Jefferson was the product of well-informed

9

discussions as to the merits of the action and the potential judgment value of the case. The factor supports final approval of the Settlement.

### 4. Probability of Plaintiffs' Success on the Merits Supports Settlement.

Class Counsel is highly confident of their chances of prevailing at a trial on the merits. Likewise, the Parish of Jefferson is equally confident of prevailing on its defenses. Among other things, the defense contended that the alleged harm to the Class had little to no value.

Settlement of this action, on the terms and conditions outlined in the Settlement Agreement, provides the Class and Class Members with immediate dollar benefits without further delay and provides a certain recovery from the Parish of Jefferson as opposed to litigation, which is risky in light of the multiple defenses asserted by the Parish of Jefferson. This factor supports final approval of the Settlement.

### 5. Range of Possible Recovery Supports Settlement.

"[A] settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."[22] When considering this factor, the Court must remain aware that:

> [c]ompromise is the essence of settlement and the court should not make the proponents of proposed settlement justify each term of settlement against a hypothetical or speculative measure of which concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.[23]

As U. S. District Judge Mentz observed, "[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it

---

[21] *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D.La. 1993) (quoting Oppenlander v. Standard Oil Co., 64 F. R. D. 597, 614 (D.Colo.1974)
[22] *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997).
[23] *Nelson v. Waring*, 602 F.Supp. 410, 413 (N.D. Miss.1983) (quoting *Cotton*, 559 F.2d at 1330).

has been held prior to take the bird in the hand instead of a prospective flock in the bush."[24] Had Plaintiffs elected to continue with the prosecution of this case, rather than enter into a settlement, the amount of any ultimate recovery, if any, would have been unknown.

"In considering the range of possible recovery, the Court need not consider recoveries that are beyond the range of the most minimal probability." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.,* 447 F. Supp. 2d 612, 622 (E.D. La. 2006).

Class Counsel believes that the Settlement fairly and adequately compensates the Class for the damages sustained by Class Members. The ranges of recovery could be zero if the Parish of Jefferson were to prevail at trial, particularly in light of the defense argument that the Class Plaintiffs suffered little to zero damages. The Settlement provides certain compensation, based on individual proof of claim, after evaluation by the Administrator/Neutral and this Court's approval.

There are over 10,000 potential class members in the class definition and there are an estimated 4500 claims filed to date. Using an estimate of 4500 claimants who will receive the proposed $2.25 million of the class award ($4.5 million total settlement minus fees and costs), the recovery of an average of $500 a claimant is well within the possible range of recovery.[25]

Further, rote arithmetic does not provide the final award amounts because the Settlement states that the proximity of the property to the Jefferson Parish Landfill is a factor that the Court Appointed Neutrals will consider when determining the individual class member awards.

---

[24] *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) (citations and internal quotations omitted).
[25] These numbers are averages. The determination of what claimant gets what amount (depending on location to the source) will be made by the Court Appointed Neutrals.

Properties closer to the Jefferson Parish Landfill will likely receive higher amounts than properties farther from the Jefferson Parish Landfill.

Because this $4.5 million settlement is well within the possible range of recovery for nuisance claims, this factor supports final approval of the Settlement.

### 6. Opinions of Class Counsel, Class Representatives and Absent Class Members Supports Settlement.

The best evidence of the absent Class Members' acceptance of the Settlement is reflected in the fact that all Class Members are eligible to be considered for actual, tangible benefits from this Settlement and only four (4) individual Class Members tied to one address in Harahan have opted out of the Settlement. The overwhelming participation by the Class Members signifies widespread acceptance of the Settlement.

Also, none of the Class Members objected to the settlement.

