## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,** Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-7889** **c/w 18-8071,** **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,** **Defendants** | **SECTION: "E" (5)** |

*Applies to: All Cases*

### ORDER AND REASONS

Before the Court is a Motion for Class Certification,[1] filed by Named Plaintiffs and proposed Class Representatives, Elias Jorge Ictech-Bendeck, Mona and Larry Bernard, and Nicole Landry-Boudreaux.[2] Plaintiffs seek to add Phil Adams, Robyn Crossman, Kayla Anne Steele, Ann Williams, and Ophelia Walker as Class Representatives.[3] Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc. (collectively, the "Waste Connections Defendants") and Aptim Corporation ("Aptim") oppose the Motion for Class Certification.[4] Plaintiffs filed a reply.[5] For the reasons that follow, the Motion for Class Certification is **DENIED.**

---

[1] R. Doc. 438.
[2] Savannah Thompson also is a named Plaintiff in this action, but Plaintiffs do not seek to certify her as a Class Representative.
[3] *Id.*
[4] R. Doc. 447. Jefferson Parish has settled its claims with the Ictech-Bendeck Plaintiffs and is no longer a party to this action. The Parish originally joined in the opposition to the class certification motion.
[5] R. Doc. 450.

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors Plaintiffs allege were emitted from the Landfill causing damage from July 1, 2017 to December 31, 2019 (the "relevant time period"). This case is a consolidation of several proposed class actions making the same claims and seeking the same relief.[6] Plaintiffs seek nuisance damages for violations of the obligations of neighborhood under Louisiana Civil Code articles 667-669.[7]

Because this is a toxic tort case, the Court first held a trial on general causation.[8] On November 29, 2022, the Court issued its Findings of Fact and Conclusions of Law finding there was general causation because odors and gases were emitted by the Landfill; the emissions of gases and odors from the Landfill occurred during the relevant time period; and exposure to the odors and gases emitted by the Landfill at a level of five ppb for thirty minutes was capable of producing the injuries claimed by any one or more of the plaintiffs.[9]

Plaintiffs filed their first motion for class certification on August 29, 2023.[10] On November 27, 2023, the Court continued the submission date for the motion to June 26, 2024. Plaintiffs filed an Amended Motion to Certify the Class on May 15, 2024.[11] Defendants filed their opposition on June 19, 2024.[12] Plaintiffs filed a reply on June 26, 2024.[13]

---

[6] R. Doc. 47.
[7] R. Doc. 48. The Plaintiffs also made claims for negligence, gross negligence, and potential premises liability in their Amended and Superseding Master Class Action Complaint for Damages, but they have since clarified the only causes of action they bring are under articles 667-669. R. Doc. 66 at 4.
[8] R. Docs. 243-247, 256-259 (Minute Entries).
[9] R. Doc. 285.
[10] R. Doc. 368.
[11] R. Doc. 438. As a result, the Court denied the first motion to certify the class as moot. R. Doc. 466.
[12] R. Doc. 447.
[13] R. Doc. 450.

The Defendants agree that the elements of numerosity and commonality are satisfied.[14] On September 10, 2024, the Court held oral argument on Plaintiffs' Motion to Certify with respect to the issues of predominance, superiority, and Plaintiffs' proposed trial plan.[15] After the oral argument, the Court confirmed that the issues of predominance, superiority, and adequacy of the trial plan will be decided on the briefing and exhibits attached thereto.[16] The Court requested that the parties inform the Court whether they agreed to submit on the briefing the remaining Rule 23 elements of typicality, adequacy of representation, and ascertainability.[17] The parties requested, and the Court agreed, to hold a hearing on the issues of typicality, adequacy of representation, and ascertainability.[18]

On February 3 and February 4, 2025, the Court held a hearing for the parties to present evidence on the contested issues under Rule 23 of typicality, adequacy of representation, and ascertainability.[19]

At the hearing, the Court heard from Plaintiffs Elias Jorge Ictech-Bendeck, Mona Bernard, Nicole Landry-Boudreaux, Robyn Crossman, Ann Williams, Kayla Anne Steele, Ophelia Walker, Phil Adams, Gerald Herbert, Dr. Chuck Carr Brown, and Rick Buller.[20] The Court heard testimony from Defendants' witnesses—Paul Burke, Jarrod Muller, and Michael Mullin.[21] The parties presented oral argument to conclude the hearing.

---

[14] R. Doc. 503.
[15] R. Doc. 473.
[16] *Id.*
[17] R. Doc. 503.
[18] R. Doc. 505.
[19] R. Docs. 515, 531, 532.
[20] *See* R. Docs. 531, 532.
[21] *See id.*

## LEGAL STANDARD

The party seeking to certify a class bears the burden of demonstrating the case is appropriate for class treatment.[22] Class certification is within the district court's discretion, and the decision is essentially a factual inquiry.[23] The class certification decision should not reach the merits of plaintiffs' claims.[24] It may be necessary, however, for a district court to look beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts to make a meaningful certification decision.[25] The district court must "conduct a rigorous analysis" under Rule 23 before certifying a class and must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23.[26]

To certify a class, the court must first consider whether the prerequisites of Rule 23(a) have been met. Rule 23(a) states:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[27]

---

[22] *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479, n.4 (5th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

[23] *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004).

[24] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

[25] *Id.*

[26] *Id.* at 740.

[27] Fed. R. Civ. P. 23(a).

