UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK<br>*Plaintiffs* | CIVIL ACTION NO. 18-07889 |
| | SECTION "E" |
| VERSUS | JUDGE MORGAN |
| PROGRESSIVE WASTE SOLUTIONS, et al,<br>*Defendant* | MAGISTRATE JUDGE NORTH |

## <u>MEMORANDUM IN SUPPORT</u>

NOW INTO COURT, comes the **Succession of Valery "Val" Patrick Exnicios, by and through the universal heir and independent executrix, Valerie Marie Exnicios Lamb** ("Exnicios"), files the foregoing Memorandum in support of its Motion for Declaratory Judgment moving for an interpretation and reformation of the underlying joint venture agreement between movant and the Opposition, composed of attorneys: Anthony Irpino, Doug Hammel, Bruce Betzer, Lawrence Centola, III, John "Jack Sileo, Seth Schaumburg, and their respective law firms.

### EXECUTIVE SUMMARY

The instant dispute is ripe for final resolution with the traditional application of the factors identified in *Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102 (La. 1978), *on reh'g* (June 25, 1979). Below, Exnicios presents the argument that the *Saucier* analysis, and legal foundation thereof, provides the court with broad discretion to reform the underlying contract. Furthermore, reformation is necessary as two of the three obligations under the contract are now impossible due to death.

To that end, the application of the *Saucier* analysis suggests that the proper attorney's fee share in the instant putative class settlement is the traditional one-third (1/3), and that Exnicios'

1

share in those attorneys' fees is fifteen percent (15%) of that one-third.  The court allocated fifty percent (50%) in the putative class action settlement with Jefferson Parish for litigation costs and attorneys' fees.  We propose that the one-third of attorneys' fees be paid out first, and the remainder of the fifty percent be used to cover the litigation costs and expenses.  Since this will not cover *all* litigation costs, the remainder of the litigation costs associated with the cases may be spread out over the Mass Action, or other state court actions – which should have been done when Val Exnicios died.  Regarding litigation costs, the Opposition must remit the remaining $128,600.94 to Exnicios, which the Opposition's own ledger states was paid by Exnicios.  Finally, the contract must be interpreted to extend into the Mass Action, and all other state court actions, which benefit from the work of Exnicios.  Such an interpretation comports with the intent of the parties as expressed by the clear and unambiguous language of the contract.

## INTRODUCTION

The instant dispute arises from an attorney's fees and costs dispute arising from the untimely death of the lead attorney in the above captioned class action filed in Jefferson Parish state court, now removed to the instant Federal court, and now, once again proceeding as a piece-meal mass actions in Jefferson Parish state court.

The Opposition, which consists of attorneys: Anthony Irpino, Doug Hammel, Bruce Betzer, Lawrence Centola, III, John "Jack Sileo, Seth Schaumburg, and their respective law firms (the "Opposition"), argue that Exnicios is entitled only to *quantum meruit* due to disputes about litigation financing.  Furthermore, the Opposition's position is that the 2020 Contract, which all parties agree is valid, only applies to the settlement with one defendant, Jefferson Parish, in Federal

2

court, and does not extend to any of the current, or future, state court proceedings ("Mass Actions")[1].

Val Exnicios, the sole owner of Liska, Exnicios, and Nungesser, was the attorney for the lead plaintiff, and filed the first action in this matter captioned, *Elias Jorge Ictech-Bendeck, et al. v. Progressive Waste Solutions of LA, Inc., et al.*, Case No.: 785-995, in the 24th JDC, Division E, State of Louisiana, on July 25, 2018. Val worked on the matter for one-thousand-two-hundred-and-seventy-two-days (1,272 days) before death intervened due to pancreatic cancer.

After the death of Val Exnicios, the Opposition indicated, through numerous discussions and written communications, that the 2020 Contract would be honored and that Val Exnicios' contribution and interests in the cases would be honored. The behavior of the Opposition; however, did not comport with their communications.

