UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK,<br>**Plaintiff** | CIVIL ACTION NO. 18-7889<br><br>SECTION "E" (5) |
| VERSUS | JUDGE MORGAN |
| PROGRESSIVE WASTE SOLUTIONS OF LA, INC., ET AL.,<br>**Defendants** | MAGISTRATE JUDGE NORTH |

## Opposition to Motion for Declaratory Judgment

**NOW INTO COURT**, through undersigned counsel, come Class Counsel and Defendants-in-Intervention, Anthony Irpino, Douglas Hammel, Bruce Betzer, Lawrence J. Centola, III, John Sileo, Seth Schaumburg and their respective law firms, who oppose the Motion for Declaratory Judgment filed by Valerie Marie Exnicios Lamb ("Intervenor"), in her capacity as Executrix and sole universal heir of the Succession of Valery "Val" Patrick Exnicios.

"[A] declaratory judgment action is 'designed to provide a means for adjudication of rights and obligations in cases involving an actual controversy that *has not reached the stage where either party can seek a coercive remedy.*'" Shale Consultants, L.L.C. v. Wilson, No. CIV.A. 13-1124, 2013 WL 4750066, at *3 (W.D. La. Sept. 3, 2013) (emphasis in original) *citing* Chauvet v. City of Westwego, 599 So.2d 294, 296 (La.1992). Because the Intervenor seeks a coercive remedy, i.e. money damages, this is not a properly filed motion.

### I.     Procedural Requirements for Declaratory Relief Are Not Satisfied.

The Intervenor's Motion for Declaratory Judgment fails to meet the fundamental procedural requirements. Under Louisiana law, courts may declare rights, status, and other legal relations, but only when appropriate circumstances exist. *La. C.C.P. Art. 1871*. A person interested under a written contract may seek determination of any question of construction or validity arising under the instrument and obtain a declaration of rights. *La. C.C.P. Art. 1872*.

However, the distinctive characteristic of a declaratory judgment is that the declaration stands by itself with no executory process following as a matter of course, distinguishing it from a direct action that seeks execution or performance from the defendant. Broyles v. Ducote, 2021-0852 (La. App 1 Cir 06/14/22), 343 So.2d 902. Intervenor's motion improperly seeks money damages through declaratory relief. The "declaratory judgment" seeks specific dollar amounts for attorneys' fees and litigation costs. The request for money transforms the declaratory action into a direct action for monetary relief, violating the fundamental nature of declaratory proceedings. Since the Intervenor seeks a specific amount of money damages, the Motion for Declaratory Judgment must be denied.

### II.    The 2020 Contract's Validity and Scope Are Disputed.

The Intervenor's assertion that the 2020 Contract remains valid and enforceable lacks proper legal foundation. While Louisiana law permits courts to construe contracts either before or after breach, Broyles v. Ducote, 2021-0852 (La. App 1 Cir 06/14/22), 343 So.2d 902, the petitioner has not established the essential elements of contract validity under Louisiana Civil Code provisions.

The Intervenor claims that the contract at issue (Rec.Doc. 588-6) applies to "all cases, claims, or matters which arise from the landfill gas exposure." However, the above quoted language is nowhere to be found in the contract. Intervenor's argument would require an impermissible expansion of the scope of the contract. Contract interpretation under Louisiana law requires adherence to the parties' actual intent as expressed in the written instrument, not broad extrapolations to cover unrelated proceedings in different jurisdictions.

Furthermore, the petitioner's attempt to extend the contract's reach to state court proceedings that utilize "general causation findings, experts, or legal work conducted in this Federal case" lacks contractual basis and violates principles of privity. The 2020 Contract, if valid, governs only the specific federal proceedings for which it was created, not subsequent or parallel litigation involving different parties and claims.

The Intervenor references specific language in the contract that states: "It is expected that all signatories to this Agreement shall contribute their respective pro rata share of financing the costs of the litigation." (Rec.Doc. 588-6). As will be shown by Section III *infra*, Mr. Exnicios did not contribute his pro rata share of the financing as required under the contract. Thus, Intervenor is violating the "clean hands" doctrine.

