UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELISA JORGE "GEORGE" ICTECH-BENDECK, | * | CIVIL ACTION |
| Plaintiff | * | |
| | * | No. 18-7889 |
| | * | c/w 18-8071, |
| VERSUS | * | 18-8218, 18-9312 |
| | * | |
| PROGESSIVE WASTE | * | |
| SOLUTIONS OF LA, INC. ET AL., | * | SECTION: "E" (5) |
| Defendants | * | |
| | * | JUDGE: Morgan |
| *Applies to: All Cases* | * | MAGISTRATE JUDGE: North |
| | * | |

*****************************************

**SUPPLEMENTAL MEMORANDUM OF CLASS COUNSEL
IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND IN RESPONSE TO INTERVENOR'S FILINGS**

MAY IT PLEASE THE COURT:

This supplemental memorandum is respectfully submitted by Class Counsel in further support of their Motion for Award of Attorneys' Fees and in response to the filings submitted by Intervenor.

Intervenor's opposition rests on a series of arguments that are legally unsupported, factually inaccurate, and procedurally misplaced. Intervenor ultimately asks this Court to do what Rule 23(h) does not permit, which is to revisit and restructure a class action settlement that has already been approved, implemented, and fully administered. The law does not allow such a result.

The Jefferson Parish settlement has been finalized. The Court approved the allocation and plan of distribution, the class has been paid, and litigation costs have been reimbursed. The only issue now before the Court is the narrow one presented by Rule 23(h), which is whether the requested attorneys' fee is reasonable in light of the settlement that exists.

1

Rather than address that question, Intervenor attempts to relitigate issues that are not before the Court, including internal fee sharing arrangements, alleged contractual rights, and speculative claims relating to separate state court proceedings. Those arguments do not bear on the determination of a reasonable fee from this settlement and, even if considered, fail on their own terms.

As set forth in Class Counsel's Motion for Award of Attorneys' Fees in the Settlement with the Parish of Jefferson, and as further demonstrated below, the requested 20 percent fee is consistent with governing law, supported by the record, and well within the range of reasonableness approved by courts in this Circuit. Intervenor's arguments provide no basis to recharacterize costs or expand the Estate's entitlement beyond the value of Mr. Exnicios' contributions as of the time his interest terminated upon his death. For these reasons, and as further set forth below, the Class Counsel's Motion for Award of Attorneys' Fees in the Settlement with the Parish of Jefferson should be granted.

**I.      The Court's Review Is Limited to the Settlement as Structured and Administered**

The Court's task is a limited one. Under Rule 23(h), the Court must determine whether the requested attorneys' fee is reasonable in light of the settlement that exists.[1] In doing so, the Court must independently assess the reasonableness of the requested fee and may not simply "ratify a pre-arranged compact."[2] That obligation defines the scope of the Court's review.

---

[1] Fed. R. Civ. P. 23(h) ("Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply: (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner. (2) A class member, or a party from whom payment is sought, may object to the motion. (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a). (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D))."

[2] *Evans v. TIN, Inc.*, 2013 WL 4501061, at *5 (E.D. La. Aug. 21, 2013) (citing *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849–50 (5th Cir.1998); *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974), *Piambino*, 610 F.2d 1306, 1328 (5th Cir.1980)).

The Jefferson Parish settlement has already been approved, implemented, and distributed to the class.[3] As recognized in *In re Shell Oil Refinery*, the Court's retention of jurisdiction exists solely "for the purpose of effectuating, enforcing and implementing the Judgment" and "shall not affect the finality of the Judgment approving the proposed settlement."[4] Accordingly, the Court's review at this stage is confined to evaluating the reasonableness of the requested fee in light of the settlement as it exists, not revisiting how that settlement was structured or implemented.

Intervenor's arguments do not engage with that standard. Instead, they seek to revisit the structure of the settlement and the treatment of funds that have already been allocated and distributed. That is not the function of a Rule 23(h) proceeding.[5]

Furthermore, Intervenor's assertion that Class Counsel "omit" the existence of the state court action is unfounded.[6] The existence of that litigation has not been concealed. It has been known to all parties and to the Court and was discussed with the Court as recently as the April 1, 2026, status conference.[7] Intervenor's suggestion to the contrary is not supported by the record.

More importantly, the argument is irrelevant to the issue before the Court. This proceeding concerns a fee request arising from the Jefferson Parish settlement. This Court is not adjudicating the state court action, and the existence of separate litigation does not alter the Rule 23(h) analysis. Intervenor's attempt to inject the state court proceedings into this motion does nothing to advance a legal argument regarding the reasonableness of the requested fee.

---

[3] *See* Doc. 575, Order Approving the Court-Appointed Neutrals' Report and Recommendation No. 2 ("IT IS FURTHER ORDERED that the proposed Allocation of Settlement Funds and the Plan of Distribution … is hereby APPROVED … and … authorized and directed to implement [it]").