Class Counsel and the Class Representatives support this settlement.[26] As does counsel for Jefferson Parish.[27]

### C.  Incentive compensation to the Class Representatives.

This Honorable Court appointed Elias Jorge "George" Ictech-Bendeck, Nicole M. Landry-Boudreaux, Mona Bernard, Phil Adams, Robyn Crossman, Kayla Anne Steele, Ann Williams, and Ophelia Walker as Class Representatives for this class settlement. These individuals have "rendered a public service by contributing their time and effort to this litigation." Through their vigilance, they have "conferred a monetary benefit on a large

---

[26] See Exhibits 2-16.
[27] See Exhibit 17 (Affidavit of Michael S. Futrell).

class..."[28] For those reasons, the Class Representatives are entitled to incentive compensation for serving as class representatives.[29]

Class Counsel suggests that the Class Representatives receive $10,000 (TEN THOUSAND DOLLARS) in recognition of and compensation for their service to the Class as a class representative, and in further compensation for time and energies spent assisting Settlement Class Counsel in the prosecution of this case since its initial filing and gathering information. Class Counsel submit that the amount of $10,000 incentive compensation to each of the Class Representatives is reasonable and consistent with the amounts awarded by the district courts in this Circuit.[30] This cost shall be paid exclusively out of the Settlement Fund, without additional contribution or payment by the Parish of Jefferson.

### III. CONCLUSION

For the foregoing reasons, Class Representatives, individually and on behalf of the Class, and Class Counsel respectfully request that this Court grant the Motion for Final Certification of Settlement Class and order that the Settlement Payment be distributed in accordance with the terms of the Settlement Agreement.

Date: March 21, 2025

**[signature block appears on following page]**

---

[28] *In re SmithKline Beckman Corporation Securities Litigation*, 751 F.Supp. 525, 535 (E.D. Pa. 1990) (awarding class representative $5,000,00 from the common fund).
[29] *See, e. g., In re Lease Oil Antitrust Litigation*, 186 F.R.D. 403, 449 and n. 69 (S.D. Tex. 1999) (awarding $10,000.00 to class representative who helped "instigate" the action); *Shaw v. Toshiba Information Systems, Inc.*, 91 F.Supp. 2d 942, 973 (S.D.Tex 2000) (awarding $25,000.00 each to two class representatives).
[30] *See*, for example, *Catherine v. SureTemps, LLC*, No. CV 17-7561, 2019 WL 4038604, at *2 (E.D. La. Aug. 27, 2019) (approving $10,000 in incentive bonuses to named plaintiffs in FLSA collective action); *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) (approving $5,000 service awards for each of the seven class representatives who expended substantial time and effort in representing the settlement class, including by submitting to interviews, locating and forwarding responsive documents, and participating in conferences with class counsel).

Respectfully Submitted:

*/s/ Lawrence J. Centola, III*
Scott R. Bickford (#1165)
srb@mbfirm.com
Lawrence J. Centola, Iii (#27402)
ljc@mbfirm.com
Jason Z. Landry (#33932)
jzl@mbfirm.com
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 – FACSIMILE

*/s/ Bruce C. Betzer*
Bruce C. Betzer (Bar No. 26800)
THE LAW OFFICE OF BRUCE C. BETZER
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
bruce@brucebetzer.com

*/s/ Douglas S. Hammel*
Douglas S. Hammel (Bar No. 26915)
HAMMEL LAW FIRM, LLC
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
douglashammel@gmail.com

*/s/ Kacie F. Gray*
Anthony D. Irpino (#24727)
Louise C. Higgins (#31780)
Pearl Robertson (#34060)
Kacie F. Gray (#36476)
IRPINO, AVIN & HAWKINS
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501
airpino@irpinolaw.com
lhiggins@irpinolaw.com
probertson@irpinolaw.com
kgray@irpinolaw.com

*/s/ John D. Sileo*
John D. Sileo (La Bar No. 17797)
LAW OFFICE OF JOHN D. SILEO
320 N. Carrollton Ave.,
Suite 101 New Orleans, LA 70119
(504) 486-4343

14

jack@johnsileolaw.com
casey@johnsileolaw.com

*/s/ Seth H. Schaumburg*
Seth H. Schaumburg (La Bar No. 24636)
Favret Demarest Russo Lutkewitte & Schaumburg
1555 Poydras Street, Suite 1600
New Orleans, LA 70112
P: (504) 562-1006
F: (504) 523-0699
seth@favretlaw.com
*Counsel for Ictech-Bendeck Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Lawrence J. Centola, III*

CLASS COUNSEL, ON BEHALF OF THE CLASS