Additionally, the Fifth Circuit has recognized that the ascertainability requirement is an implied prerequisite of Rule 23.[28] "[T]o maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."[29]

If the prerequisites of Rule 23(a) are satisfied, a district court may permit the action to be maintained as a class, so long as the action falls within any one or more of the three categories established by Rule 23(b). In this case, Plaintiffs seek to certify the class pursuant to Rule 23(b)(3), which provides in pertinent part:

> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in management of a class action.[30]

"The two 23(b) requirements are 'predominance' and 'superiority': 'Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.'"[31] "[A] district court's expertise in case management and overseeing trials is particularly useful in making the predominance and superiority inquiries of Rule 23(b)(3), which require envisioning what a class trial would look like."[32]

---

[28] *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam).
[29] *Id.*
[30] FED. R. CIV. P. 23(b)(3).
[31] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).
[32] *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016).

Thus, when read together, Rules 23(a) and 23(b)(3) provide six requirements for claims to be certified as a class action: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority.[33]

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues" and leave other issues for individual determination.[34] "[T]he predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish 'liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members.'"[35] "The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule . . . ."[36] The Fifth Circuit has instructed that the parties must have a "full opportunity to present proposals for their preferred form of class treatment,"[37] and "[t]he burden is on Plaintiffs to demonstrate to the district court how certain proposed subclasses would alleviate existing obstacles to certification."[38]

## LAW AND ANALYSIS

Plaintiffs seek to certify a Proposed Class defined as:

> (1) All natural persons who, at any time from July 1, 2017 through December 31, 2019, lived and/or resided within the following enclosed geographical boundary within the Parish of Jefferson, State of Louisiana, starting at the intersection of Jerome S. Glazer Airport Access Rd. and West Napoleon Ave (including the canal extending westward from the intersection of West Napoleon Ave and Williams Blvd) then proceeding eastward along West Napoleon Avenue until its intersection

---

[33] *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 603 (E.D. La. 2006).
[34] FED. R. CIV. P. 23(c)(4).
[35] *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014).
[36] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745-46 n.21 (5th Cir. 1996).
[37] *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297 (5th Cir. 2024), *cert. denied*, No. 24-426, 2024 WL 5011734 (U.S. Dec. 9, 2024).
[38] *Elson v. Black*, 56 F.4th 1002, 1007-08 (5th Cir. 2023).

with North Causeway Boulevard, then proceeding south along Causeway Boulevard until its intersection with River Road, then proceeding south across the Mississippi River until the intersection of Lapalco Boulevard and Bayou Segnette, then proceeding west until the southernmost end of S. Jamie Boulevard, then proceeding west until the southernmost end of Ruth Drive, then proceeding west/northwest to the intersection of Hwy 90 and the St. Charles Parish/Jefferson Parish line, then proceeding north along the St. Charles Parish/Jefferson Parish line to River Road, then proceeding north along the St. Charles Parish/Jefferson Parish line from River Road to Airline Hwy, then proceeding east along Airline Hwy until its intersection with Jerome S. Glazer Airport Access Rd., then proceeding north until the intersection of Jerome S. Glazer Airport Access Rd. and West Napoleon Ave (including the canal extending westward from the intersection of West Napoleon Ave and Williams Blvd).[39]

a. Sub-Class 1 - All natural persons who, at any time from July 1, 2017 through December 31, 2019, lived and/or resided within Figure 56's 4-5% concentric amoeba.

b. Sub-Class 2 - All natural persons who, at any time from July 1, 2017 through December 31, 2019, lived and/or resided within Figure 56's 3-4% concentric amoeba.

c. Sub-Class 3- All natural persons who, at any time from July 1, 2017 through December 31, 2019, lived and/or resided within Figure 56's 2-3% concentric amoeba.

d. Sub-Class 4 - All natural persons who, at any time from July 1, 2017 through December 31, 2019, lived and/or resided within Figure 56's 1-2% concentric amoeba.

e. Sub-Class 5 - All natural persons who, at any time from July 1, 2017 through December 31, 2019, lived and/or resided within Figure 56's 0.5-1% concentric amoeba.

(2) This class expressly excludes all named plaintiffs in *Addison, et al. v. Louisiana Regional Landfill Company, et al.*, No. 19-11133 c/w 19- 14512, as well as Defendants' employees and relevant court personnel.[40]

---

[39] Plaintiffs attach a copy of a diagram for the proposed boundary in their motion. R. Doc. 438-21, p. 17; R. Doc. 438-16 (Exhibit 16).
[40] *Id.* at pp. 20-21.

Plaintiffs argue that "[c]lass certification is proper and should be granted"[41] because the nuisance claims "present common complaints of symptoms of annoyance and inconvenience based upon up to 30 months of exposures to noxious odors at the Class Representatives' and class members' respective homes."[42] Plaintiffs "bring claims for violations of the obligations of neighborhood (i.e., nuisance) under Louisiana Civil Code articles 667-669 arising from the emission of noxious odors from the Landfill."[43] Those articles provide as follows:

Article 667 defines nuisance:

Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.[44]

Article 668 provides:

Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.[45]

Article 669 provides:

If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.[46]

---

[41] R. Doc. 438-21, p. 1.
[42] *Id.* at p. 25.
[43] *Id.* at p. 3.
[44] LA. C. C. ART. 667.
[45] LA. C. C. ART. 668.
[46] LA. C. C. ART. 669.