Instead, the Opposition filed a mass action involving approximately +1,500 of the estimated +6,000 plaintiffs identified, and arising from, the same cause of action in the *Ictech-Bendeck* suit filed by Val Exnicios. The Opposition filed their action in Jefferson Parish State court, captioned *Robyn Crossman, et al v. Waste Connections US, Inc., et al*, Suit No. 865-706, Division D, 24th JDC, State of Louisiana (the "Mass Action"), and did not inform Exnicios, or take any steps, to protect the interests of Exnicios. Furthermore, in the *Ictech-Bendeck* matter the Opposition reached a settlement with one defendant, Jefferson Parish. The Opposition did not involve Exnicios in anyway, and even distributed funds to each other (but not to Exnicios until multiple requests were made by Exnicios with evidence). Despite being in contact with undersigned counsel, the Opposition did not inform, request or receive the consent of Exnicios for

---

[1] *Robyn Crossman, et al v. Waste Connections US, Inc., et al*, Suit No. 865-706, Division D, 24th JDC, State of Louisiana (the "Mass Action")

either the Settlement or the distribution of settlement funds. In response to the Opposition's conduct, Exnicios filed this intervention on July 14, 2025, which was necessary to protect Exnicios' interests.

In the Mass Action filed by the Opposition, the pleadings pray for the subject judge to notice and adopt Judge Morgan's "Findings of Fact and Conclusions of Law on the issue of general causation" from the *Ictech-Bendeck* matter. If adopted by the Jefferson Parish district court, then the same lawyers, the Opposition, and the same plaintiffs, the mass action, included in the federal action, will benefit from the litigation costs and legal work done by Exnicios, without compensating Exnicios. The Mass Action includes all the same attorneys, except Val Exnicios, involves a sampling of approximately one-fourth (1/4) the same putative class of plaintiffs claimed in the Federal action, and involves the same defendants (except Jefferson Parish - who settled in Federal court). Despite these obvious overlaps between the *Ictech-Bendeck* matter and the Mass Action, the Opposition holds the position that Exnicios has no interest in any attorneys' fees from the Mass Action, or any other related state court matter.

Further complicating the matter was the Opposition's failure to utilize a qualified settlement fund ("QSF"). The use of a QSF would have provided transparency and complete fairness between the parties, as all costs and attorneys' fees could have been distributed after the resolution of all matters arising from the landfill emissions. Instead, the Opposition allocated all litigation costs into the Jefferson Parish Settlement and distributed the litigation costs without Exnicios' consent, and did not even inform Exnicios of the distribution until much later.

The Oppositions failure to use a QSF was intentional. The Opposition took two actions. First, they paid all expenses in the case out of the Jefferson Parish Settlement, thus reducing the total attorneys' fee award, and minimizing Exnicios' interest. Second, the Opposition's position is

that despite the 2020 Contract, Exnicios has no interest in the state court proceedings, and even if he does have an interest, then they argue it is only the "by heads" portion of the contract.

Combined, the actions of the Opposition present a scheme to minimize Exnicios' interest in Attorneys' fees, while simultaneously attempting to block Exnicios from attorneys' fees in the related state court actions. The practical effect of these two maneuvers by the Opposition was an attempt to "cut out" Exnicios from the attorneys' fees and reduce the overall amount that the Opposition would have to pay Exnicios for his contribution.

In the Opposition's putative class action settlement with one defendant, Jefferson Parish, for $4.5mm, the Opposition reserved 50% of all proceeds for the payment of all litigation costs associated with the action, and the remainder for attorney's fees. As stated above, the Opposition first wished to pay all litigation expenses back, and then divey up the remainder for attorneys' fees. The problem here is that now, the Opposition seeks to use the general causation findings, legal, work, and expenses, in the ongoing state court cases, while blocking Exnicios' participation in the state court cases. The effect is that the Opposition is an intentional reduction of Exnicios' Attorneys' fee interest in the Jefferson Parish Settlement, while forcing Exnicios to bear the major burden of all related expenses, and blocking Exnicios from his attorneys' fees in the state court matters.

Litigation expenses in this matter were sizable with an estimated $1,412,685.00 spent on filed documents, retained experts, to qualify and verify potential claimants, and manage distributions. The Common Benefits Fund table, filed under seal by the Opposition, states that Val Exnicios, or Val's Law Firm (of which he was the sole owner) made four payments of $75,996.27, $35,590.45, $16,155.85, and $12,500, respectively. *See* Docket No. 542, Exhibit "A" (*sealed*). The Opposition has taken the position that Mr. Schaumberg loaned Val Exnicios the money to pay

his share into financing the litigation.[2] As of this writing the Opposition, Mr. Schaumburg has paid two checks to Exnicios in the value of $3,342.10, and $8,288.53, respectively.