"'He who comes into a court of equity must come with clean hands.' This doctrine 'requires a showing of conduct contrary to the dictates of good conscience or fair dealing and refers to willful misconduct.'" <u>Sixela Inv. Grp. v. Hope Fed. Credit Union</u>, No. CV 23-0277, 2025 WL 1534858, at *5 (W.D. La. May 29, 2025) citing <u>Stanley v. Trinchard</u>, No. 02-1235, 2010 WL 3168113, at *5 (E.D. La. Aug. 9, 2010) and <u>Nowling v. Aero Servs. Intern., Inc.</u>, 734 F. Supp. 733, 743 (E.D. La. 1990).

The heir of Mr. Exnicios should not be able to enforce what she believes to be the terms of the contract when Mr. Exnicios breached the contract before he passed away.

### III.     Mr. Exnicios' Contribution and Calculated Fee Under the Contract.

Putting aside the "unclean hands" argument, the contract explains how the lawyers must split the fees:

1. 25% goes to whoever helped pay the costs of the case;

2. 25% is split evenly among all the lawyers who signed the agreement; and,

3. 50% is divided based on how much work each lawyer actually did.

Mr. Exnicios stopped doing meaningful work on the case in December 2020, although he kept entering time for reading emails throughout 2021. He says he worked a total of 426.85 hours, which is only 3.33% of all the lawyer hours in the case (12,801 hours as of July 1, 2025). See **Exhibit A** (filed under seal via separate motion per Local Civil Rule 5.6).

The contract also required every lawyer to help pay for the cost of the lawsuit. But compared to everyone else, Mr. Exnicios paid very little. The total cost of the case was $1,412,684.57, and he paid only $11,630.63, which is just 0.82% of the costs. **Exhibit B**, Affidavit of Bruce C. Betzer. Even so, his estate still collected the money this Court approved to reimburse him.

The Court has not decided yet how much the lawyers will be paid from the $4.5 million settlement with Jefferson Parish. If the Court awards a 30% attorney fee (which would amount to $1,350,000), then the Estate of Mr. Exnicios would receive $72,495 (which would amount to 5.4% of the total awarded fee). This amount comes from adding up:

- 3.33% of $675,000 (based on work done),

- 0.82% of $337,500 (based on costs paid), and

- 14% of $337,500 (based on the equal share portion).

Defendants-in-Intervention intend to (and have always intended to) fully compensate Mr. Exnicios' Estate for attorney fees he earned in this litigation according to the provisions of the fee-sharing agreement. See Doc. 570.

### IV. The Saucier Precedent Does Not Support Petitioner's Fee Allocation Claims.

"Under both Saucier analysis and quantum meruit analysis, a court is supposed to use the factors articulated by Louisiana Rule of Professional Conduct 1.5(a) to determine the contribution that a lawyer made to his client's case. See id. at 702 & n. 12 (Saucier); State Dep't of Transp. & Dev. v. Williamson, 597 So.2d 439, 442 & n. 9 (La.1992)" City of Alexandria v. Brown, 740 F.3d 339, 352 (5th Cir. 2014)

The Louisiana Rule of Professional Conduct 1.5 clearly sets forth factors for the courts to consider when determining a distribution of fees. The legal requirement that the court is to weigh factors prevents a declaratory judgment. The Estate of Exnicios is not asking for this Court to rule on the validity of a contract. The Estate of Exnicios, through a purported declaratory judgment, is asking the Court to weigh factors and award it money, without the parties being able to present facts supporting the requisite factors. The declaratory judgment action is procedurally improper.

Regardless, the petitioner's reliance on Saucier v. Hayes Dairy Prods, Inc., 373 So.2d 102 (La. 1978) for fee allocation is misplaced and inapplicable to the present circumstances. The Court in Saucier was determining the fee share of two persons who both at one time had a contingency fee contract with the plaintiff. In this class action, it is undisputed that Mr. Exnicios did not have a contract with every class member. For class counsel to get an attorneys fee award, this Court

must make a common benefit award. The Court has not yet done so. Thus, the instant motion by the Estate of Exnicios is premature.