[4] *In re Shell Oil Refinery*, 155 F.R.D. 552, 576 (E.D. La. 1993).

[5] *See Evans*, 2013 WL 4501061, at *5; *See also In re Shell Oil Refinery*, 155 F.R.D. at 576.

[6] *See* Intervenor's Opposition to Motion for Award of Attorneys' Fees in the Settlement with the Parish of Jefferson, Pg. 1 ("PC omits that this is a *partial* settlement of the matter total, and does not inform the court that the matter continues in the State Court Mass Action").

[7] *See* Doc. 606 – ORDER re Video Status Conf set 04.01.26.

Intervenor also contends that Class Counsel failed to place certain settlement funds attributable to class representatives into a "common benefit fund."[8] That contention reflects a misunderstanding of the structure actually employed. All settlement proceeds were placed into a Qualified Settlement Fund ("QSF"), a court-approved mechanism designed to receive, hold, and distribute settlement funds. While a QSF and a common benefit fund are distinct concepts, both serve to manage and allocate resources within litigation. Critically, however, a QSF operates under independent administration and is governed by its own legal and regulatory framework. The use of a QSF here ensured proper oversight, neutrality, and compliance in the distribution process.

In any event, this argument does not bear on the question before the Court. The issue under Rule 23(h) is whether the requested fee is reasonable in light of the settlement as approved and administered. Intervenor's challenge to the characterization of settlement funds does not provide a basis for revisiting that settled structure or for altering the Court's fee analysis.

Instead, it appears to be an effort to shift focus away from the governing standard and to cast Class Counsel in a negative light. That tactic does not substitute for legal authority and provides no basis for this Court to alter its analysis.

## II.    Intervenor's "Front-Loading" Argument Fails as a Matter of Law and Fact

Intervenor's primary argument is that litigation costs were improperly "front-loaded" onto the Jefferson Parish settlement. That argument fails as a matter of both law and fact. Properly understood, it is nothing more than a challenge to the reimbursement of litigation expenses that were necessary to create the settlement fund. The governing law does not support that challenge, and the factual record confirms that the costs at issue were real expenditures incurred to develop and prosecute this case.

---

[8] *See* Intervenor's Opposition to Motion for Award of Attorneys' Fees in the Settlement with the Parish of Jefferson, Pg. 1 ("PC has not placed the settlement funds of plaintiff class representatives into the common benefit fund").

**A.  Litigation Costs Were Properly Reimbursed From the Fund Created**

The governing law permits reimbursement of reasonable litigation expenses from a common fund created through counsel's efforts. Counsel who obtain a recovery for the benefit of others are entitled to recover those expenses from the fund itself.[9] That principle reflects the established structure of common fund recovery.

The costs at issue were not discretionary. Class Counsel incurred substantial out of pocket expenses to develop this case, including expert costs, causation analysis, and extensive discovery totaling $1,412,685.[10] Those expenditures were necessary to generate the recovery now before the Court. Reimbursement of those costs therefore reflects the application of settled law to the facts of this case.

Courts have also made clear that reimbursement of litigation expenses does not confer a windfall. It serves a restorative function. As recognized in *In re Chinese-Manufactured Drywall Products Liability Litigation*, such reimbursement "seeks not to reward attorneys for their work but restore the status quo."[11] The payments at issue did not generate profit. They repaid funds that had already been advanced in order to prosecute the case. Accordingly, reimbursement of these litigation costs was consistent with both governing law and the factual record.

**B.  The Record Confirms That Class Counsel Bore the Financial Risk and Performed the Substantial Majority of the Work**

The record confirms that the litigation costs reimbursed from the Jefferson Parish settlement were not theoretical. They were actually advanced over the course of years by Class Counsel, who bore the financial risk of this litigation. The development of general causation,

---

[9] *In re Pool Products Distribution Market Antitrust Litigation*, 2015 WL 4528880, at *18 (E.D. La. July 27, 2015) ("class action counsel who create a common fund for the benefit of the class [ ], are entitled to reimbursement of reasonable litigation expenses from that fund") (citing *In re Heartland Payment Sys.,* 851 F.Supp.2d at 1089; *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12–1609, 2015 WL 965696, at *11 (W.D.La. Mar. 3, 2015)).
[10] *See* Doc 541 at pg. 2 and corresponding Exhibit A (filed under seal).
[11] 424 F. Supp. 3d 456, 504 (E.D. La. 2020).

expert analysis, emissions modeling, and trial preparation required substantial upfront expenditures totaling $1,412,685.00.[12] These costs were incurred in real time, without any guarantee of recovery, and were necessary to create the settlement fund now before the Court.

While Mr. Exnicios did contribute to the common benefit fund, that contribution, $11,630.63, represents only a small fraction of the total litigation expenses incurred. The overwhelming majority of costs were advanced by Class Counsel, who continued to finance and prosecute the case through trial and settlement.