Articles 667-669 impose "obligations of vicinage," types of legal servitudes, on property owners.[47] These articles also "place limitations on the rights of owners by setting out principles of responsibility applying the doctrine of *sic utere tuum ut alienum non laedas*, which requires an owner to use his property in such a manner as not to injure another."[48] "La. C.C. Art. 667 prohibits uses which cause damage to neighbors or deprive them of the enjoyment of their property, while La. C.C. Art. 668 permits uses which merely cause neighbors some inconvenience. La. C.C. Art. 669 allows suppression of certain inconveniences if excessive under local ordinances or customs, and requires tolerance of lesser inconveniences."[49] To determine whether an activity constitutes real damage or mere inconvenience, a court must analyze whether the activity is reasonable in light of the circumstances and must consider "the character of the neighborhood, the degree of intrusion, and the effect of the activity on the health and safety of the neighbors."[50]

To prove a nuisance claim under Louisiana law, a plaintiff must show four elements: (1) the defendant is a proprietor, (2) the defendant conducts "work" on his property, (3) the defendant's "work" causes damages to his neighbor, and (4) that the defendant was negligent because the defendant knew or should have known that the work would cause damage but failed to use reasonable care to prevent the damage.[51]

---

[47] *Rodrigue v. Copeland*, 475 So. 2d 1071, 1077 (La. 1985).

[48] *Inabnet v. Exxon Corp.*, 642 So. 2d 1243, 1251-52 (La. 1994).

[49] *Barrett v. T.L. James & Co.*, 671 So. 2d 1186, 1190 (La. App. 2d. Cir. 1996), *writ denied*, 674 So. 2d 973 (La. 1996).

[50] *Id.* at 1191.

[51] *See Alford v. Anadarko E&P Onshore LLC*, No. CIV.A. 13-5457, 2015 WL 471596, *9 (E.D. La. Feb. 4, 2015); *Slocum v. Int'l Paper Co.*, No. CV 16-12563, 2022 WL 35429, at *10 (E.D. La. Jan. 3, 2022).

# I.    Plaintiffs satisfy the requirements of Rule 23(a).

## A.    Numerosity

To certify a class, Rule 23(a)(1) requires plaintiffs to show "the class is so numerous that joinder of all parties is impracticable."[52] "To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members."[53] To assess whether Rule 23(a)(1) has been met, a court must consider all factors bearing on the practicability of joinder, including "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim."[54] "'Although the number of members in a proposed class is not determinative of whether joinder is impracticable,' the Fifth Circuit has held that a class with over 100 members 'is within the range that generally satisfies the numerosity requirement.'"[55]

Plaintiffs seek to certify a putative class totaling over 76,000 individuals who resided in the class area during the relevant time period.[56] Plaintiffs estimate there are thousands of individuals within each proposed subclass.[57] Defendants agree that numerosity is satisfied.[58] Plaintiffs have met the numerosity requirement of Rule 23(a)(1).

## B.    Commonality

Under Rule 23(a)(2), Plaintiffs must demonstrate there are "questions of law or fact common to the class."[59] The commonality requirement is satisfied if the class

---

[52] FED R. CIV. P. 23(a).
[53] *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 604 (E.D. La. 2006).
[54] *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013).
[55] *Calogero v. Shows, Cali & Walsh, LLP*, No. CV 18-6709, 2024 WL 2891828, at *7 (E.D. La. June 10, 2024) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)).
[56] *See* R. Doc. 438-21, pp. 27-28; R. Docs. 438-17, 438-18, 438-19.
[57] *See id.*
[58] *See* R. Doc. 503.
[59] FED R. CIV. P. 23(a)(2).

members' claims depend on a common issue of law or fact whose resolution will "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke."[60] "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims."[61] Commonality may be satisfied by an instance of Defendants' conduct even when the "injurious effects—the damages—are diverse."[62] The Fifth Circuit has recognized that commonality is a "low threshold."

Plaintiffs contend that "the claims of all class members will hinge on common questions regarding the geographic scope, frequency, duration, and concentrations of the Landfill's noxious emissions over the 30-month period at issue, the Defendants' liability for same, and the apportionment of fault amongst them."[63] The Court finds the common factual and legal questions concerning the Defendants' conduct, the emissions from the Landfill, and whether or not Defendants are liable for nuisance are all central to the Plaintiffs' claims. Defendants agree that commonality is satisfied.[64] Plaintiffs have met the commonality requirement of Rule 23(a)(2).

## C.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the parties are typical of the claims or defenses of the class."[65] In the Fifth Circuit, the test for typicality is not

---

[60] *M.D. ex rel Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (citation omitted).

[61] *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014).

[62] *Id.* at 810-11 (discussing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)). "[D]istrict courts do not err by failing to ascertain at the Rule 23 stage whether the class members include persons and entities who have suffered 'no injury at all.' As the Supreme Court explained, a 'contention' regarding the class members' injury is sufficient to satisfy Rule 23, so long as the party seeking certification can show that this contention is 'common' to all the class members, is 'central' to the validity of their claims, and is 'capable' of classwide resolution." *Id.* at 811.

[63] R. Doc. 438-21, p. 31.

[64] *See* R. Doc. 503.