The cost and expense of proving general causation, *i.e.*, that the subject landfill's airborne emissions caused damage to the putative class of plaintiffs, was the most complex, most expensive, and most specialized portion of this toxic tort claim. Because there is no qualified settlement fund, both the Jefferson Parish Putative Class, and Exnicios bear a disproportionate and unfair allocation of the expenses. The high allocation of fees onto the Jefferson Parish Putative Class settlement has directly and intentionally caused the value of attorney's fees available to Exnicios' interest to be significantly smaller, and furthermore, the Opposition seeks to block Exnicios from reaping any rewards in the subsequent Mass Action(s) in state court.

Not only was the death of Val Exnicios tragically unfortunate for Exnicios' only child, and sole heir, Valerie Marie Exnicios Lamb. The practical result is that it is impossible for Val Exnicios to perform the personal obligations under the 2020 Contract by providing litigation funding, or by providing legal work on the underlying toxic tort exposure cases upon which gave rise to this action.

The instant 2020 Contract allocates attorneys' fees into three buckets: (i.) 25% by pro rata shares; (ii.) 25% for litigation financing; and (iii.) 50% for hours worked on the matter. It is black letter law that a contract between attorneys survives after the death of one attorney, but here the death of Val Exnicios renders it impossible for him to continue (ii.) financing the litigation and

---

[2] No claim or written contract has been submitted by Mr. Schaumburg to the Exnicios Estate for this purported "loan." Furthermore, La. R.S. § 13:3721 bars parol evidence to prove a debt or obligation who no suit was brought was the deceased was still alive unless certain requirements are met.

(iii.) working on the litigation. As such, the 2020 contract must be reformed by the court to constitute an equitable solution to account for Val Exnicios' death.

Fortunately, in the seminal case of *Saucier v. Hayes Dairy Prods., Inc.*, the Louisiana Supreme Court decreed that when a court is faced with the circumstances where an attorney is discharged without cause, then the "amount of the fee" is "the highest ethical contingency percentage," and apportion the between attorneys be made "on the basis of factors which are set forth in the Code of Professional Responsibility." 373 So. 2d 102, 117–18 (La. 1978), *on reh'g* (June 25, 1979).

More specifically, in class actions and mass actions, courts have expanded power in cost and fee allocations and may "impos[e]...fiduciary standards to ensure fair treatment to all parties and counsel regarding fees and expenses." *In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549, 554 (E.D. La. 2009) (quoting *In re Zyprexa Prods. Liab. Litig.*, 424 F.Supp.2d 488, 491 (E.D.N.Y.2006)).

Louisiana substantive law, therefore, allows this court to interpret and reform the 2020 Contract between the parties to reach an equitable result, while Federal procedural precedent allows for the reformation of the expense allocation and cure the improperly allocated expenses onto the Federal case.

Based upon the application of the *Saucier* factors, the equitable attorneys' fee share for Exnicios is one-seventh (1/7), (14.28%), of all attorney's fees derived from the Federal case. Furthermore, Val's contribution, and 15% interest in attorneys' fees, extends onto all other cases, including the Mass Action, which utilize Judge Morgan's "Findings of Fact and Conclusions of Law on the issue of general causation."

7

Next, the attorney's fee applicable to the Federal case, and the Jefferson Parish Putative Class Settlement must be adjusted to the customary 33.33%, with the remainder of the 50% awarded by the court in the fairness hearing allocated for expenses incurred.

In addition, Exnicios must be remitted the four payments identified in the Common Benefits Fund table of $75,996.27, $35,590.45, $16,155.85, and $12,500, with a credit being awarded against this sum for the two payments already remitted by the Opposition to Exnicios for $3,342.10, and $8,288.53. The Opposition's own documents state that these funds were received from Val Exnicios and/or his law firm, and if Mr. Schaumburg extended a loan, then he must provide evidence and enforce his rights against the Estate. *See* Docket No. 542, Exhibit, "A," (*sealed*).

Finally, Exnicios prays for attorney's fees and costs for the necessity of bringing this action. For two years Exnicios did everything in their power to avoid the instant litigation, instead Valerie Exnicios Marie Lamb was forced to undergo the cost and burden of litigation to ensure her father's legacy and work was protected.

For the above reasons, provided in more detail below, Exnicios prays this court grant Exnicios' Motion for Declaratory Judgment, provide the above relief, and provide any other fair and equitable relief deemed fit by this honorable court.