Further, while the petitioner claims entitlement to "15% of all attorneys' fees generated in the underlying matter" based on Saucier factors, the Estate of Exnicios fails to present the facts and evidence that this Court needs to consider when undertaking a Louisiana Rules of Professional Conduct Rule 1.5(a) analysis.

The Estate of Exnicios' assertion that "Saucier commands that the proper attorneys fees to be allocated in the underlying matter are the customary thirty-three-and-one-third percent (33.33%)" mischaracterizes the precedent's holding and scope. Saucier addresses instances where more than one lawyer has a contingency fee contract with the plaintiff. However, if there is a written agreement between the parties, as there is here, regarding how the fee is to be dispersed, such an agreement generally governs unless it conflicts with ethical rules or public policy. For example, in Chimneywood Homeowners Ass'n v. Eagan Ins. Agency, Inc., 2010-0368 (La.App. 4 Cir. 02/02/11), the court emphasized that agreements between attorneys regarding fee apportionment must still align with the principles established in Saucier and the Rules of Professional Conduct. The court reiterated that the highest ethical contingency fee agreed upon by the client should be apportioned among the attorneys based on their respective contributions. Scott v. Kemper Ins. Co., 377 So. 2d 66. The contract at issue does exactly that.

Moreover, the petitioner's calculation methodology lacks legal and factual support. The specific dollar amounts claimed - $214,285.71 in legal fees and $128,600.94 in litigation expenses - are unilateral calculations not supported by contractual provisions or established legal standards for fee allocation in multi-party litigation, or the facts in this case. As set forth above, Mr. Exnicios

contributed just 3.33% of the 12,801 total hours worked. **Exhibit A** (filed under seal). Further, there is no proof that Mr. Exnicios contributed $128,600.94 in litigation expenses. Rather, there is proof that Mr. Exnicios only contributed $11,630.63 to finance the litigation. **Exhibit B**.

Ultimately, the Intervenor's reliance on Saucier to calculate attorney fees (as opposed to the express provisions of the 2020 Contract) belies any claim that she seeks a declaratory judgment that Mr. Exnicios "is entitled to one-seventh (14.28%) of all attorneys' fees ***under the 2020 Contract***." See Doc. 588 at p. 5 (emphasis added).

Intervenor is not actually seeking a declaratory judgment as to Mr. Exnicios' rights under the contract. Instead, as evidenced by her express request for this Honorable Court to "reform" the 2020 Contract (Doc. 588-1 at p. 1), Intervenor is improperly "seeking to have the terms of the contract changed in order to obtain more favorable results." Louisiana Paving Co. v. State, Through Dep't of Transp. & Dev., 431 So. 2d 52, 53–54 (La. Ct. App.), writ denied sub nom. Louisiana Paving Co. v. State, Through Dep't of Transp. & Dev., 440 So. 2d 735 (La. 1983). This tactic has been employed because Intervenor realized that following the contractual fee allocation arrangement agreed to by Mr. Exnicios, which expressly considers the extent of his financial and work contributions, would result in less money due to his Estate. Accordingly, having recognized a declaratory judgment as to Mr. Exnicios' attorney fee under the contract is not in her best interest, Intervenor is now improperly attempting to backdoor her quantum meruit claims for money damages (see Doc. 567 at p. 7, Count II) via a purported declaratory judgment action. As set forth above, this is procedurally defective.

Notwithstanding the impropriety of adjudicating these disputed factual and legal issues related to her damages claims via a declaratory judgment action, the Intervenor has not made any

requisite showing of mutual error to support reformation.[1] Nor could she do so. To hold otherwise would be to conclude that the parties to the contract (or at least some of them) intended to apportion attorney fees irrespective of each attorney's contributions to financing and prosecuting the case. Such a conclusion would be directly counter to the ethical rules championed by Saucier and memorialized in the fee-sharing contract at issue.