The same is true of the work performed. The record reflects that Class Counsel collectively expended more than 12,800 hours litigating this matter. Of that total, Mr. Exnicios contributed approximately 426.85 hours. This comparison reflects the relative contributions made in bringing this case to resolution.

This is not to diminish Mr. Exnicios as an attorney. Rather, it reflects the practical reality that the substantial majority of both the financial burden and the work required to bring this case to resolution was borne by Class Counsel.

These facts are directly relevant to Intervenor's "front-loading" argument. The reimbursement of expenses from the settlement was not an arbitrary allocation decision. It was the repayment of substantial costs actually incurred to create the fund. The record demonstrates that Class Counsel bore the overwhelming share of both the financial burden and the work required to achieve the settlement.

**C. No Authority Requires Costs to Be Deferred or Spread Across Proceedings**

Intervenor identifies no authority requiring litigation costs to be deferred or spread across future defendants or separate proceedings. There is no such rule. The law ties reimbursement to

---

[12] *See* Doc 541 at pg. 2 and corresponding Exhibit A (filed under seal).

6

the fund that was actually created, not to hypothetical future recoveries or speculative outcomes in other litigation. Counsel are not required to finance complex litigation indefinitely in anticipation of potential future settlements.

Courts evaluating common fund recoveries apply a straightforward structure. Litigation expenses are reimbursed from the fund created by counsel's efforts and are deducted before any calculation of attorneys' fees.[13] That principle reflects how common fund cases actually operate. Costs are repaid from the recovery that those expenditures helped produce.

Intervenor's suggestion that costs should be shifted to a separate state court action finds no support in the law. The reimbursement of expenses is tied to the case in which those expenses were incurred and the fund that was created as a result. Nothing in Rule 23 or common fund jurisprudence requires counsel to defer reimbursement or allocate costs to future proceedings that may or may not result in recovery.

### D. Intervenor's Argument Is Retroactive and Improper

Intervenor's argument depends on treating this case as though the settlement had not yet been approved or implemented. That is not the posture before the Court. The Jefferson Parish settlement has already been approved, administered, and relied upon. The class has been paid, and litigation costs have been reimbursed pursuant to the Court's Order.[14]

---

[13] *See, e.g., In re Apache Corp. Sec. Litig.*, 2024 WL 4881432 (S.D. Tex. Nov. 25, 2024) (recognizing that litigation expenses are properly recovered from the common fund and deducted before calculating attorneys' fees); *see also In re Apache Corp. Sec. Litig.,* 2024 WL 4881432, at *8 n.2 ("A percentage fee award should be calculated against "the value received from the settlement by the members of the class"—that is, the net common fund after deduction of litigation expenses and payments to the Lead Plaintiffs for reasonable costs and expenses directly related to Lead Plaintiffs' representation of the class. Pearson v. NBTY, Inc., 772 F.3d 778, 781 (7th Cir. 2014)").

[14] *See* Doc. 575, Order Approving the Court-Appointed Neutrals' Report and Recommendation No. 2 ("IT IS FURTHER ORDERED that the proposed Allocation of Settlement Funds and the Plan of Distribution … is hereby APPROVED … and … authorized and directed to implement [it]"); *See* Doc. 545, ORDER OF FINAL APPROVAL OF SETTLEMENT.

The Court is not being asked to construct a new framework for allocation. It is being asked to evaluate a fee request within the structure that has already been approved and carried out. Intervenor's position instead invites the Court to revisit that structure and to recast how funds were treated after the fact. That approach is inconsistent with the finality of the Court's prior rulings.

Courts have recognized that once a class settlement is approved, its structure is final and not subject to later reconfiguration. In *In re Shell Oil Refinery*, the court emphasized that its continuing jurisdiction over the administration of the settlement exists only to "effectuat[e], enforc[e] and implement[] the Judgment" and "shall not affect the finality of the Judgment approving the proposed settlement."[15] The Court's authority at this stage is therefore limited to implementing the judgment, not altering it.

Intervenor's argument would require precisely the type of post hoc restructuring that the law does not permit. It seeks to revisit decisions that have already been implemented and to alter the treatment of funds after distribution has occurred. That is not a proper basis to challenge the reasonableness of the requested fee under Rule 23(h). Accordingly, Intervenor's position is not only unsupported by law, it is procedurally improper in light of the posture of this case.

### E.  The Common Benefit Doctrine Supports Reimbursement

The reimbursement of litigation costs from the settlement fund is consistent with the common benefit doctrine. Under that doctrine, counsel whose efforts obtain, preserve, or create a fund for the benefit of a class are entitled to recover attorneys' fees and expenses from that fund

---

[15] 155 F.R.D. 552, 576 (E.D. La. 1993).

based on the value conferred.[16] This principle reflects the equitable rule that those who benefit from litigation should share in its costs.[17]

That principle applies directly here. Class Counsel advanced substantial time and resources to develop this case and obtain the settlement. The fund exists because of those expenditures. Reimbursing those costs does not confer any advantage. It simply ensures that the burden of creating the recovery is not borne exclusively by the attorneys who financed the litigation.