[65] FED. R. CIV. P. 23(a)(3).

demanding, and the threshold is low.[66]  Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."[67]  "Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics—a similar course of conduct, or the same legal theory."[68]  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.[69] The relationship between commonality and typicality is intertwined: "typicality is commonality addressed from the perspective of the named plaintiffs. Commonality requires showing that, in fact, all members of the proposed class share a common claim . . . . Typicality requires showing that, in fact, the proposed representatives have that claim."[70]

Defendants argue that the Class Representatives' addresses, distances from sources of the odors, and purported extent of exposure to odors from multiple sources vary such that their claims are not typical of those of the putative class.[71] Defendants argue that the nature of Plaintiffs' state law nuisance claims involves differing proofs for levels of annoyance, "character of the neighborhood," and other inquiries, precluding a finding of typicality.[72] Defendants further argue that, because there are multiple Defendants named in this case who were involved in the Landfill's operations at varying times and in varying capacities, the theories of the claims are not typical.

---

[66] *Slocum v. Int'l Paper Co.*, No. CV 16-12563, 2019 WL 2192099 (E.D. La. May 21, 2019).
[67] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).
[68] *Slocum*, 2019 WL 2192099, at *7.
[69] *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th. Cir. 2002).
[70] *Lewis v. Cain*, 324 F.R.D. 159, 169 (M.D. La. 2018) (citing *M.D. v. Perry*, 294 F.R.D. 7, 29 (S.D. Tex. 2013)).
[71] R. Doc. 447, pp. 44-45.
[72] *Id*. at p. 46.

First, all Class Representatives testified that they resided within the relevant geographical boundary during the relevant time period of July 1, 2017-December 31, 2019. Second, the Class Representatives all bring nuisance claims as a result of the odors they smelled during all or part of the relevant time period. Third, the Class Representatives testified that the odors they smelled were "foul," "putrid," "rotten egg," "petrochemical," and "burning tire" smells; that the odors prevented them from fully enjoying their homes, backyards, and neighborhoods; and that the odors caused them various symptoms, including headaches, nausea, sleep disruption, and anxiety. All Class Representatives testified that they believe their damages resulted from the odors emitted by the Jefferson Parish Landfill, and that these odors affected their quality of life and enjoyment of their homes.

The Court finds the factual differences amongst the circumstances of the Class Representatives' circumstances do not preclude a finding of typicality in this case because "the test for typicality 'focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims.'"[73] "Any variety in the illnesses the Named Plaintiffs and the class members suffered will not affect their legal or remedial theories, and thus does not defeat typicality."[74] The record demonstrates that the Class Representatives' claims arise from a similar course of Defendants' conduct and are based in the same legal theories.[75] Class

---

[73] *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, No. CIV.A. 11-2777, 2013 WL 6072702 (E.D. La. Nov. 18, 2013) (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)).

[74] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).

[75] At the hearing, Defendants pointed out that, because Class Representatives assert claims against multiple Defendants in this matter who were involved in various capacities over various extents of time in operating the Landfill, typicality is not satisfied. At the hearing, Defendants only identified that Aptim "left the site" in May of 2019. The Court notes that throughout this litigation, Defendants have been unable to explain the differences amongst the Waste Connections entities, such as Waste Connections employees who have been unable to clarify which entity they work for. District Courts within the Fifth Circuit have recognized that typicality may be satisfied against multiple defendants, either when "the named plaintiff's injuries 'are the

Representatives, as well as members of the putative class, bring nuisance claims against the Waste Connections Defendants and Aptim Corporation as a result of the odor emissions by the Landfill. The factual differences identified by the Defendants are better addressed in the context of predominance and superiority. The Court finds that the claims of Plaintiff Class Representatives are fundamentally the same as those of the putative class. Typicality is satisfied.

### D.    Ascertainability

As an implied requirement to Rule 23 in the Fifth Circuit, ascertainability requires that the proposed class be adequately defined and clearly ascertainable.[76] The class must be "defined 'mechanically' by reference to 'objective criteria,' and not dependent on an 'individualized causal determination on the merits.'"[77] "[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."[78]

---

result of a conspiracy or concerted schemes between the defendants,'" or through the juridical link doctrine, which "covers cases in which the defendants are 'juridically related in a manner that suggests a single resolution of the dispute would be expeditious.'" *See Richard v. Flowers Foods Inc.*, No. CV 15-02557, 2016 WL 6539144 (W.D. La. Oct. 13, 2016), *report and recommendation adopted*, No. CV 15-2557, 2016 WL 6539130 (W.D. La. Nov. 3, 2016) (citing *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973)). The Fifth Circuit does not recognize the juridical link doctrine as a work-around to questions of standing. *See Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008). "Most courts now reject its application to the standing context and hold that the doctrine applies only in the context of a typicality/commonality inquiry under Rule 23." 1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3:49 (6th ed. 2024). "[T]he juridical link has been applied to private sector defendants by virtue of common agreements or practices followed by the group which are being challenged by the plaintiffs . . . ." *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 828 (W.D. La. 2003). Plaintiffs allege that the Waste Connections Defendants and Aptim "co-managed and/or co-operated" the Landfill and did so "pursuant to the terms and conditions of a Contract." R. Doc. 48, p. 3. The Court is satisfied that Plaintiffs challenge the common practices of the Defendants pursuant to the Landfill's operation agreement.

[76] *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023).

[77] *A. A., by & through P.A. v. Phillips*, 2023 WL 3994358, at *5 (M.D. La. June 14, 2023) (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 640 (5th Cir. 2012)).