**FACTS**

Val Exnicios was a single dad with a single daughter who is not an attorney. Val died of pancreatic cancer on January 17th, 2022. Val's onset of cancer was so sudden and severe that he was barely able to get his affairs in order. His will was handwritten and everything he owned flowed to his sole and universal heir - his beloved daughter, Valerie Marie Exnicios Lamb.

Val Exnicios was the sole owner of Liska, Exnicios, and Nungesser, a plaintiff's law firm in New Orleans that specialized in trial work and toxic tort cases. Val's accomplishments during life were impressive and throughout his life he worked tirelessly to help others in the community, both through his work as a trial lawyer and through his charitable efforts.

Val's accomplishments and recognition for his expertise were as follows:

Val served as a Skills Professor and as an Adjunct Professor for Professionalism & Ethics at Loyola Law School. He was a frequent lecturer for continuing legal education courses on ethics, professionalism, and mass tort/class action matters. Val provided decades of voluntary service to the bar and to the service and betterment of our legal system. He devoted innumerable hours as a member and officer of the Louisiana State Bar Association, including serving with distinction as Chair of the LSBA Section Council since 2003 and Chair of the LSBA Mass Tort, Class Action & Complex Litigation Section since 2008. In 2014, Val was appointed by the Louisiana Supreme Court to serve as Judge Pro Tempore for the Civil District Court for the Parish of Orleans. Thereafter, Val was specifically appointed to the Louisiana Supreme Court Committee on Class Actions, Mass Torts & Complex Litigation, serving as co-chair of that committee with Louisiana Supreme Court Justice Marcus Clark. Val was also an active member of the New Orleans Bar Association, the Louisiana Association for Justice, and the Federal Bar Association. He served on the Board of the Louisiana Center for Law & Civic Education, and served as its President. Although it is hard to say where Val made the most difference, he was proud to serve Ozanam Inn as a co-coordinator of U.S. District Judge Jay Zainey's Homeless Experience Legal Protection program (HELP), an organization that provides free legal consultations and services to the homeless population in New Orleans. Val also served as pro bono counsel to, and volunteered at, the homeless shelter Ozanam Inn in New Orleans where he often brought his daughter, Valerie, to teach her the importance of volunteerism. Val's many

contributions to the betterment of the legal profession and to the community were recognized and noted by many. Among the most notable, the A. P. Tureaud Inn of Court created an annual Val Patrick Exnicios Professionalism Award with Val being its inaugural recipient, and the LSBA, posthumously, awarded Val the LSBA's Distinguished Service to the Profession Award, a special honor that has only been awarded twice before. Val was twice awarded the LSBA President's Award. Other awards and recognitions received include: The United States Fifth Circuit Court of Appeals-American Inns of Court Professionalism Award; City Business Leadership in Law Award; Louisiana Attorney General's Award for Community Service; City of New Orleans, City Council, Special Proclamation; Top 100 Trial Lawyers, National Trial Lawyers Association; and recognition for many years by Super Lawyers. Val was equally involved in community matters: Chairman, Algiers Neighborhood Presidents Council; Chairman, Board of Directors, English Turn Property Owners Association; Chairman, Delgado Westbank Board of Advisors; Chairman, NOPD 4th District Police Advisory Committee; Member, Algiers Economic Development Foundation; President, St. Thomas More Catholic Lawyers Association; Treasurer, Executive Committee; A.P. Tureaud Inn of Court; Member, Ochsner Westbank Board of Advisors; Chairman, COPS4; and Chairman, Algiers Strategic Development Alliance. In special and further service to his profession, Val's many contributions included: Member, LSBA Rules of Professional Conduct, Lawyer Advertising Sub-Committee - co-author of Rules of Professional Conduct re lawyer advertising proposed, and ultimately adopted; Member, LSBA Rules of Professional Conduct, Law Practice Sale Sub-Committee - charged with the responsibility of recommending proposed RPC's re: potential sale of a law practice; Member, LSBA Rules of Professional Conduct, Ethics Advisory Committee - provider of advisory opinions to members of the LSBA regarding difficult and/or unsettled ethics questions; and Member, LSBA Rules of Professional Conduct, Lawyer Advertising CLE Instructor where he served as 1 of the 3 member team with Chuck Plattsmeier, Louisiana Supreme Court, Office of the Disciplinary Counsel, Chief Disciplinary Counsel, and Richard Lemmler, LSBA Ethics Counsel, touring the state instructing LSBA members regarding the Louisiana Supreme Court's new Rules of Professional Conduct governing lawyer advertising; LSBA Bench Bar Section; LSBA Legislation Committee; LSBA Bar Governance Committee; Louisiana Supreme Court MCLE Committee.