V.     **Common Benefit Attorneys Fees Have Not Yet Been Awarded.**

Under the "common benefit" doctrine, first articulated by the Supreme Court over a century ago, counsel whose efforts obtain, protect, preserve or make available a substantial benefit to a class of persons are entitled to attorney's fee based upon the worth of the benefit to the class.[2] Generally, in Louisiana, the right of an attorney to remuneration for services is dependent upon a contract, either express or implied. Louisiana State Mineral Board v. Abadie, 164 So.2d 159, 166 (La.App.1st Cir.1964). An exception to this rule is recognized, however, in those instances where an attorney, alone and at his own expense, has successfully maintained an action for the preservation, protection, increase, or creation of a fund in which persons other than his own clients may share or from which they may benefit. Kirkpatrick v. Young, 456 So 2d 622, 625 (La.1984);

---

[1] See Louisiana Paving Co. v. State, Through Dep't of Transp. & Dev., 431 So. 2d 52, 53 (La. Ct. App.), writ denied sub nom. Louisiana Paving Co. v. State, Through Dep't of Transp. & Dev., 440 So. 2d 735 (La. 1983) ("Reformation of instruments is available only to correct mistakes or errors when the instrument, as written, did not express the true intent of the parties. Bielawski v. Landry, 397 So.2d 861, (La.App. 4th Cir.1981). Proof of mutual error must be clear and convincing. Amoco Production Company v. Texaco, Inc., 415 So.2d 1003 (La.App. 4th Cir.1982).").

[2] Newberg on Class Actions, §14.01 (3rd ed. 1992); Boeing Co. v. Van Gemert, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881). See also: "Common Fund and Substantial Benefit" Awarding Attorneys' Fees and Managing Fee Litigation (Federal Judicial Center 1995), pp. 49-85. The history and justification for the practice of awarding fees from common funds are examined in detail in Charles Silver, *A Restitutionary Theory of Attorneys' Fees in Class Actions,* 76 CORNELL LAW REVIEW 401 (1991).

In re Interstate Trust & Banking Company, 235 La. at 842, 106 So.2d at 282 (on rehearing); Abadie, 164 So.2d at 166. In such instances, equity requires that all who benefit must pay the costs and expenses incident thereto, including attorney's fees. Abadie, 164 So.2d at 166. The exception allowing for the award of an attorney fee even in the absence of a contract has been termed the "fund doctrine" or "common fund doctrine." Common fund cases are predominately, though not exclusively, class actions.

The equitable nature of a common benefit award is based on the simple notion that when a class representative does battle on behalf of a group and achieves a fund that benefits the group and that will be divided among them, all members of the group should share in the costs of producing the benefit. Those costs include an attorney's fees award.

In this instant case, the Court has not yet made a common benefit award. It is improper for the Estate of Exnicios to ask for a percentage of a common benefit award that has not yet been made by the Court.

**VI.    No Legal Requirement Existed for Qualified Settlement Fund Establishment.**

The Estate of Exnicios' argument that defendants-in-intervention should have placed the settlement funds into a Qualified Settlement Fund (QSF) lacks legal foundation under Louisiana law. Plaintiff-in-intervention cites no controlling Louisiana statute or case law mandating such procedures.

Even though it was not required, a qualified settlement fund was established in this matter. The defendants-in-intervention's distribution of litigation expenses was conducted in accordance with their fiduciary obligations and established procedures.

The petitioner received distributions totaling $11,630.63 from the common benefits fund, which represents appropriate allocation based on actual contributions and participation levels. The petitioner's characterization of dollar-for-dollar reimbursement as inadequate fails to account for proportional distribution principles agreed to under the contract and the deceased attorney's limited ongoing participation in the litigation.

### VII. Allegations of Intentional Harm Lack Factual and Legal Support.

The petitioner's allegations of an "intentional scheme to cut out Exnicios" and "intentional destruction of Exnicios' interests" constitute unsupported accusations lacking evidentiary foundation. Declaratory judgment proceedings require actual controversies based on legal rights, not speculative and baseless claims of intentional misconduct.