Intervenor's position ignores that framework. Litigation costs were actually advanced by Class Counsel. Reimbursement from the settlement merely repays those expenditures. Intervenor's argument would delay that repayment and force those attorneys to continue carrying those costs indefinitely. In practical terms, it would require the attorneys who funded the litigation to absorb the financial burden, while others, including the Estate, benefit from the results without contributing to the expense required to produce them. The record further reflects that the Succession accepted and negotiated reimbursement of its own litigation costs. Having accepted that benefit, Intervenor cannot now contend that the same process is improper when applied to other counsel.

Intervenor's position would also produce an untenable result. If costs are not reimbursed now and no recovery is ultimately obtained in the state court action, the remaining counsel will be left to absorb those expenses in full. The Estate, by contrast, would bear none of that risk despite

---

[16] Newberg on Class Actions, §14.01 (3rd ed. 1992); *Boeing Co. v. Van Gernert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881). *See also:* "Common Fund and Substantial Benefit" Awarding Attorneys' Fees and Managing Fee Litigation (Federal Judicial Center 1995), pp. 49-85. The history and justification for the practice of awarding fees from common funds are examined in detail in Charles Silver, A Restitutionary Theory of Attorneys' Fees in Class Actions, 76 CORNELL LAW REVIEW 401 (1991).

[17] *Id.*

having contributed only a small fraction of the overall costs. That is precisely the type of inequity the common benefit doctrine exists to prevent.

Intervenor's assertion that Class Counsel have been "unjustly enriched" is therefore unfounded.[18] The payments at issue are reimbursements of costs that were previously advanced. As courts have recognized, such reimbursement does not confer a benefit but instead "restore[s] the status quo."[19] The reimbursement of costs does not generate profit. It returns counsel to the position they occupied before those expenses were incurred.

Courts applying the common benefit doctrine also recognize that litigation expenses are reimbursed from the fund before attorneys' fees are calculated. In *In re Shell Oil Refinery*, the court approved substantial litigation costs as reimbursable from the settlement fund, separate from the attorneys' fee award, and distributed the remaining funds thereafter.[20] This reflects the standard structure of common fund analysis: costs are repaid first, and fees are determined from what remains.

Accordingly, the common benefit doctrine not only permits reimbursement of litigation costs from the settlement fund, it requires it to ensure that the burden of producing the recovery is fairly allocated. Intervenor's position would do the opposite.

### III.    The 2020 Agreement and Oral Agreement Are Irrelevant to the Attorney Fee Determination

Intervenor relies on an oral agreement between Mr. Exnicios and Mr. Schaumburg, the 2020 Agreement among class counsel, and issues relating to separate state court proceedings. As

---

[18] *See* Intervenor's Opposition to Motion for Award of Attorneys' Fees in the Settlement with the Parish of Jefferson, Pg. 2 ("PC is intentionally acting to unjustly enrich themselves at the expense of the decedent").

[19] *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 504 (E.D. La. 2020).

[20] 155 F.R.D. 552 (The court approved more than $13 million in litigation costs as reasonable and reimbursable from the settlement fund, separate from the attorneys' fee award, and distributed the remaining funds thereafter).

a threshold matter, none of these issues determines the amount of attorneys' fees to be awarded from the Jefferson Parish settlement under Rule 23(h).

This motion presents a single question, which is what fee is reasonable from this settlement. It does not concern how any awarded fees may ultimately be divided among counsel, nor does it adjudicate whether any party may claim rights in separate proceedings. Intervenor's arguments improperly conflate these distinct issues. However, even if the Court were to consider Intervenor's arguments, they fail on their own terms.

### A.  The Oral Agreement Does Not Provide the Estate with a Continuing Entitlement

Class Counsel do not dispute that an oral agreement existed between Mr. Exnicios and Mr. Schaumburg. The dispute concerns its scope and duration. Intervenor assumes that the agreement entitles the Estate to continue receiving a fixed share of both financing and work performed indefinitely, including after Mr. Exnicios' death. That assumption is not supported by the nature of the agreement, the record, or Louisiana law.

The timeline of this case makes that clear. This action was filed in state court on July 25, 2018 and removed to federal court on August 17, 2018.[21] Mr. Exnicios passed away on January 17, 2022. At that point, any joint venture or partnership between Mr. Exnicios and Mr. Schaumburg terminated as a matter of law. The litigation did not. Instead, it continued for more than three additional years without his participation, ultimately resulting in final approval of the Jefferson Parish settlement on March 27, 2025.[22] The recovery at issue was therefore achieved through substantial work performed entirely after Mr. Exnicios' death.