[78] *Id.*

Defendants argue that Plaintiffs' proposed class definition is "too broad" and is not based on objective criteria.[79] Defendants further argue the class definition is based on the boundaries of inflated and incorrect air modeling data.[80]

The Court finds the requirement of ascertainability is met. The Court has referenced the class definition above. The class definition specifies the relevant time period and the exact geographic description of the class boundaries, and it relies on the air dispersion modeling data of Mr. Lape[81] and Dr. Zannetti[82] to form an ascertainable boundary for class members. Plaintiffs provide a map of this geographic area and also identify the subclasses within the area.[83] Hearing Exhibit 2 is an affidavit from Brad Madden, Associate Director of Eisner Advisory Group LLC, brand name "EisnerAmper."[84] The affidavit describes the process he used to compile a "direct notice" list of all putative class members living in the class boundary area with respect to the settlement between Plaintiffs and Jefferson Parish between July 31, 2017 and December 31, 2019. He attests that he compiled data from the Jefferson Parish Assessor's Office, the Jefferson Parish GIS Department, and a third-party source, Regrid, to produce a discrete list of class members. Hearing Exhibit 3 includes an attachment with a compilation of the approximately 75,000 putative class members.[85] Plaintiffs have met their burden of demonstrating that the class may be identified and defined by objective criteria.

Plaintiffs have demonstrated an administratively feasible method for identifying and ascertaining the class members through use of the specific geographic boundary

---

[79] R. Doc. 447, p. 49.
[80] *Id.*
[81] R. Doc. 438-12.
[82] R. Doc. 438-14.
[83] R. Doc. 438-21, pp. 17-18.
[84] *See* R. Doc. 534, p. 10.
[85] *Id.*

areas, the map models created by Mr. Lape and Dr. Zannetti, the EisnerAmper services, and the list Plaintiffs have compiled thus far of the potential class members. Ascertainability is satisfied.

### E.    Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."[86] This includes the attorneys and the named plaintiffs. Class representatives must be part of the class, possess the same interest, and suffer the same injury as the class.[87]  Adequacy of representation "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent."[88] "The court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members."[89] The Court also assesses whether the class representatives are willing and able to take an active role in and control the litigation to protect the interests of absentees. Plaintiffs have the burden of establishing that all requirements of Rule 23(a) are satisfied, including adequacy of representation—adequacy is never "presumed."[90]

Defendants argue adequacy of representation is not met for four reasons. First, Defendants point out that the proposed Class Representatives have limited their theory of recovery to claims for nuisance injuries, and they do no seek damages for property value diminution, personal injuries, and other forms of damages.[91] Second, Defendants argue that Ms. Ann Williams was a "resident" of her property, not an owner or lessee, so she

---

[86] FED. R. CIV. P. 23(a)(4).
[87] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).
[88] *Id.* at 625-26.
[89] *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).
[90] *Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001).
[91] R. Doc. 447, p. 47.

cannot assert the requisite ownership interest for a viable nuisance claim.[92] Third, Defendants argue that named Plaintiffs and proposed Class Representatives Mona Bernard and Larry Bernard are inadequate class representatives because Mr. Betzer, proposed to be class counsel, is married to the Bernards' daughter, and the relationship creates the appearance of impropriety.[93] Fourth, Defendants highlight that Phil Adams, Robyn Crossman, Kayla Anne Steele, Ann Williams, and Ophelia Walker are not named plaintiffs in the complaint, which they argue is a requirement to serve as a class representative.[94]

First, the Court finds that the potential for putative class members to "opt-out" in order to pursue individual claims supports a finding of adequacy of representation in this case.[95]

Second, with respect to Ann Williams, the Court finds she has an adequate interest in the litigation, and she is able to represent the interests of the putative class. Plaintiffs have provided evidence that Ms. Williams paid $500 a month in rent while living at her mother-in-law's house between October 2016 and December 2020.[96] The Court is satisfied this constitutes a sufficient interest in immovable property to assert a nuisance claim.[97]

---

[92] *Id.* at p. 48.

[93] *Id.* at pp. 48-49.

[94] *Id.*

[95] *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412-14 (5th Cir. 2017) ("Of course, not all purported conflicts between a class representative and members of the class will defeat adequacy . . . . We note that the risk to unnamed class members is smaller than usual here because of the opportunity for opt outs. Plaintiffs sought certification under Rule 23(b)(3), which allows opting out. Thus, if unnamed class members thought that the risk of preclusion were cogent and wished to protect their claim, they could do so. And if the number of plaintiffs opting out demonstrated a cogent conflict, the district court could decertify the class. Therefore, here, to the extent there is any risk of preclusion, the class can protect itself.") (internal citations omitted).

[96] R. Doc. 450-9, p. 3.

[97] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 386-87 (5th Cir. 2001) ("[O]ne must have some type of immovable property interest to maintain an action under art. 667 . . . . Articles 667 and 668 apply to 'proprietors,' namely, landowners . . . . By virtue of an expansive interpretation, any person assuming the

Third, with respect to Mona and Larry Bernard, Defendants argue that these Class Representatives may have a conflict of interest with members of the putative class because class counsel, Mr. Bruce Betzer, is their son-in-law. Because the Court will deny the motion for class certification, and because there are other adequate class representatives, the Court need not decide this issue.

All Class Representatives testified that they desire to serve as Class Representatives to protect their community, environment, and families, to hold those responsible accountable, to "speak up" about the impact of the odors on their quality of life, and to keep this from happening again. The Court is satisfied that these individuals demonstrated knowledge about the issues in this matter and will adequately and fairly represent the interests of the Putative Class.