*See* Val's Obituary.[3]

---

[3] The Obituary of Valery "Val" Patrick Exnicios (https://www.legacy.com/us/obituaries/nola/name/val-exnicios-obituary?id=32436358, as accessed on Oct. 28, 2025).

Regarding the instant case, Val and Mr. Ictech-Bendeck executed an Attorney-Client Contract, *see* Exhibit, "A," and Val filed the Class Action Petition for Damages July 25, 2018 in the matter captioned, *Elias Jorge "George" Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc. et al.*, Case No. 785-955, 24th JDC for the Parish of Jefferson, Division H. The matter was then removed by defendants to the United States District Court for the Eastern District of Louisiana.

Two contracts were signed which addressed the claims and legal actions arising from the emissions from the landfill. The first contract was signed on August 8, 2018, by Val Exnicios, Seth Schaumburg, Douglas Hammel, and Anthony Irpino. *See* Exhibit, "B." The second contract was signed on September 23, 2020, by Val Exnicios, Anthony Irpino, Dough Hammel, Bruce Betzer, Lawrence Centola, John Sileo, and Seth Schaumburg. *See* Exhibit, "C." Like the first, the second contract stated that "any and all attorney's fees generated, earned and/or awarded from inception of the *cases* until conclusion shall be divided" by placing them into three buckets: (1.) one fourth (25%) for financing litigation; (2.) One forth (25%) pro rata by head for the signatories to the Agreement; and (3.) one-half (50%) based upon the work performed. *Id.* Furthermore, the 2020 contract stated that "it is expected that all signatories to this Agreement shall contribute their respective pro rata share of financing costs of the litigation." *Id.*

In both contracts, Exhibits "B", and Exhibit "C," the language of the contracts clearly indicate an intent to of the parties to work together and share attorneys' fees on cases which arise from the emissions of toxic gasses from the subject landfill. As stated in the 2018 contract, "any and all attorneys' fees awarded or otherwise earned in the **actions**" […] "arising out of operations and/or emissions…" Exhibit, "B." Likewise, the 2020 contract states, "any and all attorneys' fees generated, earned and/or awarded from inception of the **cases** until conclusion…" Exhibit "C."

11

If, as the Opposition argues, the parties intended the contracts to only cover the class action matter, then why would the plural terms of "actions" be used in the 2018 contract and the term "cases" be used in the 2020 contract.

For one-thousand-two-hundred-and-seventy-two (1,272) days prior to his death Val Exnicios honored the contract. During that time Val applied his vast experience as a trial lawyer, and his specialized knowledge of toxic tort litigation to the benefit of all counsel and plaintiffs in the instant litigation. Val ceased working on the matter only because of his untimely death.

After Val's death, the Succession by and through Val's sole and universal heir and daughter, Valerie Marie Exnicios Lamb ("Exnicios") reached out to the Opposition to ensure that the interest of Exnicios was protected. Time and time again, the Opposition assured Exnicios that Exnicios' interest in the Federal case, and any other case arising from the landfill, was protected by the contract. The Opposition assured Exnicios that the contract protected Exnicios' interests and that there was no need to worry.

But Exnicios began to worry when various claims began to be made by the Opposition against Exnicios' interest in the matter. First, there was the allegation by Mr. Schaumburg that he had loaned Val the money to finance the litigation, and therefore, all the money on the litigation expenses was owed to Mr. Schaumburg, despite it saying "Val Exnicios" or "Liska Exnicios and Nungesser." Next, the interpretation of the contract shifted again, but this time Mr. Schaumburg's interest was no longer effected, only the Exnicios interest was to be reduced due to his death to less than 4% of the total attorneys fees, and no expenses were due.

The instant intervention was filed soon after.

## LAW

Attorney fees are subject to review and control by the court. Nothing is more firmly settled in Louisiana. It makes no difference that the fee was set in a contract or by statute, whether the fee is contingent upon recovery or is an hourly charge. The bottom line has got to be in accord with Louisiana's rule 1.5 which begins with the sentence, "A lawyer's fee shall be reasonable."

Warren L. Mengis, Professional Responsibility, 51 LA. L.REV. 389, 394–95 (1990). The review and control of attorney's fees by the court is the only dispositive issue before the court in this matter.