The petitioner's assertion that defendants-in-intervention engaged in front-loading of expenses mischaracterizes standard litigation expense allocation procedures. The distribution of $1,412,685.00 in litigation expenses represents legitimate cost recovery for expenses incurred in the underlying litigation.

The claim that defendants-in-intervention "ratified and/or presupposed Exnicios' interest in the state court proceedings" lacks legal coherence and factual support. What the plain language of the parties' agreement presupposed is that to participate in the fee allocation, each party would contribute work as well as finance the successful prosecution of the case.

### VIII. Petitioner's Counterarguments Fail on Legal and Factual Grounds.

The petitioner's attempt to invoke "equity and the dignity of the profession" cannot overcome the fundamental legal deficiencies in the declaratory judgment motion. Equitable relief requires clear legal rights and established harm, neither of which the petitioner has demonstrated.

The petitioner's claim for "attorneys' fees and costs in connection with bringing this matter" is premature and unsupported. Louisiana law permits fee awards only when specifically authorized by contract or statute, and the petitioner has not established entitlement under either basis.

The petitioner's assertion of unsuccessful attempts to "resolve this matter without litigation for two years" – even if it were true (it is not) – does not create legal entitlement to declaratory relief or fee recovery. Such claims require proof of bad faith or unreasonable conduct by the opposing parties, which the petitioner has not established.

### IX.  Appropriate Relief and Denial of Motion

Based on the foregoing, the court should deny the Motion for Declaratory Judgment in its entirety. The petitioner has failed to establish the procedural requirements for declaratory relief, the validity and scope of the underlying contract, and the factual basis for claimed monetary damages.

The declaration shall have the force and effect of a final judgment or decree under Louisiana law, La. C.C.P. Art. 1871, and Federal law, 28 U.S.C. §2201, making it essential that such relief be granted only when legally appropriate and factually supported. *See also* In re Schreiber, 409 So.3d 783. The petitioner's motion fails both standards and should be dismissed.

The defendants-in-intervention respectfully request that the court deny all requested relief, including the claimed entitlement to specific percentages of attorneys' fees, monetary damages, and equitable relief. The petitioner's claims lack legal foundation and factual support necessary for declaratory judgment under applicable procedural requirements.

Respectfully Submitted:

*/s/ Lawrence J. Centola, III*
Scott R. Bickford (#1165)
srb@mbfirm.com

Lawrence J. Centola, Iii (#27402)
ljc@mbfirm.com
Jason Z. Landry (#33932)
jzl@mbfirm.com
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 – FACSIMILE

*/s/ Bruce C. Betzer*
Bruce C. Betzer (Bar No. 26800)
THE LAW OFFICE OF BRUCE C. BETZER
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
bruce@brucebetzer.com

*/s/ Douglas S. Hammel*
Douglas S. Hammel (Bar No. 26915)
HAMMEL LAW FIRM, LLC
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
douglashammel@gmail.com

*/s/ Kacie F. Gray*
Anthony D. Irpino (#24727)
Louise C. Higgins (#31780)
Pearl Robertson (#34060)
Kacie F. Gray (#36476)
IRPINO, AVIN & HAWKINS
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501
airpino@irpinolaw.com
lhiggins@irpinolaw.com
probertson@irpinolaw.com
kgray@irpinolaw.com

*/s/ John D. Sileo*
John D. Sileo (La Bar No. 17797)
LAW OFFICE OF JOHN D. SILEO
320 N. Carrollton Ave.,
Suite 101 New Orleans, LA 70119
(504) 486-4343
jack@johnsileolaw.com
casey@johnsileolaw.com

*/s/ Seth H. Schaumburg*
Seth H. Schaumburg (La Bar No. 24636)
Favret Demarest Russo Lutkewitte & Schaumburg
1555 Poydras Street, Suite 1600
New Orleans, LA 70112
P: (504) 562-1006
F: (504) 523-0699
seth@favretlaw.com
*Class Counsel and Defendants-in-Intervention*