The arrangement described by Intervenor was based on a defined division of responsibilities. Mr. Schaumburg agreed to contribute financing, while Mr. Exnicios agreed to

---

[21] *See* Doc. 1,  NOTICE OF REMOVAL from 24th JDC.
[22] *See* Doc. 545, ORDER OF FINAL APPROVAL OF SETTLEMENT.

contribute litigation expertise and perform work on behalf of both himself and Mr. Schaumburg. In exchange for that allocation of capital and labor, any attorneys' fees attributable to their joint efforts were to be divided equally. Any entitlement under that agreement was therefore necessarily dependent on those respective contributions.

Upon Mr. Exnicios' death, his ability to perform legal work, provide strategic direction, or otherwise contribute to the litigation ceased. The case, however, did not. Mr. Schaumburg and remaining counsel were required to assume the full burden of the work that followed, and Mr. Schaumburg in particular expended substantial additional time and effort to compensate for Mr. Exnicios' inability to continue participating. They continued to advance the litigation, develop experts, and ultimately achieve the settlement.

That shift in responsibility underscores the limited scope of any entitlement under the agreement. Because the arrangement was premised on an exchange of ongoing contributions, the value of Mr. Exnicios' interest must be measured based on what he actually contributed during his lifetime. Louisiana law confirms that obligations of this nature do not continue indefinitely or transfer in the manner Intervenor suggests. Obligations that depend on the personal skill, judgment, or performance of an individual are strictly personal and are not heritable.[23] Mr. Exnicios' role under the agreement required his continued legal work, strategic input, and active participation in the litigation. Once those contributions ceased, the basis for any continuing entitlement ceased with them. Any recovery by the Estate must therefore be limited to the value of Mr. Exnicios' participation prior to his death and does not extend to work performed or fees generated thereafter.

Courts applying this principle have held that agreements requiring personal performance terminate upon death and do not pass to the decedent's estate. In *Braxton v. Holloway*, the Fifth

---

[23] La. Civ. Code art. 1766.

Circuit affirmed that a contract for the management and operation of a business constituted a personal services agreement that terminated upon the individual's death, such that "no cause of action thereon survived to his Estate."[24] The court further recognized that the agreement could not be performed by the decedent's successors because it depended on his personal skill, judgment, and performance.[25] The same reasoning applies here. The alleged agreement depended on Mr. Exnicios' personal legal services and litigation expertise. Upon his death, those obligations ceased, and any ongoing rights under the agreement were extinguished.

Louisiana courts further treat attorney fee sharing agreements of this nature as joint ventures or special partnerships.[26] Under the Louisiana Civil Code, a partnership is created by contract between two or more persons to combine efforts or resources and collaborate at mutual risk for their common benefit.[27] The oral agreement between Mr. Exnicios and Mr. Schaumburg fits within that framework and constitutes, at most, a special partnership. Where the agreement contains no provision addressing the death of a participant, the Civil Code's default rules apply. Louisiana Civil Code article 2826 provides that a partnership terminates when its membership is reduced to one person.[28] That is what occurred upon Mr. Exnicios' death. At that point, the partnership ceased to exist as a matter of law.

---

[24] 246 F.2d 953 (5th Cir. 1957).

[25] *Id.*

[26] *Rice, Steinberg, & Stutin, P.A. v. Cummings, Cummings & Dudenhefer*, 97-1651 (La. App. 4 Cir. 3/18/98), 716 So. 2d 8, writ denied, 98-1328 (La. 6/26/98), 719 So. 2d 1288 (citing *Duer & Taylor v. Blanchard*, 354 So. 2d 192 (La. 1978)).

[27] La. Civ. Code art. 2801: "A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit."

[28] La. Civ. Code art. 2826: "Unless continued as provided by law, a partnership is terminated by: the unanimous consent of its partners; a judgment of termination; the granting of an order for relief to the partnership under Chapter 7 of the Bankruptcy Code; **the reduction of its membership to one person**; the expiration of its term; or the attainment of, or the impossibility of attainment of the object of the partnership."

The consequences of that termination are defined by Louisiana Civil Code article 2828. When a partnership terminates in this manner and the remaining member elects to continue the business, the former partner's estate is entitled only to the value of that partner's share at the time of termination.[29] The estate does not retain any ongoing interest in profits generated by future work after the partnership has ended.

Intervenor's theory would grant the Estate a continuing share of fees tied to work performed after Mr. Exnicios' death, work in which he did not and could not participate. That position is inconsistent with the nature of the agreement and contrary to Louisiana law. Any entitlement under the oral agreement is limited to the value of Mr. Exnicios' contributions during his lifetime and does not extend to work performed or fees generated thereafter.

### B.  The Estate Has No Entitlement to Fees From the State Court Action

Intervenor has no entitlement to recover any attorneys' fees from the state court mass tort action under the 2020 agreement among counsel. That agreement was tied to the prosecution of the Jefferson Parish litigation and governed the allocation of fees arising from that matter. It does not extend to separate litigation initiated thereafter under entirely new contingency fee contracts.