The Class Representatives can fairly and adequately represent members of the putative class. [98]  These Class Representatives have sufficient stakes in the outcome of the litigation and will adequately pursue the interests of all class members. The Court further finds that counsel for the Class Representatives also will fairly and adequately pursue the interests of the class.

The Court finds that the requirements of Rule 23(a) are satisfied. The Court now addresses whether Plaintiffs have met the requirements of Rule 23(b)(3).

---

position of owner, usufructuary, possessor in good or bad faith, or long term lessee, may qualify as a proprietor . . . . Persons that do not qualify as proprietors, such as guests, contractors, and members of the public, may have a variety of remedies against a landowner under the law of delictual obligations or under Article 669, but not for violation of obligations established by Articles 667 and 668.").

[98] This Order is denying the Motion for Class Certification, so this issue is now moot. However, if Plaintiffs were to meet all the requirements of Rule 23, the Court would grant Plaintiffs leave to amend their complaint to add the remaining Class Representatives as Named Plaintiffs in this matter, as explained above.

**II.    Plaintiffs do not satisfy the Rule 23(b)(3) requirements of predominance and superiority; even if Plaintiffs did meet these elements, they have failed to provide the Court with a workable trial plan under Rule 23(c)(4).**

The predominance inquiry asks "whether the questions of law or fact common to class members predominate over any questions affecting only individual members."[99] "The predominance requirement of Rule 23(b)(3), though redolent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"[100] "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.'"[101] Courts analyzing predominance must identify "the substantive issues that will control the outcome, assess[] which issues will predominate, and then determine[] whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials."[102] The Advisory Committee Notes to the 1966 Amendment to Rule 23 state that a "'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in

---

[99] Fed. R. Civ. P. 23(b)(3).
[100] *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, (1997)).
[101] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).
[102] *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297 (5th Cir. 2024), *cert. denied*, No. 24-426, 2024 WL 5011734 (U.S. Dec. 9, 2024).

different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried."[103]

To assess predominance, the court also must "consider how a trial on the merits would be conducted if a class were certified."[104] "[P]redominance may be ensured in mass tort litigation when a district court performs a sufficiently 'rigorous analysis' of the means by which common and individual issues will be divided and tried."[105] A court may approve a mass tort class action when it is able "to rely on a manageable trial plan—including bifurcation [of issues] and/or subclasses—proposed by counsel."[106] "The burden is on Plaintiffs to demonstrate to the district court how certain proposed subclasses would alleviate existing obstacles to certification."[107]

The superiority analysis assesses whether "the class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[108] "To conduct this inquiry, a court must 'balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication,' while considering whether a class action would be more manageable than alternatives, and how the manageability concerns compare with the other advantages or disadvantages of a class action."[109]

Defendants argue that individual issues "pervade Plaintiffs' nuisance claims" under Articles 667-669 because to establish a nuisance claim, Plaintiffs must demonstrate

---

[103] Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment.
[104] *Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011).
[105] *Chavez*, 108 F.4th at 319.
[106] *Id.* at 319-20 (citing *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006)).
[107] *Elson v. Black*, 56 F.4th 1002, 1007-08 (5th Cir. 2023).
[108] Fed. R. Civ. P. 23(b)(3).
[109] *Akeem v. Dasmen Residential, LLC*, No. CV 19-13650, 2021 WL 4804049, at*8 (E.D. La. Oct. 14, 2021) (quoting *Earl v. Boeing Co.*, 2021 WL 4034514, at *39 (E.D. Tex. Sept. 3, 2021)).

that Defendants caused damage or substantial interference with the enjoyment of the Plaintiffs' properties.[110] Defendants argue that allegations of widespread exposure to the Landfill odors over a three-year period require too many individualized issues that may not be commonly addressed via class action.[111] Defendants further argue that bifurcation of the issues of liability and damages under Rule 23(c)(4) does not remedy the predominance issue because "the cause of action, as a whole, must first satisfy predominance and superiority under Rule 23(b)(3) to warrant certification of (c)(4) issue classes."[112] Defendants distinguish the instant case from other mass tort actions that have been certified as class actions because those actions involved single-day incidents or once-occurring events.[113] For these reasons, Defendants argue that a class action is not the superior method of adjudicating Plaintiffs' claims.[114]

Generally, Plaintiffs argue that class certification of their nuisance claims is proper under Rule 23(b)(3), or "in the alternative," certification of particular common issues, such as liability, is appropriate under Rule 23(c)(4).[115] Rule 23(c)(4) "permits district courts to limit class treatment to 'particular issues' and reserve other issues for individual determination."[116] Plaintiffs propose bifurcation of the class-wide issues of Defendants' liability, allocation of fault, and "impact on the surrounding communities in terms of geographic scope, frequency, duration, and concentration of . . . noxious emissions" from "the simpler issues of specific causation and compensatory damages."[117] Plaintiffs argue

---

[110] R. Doc. 447, p. 18.
[111] *Id.* at p. 19.
[112] *Id.* at p. 42 (internal quotations omitted).
[113] *Id.* at p. 43 (citing *Slocum v. Int'l Paper Co.*, 2019 WL 2192099 (E.D. La. May 21, 2019) (emissions release from a paper mill on a single day); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, (E.D. La. 2006) (single-incident oil storage tank spill)).
[114] R. Doc. 447, pp. 39-40.
[115] R. Doc. 438-21, p. 23.
[116] *In re Deepwater Horizon*, 739 F.3d 790, 816 (5th Cir. 2014).
[117] R. Doc. 438-21, p. 24.