It is not in dispute that two of the three conditions of the 2020 Contract are now impossible for Val Exnicios to perform. It is impossible for Val Exnicios to bill any additional hours on related cases. Also, it is impossible for Val Exnicios to contribute financially to the related cases.[4] It is not in dispute that Val Exnicios' withdrawal due to death was not a "termination for cause." However, due to his withdrawal due to death, two of the three clauses in the 2020 Contract are now impossible for Val Exnicios to perform.

The impossibility of Val Exnicios' performance for the 2020 Contract, and his withdrawal of representation in the matter due to death, has created a question to the proper attorneys' fee that Exnicios is due under the 2020 Contract. Luckily, the Louisiana Supreme Court's holding and analysis in the seminal case of *Saucier v. Hayes Dairy Prods., Inc.*, is directly on-point. The application of the *Saucier* factors to the instant circumstances resolves all issues[5] raised herein and

---

[4] Undersigned Counsel; however, has offered to contribute in Val's stead. This offer was not accepted.

[5] Other issues such as: The survivability of the contract, the classification of the contract as a joint venture, the duration of the joint venture, the survivability of the joint venture, the effect of the joint venture on the Mass Action cases, the unjust enrichment and benefit of the Mass Action from the work done in the Class Action, etc. These are all tangential issues, and all easily solved by the application of *Saucier*.

provides a well-established mechanism for the court to provide a final resolution for this dispute. 373 So. 2d 102, 117–18 (La. 1978), *on reh'g* (June 25, 1979).

In *Saucier*, the Louisiana Supreme Court addressed the question of what an attorney was owed under a contingency fee contract, when by no fault of his own, the first attorney was terminated and replaced by a second attorney prior to the final resolution of the matter. The Court considered the application of Disciplinary Rule 2–106 of the Code of Professional Responsibility. DR 2–106 is currently Rule 1.5 of the Rules of Professional Conduct. Rule 1.5(a) provides in part:

> (1) The time and labor involved, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) Whether the fee is fixed or contingent.

*See Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 117–18 (La. 1978), *on reh'g* (June 25, 1979). The *Saucier* court proposed that a presiding judge examine the above list of factors and consider, under the totality of the circumstances, the value of a "reasonable" fee. *Id.*

Determination of just what non-excessive fee the discharged attorney has "earned" in the case of the contingency fee employment contract (followed by discharge, employment of other counsel and settlement) is not a simple matter. *Saucier*, 373 So. 2d 102 (La. 1978), *on reh'g* (June 25, 1979). Focusing alone upon the attorney's investment of time or even considering in addition

such matters as counsel's skill, the importance of the case and other readily identifiable factors, does an injustice to the attorney. *Id.* Ultimately, the determination of the fee must be "reasonable" and such a determination is within the discretionary powers of the presiding judge. *Id.*

## ANALYSIS OF THE SAUICER FACTORS

*(1) The time and labor involved, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;*

It is not in dispute that the underlying toxic tort case was complex, novel, difficult, and required a large amount of time and skill. Furthermore, it is not in dispute that expertise in toxic tort actions was required to resolve this matter. Furthermore, all-time records supposedly attributable to Val Exnicios were generated by the Opposition. The simple fact is that Mr. Exnicios worked on this case from its inception until his death and that his expertise and skill was precisely what this case required. As such this factor militates strongly in favor of Exnicios.

*(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;*

Mr. Exnicios took a limited number of cases. Val's specialization in toxic torts, class actions, and mass actions required a large time commitment for each case that he accepted. This case was no exception. In addition, Mr. Schaumberg personally requested that Mr. Exnicios work on this case because of Val's expertise in toxic tort class and mass actions.

*(3) The fee customarily charged in the locality for similar legal services;*

One-third (33.33%) is the customary fee for contingency fee tort cases.

*(4) The amount involved and the results obtained;*

The amount recovered from one defendant, *i.e.*, Jefferson Parish, in their putative class settlement was $4.5mm. More than 6,000 putative class plaintiffs were identified. As such, the estimated value of the case, for one defendant, was $750 per putative plaintiff. There are five (5)

remaining defendants. If each of the defendants are equally liable, then the fair value owed to each plaintiff is set as $3,750, and the total fair value of the case is estimated at $22,500,000. As such, Exnicios' work has strongly contributed to establishing the value of each plaintiff's case. This militates in favor of Exnicios.