The state court mass tort action is based on individual contingency fee agreements executed separately with each plaintiff. Mr. Exnicios was not a party to those agreements. His name does not appear on them, and he did not sign them. Under Louisiana law, a contingency fee agreement must be in writing and signed by the client to be enforceable.[30] Because Mr. Exnicios was not a

---

[29] La. Civ. Code Art. 2828: "If a partnership terminates because its membership is reduced to one person, that person is not bound to liquidate the partnership and may continue the business as a sole proprietor. If the person elects to continue the business, his former partners are entitled to amounts equal to the value of their shares as of time the partnership terminated, and they have the right to demand security for the payment of partnership debts."
[30] La. Rules of Prof'l Conduct r. 1.5(c): "A contingent fee agreement shall be in a writing signed by the client."

14

contracting attorney in the state court matter, neither he nor his Estate has any contractual basis to claim fees generated under those agreements.

Nor does the 2020 agreement provide a mechanism to extend fee-sharing rights into unrelated or subsequently filed litigation. Louisiana law permits the division of fees among attorneys only where the client consents in writing to the participation of each lawyer and each lawyer renders meaningful legal services in the matter.[31] Those requirements are not satisfied here. Mr. Exnicios was not disclosed to the state court clients, did not participate in those representations, and, following his death, could not render any legal services in connection with that litigation.

At the time of his death, the state court mass tort action did not exist. It had not been filed, no contingency fee agreements had been executed, and no fees had been generated or even contemplated. The state court litigation arose only after the denial of class certification[32], well after Mr. Exnicios' passing on January 17, 2022.

Intervenor's position therefore attempts to extend the 2020 agreement beyond its scope and create a prospective entitlement to fees arising from a separate proceeding that did not exist during Mr. Exnicios' lifetime. Louisiana law does not permit such an expansion. The Estate cannot claim an interest in fees from contracts and litigation that arose entirely after his death. Accordingly, Intervenor's claim to attorneys' fees from the state court action fails as a matter of law.

### C.  The General Causation Argument Is Speculative

Considering that the parties are not the same and the general causation ruling was not a final judgment, Intervenor's argument is speculative at best.

---

[31] La. Rules of Prof'l Conduct r. 1.5(e): "A division of fee between lawyers who are not in the same firm may be made only if: (1) the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive; (2) the total fee is reasonable; and (3) each lawyer renders meaningful legal services for the client in the matter."

[32] *See* Doc. 546, ORDER AND REASONS: IT IS ORDERED that Plaintiffs' 438 Motion to Certify Class is DENIED.

Louisiana law is clear that a contingency fee agreement is a contract of mandate, which terminates upon the death of the attorney unless it constitutes a "power coupled with an interest."[33] Even where the mandate terminates, the attorney's estate may recover only the reasonable value of services rendered prior to termination under a quantum meruit theory.[34] That recovery is limited to the reasonable value of the services performed and does not extend to future fees that would have been earned had the attorney lived.

Although fee-sharing agreements with a deceased attorney are not expressly addressed, the same principles apply. Authorities such as *Spears v. Hall*[35], along with Louisiana Rules of Professional Conduct Rule 1.5(e)[36] and Rule 5.4(a)(2)[37], confirm that any entitlement must be limited to the value of the deceased attorney's prior contributions. Here, Mr. Exnicios passed before making any meaningful contribution to the work at issue.

The record reflects that Mr. Exnicios passed well before the development of the general causation record. The general causation proceedings occurred after his death, and he did not take depositions, work with experts, or participate in the preparation of expert reports or testimony.

Intervenor nonetheless asserts that Class Counsel are using general causation findings from this case in the state court action while assigning all costs to this settlement. That assertion is incorrect. The state court has not ruled on whether any general causation findings from this Court

---

[33] *Kinsey v. Dixon*, 467 So. 2d 862 (La. 1985); *Due v. Due*, 342 So. 2d 161 (La. 1977).

[34] *Kinsey*, 467 So. 2d 862; *Due*, 342 So. 2d 161.

[35] *Spears v. Hall*, 2025-00195 (La. 3/6/26) (rejecting a claim for contingency fees where the attorney performed no meaningful services and lacked a valid joint venture at the time of the representation, emphasizing that Rule 1.5(e) requires actual contribution).

[36] La. Rules of Prof'l Conduct r. 1.5(e): "A division of fee between lawyers who are not in the same firm may be made only if: (1) the client agrees in writing to the representation by all of the lawyers involved, and is advised in writing as to the share of the fee that each lawyer will receive; (2) the total fee is reasonable; and (3) each lawyer renders meaningful legal services for the client in the matter."

[37] La. Rules of Prof'l Conduct r. 5.4(a)(2): "a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer."

16

will be adopted, nor is there any indication that such findings will have binding or preclusive effect. Intervenor's argument therefore rests on conjecture, not fact.

The record confirms that the general causation case was built through extensive expert analysis, discovery, and litigation effort performed and funded by Class Counsel. Mr. Exnicios' contribution, approximately 426.85 hours and $11,630.63 in costs, represents only a small portion of the overall effort and does not include any expert development or general causation work, which was performed entirely after his death.