that the issues of liability, allocation of fault, and impact on surrounding communities "are common substantive issues that not only drive the resolution of these nuisance claims" but also "predominate over any potential individualized issues."[118]

Plaintiffs argue that, to the extent the issues of specific causation and damages are not appropriate for class-wide adjudication, the Court should hold "waves" or "flights" of trials based on the geographic sub-locations of the Class Representatives and class members to adjudicate these issues.[119] The Plaintiffs argue that this Court's general causation findings[120] support findings of "specific causation of the nuisance injuries because of the Landfill's noxious emissions [which] cannot be said to be an overly complex, highly individualized inquiry."[121]

The Court set the initial hearing on class certification to "consider how a trial on the merits would be conducted prior to certifying the class"[122] in connection with the determination of whether the Rule 23(b)(3) predominance requirement was satisfied.[123] At the hearing, Plaintiffs reiterated their proposal for bifurcation of the common issue of Defendants' liability from the individualized issues of specific causation and damages. Plaintiffs argued this trial plan supports a finding of predominance in this matter.

The Fifth Circuit has recognized that "detailed trial plans" involving bifurcation of issues of liability and damages are relevant in determining whether common issues predominate over individualized issues.[124] In *Madison v. Chalmette Refining, L.L.C.*, a

---

[118] *Id.*

[119] *Id.* at p. 25.

[120] This includes the nuisance odor threshold at exposure levels of at least 5 ppb over a thirty-minute period. *See* R. Doc. 285.

[121] R. Doc. 438-21, p. 25.

[122] R. Doc. 467 (*citing Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011)).

[123] *See Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 319-20 (5th Cir. 2024), *cert. denied*, No. 24-426, 2024 WL 5011734 (U.S. Dec. 9, 2024) ("[T]he district court should allow the parties moving for class certification to have a full opportunity to present proposals for their preferred form of class treatment.").

[124] *See Madison*, 637 F.3d at 555-57.

mass tort case, the Fifth Circuit instructed that, with respect to the predominance inquiry, courts are to consider the "relevant state law that applies to Plaintiffs' claims and what Plaintiffs must prove to make their case."[125] The *Chalmette Refining* court also emphasized the relationship between proposed trial plans and the predominance inquiry. The court rejected a "trial plan" assessed by the district court, which reduced the issues to whether "[p]laintiffs were either . . . exposed to the [substance] or they were not."[126] The *Chalmette Refining* court cautioned that "this oversimplifies the issue,"[127] stating:

> [The defendant] correctly notes that, even among the named class representatives, significant disparities exist, in terms of exposure, location, and whether mitigative steps were taken. . . . "[P]rimary issues left to be resolved would turn on location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals." We must reverse because, "[i]n its certification order, the [district] court did not indicate that it [had] seriously considered the administration of the trial. Instead, it appears to have adopted a figure-it-out-as-we-go-along approach that *Castano* criticized and that other Fifth Circuit cases have not endorsed."[128]

In *Chavez v. Plan Benefit Services, Inc.*, the Fifth Circuit recently reiterated the importance of the trial plan in assessing predominance in complex litigation matters.[129] The *Chavez* court explained that, in reference to bifurcation of the issues of liability and damages under Rule 23(c)(4), "[t]he proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must [first] satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule . . . ."[130] As to subclasses under Rule 23(c)(5), though they may be "necessary to preserve the possibility

---

[125] *Id.* at 557.
[126] *Id.*
[127] *Id.*
[128] *Id.* (internal citations omitted) (citing S*teering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006)).
[129] 108 F.4th 297, 319-20 (5th Cir. 2024), *cert. denied*, No. 24-426, 2024 WL 5011734 (U.S. Dec. 9, 2024). The *Chavez* court noted it is an abuse of discretion for a district court to *not* consider the role of the trial plan and whether liability and damages could be bifurcated as a means to satisfy predominance. *Id.* at 319.
[130] *Id.* at 320 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745–46 n.21 (5th Cir. 1996)).

of proceeding as a class," they do not "relieve [Plaintiffs] of their duty to show each subclass independently satisfi[es] the Rule 23 requirements."[131] The *Chavez* court noted that, even if Plaintiffs prove that common issues predominate over the individual issues in the case, district courts must still analyze the administration of the trial prior to certifying the class.[132]

The Court finds that Plaintiffs have failed to meet their burden of proving that the Rule 23(b)(3) elements of predominance and superiority are satisfied. This action involves a mass tort incident in which emissions from the Jefferson Parish Landfill spanned a 46 square mile radius allegedly injuring Plaintiffs over the course of nearly three years. The exposure modeling data produced by the parties reveals that the pattern of exposure shifted from month-to-month, affecting Class Representatives' degree of exposure widely and inconsistently.[133] Plaintiffs wish to rely upon the thirty-month exposure modeling *averages* to argue that exposure to the odors was consistent across geographic sub-classes.[134] While this method may be more appropriate in a single-day mass tort incident, for example, it is far less applicable to a thirty-month time period where wind patterns, odor emission levels, and other factors varied, such as other sources of odors, that may have altered individualized exposure.[135] The Court finds that this method does not adequately account for the individualized issues as to exposure, causation, and damages over the relevant time period.