(5) *The time limitations imposed by the client or by the circumstances;*

Intervenor does not view this factor as applicable to the instant matter.

(6) *The nature and length of the professional relationship with the client;*

Mr. Exnicios signed the initial contract with the lead plaintiff, Mr. Elias Jorge "George" Ictech-Bendeck, and filed the initial state court, and federal, class action. Thus, Mr. Exnicios had the longest professional relationship with Mr. Ictech-Bendeck, and the putative class as a whole. Furthermore, Val Exnicios' expertise strongly contributed to the substantive value generated in the case, and because of his expertise he was selected as the person to lead the action. This militates in favor of Exnicios.

(7) *The experience, reputation, and ability of the lawyer or lawyers performing the services; and*

As stated above in the fact section, Mr. Exnicios was highly involved in the local and professional community. He was extremely qualified and experienced litigator in toxic tort class actions and mass actions. Mr. Exnicios was arguably more qualified than any other attorney on this case for toxic tort cases. This factor militates in favor of Exnicios.

(8) *Whether the fee is fixed or contingent.*

It is not in dispute that the fee was contingent.

## RESULT OF ANALYSIS AND CONCLUSION

The application of the *Saucier* analysis suggests that the proper attorney's fee share in the instant putative class settlement is the traditional one-third (1/3). Due to the impossibility of Exnicios continuing to perform the contract, due to no fault of his own, he is entitled to the maximum possible fee split between the group of attorneys.[6] Under the *Saucier* factors, Exnicios' fee is one-seventh (14.28%) of the total attorneys' fees awarded.

Next, this honorable court has already determined that 50% of the putative class action settlement with Jefferson Parish is allocated for attorneys' fees and litigation costs. Exnicios prays that this court mandate Exnicios' attorneys' fees and litigation costs owed be paid out first, and within 30 days of judgement. As stated in the Settlement Fairness Order, signed March 26, 2025, "(17) the Court reserves jurisdiction of the Action, the Settlement Agreement, the Final Order and Judgement, the Settlement Fund, all ancillary settlement matters, Class Counsel, the Class Members [...] for the purpose of administering, supervising, construing, and enforcing the Settlement Agreement and Final Order and Judgement and supervising the management and disbursement of the Settlement Fund (without prejudice to the rights of any party [...])." *See* Docket No. 545. Accordingly, the Court reserved the right to dictate the timing of how the settlement is dispersed and allocated among the parties.

Val Exnicios has died, he can no longer contribute to the case with his time or financially; however, the other attorneys can still recoup their expenses in the mass actions moving forward in

---

[6] *Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 118 (La. 1978*), on reh'g* (June 25, 1979)("This solution envisions apportionment of only the highest agreed upon contingent fee in accordance with factors set forth in the Code of Professional Responsibility. Thus the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors. Resort to the Code of Professional Responsibility also will have in the future a salutary effect of assuring that unethical conduct, such as solicitation on the part of one attorney of another's client, will not be countenanced or rewarded").

state court. The above proposal solves the allocation problem, protects Exnicios' interests, and cures the failure of the Opposition to place the settlement funds into a Qualified Settlement Fund.

Finally, the reformed 2020 Contract must be interpreted to extend into the Mass Action, and other state court actions, which benefit from the work of Exnicios, as that interpretation comports with the intent of the parties as expressed by the clear and unambiguous language of the contract.

Collectively, these actions comport with the mandate of *Saucier*. The above solution is well within the court's discretion and would be in the interest of judicial economy though avoidance of piecemeal litigation with Exnicios intervening into 6,000 cases. In addition, the allocation of attorneys' fees in the Jefferson Parish putative settlement are set at the customary one-third (33.33%) ensuring that all plaintiffs, and all parties, are treated fairly. Furthermore, the solution provides a smoothing effect on the litigation costs and spreads them across all matters more evenly. As a final, and more personal matter, this result would provide final relief and closure to the daughter and sole heir of Val Exnicios who has already endured enough.

WHEREFORE, Exnicios prays this honorable court GRANT their Motion for Declaratory Judgement.

Respectfully submitted,

/s Calder H. Lamb
**CALDER H. LAMB** (#40425)
**PETER S. KOEPPEL** (#1465)
650 Poydras Street,
Suite 2150, New Orleans, Louisiana 70130
o: 504-598-1000
e: clamb@koeppelllc.com
   psk@koeppelllc.com
***Attorney for Intervenor***