There is no basis to attribute that later work to Mr. Exnicios or to expand any fee entitlement on that ground. The Fifth Circuit's decision in *Longden v. Sunderman* reinforces this limitation, holding that recovery from a common fund must be tied to work that actually benefits the class.[38]

Intervenor's position is therefore foreclosed. Any entitlement must be based on actual contributions to the creation of the settlement fund, not on speculative future use of prior work or an asserted proportional interest untethered to the benefit conferred.

### D. Rule 5.4(a) Does Not Support Intervenor's Position

Intervenor's reliance on Rule 5.4(a) of the Rules of Professional Conduct is misplaced. Class Counsel do not dispute that attorneys' fees may be paid to a deceased attorney's estate. That principle is not at issue.

The question before the Court is the scope of any such entitlement. Rule 5.4(a)(2) permits payment to a deceased lawyer's estate only to the extent the payment "fairly represents the services rendered by the deceased lawyer."[39] It does not create or expand a substantive right to fees that

---

[38] 979 F.2d 109, 1102 (5th Cir. 1992).

[39] La. Rules of Prof'l Conduct r. 5.4(a)(2): "a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer."

were not earned. Nor does it convert a limited contractual or partnership interest into a continuing entitlement to fees generated after the attorney's death.

Intervenor's argument conflates those distinct concepts by treating Rule 5.4(a) as a source of entitlement rather than a limitation on it. The rule, by its terms, ties any recovery to services actually performed by the deceased lawyer. It therefore provides no basis to claim a continuing share of attorneys' fees tied to work performed by others after Mr. Exnicios' death. Accordingly, it does not support increasing the total fee award or expanding the Estate's entitlement beyond fees attributable to Mr. Exnicios' work during his lifetime.

## IV. Decedent's Contract for Legal Services with Mr. Ictech-Bendeck Has No Effect on the Court's Rule 23 Analysis.

Intervenor's reliance on the fee provision contained in the contract between Mr. Exnicios and Mr. Ictech-Bendeck is misplaced. That agreement governs the attorney client relationship between an individual client and counsel. It does not control the Court's independent obligation under Federal Rule of Civil Procedure 23(h) to determine a reasonable attorneys' fee in a common fund class action.

The Fifth Circuit has made clear that a district court is not bound by private fee agreements when determining an appropriate fee award.[40] Instead, the Court must independently evaluate the reasonableness of the requested fee based on the benefit conferred to the class and the circumstances of the case.[41] That principle necessarily applies with even greater force to individual attorney client contracts, which cannot dictate or establish a minimum for a court awarded common fund fee.

---

[40] *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998) (citing *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir.1980); *Foster v. Boise–Cascade, Inc.*, 577 F.2d 335, 336 (5th Cir.1978)).
[41] *Id.*

Intervenor's argument attempts to invert that framework by using a private agreement to impose a floor on the Court's fee determination. The law does not permit that result. The Court is not required to ensure that any individual attorney achieves a particular recovery, nor to structure a fee award around private contractual expectations.

Courts have repeatedly recognized that private fee agreements may be limited or disregarded where necessary to ensure the overall reasonableness of a class fee award. In *Evans v. TIN, Inc.*, the court limited contingency fee contracts of privately retained attorneys to align with a reasonable percentage of the common fund.[42] Likewise, in *Union Asset Management Holding A.G. v. Dell, Inc.*, the Fifth Circuit affirmed a district court's decision to reduce a requested fee notwithstanding the existence of a retainer agreement providing for a higher percentage.[43] These decisions confirm that private agreements may inform the Court's analysis but do not control it.

The Fifth Circuit has further emphasized that fee awards must be tied to the benefit conferred to the class, not to private contractual expectations. In *Longden v. Sunderman*, the court affirmed a reduction in an attorney's requested compensation where the attorney failed to demonstrate that her work benefitted the class as a whole.[44] Similarly, in *Forbush v. J.C. Penney Co.*, the court recognized that fee awards require judicial approval and are not governed by agreements among counsel.[45]

Intervenor's position also rests on a flawed premise. It treats the requested 20 percent fee as though it were compensation for a single attorney's time, rather than a collective recovery for

---

[42] 2013 WL 4501061 (E.D. La. Aug. 21, 2013) (limiting contingency fee contracts of privately retained attorneys to 20% of recovery).
[43] 669 F.3d 632 (5th Cir. 2012).
[44] 979 F.2d 1095 (5th Cir. 1992)
[45] 98 F.3d 817 (5th Cir. 1996).

years of coordinated litigation performed by multiple firms that advanced substantial costs and assumed significant risk. That is not how common fund fees are evaluated.

To the extent Intervenor suggests that the requested fee diminishes compensation owed to Mr. Exnicios, that argument again conflates two distinct issues: the total fee to be awarded from the settlement fund and the allocation of that fee among counsel. Only the former is before the Court. Any dispute regarding allocation or contractual entitlement does not provide a basis to increase the total fee award.