---

[131] *Elson v. Black*, 56 F.4th 1002, 1007 (5th Cir. 2023).
[132] *See Chavez*, 108 F.4th at 318.
[133] *See, e.g.*, R. Docs. 447-2, 447-3, 447-4; R. Doc. 447, pp. 20-26.
[134] R. Doc. 438-21, pp. 16-17.
[135] *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016) ("This lawsuit seeks to recover different damages caused by different acts committed by different defendants at different times over a five year period. The district court did not abuse its discretion in concluding that individualized issues of causation and damages would predominate.").

Additional factors contribute to the numerous individualized issues that predominate over common ones in this matter: the variation in Plaintiffs' alleged injuries and preexisting conditions,[136] the extent of individual circumstances contributing to determinations of specific causation per Plaintiff,[137] and the prevalence of other odor sources, amongst others. The numerous Defendant entities in this case—and their varying timelines for engaging in Landfill operations—also create too many individualized factual questions as to proving causation amongst the Plaintiffs. For example, Plaintiffs who resided within the Class area for part of the relevant time period only may be able to prove causation against some Defendants, but not others.[138] The Court also is required to assess the "relevant state law that applies to Plaintiffs' claims and what Plaintiffs must prove to make their case under the predominance inquiry."[139] Individual issues also predominate over the elements of Plaintiffs' state law nuisance claims, such as the requirement that Plaintiffs prove the individualized "character of their neighborhood" and that the odors caused "annoyance" or "inconvenience," which is a subjective, individualized inquiry.[140]

Plaintiffs propose five subclasses, addressed through trial "waves or flights," representing different "rings" of odor exposure to address the issues of specific causation

---

[136] "[W]here the plaintiffs in a proposed class action allege a variety of injuries as opposed to injuries of a single type, the individualized determinations necessary to prove causation will preclude a finding of predominance with respect to specific medical causation." *Slocum v. Int'l Paper Co.*, No. CV 16-12563, 2019 WL 2192099, at *6 (E.D. La. May 21, 2019).

[137] *See Crutchfield*, 829 F.3d at 376 ("[I]ndividualized questions of causation would be the central, or predominant, issue when this case is tried . . . . [T]o establish causation, class members would have to present individualized evidence related to the age, size, structure, location, and damage of each affected property.").

[138] Aptim Corporation only operated the gas and leachate collection systems until May 2019. R. Doc. 285, p. 2. *See Crutchfield*, 829 F.3d at 376 ("Indeed, *the number of defendants and different conduct they engaged in* demonstrate how individualized this inquiry will be . . . . To prevail, each plaintiff will need to prove which activities performed by which defendants caused which damages to a particular property . . . . [A] 'series of mini-trials' would result.") (emphasis added).

[139] *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 557 (5th Cir. 2011).

[140] *Slocum*, 2019 WL 2192099, at *6 ("Whether or not an activity constitutes nuisance is a question of fact, to be determined based on the particular circumstances of each case.") (citing *Schulker v. Roberson*, 676 So. 2d 684, 688 (La. Ct. App. 3rd Cir. 1996)).

and damages.[141] Plaintiffs argue that the common issues predominate within these subclasses. Plaintiffs also argue that the Court should bifurcate the issues of liability from the issues of specific causation and damages, for example, to achieve predominance. However, this trial management strategy still fails because the cause of action, *as a whole*, must *first* satisfy the predominance requirement of Rule 23(b)(3),[142] and "subclasses under Rule 23(c)(5)—though 'necessary to preserve the possibility of proceeding as a class'—do not 'relieve [Plaintiffs] of their duty to show each subclass independently satisfi[es] the Rule 23 requirements.'"[143] The odor emissions in this action were varied; sectioning off geographic "rings" as subclasses does not remediate the individualized issues still prevalent within those subclasses and the class as a whole, even as to a bifurcated trial on Defendants' liability. Because the proposed class action fails the predominance inquiry, Plaintiffs' proposed use of subclasses and bifurcation of the liability and damages issues cannot be used to "manufacture predominance."[144] Plaintiffs have failed to produce a workable trial plan; thus, they have failed to "demonstrate how certain proposed subclasses [and other strategies] would alleviate existing obstacles to certification."[145]

---

[141] *See* R. Doc. 438-21, p. 42.

[142] *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("Severing the defendants' conduct from reliance under rule 23(c)(4) does not save the class action. A district court cannot manufacture predominance through the nimble use of subdivision (c)(4).").

[143] *Elson v. Black*, 56 F.4th 1002, 1007 (5th Cir. 2023).

[144] *Castano*, 84 F.3d at 745 n.21.

[145] *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297 (5th Cir. 2024), *cert. denied*, No. 24-426, 2024 WL 5011734 (U.S. Dec. 9, 2024) (citing *Elson*, 56 F.4th at 1007-08).

For these reasons, Plaintiffs fail to demonstrate that a class action is the superior means of adjudicating this action. Their motion for class certification also fails on this ground.[146]

Accordingly;

**<u>CONCLUSION</u>**

**IT IS ORDERED** that Plaintiffs' Motion for Class Certification[147] is **DENIED.**

**New Orleans, Louisiana, this 27th day of March, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[146] *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998) ("The predominance of individual-specific issues relating to the plaintiffs' claims . . . in turn detracts from the superiority of the class action device.").
[147] R. Doc. 438.