Accordingly, the contract between Mr. Exnicios and Mr. Ictech-Bendeck does not render the requested 20 percent fee unreasonable and provides no basis to alter the Court's Rule 23(h) analysis.

### V.    The Requested 20% Fee is Reasonable

The requested 20 percent fee is reasonable under governing Fifth Circuit law and the facts of this case. It reflects the structure of the settlement as implemented, the substantial effort and risk undertaken by Class Counsel, and the absence of any objection from the class. Intervenor's arguments to the contrary rely on incorrect legal standards and a mischaracterization of both the record and the governing framework.

The Fifth Circuit endorses the percentage method for awarding attorneys' fees in common fund cases, subject to a cross-check using the Johnson factors.[46] As the court in *Dell* explained, the percentage method "allows for easy computation [and] aligns the interests of class counsel with those of the class members."[47]

---

[46] *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–44 (5th Cir. 2012).
[47] *Id.*

Courts within this Circuit routinely apply the percentage method because it promotes efficiency, encourages settlement, and avoids unnecessary litigation over billing records.[48] Consistent with that approach, courts in this District regularly use the percentage method to calculate fees in class actions.[49]

Fee determinations are reviewed under a deferential abuse-of-discretion standard, reflecting the district court's broad authority in this area.[50] Against this legal backdrop, the requested 20 percent fee is well within the range of reasonableness.

## VI.    CONCLUSION

For the foregoing reasons, the requested 20 percent attorneys' fee is reasonable under Rule 23(h) and fully supported by governing Fifth Circuit law and the factual record. Intervenor's arguments rest on incorrect legal standards, speculative assumptions, and an improper attempt to revisit issues that are not before the Court.

The settlement has been approved, implemented, and distributed. Litigation costs were properly reimbursed. The requested fee reflects the substantial effort and risk undertaken by Class Counsel, and the result achieved for the class. It falls well within the range of reasonableness recognized by courts in this Circuit.

Intervenor's arguments do not provide a basis to recharacterize costs or expand the Estate's entitlement beyond the value of Mr. Exnicios' actual contributions. Accordingly, Class Counsel respectfully request that the Court grant the Motion for Award of Attorneys' Fees and approve the requested 20 percent fee.

---

[48] See *Torregano v. Sader Power, LLC*, 2019 WL 969822, at *5 (E.D. La. Feb. 28, 2019); *In re Vioxx Prods. Liab. Litig.*, 2018 WL 4613941, at *6 (E.D. La. Sept. 26, 2018).

[49] See *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676 (E.D. La. 2006); *Braud v. Transp. Serv. Co. of Ill.*, 2010 WL 3283398, at *8 (E.D. La. Aug. 17, 2010); *Faircloth v. Certified Fin., Inc.*, 2001 WL 527489 (E.D. La. May 16, 2001).

[50] *Dell*, 669 F.3d at 439.

Respectfully Submitted:

/s/  Seth H. Schaumburg
Seth H. Schaumburg (La Bar No. 24636)
Katherine Q. Schaumburg (La Bar No. 41929)
FAVRET, DEMAREST, RUSSO,
LUTKEWITTE & SCHAUMBURG
1555 Poydras Street, Suite 1600
New Orleans, LA 70112
P: (504) 562-1006
F: (504) 523-0699
seth@favretlaw.com
katherine@favretlaw.com
*Counsel for Ictech-Bendeck Plaintiffs*

/s/ Lawrence J Centola, III
Scott R. Bickford (#1165)
srb@mbfirm.com
Lawrence J. Centola, III (#27402)
ljc@mbfirm.com
Jason Z. Landry (#33932)
jzl@mbfirm.com
MARTZELL BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504)581-7635 - FACSIMILE

/s/ Bruce C. Betzer
Bruce C. Betzer (Bar No. 26800)
THE LAW OFFICE OF BRUCE C. BETZER
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
bruce@brucebetzer.com

/s/  Douglas S. Hammel
Douglas S. Hammel (Bar No. 26915)
HAMMEL LAW FIRM, LLC
3129 Bore Street
Metairie, LA 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
douglashammel@gmail.com

22

/s/  Kacie F. Gray
Anthony D. Irpino (#24727)
Louise C. Higgins (#31780)
Pearl Robertson (#34060)
Kacie F. Gray (#36476)
IRPINO, AVIN & HAWKINS
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501
airpino@irpinolaw.com
lhiggins@irpinolaw.com
probertson@irpinolaw.com
kgray@irpinolaw.com

/s/  John D. Sileo
John D. Sileo (La Bar No. 17797)
LAW OFFICE OF JOHN D. SILEO
320 N. Carrollton Ave.,
Suite 101 New Orleans, LA 70119
(504) 486-4343
jack@johnsileolaw.com
casey@johnsileolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ Seth H. Schaumburg
CLASS COUNSEL, ON BEHALF OF THE CLASS

23